**No. 2021-2348**

In the
# United States Court of Appeals
for the Federal Circuit

LKQ CORPORATION; KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,

*Appellants,*

v.

GM GLOBAL TECHNOLOGY OPERATIONS LLC,

*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2020-00534.

## REPLY BRIEF OF APPELLANTS LKQ CORPORATION and KEYSTONE AUTOMOTIVE INDUSTRIES, INC.

BARRY F. IRWIN, P.C.
IFTEKHAR A. ZAIM
ANDREW C. HIMEBAUGH
**IRWIN IP LLC**
150 N. Wacker Dr., Suite 700
Chicago, IL 60606
(312) 667-6080
birwin@irwinip.com
izaim@irwinip.com
ahimebaugh@irwinip.com

MARK A. LEMLEY
**DURIE TANGRI LLP**
217 Liedesdorff St.
San Francisco, CA 94111
(415) 362-6666
mlemley@durietangri.com

MARK P. MCKENNA
**LEX LUMINA PLLC**
745 Fifth Ave., Suite 500
New York, NY 10151
(630) 430-8051
mark@lex-lumina.com

*Counsel for Appellants*
*LKQ Corporation and Keystone Automotive Industries, Inc.*

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 21-2348

**Short Case Caption** LKQ Corporation v. GM Global Technology Operations LLC

**Filing Party/Entity** LKQ Corporation

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/29/2021

Signature: /s/Barry Irwin

Name: Barry Irwin

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| LKQ Corporation | | None |
| Keystone Automotive Industries, Inc. | | LKQ Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Reid Huefner | Margaret Herrmann | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

ARGUMENT ........ 2

I. LKQ HAS STANDING. ........ 2

II. THE BOARD'S ANTICIPATION DETERMINATION WAS LEGALLY ERRONEOUS. ........ 4

A. The Ordinary Observer Cannot "Include" Both the Retail Vehicle Purchaser and the Repair Part Purchaser; They are Irreconcilable. ........ 4

1. The Board Erred in Treating the Identity of the Ordinary Observer as Moot. ........ 4

2. The Board was Required to Identify a Single Ordinary Observer. ........ 6

3. The Correct Ordinary Observer Under Governing Law is the Retail Purchaser of a New Vehicle. ........ 9

4. The Board's Determination as to Anticipation Lacks Substantial Evidence, and Under the Correct Ordinary Observer, it Should Have Found the '625 Patent Anticipated by Lian. ........ 13

B. The Board Erred in Applying Other Prior Art to its Anticipation Analysis. ........ 14

III. THE BOARD'S DETERMINATION THAT THE CLAIMED DESIGN WAS NEITHER OBVIOUS OVER LIAN, NOR THE COMBINATION OF LIAN AND THE TUCSON SHOULD BE REVERSED. ........ 16

A. LKQ Did Not Forfeit its Right to Challenge Rosen and Durling as Inconsistent with the Supreme Court's Decision in KSR. ........ 16

1. LKQ addressed KSR's applicability in the proceeding and pressed the issue as far as was appropriate before the Board. ........ 16

2. GM cites no relevant authority holding that LKQ's challenge should be deemed forfeited. .......................... 18

3. It would even have been appropriate for LKQ to raise this issue for the first time on appeal................ 19

B. GM Fails to Rebut Any of LKQ's Bases for Showing that Rosen and Durling Do Not Survive KSR, and GM's Arguments as to Obviousness on Response are Irrelevant, Wrong, or Both. .................................................................. 20

1. The Federal Circuit's continued application of Rosen and Durling has no bearing on whether either survived KSR. ............................................................ 20

2. GM cites no precedent holding that either Rosen or Durling in fact survive KSR. ........................................ 21

3. Rosen's single-primary-reference requirement implicates the considerations driving the Supreme Court's decision in KSR. ............................................ 21

4. GM fails to rebut that Rosen causes the tests for obviousness and anticipation to collapse into one. ....... 24

C. Regardless of Whether Rosen survives KSR, the Board Should Have Found the Claimed Design Obvious Over Lian and the Tucson, if not Lian alone. .......................................... 25

1. GM's arguments that LKQ's obviousness ground should fail because LKQ did not "revise" its claim construction is groundless. ........................................... 25

2. Lian and the Claimed Design are not meaningfully different from the perspective of an ordinary designer. 26

IV. GM CANNOT CURE THE DEFICIENCIES IN THE BOARD'S OPINION BY POINTING TO EVIDENCE THE BOARD DID NOT CITE. .......................................................28

CONCLUSION ..........................................................................................29

# TABLE OF AUTHORITIES

**Cases** **Pages(s)**

*Alacritech, Inc. v. Intel Corp.*,
966 F.3d 1367 (Fed. Cir. 2020) ....................29

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ....................18

*Amerigen Pharm. Ltd. v. UCB Pharma GmBH*,
913 F.3d 1076 (Fed. Cir. 2019) .................... 2

*Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*,
501 F.3d 1314 (Fed. Cir. 2007) ....................6, 7, 9, 11

*In re Borden*,
90 F.3d 1570 (Fed. Cir. 1996) ....................16

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*,
807 F.2d 955 (Fed. Cir. 1986) ....................15

*Durling v. Spectrum Furniture Co., Inc.*,
101F.3d 100 (Fed. Cir. 1996) ....................22

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) .................... 7, 8, 11, 12, 26

*Ethicon Endo-Surgery v. Covidien, Inc.*,
796 F.3d 1312 (Fed. Cir. 2015) ....................6, 7

*Forshey v. Principi*,
284 F.3d 1335 (Fed. Cir. 2002) ....................19

*General Electric Co. v. Raytheon Techs. Corp.*,
983 F.3d 1334 (Fed. Cir. 2020) .................... 2

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*,
162 F.3d 1113 (Fed. Cir. 1998) .................... 7

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ....................18

*Gorham Mfg. v. White*,
81 U.S. 511 (1871)....................................................................6, 8, 10, 11

*GrafTech Int'l Holdings, Inc. v. Laird Techs., Inc.*,
652 F.App'x 973 (Fed. Cir. 2016)............................................................18

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016)...................................................................................18

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
589 F.3d 1233 (Fed. Cir. 2009)............................................................... 8

*Kamen v. Kemper Fin. Servs., Inc.*,
500 U.S. 90 (1991)...................................................................................19

*Koninklijke Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*,
590 F.3d 1326 (Fed. Cir. 2010)...............................................................20

*KSR Int'l Co. v. Teleflex, Inc.*,
550 U.S. 398 (2007)...................................................1, 16, 17, 18, 23

*LKQ Corp. v. General Motors Co. et al.*,
No. 1:21-cv-05854 (N.D. Ill. 2022)........................................................ 3

*Merck & Co. v. Kessler*,
80 F.3d 1543 (Fed. Cir. 1996).................................................................20

*MRC Innovations, Inc. v. Hunter Mfg.*,
747 F.3d 1326 (Fed. Cir. 2014)...............................................................26

*Nautilus v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014).................................................................................18

*In re Nuvasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016)...............................................................28

*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
No. 6:12-CV-33-ORL-28DAB, 2013 WL 12156465 (M.D. Fla. Jan. 4, 2013)..10

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
587 F.3d 1324 (Fed. Cir. 2009)...............................................................23

*Qualcomm Inc. v. Intel Corp.*,
6 F.4th 1256 (Fed. Cir. 2021) .......... 15

*Qualtrics, LLC, v. OpinionLab, Inc.*,
679 F.App'x 1016 (Fed. Cir. 2017) .......... 15

*Richardson v. Stanley Works, Inc.*,
597 F.3d 1288 (Fed. Cir. 2017) .......... 15

*Taylor v. McDonough*,
3 F.4th 1351 (Fed. Cir. 2021) .......... 19

*Titan Tire Corp. v. Case New Holland, Inc.*,
566 F.3d 1372 (Fed. Cir. 2009) .......... 16, 20, 21

*TQ Delta, LLC v. CISCO Sys., Inc.*,
942 F.3d 1352 (Fed. Cir. 2019) .......... 29

*Uber Techs., Inc. v. X One, Inc.*,
957 F.3d 1334 (Fed. Cir. 2020) .......... 22, 24

*In re Watts*,
354 F.3d 1362 (Fed. Cir. 2004) .......... 19

**Statutes**

35 U.S.C. § 6(a) .......... 20

**Other Authorities**

Parts Protected Under General Motors Aftersales Part Design Patents-
Updated November 2021,
https://www.genuinegmparts.com/pdf/gm-aftersales-parts-patents.pdf
(last accessed April 27, 2022) .......... 3

GM's submission shows it has no answer to LKQ's arguments on the merits. There is no legal justification for the Board's 'inclusion' of disparate ordinary observers into "the" ordinary observer. The test the Board applied to select an ordinary observer was contrary to this Court's precedents, and because it improperly defined the ordinary observer, there is no substantial evidence supporting any of its anticipation analysis. Further, the Board's focus on trivial differences based on the ordinary observer's abstract knowledge of non-specified prior art lacked any legal justification. To avoid addressing these legal deficiencies in the Board's reasoning, GM miscasts LKQ's challenges as factual in nature. They are not. LKQ challenges the Board not simply for arriving at the wrong answer, but for asking the wrong questions.

The Board's Decision also demonstrates the conflict between the *Rosen*/*Durling* obviousness regime and the expansive and flexible approach to obviousness prescribed by the Supreme Court in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007). Again, GM avoids the merits, arguing LKQ did not adequately argue the conflict before the Board. But LKQ was not required to argue that the Board should change the law—the Board has no power to do so—and in any event LKQ did preserve that challenge. Further, overwhelming evidence demonstrates that the '625 Patent was obvious over the combination of Lian and the Tucson, two references that, between them, indisputably disclose every feature of the claimed

design. That the Board found otherwise only underscores the importance of reconciling the design patent obviousness regime with *KSR*.

## ARGUMENT

### I. LKQ HAS STANDING.

LKQ adequately alleged standing in its Opening Brief by alleging facts establishing that it was currently engaged in conduct creating a substantial risk of infringement. LKQ specifically alleged that it was offering a part that GM would likely allege infringes the ’625 Patent. ECF No. 15 (“Opening Brief”) at 1. That alone is sufficient to establish standing. *See General Electric Co. v. Raytheon Techs. Corp.*, 983 F.3d 1334, 1341-42 (Fed. Cir. 2020). GM suggests LKQ’s factual representations are conclusory, but it never denies the alleged facts, and this Court accepts as true an appellant’s material representations of fact for purposes of assessing standing. *Id.* at 1342 (citing *Amerigen Pharm. Ltd. v. UCB Pharma GmBH*, 913 F.3d 1076, 1082 (Fed. Cir. 2019)).

Indisputable facts, largely from GM’s own documents, further substantiate LKQ’s representations. GM’s own Exhibit 2005 shows LKQ currently offers replacement fenders for the 2018-2022 Chevrolet Equinox through its REPLACE® brand. *See, e.g.*, Appx0950-0951 (offering a part replacing GM Part No. 84172708); Appx0751 (“REPLACE” is an LKQ trademark). GM publicly asserted that the 2018-2022 Chevrolet Equinox’s front fender practices the ’625 Patent, and GM

publicly asserts that such parts are "GM Exclusive." *See* "Parts Protected Under General Motors Aftersales Part Design Patents-Updated November 2021" (https://www.genuinegmparts.com/pdf/gm-aftersales-parts-patents.pdf) (last accessed April 27, 2022) ("GM Parts-Patents Document"), at 47, 84. Specifically, GM contends that those parts were "not licensed to any aftermarket seller." *Id.* at 95.

Further, a United States District Court already found that it had declaratory judgment jurisdiction regarding GM's assertion of rights in parallel circumstances. GM sent one of LKQ's business partners a letter dated March 1, 2019, identifying parts for which LKQ allegedly did not have a license, including the part that corresponds to the '625 Patent; asserting that those parts infringed identified GM patents; and demanding that those parts be removed from the customer's software platform. *See LKQ Corp. v. General Motors Co. et al.*, No. 1:21-cv-05854, Dkt. 28-1 at 2-3, 34 (N.D. Ill. Jan. 14, 2022). Denying GM's jurisdictional challenge in that case, the Northern District of Illinois found GM's letter to be "[an] affirmative action asserting rights under a patent." *LKQ Corp. v. General Motors Co. et al.*, No. 1:21-cv-05854, Dkt. 37 at 6-7 (N.D. Ill. Mar. 22, 2022) (J. Alonso).

## II. THE BOARD'S ANTICIPATION DETERMINATION WAS LEGALLY ERRONEOUS.

### *A. The Ordinary Observer Cannot "Include" Both the Retail Vehicle Purchaser and the Repair Part Purchaser; They are Irreconcilable.*

#### 1. The Board Erred in Treating the Identity of the Ordinary Observer as Moot.

It is undisputed that the purchaser of a vehicle would not view a fender design the same way as the purchaser of a replacement fender. As such, it is impossible to compare the designs from both perspectives at once; the two observers view the designs in different context for different purposes. The Board's conclusion upon institution that the ordinary observer could "include" two different observers was logically tenable only because the Board found the design reasonably likely to be anticipated from the perspective of ***either*** ordinary observer. However, the Board erred in its Final Written Decision, as the Board did not analyze whether the designs were substantially similar to the retail vehicle purchaser.

Upon institution, the Board found the identity of the ordinary observer moot because it found the design reasonably likely to be anticipated from the perspective of ***either*** observer. *See* Appx0789 (Institution Decision at 12) ("[T]he evidence on the record before us demonstrates that the designs at issue have ***such distinct and similar characteristics*** that ***either ordinary observer*** (the retail consumer or the repair shop professional who would be aware of prior art designs) ***would confuse the prior art designs for the design claimed*** by the '625 patent.") (emphases added).

However, the Board erred in extending this conclusion to its Final Written Decision: its determination that the selection of ordinary observer would not affect the outcome relied on a misstatement of LKQ's proposed ordinary observer. *See* Appx0022 ("the interests and goals of both the vehicle owner and repair shop person are ***aligned,*** that is—in the context of repair, to return the vehicle to its original appearance. ***Even if we chose between the two, the level of detail and analysis would not change*** sufficiently to affect the outcome of this decision. Therefore, we ***do not alter our determination made at institution,*** that the ordinary observer includes both a vehicle owner and consumer and also a replacement parts buyer.") (citations omitted). This misunderstands the question in dispute. The question was whether the ordinary observer should be the retail purchaser of the vehicle or a repair purchaser; not whether it should be either of two people who both are involved in vehicle repair.

The Board previously treated the identity of the ordinary observer as moot because it found it reasonably likely that the designs were substantially the same to either of the retail vehicle purchaser or the repair purchaser. However, in its Decision, the Board found no substantial similarity, but only considered the more discerning repair purchaser's perspective. Having inverted its position regarding anticipation, the Board could no longer treat the identity of the ordinary observer as moot without demonstrating that the designs were not substantially the same to the retail vehicle purchaser.

### 2. The Board was Required to Identify a Single Ordinary Observer.

This Court and the Supreme Court's precedents indicate the ordinary observer is a single hypothetical person, not multiple potential persons with different perspectives. No case has ever "included" multiple differing types of observers in "the ordinary observer." And, even if anticipation could be analyzed from the perspective of multiple observers, the Board erred in treating the design as not anticipated if it was not substantially the same to the most discerning such observer. A design is anticipated if ***any*** ordinary observer would find the designs substantially the same.

*Gorham* required that the Board identify not just any purchaser, but the "principal purchaser" of the article displaying the claimed design. *Gorham Mfg. v. White*, 81 U.S. 511, 528 (1871); *see also Ethicon Endo-Surgery v. Covidien, Inc.*, 796 F.3d 1312, 1337 (Fed. Cir. 2015). Likewise, *Arminak* interpreted *Gorham* to require that substantial similarity be determined objectively from the perspective of a single hypothetical ordinary observer. *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1321 (Fed. Cir. 2007) (observing that the ordinary observer test "requires an objective evaluation of the question of whether a hypothetical person called ***the*** 'ordinary observer' would find substantial similarities between the patented design and the accused design, so as to be deceived into purchasing the accused design believing it is the patented design." (citing *Gorham*,

81 U.S. at 528)), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc).

No case supports "including" multiple types of observers with differing levels of observation within the same ordinary observer. The only case identifying two persons as the ordinary observer, *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, is not to the contrary: although the Court identified both truck owners and truck fleet operators, both buy truck tires and the Court treated them as having the same level of perception. 162 F.3d 1113, 1117-18 (Fed. Cir. 1998), *abrogated on other grounds by Egyptian Goddess*, 543 F.3d 665 (Fed. Cir. 2007) (en banc).

In *Arminak*, the Court held that the ordinary observer was the purchaser of trigger spray assemblies and not the purchaser of finished bottled products. 501 F.3d at 1323-24. In *Goodyear*, this Court held that the ordinary observer was a buyer of truck tires; not a buyer of tires in general. 162 F.3d at 1117. And in *Ethicon*, this Court did not definitively resolve whom the ordinary observer would be, but it expressly held that it did not need to resolve the dispute because the less discerning observer (surgeons) would still find the devices at issue plainly dissimilar. 796 F.3d at 1337. That is the opposite of what the Board did here (that is, finding a lack of similarity based only on the more discerning observer, the repair part purchaser).

Assuming *arguendo* that the ordinary observer can "include" multiple observers, a claimed design is anticipated if either observer would find the designs substantially the same. In *Gorham*, the Supreme Court held: "***if***, in the eye of ***an*** ordinary observer, giving such time as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other[.]" 81 U.S. at 528 (emphases added). The condition for infringement set forth in *Gorham* is satisfied as long as there exists one "ordinary observer" who finds the designs substantially the same. Whether other "ordinary observers" would not find the designs substantially the same does not change the outcome under *Gorham*'s test. Neither *Egyptian Goddess* nor *International Seaway* modified the conditional test set forth in *Gorham*. *See Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009); *Egyptian Goddess*, 543 F.3d at 670 (en banc).

Applying multiple ordinary observers leads to situations in which patents are both valid and invalid at the same time, depending on which observer's eyes we view the patent through. That cannot be correct. The solution to that problem is to deem a design anticipated whenever any relevant ordinary observer would find the designs substantially the same.

### 3. The Correct Ordinary Observer Under Governing Law is the Retail Purchaser of a New Vehicle.

The Board itself correctly stated the law on Institution: that "[t]he case law is consistent that where a patented article is sold and then incorporated into another product, "the 'ordinary observer' is the consumer or the upstream purchaser of the patented item." Appx0788 (Institution Decision at 11) (quoting *Arminak*, 501 F.3d at 1324).

Here the ordinary observer is the retail automobile purchaser because that is the person to whom the design is marketed in the first instance (i.e., as part of a new vehicle). That is also the same person who chooses the design amongst other designs.

The Board erred by deciding substantial similarity from the perspective of a downstream purchaser, the repair buyer, despite finding that repair buyers sought to "***return vehicles*** to their ***original*** appearance" (that is, the appearance of the vehicle's fender when the vehicle originally purchased). Appx0021 (emphases added). While repair purchasers may also purchase fenders, their purchases are "consequent to and flow from this original vehicle purchase and the actions of those other potential ordinary observers depend exclusively on the perspective of and decisions made by the vehicle purchaser and owner." Appx0183. No repair purchaser would purchase a replacement fender unless someone had first purchased a vehicle that came equipped with that fender. Further, it is undisputed that fenders

are designed to be marketed as part of a new vehicle, and the "product" that the designer designs is the vehicle. Opening Brief at 21.

GM concedes that "not every vehicle owner will need to purchase a replacement front fender." ECF No. 19 ("GM Response") at 29. Indeed, far more purchasers buy new fenders as parts of their cars than buy replacement fenders. However, ***every*** vehicle that might eventually need to be repaired with a given replacement fender was originally sold with that same fender design. That only further demonstrates the primary market for fender designs is as part of new vehicles, and the repair parts market for that vehicle is secondary. Appx0182-0183 (citing Ex. 1003, Gandy Decl. ¶40; Ex. 1004 Hill Decl. ¶34; *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, No. 6:12-CV-33-ORL-28DAB, 2013 WL 12156465, at *6 (M.D. Fla. Jan. 4, 2013)).

Contrary to GM's argument (GM Response at 27-28), *Gorham* is not inapposite. *Gorham* expressly prohibits framing substantial similarity from the eyes of a person versed in the trade "accustomed to compare such designs one with another, and who sees and examines the articles comparing them side by side." 81 U.S. at 527. *Gorham* focused explicitly on "observers of ordinary acuteness, bringing to the examination of the article upon which the design ha[d] been placed that degree of observation which men of ordinary intelligence give … who are the ***principal*** purchasers of the articles to which designs have given novel

appearances…." *Id.* at 528 (emphasis added). In the context of automobiles and constituent parts, the principal purchasers under *Gorham* are the retail purchasers of the automobile; not the purchasers of repair parts.

Neither *Arminak*, nor *KeyStone*, nor *Egyptian Goddess* suggest the ordinary observer should be the purchaser of the fender alone. In *Arminak*, the key consideration for the Court was that, ***before*** the bottle product incorporating a trigger sprayer shroud was offered to the customer, the shroud was already integrated into and ***sold*** to contract or industrial buyers of trigger sprayer assemblies. *Arminak*, 501 F.3d at 1323 ("[T]he purchaser of the patented and accused designs in this case is the purchaser of one of a retail product's component parts that is ***thereafter*** assembled with other parts ***to make the retail product.***") (emphases added). And, critically, the shroud manufacturers in *Arminak* did not sell products of any kind to end consumers; they only sold trigger assemblies to be included with bottles. *See Arminak*, 501 F.3d at 1321 ("The record clearly shows that Calmar never sold any of its patented shrouds directly to retail consumers."). GM is the opposite: it designs, markets, and sells automobiles to retail purchasers of automobiles, and secondary to that, it also sells replacement parts for the automobiles it previously sold.

Further, contrary to GM's suggestion that the ordinary observer must be "sufficiently interested in ***that part,*** not necessarily the vehicle as a whole," GM Response at 26 (emphasis in original) (misattributing a quote from *Arminak* to

*Egyptian Goddess*), a vehicle mounting the claimed fender design "displays the patented design[]," and purchasers of vehicles are "sufficiently interested in" the designs of those vehicles and the exterior body parts comprising them to make a reasonably discerning decision as to substantial similarity.

Defining the ordinary observer as the repair purchaser merely because a part is offered both as part of a new vehicle and as a repair part for that vehicle would create two different standards for anticipation. Design patents covering articles offered as repair parts would be evaluated from the viewpoint of a repair part purchaser. Because this purchaser is, by definition, looking to repair an existing article, they would always demand substantial identicality. The same patent would be valid as to repair parts but invalid as part of the car.

It makes no sense for one ordinary observer to apply to a design patent for an entire product, and then for another ordinary observer to apply to design patents claiming fragments of that same design piecemeal, when products embodying the fragmented design patents are all first purchased together as part of the complete product. Such a standard could also be manipulated by patent owners. This Court's precedents do not allow such artful claiming to cause the substantial similarity inquiry to ignore commercial realities.

#### 4. The Board's Determination as to Anticipation Lacks Substantial Evidence, and Under the Correct Ordinary Observer, it Should Have Found the '625 Patent Anticipated by Lian.

Neither GM's declarant nor the Board considered anticipation from the perspective of the proper ordinary observer. The entirety of the Board's analysis depends on its conclusion that minor differences would be significant to the repair purchaser. While that may be true, it is not true of the retail purchaser of an automobile who is assessing the fender's features as part of the design of the entire automobile. When analyzing the case from the perspective of the correct ordinary observer, there can be no substantial evidence supporting the Board's determination.

Because the Board focused exclusively on the perspective of a repair purchaser, it exaggerated the effect of minor differences in the lower rear terminus and door cut line, which are both features designed not to be visually prominent to a retail vehicle purchaser. Appx0054; Appx0057-0058; Appx0336; Appx1316-1319. The Board's erroneous perspective also substantially exaggerates the visual impact of any difference between the designs' first creases and concavity lines, which are at least nearly identical, and minimizes the effect of the difference in the intermittent crease of the protrusion, which is a minuscule feature in on the scale of even just the fender, much less the entire vehicle. Appx0054-0058; Appx0328-0332. Finally, as to the wheel arch, the designs' highly similar wheel arch flats would overwhelm the extent of difference induced by Lian's slightly flattened wheel arch when considered

in the context of the entire vehicle, even if those differences might be noticeable to an observer considering the fender as a replacement part. Appx0053; Appx0057-0058; Appx0336; Appx1331-1333. However, the Board's selection of the wrong ordinary observer—one laser-focused on trivial differences—led its entire analysis astray.

### ***B. The Board Erred in Applying Other Prior Art to its Anticipation Analysis.***

LKQ argued in its Opening Brief that the Board improperly relied upon generalized teachings of the prior art to attune the ordinary observer to trivial differences, and then relied upon those trivial differences to avoid anticipation. GM cursorily dismisses LKQ's argument by noting that the Board declined to find that fenders were a crowded art, "rendering LKQ's argument on this point moot." GM Response at 35. However, that misses the point. While the Board did not say it was adopting the crowded field theory (a theory GM now admits was appropriately rejected), the Board inappropriately relied on the existence of other prior art as a general matter to attune the ordinary observer to trivial differences. *See* Opening Brief at 24 ("In its Final Written Decision, the Board purported to reject GM's crowded field theory on both legal and factual grounds. … Nevertheless, the Board found that the ordinary observer would be attuned to the trivial differences identified by GM because of the amount of prior art.").

And, "to the extent the Board [did] something other than incorporating GM's argument [to attune the ordinary observer to trivial differences], such as concocting a new legal theory, it committed error, as LKQ was given neither notice of, nor opportunity to respond to such a theory." Opening Brief at 24 n.3 (citing *Qualcomm Inc. v. Intel Corp.*, 6 F.4th 1256, 1263-64 (Fed. Cir. 2021)). Regardless of the Board's rationale for doing so, there was no legal justification for elevating the importance of minor and trivial features "in light of" non-specified prior art designs, as the Board did for the sculpting and creases, Appx0039; wheel arch and lower rear terminus, Appx0033-0034; and protrusion, Appx0036.

None of GM's cited cases are relevant. Both *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962-63 (Fed. Cir. 1986) and *Qualtrics, LLC, v. OpinionLab, Inc.*, 679 F.App'x 1016, 1020 (Fed. Cir. 2017), were utility patent cases discussing the background knowledge of a person having ordinary skill in the art for purposes of obviousness. The ordinary designer is relevant to obviousness in design patent cases, but that perspective has no bearing on anticipation, where the ordinary ***observer*** is the focus. *Richardson* is an infringement case that does not even mention anticipation. 597 F.3d 1288 (Fed. Cir. 2017).

## III. THE BOARD'S DETERMINATION THAT THE CLAIMED DESIGN WAS NEITHER OBVIOUS OVER LIAN, NOR THE COMBINATION OF LIAN AND THE TUCSON SHOULD BE REVERSED.

### *A. LKQ Did Not Forfeit its Right to Challenge* Rosen *and* Durling *as Inconsistent with the Supreme Court's Decision in* KSR.

#### 1. LKQ addressed *KSR*'s applicability in the proceeding and pressed the issue as far as was appropriate before the Board.

LKQ's position throughout the proceeding was clear that "the central inquiry in analyzing an ornamental design for obviousness is whether the design would have been obvious to a designer of ordinary skill[.]" Appx0170 (Petition at 28) (citing *In re Borden*, 90 F.3d 1570, 1574 (Fed. Cir. 1996)) (cleaned up). Moreover, the Petition raised the overly restrictive requirements of *Durling and Rosen* and the applicability of *KSR* to both the entire obviousness inquiry and motivation to combine specifically. GM's contention that LKQ's Petition only discussed *KSR* in connection with motivation to combine or "relatedness" is incorrect. The Petition called out that this Court has implied that *KSR* applies to design patent obviousness as a whole, stating that the Federal Circuit had "to date, been silent regarding whether the Supreme Court's opinion in [*KSR*] governs design patent obviousness, other than to say that it was 'not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of *KSR*.'" Appx0174 (quoting *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1384-85 (Fed. Cir. 2009)). The Petition further asserted that *KSR* "prescribed a more flexible approach to obviousness ***and*** motivation to combine prior art teachings." Appx0174 n.4 (quoting

*KSR*, 550 U.S. at 420-22) (emphasis added). The Petition made specific example of the "so related" requirement, but in context LKQ's position was clear: no part of the law of design patent obviousness could "run afoul of *KSR*'s proscriptions against rigid restrictions on the scope of an obviousness analysis." Appx0174.

And LKQ did not merely state the law; its obviousness grounds and evidence assumed *KSR* may supersede *Rosen* and *Durling*. LKQ's papers addressed both the superficial comparison of similarities sought by *Rosen* and the deeper, more searching analysis of the perspective and motivations of a skilled designer demanded by *KSR* (which the Board ignored, instead finding Lian distinguishable based on such differences as a round wheel arch). *See*, *e.g.*, Appx0174-75; Appx0205-0206; Appx1124; Appx1126-1127; Appx1132-1133. Thus, LKQ's arguments attempted to satisfy both *KSR*'s requirements and the tests set forth in *Rosen* and *Durling*. The Board simply ignored this, applying *Rosen* and *Durling* in a manner contrary to *KSR*'s requirements. If the Board's approach correctly applied *Rosen* and *Durling*, then they cannot survive *KSR*.

LKQ raised the clear conflict between the Board's rigid and literal application of the *Durling*/*Rosen* test and *KSR*'s directives at the first opportunity after that conflict became evident: in its Opening Brief. LKQ's challenge of *Rosen* and *Durling* is stronger than that of the patent challenger in *KSR* itself, where the patent challenger never argued to the district court that the Federal Circuit's teaching-

suggestion-motivation test was an improper limitation on the obviousness analysis, and neither of the district court, nor this Court addressed that question. *KSR*, 550 U.S. 398. *See also Nautilus v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014) (patent challenger never challenged "insolubly ambiguous" standard for indefiniteness before the district court); *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) (patent challenger did not argue in district court that the machine or transformation test was an improper test); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016) (neither patentee in the two underlying cases challenged the test for enhanced damages prior to the Petition for Writ of Certiorari).

**2. GM cites no relevant authority holding that LKQ's challenge should be deemed forfeited.**

GM fails to cite a single case suggesting that LKQ should be barred from challenging the Federal Circuit's legal standard for design patent obviousness, particularly where it raised the challenge at the first opportunity after being prejudiced by a materially adverse decision and after having raised the issue of *KSR* in its Petition. *In re Google Tech. Holdings LLC*, 980 F.3d 858 (Fed. Cir. 2020), is irrelevant because it dealt with the introduction of new claim construction arguments for the first time on appeal. This Court specifically bars parties from changing the scope of claim construction on appeal, as that denies the Federal Circuit "the benefit of the [PTAB's] informed judgment on [the] issue for [this Court's] review." *GrafTech Int'l Holdings, Inc. v. Laird Techs., Inc.*, 652 F.App'x 973, 982 (Fed. Cir.

2016) (barring consideration of a new claim construction position on appeal) (quoting *In re Watts*, 354 F.3d 1362, 1368 & n.3 (Fed. Cir. 2004) (barring consideration of a new factual distinction between the patent applicant's alleged invention and the prior art not raised before the examiner or the Board)). Unlike *Google*, LKQ did not change its argument on appeal. LKQ's challenge of *Rosen* and *Durling* invokes a purely legal question of substantial and widespread impact that this Court is uniquely positioned to address.

**3. It would even have been appropriate for LKQ to raise this issue for the first time on appeal.**

***Even if*** LKQ had never before mentioned the applicability of *KSR*, this Court's and the Supreme Court's precedents establish that it would be appropriate to consider the argument on appeal for the first time. This Court, in *Forshey v. Principi*, articulated a set of circumstances in which hearing arguments for the first time is appropriate. 284 F.3d 1335, 1355-56 (Fed. Cir. 2002) (en banc) (superseded by statute on other grounds, *Taylor v. McDonough*, 3 F.4th 1351 (Fed. Cir. 2021)). One of these circumstances is that "appellate courts may apply the correct law even if the parties did not argue it below and the court below did not decide it, but only if an issue is properly before the court[.] … '[W]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.'" *Id.* at 1356 (quoting *Kamen v. Kemper Fin. Servs.*,

*Inc.*, 500 U.S. 90, 99 (1991)). Here, the issue of whether the claimed design was obvious to a designer of ordinary skill in the art over Lian or the combination of Lian and the Tucson is properly before this Court.

It makes no sense to suggest LKQ should have further pressed an argument the Board had no power to accept. Unlike this Court, the Board had no power to determine that *Rosen* or *Durling* had been overruled. "Judicial precedent is as binding on administrative agencies as are statutes." *Koninklijke Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*, 590 F.3d 1326, 1337 (Fed. Cir. 2010) (citation omitted). *See also Merck & Co. v. Kessler*, 80 F.3d 1543, 1549–50 (Fed. Cir. 1996) ("[T]he broadest of the PTO's rulemaking powers—35 U.S.C. § 6(a)—authorizes the Commissioner to promulgate regulations directed only to 'the conduct of proceedings in the [PTO]'; it does not grant the Commissioner the authority to issue substantive rules." (citation omitted)).

### *B. GM Fails to Rebut Any of LKQ's Bases for Showing that* **Rosen** *and* **Durling** *Do Not Survive* **KSR***, and GM's Arguments as to Obviousness on Response are Irrelevant, Wrong, or Both.*

#### 1. The Federal Circuit's continued application of *Rosen* and *Durling* has no bearing on whether either survived *KSR*.

GM's argument that this Court continued to apply *Rosen* and *Durling* post-*KSR* is irrelevant, and this case is ripe for decision. This Court expressly acknowledged in *Titan Tire* that *KSR* may govern design patent obviousness but did not reach the question because it found the challenged design patent obvious under

current law. *Titan Tire*, 566 F.3d at 1384-85. This Court has not considered the issue since *Titan Tire*, and no party in the post-*KSR* cases GM cites appears to have asked this Court to reconsider *Rosen* in light of *KSR*. It is normal and appropriate for parties and courts to continue to cite to the prior governing cases until they are expressly recognized as abrogated or overruled by this Court or the Supreme Court, and it is normal for that process to take a substantial amount of time.

#### 2. GM cites no precedent holding that either *Rosen* or *Durling* in fact survive *KSR*.

GM cites no controlling cases finding that *Rosen* or *Durling* do survive *KSR*. No such case exists. And few cases to date have highlighted the deficiencies of *Durling* and *Rosen* as starkly as the Board's Decision below. The Board's refusal to even ***consider*** obviousness to a designer of ordinary skill in the art based on a purportedly deficient claim construction demonstrates why *Durling* does not survive *KSR*. Appx0058. Further, the Board's refusal to consider what a ***designer*** would have found obvious over Lian, much less Lian and the Tucson, based only on a lay panel's instinctive determination that the designs look "quite different" demonstrates why *Rosen* does not survive *KSR*. Appx0053.

#### 3. *Rosen*'s single-primary-reference requirement implicates the considerations driving the Supreme Court's decision in *KSR*.

GM argues that *Rosen*'s single reference requirement is unaffected by *KSR* on the basis that *KSR* pertained to the test for motivation to combine references. GM is

wrong. *KSR* is not limited to the test for motivation to combine; it prescribes an "expansive and flexible approach to the question of obviousness," *Uber Techs., Inc. v. X One, Inc.*, 957 F.3d 1334, 1338 (Fed. Cir. 2020), and this had numerous and far-reaching implications that, as LKQ's Opening Brief explained, are inconsistent with *Durling* and *Rosen*.

Further, *Rosen*'s gating of the obviousness inquiry behind the requirement to first find a primary reference ***is*** an undue restriction in combining references in the obviousness analysis because it unduly prevents the combination inquiry from occurring at all unless there is one reference that is "basically the same" as the claimed design. *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996). Indeed, if *Rosen* were to govern the law of utility patent obviousness, *KSR* would have been decided in the opposite way: it is beyond question that neither reference at issue in *KSR* was "basically the same" as the claimed design, and the analysis would have ended there. Similarly, GM's interpretation of *Durling* adds further inappropriate gates to the obviousness inquiry that (according to GM) allowed the Board to deny obviousness without looking at even a single prior art reference, much less the combination. *See* GM Response at 44-45 ("LKQ's failure to correctly identify the visual impression of the claimed design doomed its obviousness case. … While the Board could have stopped there, …."). That is inconsistent with *KSR*.

Regardless, this Court recognized that *KSR* extended beyond mere questions of motivation to combine references; it broadly prohibited "rigid and preventative rules that deny factfinders recourse to common sense" as "neither necessary under our case law nor consistent with it," and instructed that "courts should avoid 'overemphasis on the importance of published articles and the explicit content of issued patents.'" *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009) (quoting *KSR*, 550 U.S. at 419-21). Both the multi-step framework imposed by *Durling* and *Rosen*'s primary reference requirement represent precisely the types of rigid and preventative rules that are anathema to *KSR*'s clear teachings. In addition, *Rosen*'s requirement of a "thing in existence" not only denies factfinders recourse to common sense and the ability of a skilled designer to envision obvious designs, but also represents precisely the type of "overemphasis" on the explicit content of the prior art and written publications that *KSR* proscribed.

Additionally, this Court further recognized *KSR*'s instruction that "the obviousness analysis should 'take account of the inferences and creative steps that a person of ordinary skill in the art would employ[.]'" *Perfect Web Techs.*, 587 F.3d at 1330 (quoting *KSR*, 550 U.S. at 418). But *Rosen* and *Durling* preclude the exercise of an ordinary designer's creativity via *Rosen*'s primary reference requirement, which first demands that the factfinder find a thing in existence that is already "basically the same" as the claimed design, and then by the further restriction

that this thing in existence may only be modified to incorporate features suggested by visually "so related" secondary references. This framework shackles the ordinary designer in exactly the way *KSR* prohibits.

Finally, this Court in *Uber Techs.* highlighted *KSR*'s "discussion of design choices and predictable variations." 957 F.3d at 1338. Specifically, this Court recognized the principle that "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp[,]" and that this is "likely the product not of innovation, but of ordinary skill and common sense." *Id.* This prescription is pertinent to virtually all of the alleged differences between Lian and the '625 Patent at issue in this proceeding and, especially when further considering the Tucson's teachings of precisely the features claimed by the '625 Patent, demonstrates that the '625 Patent is invalid. The replacement of Lian's wheel arch and relocation of the cut location of its lower rear terminus are clear examples of differences that, pursuant to this principle, should not avoid obviousness, and yet both were central to the Board's Decision to the contrary.

#### 4. GM fails to rebut that *Rosen* causes the tests for obviousness and anticipation to collapse into one.

As the Board's decision demonstrates, there is no functional difference between the tests for anticipation and obviousness under *Rosen*. The Board relied

upon the same differences in the same ways, and relied upon the same analysis, to decide both questions. There was no difference, much less lenience, in its primary reference determination.

Like in its anticipation analysis, the Board relied on superficial descriptions of visual differences between features that echoed its prior anticipation analysis. *Compare* Appx0053-0058 *with* Appx0032-0045. Further, the Board's obviousness analysis does not consider whether purportedly different features of the claimed design differed in respects that would have been obvious to a designer. Instead, it considered only whether the feature was "meaningful" to a designer, and whether there was some difference between that feature and the prior art. Appx0053-0058. What the board performed was a substantial similarity analysis with a highly discerning designer as the ordinary observer; not an obviousness analysis. Further, far from applying "more lenient terms" to the *Rosen* step, the Board distinguished the designs based on the very same alleged differences. *Id.*

### *C. Regardless of Whether* **Rosen** *survives* **KSR***, the Board Should Have Found the Claimed Design Obvious Over Lian and the Tucson, if not Lian alone.*

#### 1. GM's arguments that LKQ's obviousness ground should fail because LKQ did not "revise" its claim construction is groundless.

GM's contention that LKQ should have "revised" its claim construction is baseless. The Board determined on institution, Appx0782-0783, in accordance with

the law, that no verbal description was necessary. *See Egyptian Goddess*, 543 F.3d at 680 (discouraging verbal claim constructions due to the risk of placing undue emphasis on particular features). Regardless, LKQ's analysis in its Petition was not limited to any verbal claim construction, Appx0799; and on Reply, following the Board's determination that no express verbal claim construction was necessary, LKQ again relied upon the images to thoroughly compare the designs in their entireties. Appx1110-1135. Thus, LKQ was under no obligation to "revise" its claim construction, and nor could its obviousness ground be rejected for a purported failure to do so under this Court's precedents in the face of LKQ's thorough analysis of the claimed design and the prior art, as the Board itself recognized upon institution. *See* Appx0783 (Institution Decision at 6) (quoting *MRC Innovations, Inc. v. Hunter Mfg.*, 747 F.3d 1326, 1332 (Fed. Cir. 2014)).

#### 2. Lian and the Claimed Design are not meaningfully different from the perspective of an ordinary designer.

As the Board correctly noted, whether Lian is a primary obviousness reference depends upon whether, "keeping in mind the level and skill of an ordinary designer in vehicle fender design, a complete visual comparison of the overall appearance of both designs sufficiently shows that the two designs are quite different." Appx0053. But the Board failed to apply its own test. Instead, it proceeded to list purported differences without any reference or regard for how a skilled automotive designer would view those differences in light of the overall design, or whether such a

designer would find the differences obvious. Lian is not "quite different" because, for an automobile ***designer,*** the differences were nothing more than routine and trivial.

Both experts agreed: designers can change the shape of a wheel arch. Appx0406, Appx1451. And, as common sense (and LKQ's expert's testimony) provides: it is irrefutably trivial to design a vehicle with a consistently rounded wheel arch. Appx0406. Similarly, the difference in the lower rear terminus is, to a skilled automobile designer, just a difference in cut location that was routine and obvious. Appx0407. It was a routine change because there are only a few ways for a designer to execute that small element of the design, including the '625 Patent's execution. Appx1125-1127 (LKQ Reply at 21-23). And, as the ***Board*** found on institution, the Tucson disclosed that execution. Appx0810 n. 6. Further, as LKQ's expert explained, an ordinary designer would have known the benefits of cutting the fender at the rocker panel. Appx1335-1336 (Hill Reply Declaration ¶58). This evidence was never even considered in the Board's Decision because the Board never evaluated the design or the prior art from the perspective of a designer.

The door cut line of the '625 Patent was not only less important to a designer, but also routinely executed. Appx1115-1117 (LKQ Reply at 11-13). This is underscored by the Tucson's disclosure of a ***near-identical*** door cut line. Even

GM's declarant, in his declaration, described the Tucson and the claimed designs' door-cut lines in the same terms. *See* Appx1132-34 (LKQ Reply at 28-29).

Likewise, the differences in the predominantly similar protrusions were not only very small, the '625 Patent's execution was routine (as evidenced, for example, by the Tucson's execution of that part, which, again, was indisputably near-identical). And as to the protrusion cut-out or "U-shaped notch," the Board and GM continue to rely upon irrelevant testimony regarding the importance of using the space of the U-shaped notch, GM Response at 48, but both ignore that, per unrebutted testimony, a designer would have understood that Lian discloses a highly similar U-shaped notch. *See* Appx1744-1747 (re-cross examination of Jason C. Hill, after LKQ's Reply).

These purported differences were at most trivial and routine to an ordinary designer. And, even under *Rosen*, these were minor differences, and not major differences, and should not avoid basic similarity.

## IV. GM CANNOT CURE THE DEFICIENCIES IN THE BOARD'S OPINION BY POINTING TO EVIDENCE THE BOARD DID NOT CITE.

The Board may not merely "summarize and reject arguments without explaining why the [Board] accepts the prevailing argument." *In re Nuvasive, Inc.*, 842 F.3d 1376, 1382-83 (Fed. Cir. 2016). GM inappropriately attempts to cure the Board's deficient and conclusory determinations by reciting evidence that the Board

never cited in its Decision. *See, e.g.*, GM Response at 24-25 (citing Appx1764-1772 (Oral Arg. Tr. at 10-18)); GM Response at 34 (quoting Appx0884 (Peters Decl. ¶17)). Furthermore, GM cites and quotes numerous paragraphs from its expert's declaration that the Board never cited seemingly on the theory that the Board "credited" that expert's testimony in whole cloth. GM Response at 32 (quoting Appx0880-0883 (Peters Decl. ¶¶10, 13-14)). This is improper. This Court's "review of a patentability determination is confined to the grounds upon which the Board actually relied." *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019) (citation omitted). *See also Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367, 1372 (Fed. Cir. 2020) (holding that Appellee's "insist[ence] that the substantial evidence standard requires [the Court] to affirm so long as there is evidentiary support in the record, even if the support was not specifically cited by the Board… [was] a fundamentally incorrect statement of the law.") (cleaned up).

## CONCLUSION

The PTAB's decision should be reversed, or alternatively vacated and remanded for proceedings applying the correct legal standard and the correct ordinary observer.

Respectfully submitted,

Dated: April 27, 2022

*<u>/s/Barry F. Irwin</u>*
Barry F. Irwin
Iftekhar A. Zaim
Andrew C. Himebaugh
**IRWIN IP LLC**
150 N Wacker Dr., Suite 700
Chicago, Illinois 60606
(312) 667-6080
birwin@irwinip.com
izaim@irwinip.com
ahimebaugh@irwinip.com

Mark A. Lemley
**DURIE TANGRI LLP**
217 Liedesdorff Street
San Francisco, CA 94111
(415) 362-6666
mlemley@durietangri.com

Mark P. McKenna
**Lex Lumina, PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
(630) 430-8051
mark@lex-lumina.com

*Counsel for Appellants*
*LKQ Corporation and*
*Keystone Automotive Industries, Inc.*

**FORM 19. Certificate of Compliance with Type-Volume Limitations** **Form 19**
**July 2020**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2021-2348

**Short Case Caption:** LKQ Corporation, et al., v. GM Global Technology Operations LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6,855 words.
- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 04/27/2022

Signature: /s/ Barry F. Irwin

Name: Barry F. Irwin

Save for Filing