NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**
*Appellants*

**v.**

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**
*Appellee*

---

2021-2348

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-00534.

---

Decided: January 20, 2023

---

MARK A. LEMLEY, Lex Lumina PLLC, New York, NY, argued for appellants. Also represented by MARK P. MCKENNA; ANDREW HIMEBAUGH, BARRY IRWIN, IFTEKHAR ZAIM, Irwin IP LLC, Chicago, IL.

JOSEPH HERRIGES, JR., Fish & Richardson P.C., Minneapolis, MN, argued for appellee. Also represented by JOHN A. DRAGSETH; NITIKA GUPTA FIORELLA, Wilmington, DE; LAURA E. POWELL, Washington, DC.

---

Before LOURIE, CLEVENGER, and STARK, *Circuit Judges*.

Opinion for the court filed PER CURIAM.

Additional views filed by *Circuit Judge* LOURIE.

Opinion concurring in part and concurring in judgment filed by *Circuit Judge* STARK.

PER CURIAM.

LKQ Corp. and Keystone Automotive Industries, Inc. (collectively, "LKQ") appeal from a final written decision of the U.S. Patent and Trademark Office Patent Trial and Appeal Board ("the Board") holding that LKQ failed to show by a preponderance of the evidence that U.S. Patent D797,625 (the "'625 patent") was anticipated or would have been obvious over the cited prior art before the effective filing date. *See LKQ Corp. v. GM Glob. Tech. Operations LLC*, IPR2020-00534, Paper 28 (P.T.A.B. Aug. 4, 2021) ("*Decision*"), J.A. 1–60. For the reasons provided below, we *affirm*.

## BACKGROUND

GM Global Technology Operations LLC ("GM") owns the '625 patent, which is directed to an "ornamental design for a vehicle front fender" as shown below.



FIG. 1



FIG. 3



FIG. 2



FIG. 4

GM manufactures and sells automotive vehicles. LKQ sells automotive body repair parts for most mainstream vehicle models available, including front fenders for vehicles manufactured by GM. GM and LKQ had previously been parties to a license agreement, under which LKQ was granted a license to many of GM's design patents. The license agreement expired in February 2022 following a breakdown of renewal negotiations, after which GM sent letters to LKQ's business partners alleging that the now unlicensed LKQ parts infringe its patents.

LKQ petitioned for *inter partes* review of the '625 patent, asserting that it was anticipated by U.S. Patent D773,340 ("Lian") and would have been obvious over Lian alone or in combination with the design of the 2010 Hyundai Tucson as disclosed in a promotional brochure ("Tucson"). The Board issued a final written decision concluding that LKQ had not demonstrated by a preponderance of the evidence that the '625 patent was anticipated or would have been obvious before the effective filing date. *Decision*, J.A. 1–60.

First, the Board determined that the ordinary observer would include both retail consumers who purchase replacement fenders and commercial replacement part buyers. *Decision*, J.A. 20–23. In so doing, the Board emphasized that the "'625 design claims a 'vehicle front fender,' not a vehicle in total." *Decision*, J.A. 21.

Second, applying that understanding of the ordinary observer, the Board concluded that, although there were some similarities between the claimed design and Lian, there were a number of key differences, including: (1) the wheel arch shape and terminus, (2) the door cut line, (3) the protrusion, (4) the sculpting, (5) the first and second creases, (6) the inflection line (*i.e.*, third crease), and (7) the concavity line. *Decision*, J.A. 30–45. The Board found that these differences in the claimed features contributed to different overall appearances in the design. *Id.* For example, the Board found that the claimed design's sculpting and crease pattern contributed to a smooth, curved overall appearance, whereas Lian depicted substantially linear, angled lines. *Decision*, J.A. 43. The Board was ultimately not persuaded that an ordinary observer would be deceived into purchasing the Lian front fender supposing it to be the claimed fender, finding no anticipation. *Decision*, J.A. 45.

Third, applying the tests established in *Rosen* and *Durling*, the Board found that LKQ failed to identify a sufficient primary reference, and therefore failed to prove obviousness by a preponderance of the evidence. *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100 (Fed. Cir. 1996); *In re Rosen*, 673 F.2d 388 (C.C.P.A. 1982); *Decision*, J.A. 48–58. Because the Board found that Lian did not qualify as a proper primary reference under *Rosen*, the Board did not turn to *Durling* step two and look beyond Lian to Tucson. *Decision*, J.A. 58.

In summary, the Board concluded that LKQ had not demonstrated that the claimed design of the '625 patent was anticipated or would have been obvious before the

effective filing date. LKQ appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

LKQ raises two main challenges on appeal. First, LKQ contends that the Board erred in finding that the ordinary observer would include only retail consumers who purchase replacement fenders and commercial replacement part buyers, and, ultimately, in finding no anticipation. Second, LKQ contends that the *Rosen* and *Durling* tests on which the Board relied in its obviousness analysis have been implicitly overruled by the Supreme Court's decision in *KSR International Co. v. Telflex, Inc.*, 550 U.S. 398 (2007). We address each argument in turn.

We review the Board's legal conclusions *de novo* and its factual findings for substantial evidence. *Campbell Soup Co. v. Gamon Plus, Inc.*, 939 F.3d 1335, 1339 (Fed. Cir. 2019). Anticipation is a question of fact reviewed for substantial evidence. *Id.*; *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1237 (Fed. Cir. 2009). The ultimate determination of obviousness is reviewed *de novo*, and any underlying factual findings are reviewed for substantial evidence. *Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1275 (Fed. Cir. 2021). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

### I

As an initial matter, GM raises a threshold issue, contending that LKQ lacks standing to appeal and forfeited the opportunity to demonstrate otherwise by not presenting any evidence or argumentation on the issue in its opening brief. Standing requires an "injury in fact," meaning evidence of "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs.*

*of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks and citations omitted). If a party is "currently engaged in conduct creating a substantial risk of infringement," standing may exist. *Gen. Elec. Co. v. Raytheon Techs. Corp.*, 983 F.3d 1334, 1341–42 (Fed. Cir. 2020).

We find that LKQ did establish that it has standing. LKQ asserted in its opening brief that it is currently engaged in conduct creating a substantial risk of infringement. Appellant Br. at 1. For purposes of evaluating standing, we must accept this representation as true. *Amerigen Pharm. Ltd. v. UCB Pharma GmBH*, 913 F.3d 1076, 1082 (Fed. Cir. 2019). And, indeed, GM does not dispute this assertion. That LKQ supplied additional facts in its reply brief in response to GM's challenge does not change the facts themselves or render LKQ's original assertion insufficient. LKQ represents that it sells a replacement fender for GM's 2018–2022 Chevrolet Equinox, which GM has asserted comprises a front fender that practices the '625 patent. *See* Appellant Reply Br. at 2–3. Indeed, GM sent a letter to at least one of LKQ's business partners alleging that the now unlicensed LKQ parts, including the replacement fender for the 2018–2022 Chevrolet Equinox, infringe its patents. *Id*. For purposes of evaluating standing, we accept these representations as true. *Amerigen*, 913 F.3d at 1082. LKQ is therefore currently engaged in conduct creating a substantial risk of infringement, and we find that it has standing to appeal.

## II

We next consider LKQ's challenge to the Board's determination that LKQ failed to meet its burden to prove that the '625 patent was anticipated by Lian. LKQ first argues that the Board erred in not finding that original retail vehicle purchasers are the correct ordinary observer. LKQ notes that replacement parts are merely a downstream consequence of prior whole vehicle sales, that front fenders are not sold in the first instance as replacement products,

and that replacement products make up a small subset of total fender sales. LKQ further asserts that that alleged error led the Board to place undue emphasis on allegedly trivial differences between the claimed design of the ’625 patent and Lian that would not have mattered to the correct ordinary observer, and that the Board failed to properly compare the designs as a whole.

GM responds that the Board correctly defined the ordinary observer. GM emphasizes that the ’625 patent is not directed to the design of a whole vehicle, but rather a design for a specific part of a vehicle. Therefore, GM argues that the ordinary observer must be the person who purchases that part or is otherwise sufficiently interested in that part, not necessarily the vehicle as a whole. GM further argues that, regardless of the ordinary observer, the Board’s holding that the claimed design of the ’625 patent is not anticipated by Lian was supported by substantial evidence.

We agree with GM that the Board’s finding that the ordinary observer would include both retail consumers who purchase replacement fenders and commercial replacement part buyers who purchase replacement fenders was supported by substantial evidence. Defining the ordinary observer is a fact-dependent inquiry. *See Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1323 (Fed. Cir. 2007) (abrogated on other grounds by *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008)). It is through the lens of the ordinary observer that the anticipation inquiry is viewed. *Gorham Co. v. White*, 81 U.S. 511, 528 (1871). The Board’s finding that the ordinary observer here includes repair professionals and vehicle owners purchasing replacement parts, and does not include retail vehicle purchasers, is well-grounded in the record, LKQ itself recognized that repair shop mechanics and auto parts store employees who order replacement parts may be ordinary observers of front fenders. J.A. 182–83. And LKQ cannot disagree that there is a market

for the claimed fender alone, given that its business is selling individual replacement parts. *See* Appellant Reply Br. at 2. That GM sells whole vehicles to retail consumers, rather than fenders to car manufacturers, is of no consequence. As the Board noted, the ordinary observer test requires consideration of the features visible in the "normal use" lifetime of the accused product, *i.e.*, "from the completion of manufacture or assembly until the ultimate destruction, loss, or disappearance of the article." *Decision*, J.A. 18 (quoting *Int'l Seaway*, 589 F.3d at 1241). *See also Contessa Food Prods. v. Conagra, Inc.*, 282 F.3d 1370, 1380 (Fed. Cir. 2002) ("[T]he 'ordinary observer' analysis is not limited to those features visible during only one phase or portion of the normal use lifetime of an accused product."). The "normal use" would thus include repair or replacement.

Most notably, the claimed design of the '625 patent is not the design of a whole vehicle, but rather a design of a specific part of a vehicle. J.A. 61–64. In *Arminak* and *Keystone*, we recognized that the ordinary observer can be the purchaser of a component part of a later-assembled product as opposed to the purchaser of the later-assembled product. *Arminak*, 501 F.3d at 1321–24; *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1451 (Fed. Cir. 1993). The same is true here. In this case, substantial evidence supports the Board's conclusion that the ordinary observer is a person who purchases that part or is otherwise sufficiently interested in that part, not the vehicle as a whole. *See Egyptian Goddess*, 543 F.3d at 665.

When determining whether a design patent is anticipated, we consider:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other . . . .

*Gorham*, 81 U.S. at 528.[1] Under this standard, substantial evidence supported the Board's finding of no anticipation.

The Board concluded that the design claimed in the '625 patent and Lian design created different overall impressions. The Board pointed to several differences between the designs, namely: (1) the wheel arch shape and terminus, (2) the door cut line, (3) the protrusion, (4) the sculpting, (5) the first and second creases, (6) the inflection line (*i.e.*, third crease), and (7) the concavity line. *Decision*, J.A. 30–45. And LKQ's claim that the Board failed to properly compare the designs as a whole is without merit. The Board explained how the aforementioned differences contributed to the overall appearance of both the '625 patent and Lian, noting, for example, the claimed design's smooth, curved overall appearance, and Lian's substantially linear, angled overall appearance. *Decision*, J.A. 43. We agree and find that the Board's finding of no anticipation was supported by substantial evidence.

III

LKQ next argues that the Supreme Court's decision in *KSR* implicitly overruled the long-standing *Rosen* and *Durling* tests for obviousness of design patents, and therefore the Board's decision applying such test must at least be vacated and remanded. For design patent obviousness, *Durling* outlines a two-step analysis. First, it must be determined whether a primary reference, also known as a *Rosen* reference, exists with characteristics "basically the same" as the claimed design by discerning the visual

---

[1] While the test articulated in *Gorham* was with regard to infringement, we have found "that the same tests must be applied to infringement and anticipation," as to "prevent an inconsistency from developing between the infringement and anticipation analyses." *Int'l Seaway*, 589 F.3d at 1240.

impression of the design as a whole. *Durling*, 101 F.3d at 103; *Rosen*, 673 F.2d at 390–91. Second, if a satisfactory primary reference exists, the court must consider whether an ordinary designer would have modified the primary reference to create a design with the same overall visual appearance as the claimed design. *Id*. This test safeguards against a challenger picking and choosing features from multiple references to create something entirely new, fundamentally changing the overall visual impression of the original designs. *See In re Jennings*, 182 F.2d 207, 208 (C.C.P.A. 1950) (explaining that one must start with "something in existence—not with something that might be brought into existence by selecting individual features from prior art and combining them").

While *KSR* does not address *Rosen* or *Durling*, LKQ argues that its holding implicates the test established in these cases. GM argues that LKQ has forfeited this argument by not raising it before the Board, and even if it were not forfeited, *KSR* does not overrule *Rosen* or *Durling*.

A

As a general proposition, a federal appellate court does not consider issues not raised before the lower tribunal. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). The exact phrasing of the argument need not have been used below "so long as it can be said that the tribunal was 'fairly put on notice as to the substance of the issue.'" *Nike Inc. v. Adidas AG,* 812 F.3d 1326, 1342 (Fed. Cir. 2016) (citing *Consolidation Coal Co. v. United States,* 351 F.3d 1374, 1378 (Fed. Cir. 2003) (quoting *Nelson v. Adams,* 529 U.S. 460, 469 (2000) ("But [issue preservation] does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue."))).

But even if an issue was not presented below, there is no absolute bar to considering and deciding the issue on appeal, as forfeiture is a matter of discretion. *Harris Corp.*

*v. Ericsson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 2005) ("An appellate court retains case-by-case discretion over whether to apply waiver."). In *Icon Health and Fitness, Inc. v. Strava, Inc.*, we set forth some relevant considerations to guide the exercise of such discretion. 849 F.3d 1034, 1040 (Fed. Cir. 2017) (citing *Automated Merch. Sys., Inc. v. Lee*, 783 F.3d 1376, 1379 (Fed. Cir. 2015)). These considerations include whether the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice, and whether the issue presents significant questions of general impact. *Id.*

In this case, appellants argue that *KSR*, 550 U.S. 398, overrules this court's long-standing precedents, *Rosen*, 673 F.2d 388, and *Durling*, 101 F.2d 100, which outline the test for determining design patent obviousness. In their petition to the Board, the appellants raised their *KSR* argument in the following manner:

> As a final matter, the Federal Circuit has, to date, been silent regarding whether the Supreme Court's opinion in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007), governs design patent obviousness, other than to say that it was "not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of KSR." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1384–85 (Fed. Cir. 2009).[2] In a design patent obviousness analysis, to modify a primary reference, a secondary reference must be "so related [to the

[2] In *KSR*, the Supreme Court rejected the "rigid, mandatory formula" embodied in the Federal Circuit's then-prevailing "teaching suggestion motivation" requirement as improperly limiting the obviousness inquiry and, instead, prescribed a more flexible approach to obviousness and motivation to combine prior art teachings. *KSR*, 550 U.S. at 420–22.

> primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Titan Tire*, 566 F.3d at 1381 (quoting *Durling*, 101 F.3d at 103). To the extent that the "so related" test operates to unduly limit the scope of design patent obviousness, such an overly restrictive view would run afoul of *KSR*'s proscription against rigid restrictions on the scope of an obviousness analysis.

J.A. 174.

We consider that this assertion in the petition is sufficient to preserve the argument that LKQ seeks to make, that *KSR* overrules our current test for design patent obviousness. While not extensive, LKQ's argument enunciates concern that the applied obviousness test was "overly restrictive" in light of *KSR*, which is the heart of its argument on appeal. To be sure, LKQ could have made its argument in depth. However, such arguments would have been to an unreceptive audience, as the Board already had heard and rejected the argument. *See, e.g.*, *Johns Manville Corp. v. Knauf Insulation, Inc.*, IPR2015-1453, 2017 Pat. App. LEXIS 3419 at *63-64 (P.T.A.B. Jan. 11, 2017) (concluding that there was no suggestion that *KSR* is "germane to an obviousness determination in design patents, or has any effect upon the relevance of the *Durling* analysis," and that, regardless, the "basically the same test" is consistent with *KSR*).

Further, this challenge to *Rosen* and *Durling* is a pure question of law that undoubtedly presents a significant question of general impact, favoring the exercise of our discretion to hear and decide this issue. *See Icon Health*, 849 F.3d at 1040. Moreover, we may decide to apply the correct law even if the parties did not argue it, so long as the issue is properly before the court. *Forshey v. Principi*, 284 F.3d 1335, 1356–57 (Fed. Cir. 2002) (en banc) (superseded by statute on other grounds, *Flores v. Nicholson*, 476 F.3d

1379, 1381 (Fed. Cir. 2006)). Given the aforementioned considerations and in our discretion, we decline to find LKQ's *KSR* argument forfeited.

B

Appellant argues that the Supreme Court, in reviewing *Teleflex, Inc. v. KSR Int'l Co.*, 119 Fed. App'x 282 (Fed. Cir. 2005), overruled *Rosen* and *Durling*. The Court stated, "[t]he obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation . . . ." *KSR*, 550 U.S. at 419. The Court did note that the teaching, suggestion, and motivation test "captured a helpful insight," but it found it overly "rigid." *Id.* at 418. However, *KSR* did not involve or discuss design patents, which is the type of patent we have here before us and that was addressed by *Rosen* and *Durling*.

And we note that in the more than fifteen years since *KSR* was decided, this court has decided over fifty design patent appeals. In these appeals, this court has continually applied *Rosen* and *Durling* just as it had in the decades preceding. Notably, the correctness of our current law in light of *KSR* was raised in only two of those over fifty appeals, only tangentially, and not addressed in our decisions in those two cases. This challenge is therefore an outlier.

We, as a panel, cannot overrule *Rosen* or *Durling* without a clear directive from the Supreme Court. *Deckers Corp. v. United States*, 752 F.3d 949, 965 (Fed. Cir. 2016) (explaining panels are "bound by prior panel decisions until they are overruled by the court en banc or the Supreme Court"). *See also California Inst. Of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 990–91 (Fed. Cir. 2022) (explaining the panel only had authority to overrule circuit precedent without en banc action given the Supreme Court's reasoning undermining said circuit precedent). As explained above, it is not clear the Supreme Court has overruled *Rosen* or *Durling*. The panel is therefore bound to apply existing law to this appeal.

C

Finally, applying existing law, we affirm the Board's non-obviousness determination and conclude that its factual findings are supported by substantial evidence.

The Board subdivided the first part of the *Durling* test into two sub-steps. First, the Board concluded that LKQ failed to identify "the correct visual impression created by the patented design as a whole." *Durling*, 101 F.3d at 103; *Rosen*, 673 F.2d at 390–91. The Board found that LKQ's proposed construction "offers a starting point, but does not go far enough, in describing the overall appearance of the claimed design." *Decision*, J.A. 14–17, 48. The Board noted that additional elements of the claimed design, unaddressed by Lian, included (1) a consistently curved door cut line and a circular wheel arch, (2) a consistent width lower rearward terminus defined between the wheel arch and door cut line, (3) a top protrusion having an upper surface having a thickness and consistent width that mirrors the inside surface of the u-shaped notch, (4) a gently curving first and second crease extending forward from the door cut line and defining a concavity line there between, and (5) below the first and second crease, an inflection line extending between the wheel arch and door cut line. *Decision*, J.A. 14–17, 50.

In reaching these determinations, the Board credited the testimony of GM's expert witness and other witnesses. *Id*. We cannot find that the Board erred in valuing certain testimony over others. *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002) (where "two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence"). The factual findings here that informed the Board's articulation of the visual impression created by the claimed design are supported by substantial evidence. However, we, like the Board,

proceed to consider whether LKQ identified a *Rosen* reference that is "basically the same" as the claimed design.

LKQ failed to show that Lian creates "basically the same" visual impression as the claimed design. *Durling*, 101 F.3d at 103; *Rosen*, 673 F.2d at 390–91. The Board found while Lian and the claimed design shared certain elements, "a complete visual comparison of the overall appearance of both designs sufficiently shows that the two designs are quite different." *Decision*, J.A. 53. For example, the Board noted the claimed design's smooth, curved overall appearance as compared to Lian's substantially linear, angled overall appearance. *See, e.g.*, *id.* at 54. Here too, the Board credited the testimony of GM's witnesses, in addition to considering the images presented from the perspective of an ordinary designer. *Id.* at 53–58. We likewise find the Board's finding that Lian failed to create "basically the same" visual impression as the claimed design is therefore supported by substantial evidence.

We therefore affirm the Board's conclusion that LKQ did not show that the '625 patent would have been obvious over the cited references.

## CONCLUSION

We have considered LKQ's remaining arguments but find them unpersuasive. For the foregoing reasons, the decision of the Board is *affirmed*.

**AFFIRMED**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**
*Appellants*

**v.**

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**
*Appellee*

---

2021-2348

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-00534.

---

LOURIE, *Circuit Judge*, additional views.

The panel resolves this case by determining that substantial evidence supports the Board's conclusion that the claims of the '625 patent are not unpatentable as anticipated or obvious. I agree. I write separately to respond to the assertion by appellant that the Board improperly relied on our predecessor court's *Rosen* decision for its rationale in deciding its case. Appellant argues that *Rosen*, whatever its validity at the time it was decided, is inconsistent with, and hence was implicitly overruled, by the Supreme Court in *KSR*. The panel resolves the case without having

to reach this issue, but I comment separately on the argument appellant raises, but which we do not reach.

*Rosen* was decided by the Court of Customs and Patent Appeals in 1982, sitting with its usual en banc panel of Judges Markey, Rich, Baldwin, Miller, and Nies, hardly a group unversed in patent law. *Rosen*, in reversing the Patent Office's Board of Appeals, stated that "there must be a reference, a something in existence, the design characteristics of which are basically the same as the claimed design in order to support a holding of obviousness." *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982) (citing *In re Jennings*, 182 F.2d 207, 208 (C.C.P.A. 1950)).

Appellant argues that the Supreme Court in reviewing *Teleflex, Inc. v. KSR Int'l Co.*, 119 Fed. Appx. 282 (Fed. Cir. 2005), a non-precedential decision of ours that recited almost as boilerplate the longstanding requirement that, in evaluating a combination of references asserted to render a claimed invention obvious, there must be some teaching, suggestion, or motivation shown in the prior art to combine the references, overruled *Rosen*. The Court stated, "[t]he obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation . . . ." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 419 (2007). The Court did note that the teaching, suggestion, and motivation test "captured a helpful insight," but it found it overly "rigid." *Id*. at 418. That essentially is the broad concept that appellant now asserts has overruled an almost forty-year-old design patent decision that this court has been bound to follow and has continued to follow in the decade since *KSR* was decided.

I disagree. First, *KSR* did not involve design patents, which is the type of patent we have here before us. Utility patents and design patents are distinct types of patents. Utility patents protect processes, machines, manufactures, compositions of matter, and improvements thereof. But their inventions must be "useful." 35 U.S.C. § 101. A design

patent protects ornamentation, the way an article looks, 35 U.S.C. § 171. *See* M.P.E.P. § 1502.01. Claims and claim construction in design patents are thus quite different compared with utility patents. *See Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010) (questioning how "a court could effectively construe design claims, where necessary, in a way other than by describing the features shown in the drawings."); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) (citing *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)) (finding that a design is better represented by an illustration than a description).

While 35 U.S.C. § 103, which deals with obviousness, does not differentiate between types of inventions, and hence applies to all types of patents, the considerations involved in determining obviousness are different in design patents. Obviousness of utility patents requires considerations such as unexpected properties, utility, and function. Design patents, on the other hand, relate to considerations such as the overall appearance, visual impressions, artistry, and style of ornamental subject matter. Ornament is in the eyes of the beholder. Functional utility is objective.

What is the utility or function of something that is ornamental? To be sure, it may also be functional and have use, as do the fenders in the case before us, but that function is beside the point when considering whether its ornamental features would have been obvious. And what is an unexpected property in the context of design patents, for it must be related to ornament, as function is not to be considered in evaluating obviousness of a design?

Obviousness of an ornamental design thus requires different considerations from those of a utility invention. *KSR* did not address any of these considerations, and it did not even mention design patents. Surely, it did not intend to speak to obviousness of designs, and what was said about a test long applied to utility inventions was not

indicated to apply to design patents. It cannot reasonably be held to have overruled a precedent of one of our predecessor courts involving a type of patent it never mentioned.

A comprehensive review of obviousness in design patents, *Overcoming the "Impossible Issue" of Nonobviousness in Design Patents*, supports the view that "*KSR* has very limited, if any, applicability to design patents." Janice M. Mueller and Daniel Harris Brean, 99 KY. L. J., 419, 518 (2011). It further states that, "[m]ost of the *KSR* Court's discussion is completely irrelevant to what design patents protect." *Id.* It notes that "[t]he subject matter of a design patent is fundamentally different from a utility patent, as evidenced by the separate statutory provisions that define the eligible subject matter of each type of patent." *Id.* "Indeed, a patented design 'need not have any practical utility,' the antithesis of a utility invention." *Id.*

Second, while *Rosen* may have overstated its point in adding to the quoted *Jennings* language such as that the primary reference must have design characteristics that are "basically the same" as those of the claimed design, this statement hardly reflects the rigidity the Court was condemning in *KSR*. 673 F.2d at 391.

And finally, *Rosen* was not essentially incorrect. In any obviousness analysis, the question is whether the claimed invention was obvious, but obvious over *what*. One has to start from somewhere. *See K/S Himpp v. Hear-Wear Techs.*, 751 F.3d 1362, 1366 (Fed. Cir. 2014) (finding that an examiner may not rely on his common knowledge without a supporting prior art reference) (citing M.P.E.P. § 2144.03).

In any event, whether *Rosen* was right or wrong, or over-simplified, the Supreme Court, in *KSR*, reviewing a decision involving a utility patent, did not address the basic concept of beginning an obviousness analysis in design patents by looking for a "something in existence." And, especially, it did not overrule *Rosen*.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**
*Appellants*

**v.**

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**
*Appellee*

---

2021-2348

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-00534.

---

STARK, *Circuit Judge*, concurring in part and concurring in judgment.

I agree with the majority's conclusion that the Board had substantial evidence to conclude LKQ failed to show the '625 patent was anticipated or would have been obvious. Accordingly, I join the majority's anticipation analysis as well as its substantive obviousness analysis. Where I part ways is on the issue of forfeiture. The majority concludes that LKQ did not forfeit its argument that *KSR* overruled our precedent's requirement that a party claiming a design patent is obvious must, as the first step in its

invalidating efforts, identify a single reference providing "basically the same" visual impression as the patented design. Because LKQ did not raise this issue before the Board, I would find it was forfeited. Accordingly, I do not believe we need to address the merits of LKQ's *KSR* argument. Therefore, I respectfully decline to join the relevant portions of the majority's opinion, namely sections III.A and III.B.

## I

I would resolve this case without reaching the merits of LKQ's *KSR* argument as I believe the argument was forfeited before the Board.

As the majority notes, normally an issue is forfeited if it cannot "be said that the tribunal was fairly put on notice as to the substance of the issue." Maj. Op. 10 (citing *Nike Inc. v. Adidas AG*, 812 F.3d 1326, 1342 (Fed. Cir. 2016)) (internal citation and quotation marks omitted); *see also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) ("If a party fails to raise an argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court, we may deem that argument [forfeited] on appeal."); *Wallace v. Dep't of the Air Force,* 879 F.2d 829, 832 (Fed. Cir. 1989) ("Ordinarily, appellate courts refuse to consider issues not raised before an administrative agency."). As we have previously stated, an issue being pressed on appeal "must be raised with sufficient specificity and clarity that the tribunal is aware that it must decide the issue." *Wallace*, 879 F.2d at 832. Here, LKQ's briefing before the Board was not nearly so specific and clear as to make the Board aware it had to decide the issue on which LKQ would now have us decide its appeal. In fact, to the contrary, the PTAB judges who heard this case would, I imagine, be surprised to see how this case has morphed into one about whether *KSR* overruled our "*Rosen* reference" requirement.

A

To demonstrate how unfair LKQ is being to the Board, I will first set out our current standard for evaluating design patent obviousness challenges, the "*Durling* test." *See Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (citing *In re Rosen*, 673 F.2d 388, 390 (CCPA 1982)). The *Durling* test proceeds in two steps. First, what we have called a "*Rosen* reference" must be identified. To assess whether a *Rosen* reference exists, the reviewing tribunal must "(1) discern the correct visual impression created by the patented design as a whole; and (2) determine whether there is a *single reference that creates 'basically the same' visual impression*" as that patented design." *Durling*, 101 F.3d at 103. If a *Rosen* reference cannot be identified, the obviousness analysis is done, and the validity challenge is defeated. *See Rosen*, 673 F.2d at 391. If, but only if, a *Rosen* reference exists, the analysis proceeds to a second step, in which "the trier of fact must determine whether, using secondary references, an ordinary designer would have modified the primary reference to create a design that has the same overall visual appearance as the claimed design." *Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1275 (Fed. Cir. 2021). The secondary references relied on must be "so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Durling*, 101 F.3d at 103 (internal citations and quotation marks omitted; alteration in original). If a secondary reference does not meet this standard, it may not be relied on as part of an obviousness combination, and there is then no need even to consider whether a designer of ordinary skill would have been motivated to combine such a secondary reference with the *Rosen* primary reference. *See Rosen*, 673 F.2d at 391.

With this background, I will now repeat below the same excerpt from LKQ's briefing before the Board that is included in the majority opinion—this also happens to be the

entirety of the briefing LKQ provided to the Board on the *KSR* issue. Thereafter, I will present what LKQ is arguing to us, in this appeal, about *KSR*'s impact on the *Durling* test.

Here is what LKQ argued to the Board in its petition:

> [1] As a final matter, the Federal Circuit has, to date, been silent regarding whether the Supreme Court's opinion in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007), governs design patent obviousness, other than to say that it was "not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of *KSR*." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1384–85 (Fed. Cir. 2009). [2] In a design patent obviousness analysis, to modify a primary reference, a secondary reference must be "so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Titan Tire*, 566 F.3d at 1381 (quoting *Durling*, 101 F.3d at 103). [3] To the extent that the "so related" test operates to unduly limit the scope of design patent obviousness, such an overly restrictive view would run afoul of *KSR*'s proscription against rigid restrictions on the scope of an obviousness analysis.

J.A. 174 (bracketed number alterations and emphasis added).[1] As can be seen, in sentence [1] LKQ correctly

---

[1] In the well-chosen words of GM, LKQ also "vaguely stated" (Ans. Br. 40) the following to the Board: "In *KSR*, the Supreme Court rejected the 'rigid, mandatory formula' embodied in the Federal Circuit's then-prevailing 'teaching suggestion motivation' requirement as improperly limiting the obviousness inquiry and, instead, prescribed a more flexible approach to obviousness and motivation to combine

stated we have not definitively decided if *KSR* applies to design patent cases, in sentence [2] LKQ made a point exclusively directed to the *second step* of the *Durling* test, and in sentence [3] LKQ made clear that it challenged Federal Circuit doctrine only "*to the extent*" that the second step of our *Durling* test is too rigid for *KSR*.

But here is how LKQ describes the issue presented to our court in this appeal:

> Whether, in finding that the claimed design was not obvious under 35 U.S.C. § 103:
>
> the Board erred in applying *Rosen* and demanding a *single primary reference* as a predicate to the obviousness analysis despite the Supreme Court's rejection of such bright-line rules in connection with the obviousness analysis in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007) . . . .

Op. Br. 6 (emphasis added). Elsewhere in its briefing to us, LKQ writes: "*Rosen* cannot survive *KSR*," "The *Rosen* requirement to identify a single reference that is 'basically the same' as the claimed design is not consistent with *KSR*," and "*Rosen*'s requirement that a design patent challenger identify, as a predicate to the obviousness analysis, a 'primary reference' that is 'basically the same' as the claimed design represents an even more rigid bright-line

---

prior art teachings." J.A. 174. As even LKQ acknowledges, this statement—like other general statements LKQ made about the holding of *KSR*—does no more than *imply* that *KSR maybe* overruled unspecified aspects of our design patent obviousness doctrine. *See* Rep. Br. 17 (citing J.A. 174-75, 205-06, 1124, 1126-27, 1132-33); *see also id.* (LKQ arguing "its obviousness grounds and evidence" as presented to Board "*assumed KSR* may supersede *Rosen* and *Durling*") (first emphasis added).

barrier than the TSM test did." Op. Br. 50, 54 (emphasis omitted and capitalization modified).

That the *KSR* issue LKQ presses here was not fairly presented to the Board is evident by comparing the above excerpts from the briefing. In the three-sentence argument LKQ made to the Board, LKQ plainly and unambiguously challenged the post-*KSR* vitality of the *Durling* test's "so related" second step, and *only* that portion of the *Durling* test. LKQ articulated *no challenge* to the *Rosen* reference requirement, remaining entirely silent as to whether this first step of the *Durling* test survives *KSR*. In this way, LKQ directed the Board *away* from having to assess whether the *Rosen* requirement remains viable.

In this appeal, by contrast, LKQ completely shifts its focus to the first step of the *Durling* test, directing its attack squarely at our *Rosen* reference requirement. The repeated, explicit arguments to us—that the need for a primary reference that is visually "basically the same" as the patented design cannot withstand the Supreme Court's analysis in *KSR*—stands in striking contrast to the *KSR* challenge presented to the Board, which omitted any reference to *Rosen* or the first step of the *Durling* test.

A party's articulation of its arguments tells the tribunal what issues it is being asked to decide, as well as what issues are *not* presented. I do not think the Board, or any tribunal we review, should, ordinarily, face the potential of being reversed on an issue no party asked it to address. Fairness to the tribunal of first instance—and fairness to the opposing party—requires that we hold parties to their obligation to raise arguments clearly at the first available opportunity. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 864 (Fed. Cir. 2020) ("The very word 'review' presupposes that a litigant's arguments have been raised and considered in the tribunal of first instance. To abandon that principle is to encourage the practice of 'sandbagging'" suggesting or permitting, for strategic reasons, that the

[lower tribunal] pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error.").

B

Nor am I persuaded that the situation here is so exceptional that we should exercise our discretion to address it. In *Forshey v. Principi*, 284 F.3d 1335, 1355-57 (Fed. Cir. 2002) (en banc) (superseded by statute on other grounds), we enumerated four limited circumstances in which it is appropriate to consider forfeited issues: (1) "[w]hen new legislation is passed while an appeal is pending, courts have an obligation to apply the new law if Congress intended retroactive application even though the issue was not decided or raised below;" (2) "when there is a change in the jurisprudence of the reviewing court or the Supreme Court after consideration of the case by the lower court;" (3) "appellate courts may apply the correct law even if the parties did not argue it below and the court below did not decide it, but only if an issue is properly before the court;" and (4) "where a party appeared pro se before the lower court, a court of appeals may appropriately be less stringent in requiring that the issue have been raised explicitly below."

Only the third possibility is even potentially relevant here. Yet, *Forshey* makes clear that this exception is for situations when an issue is clearly presented but neither party argues for the legally correct answer. *Forshey* uses the example of the standard of proof. *See id.* at 1357. So, for example, if one party argues for preponderance of the evidence and the other argues for proof beyond a reasonable doubt, the court is free to apply the legally correct standard of clear and convincing evidence (in a case where this is, in fact, the correct standard). *See id.* Here, the panel unanimously agrees that the Board committed no legal error in finding LKQ failed to identify a *Rosen* reference as required under *Durling*. Thus, the parties are not

asking us to decide between adopting a forfeited position and applying the incorrect law. This is not a case in which affirming the Board requires us to adopt or approve of the application of a self-evidently incorrect legal standard. Indeed, as the majority opinion observes, the Board applied the legal standard we have applied in every one of the more than 50 post-*KSR* design patent cases we have decided.

Our unbroken, and largely unquestioned, application of the *Durling* test in dozens of post-*KSR* design patent obviousness cases confirms, for me, that we have strong grounds for not exercising our discretion to reach out and decide the forfeited challenge in this case. The majority notes that the issue of the correctness of our current law in light of *KSR* has only been raised twice before this appeal, which suggests it may not actually be a "significant question[] of general impact." *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1040 (Fed. Cir. 2017). There also seems to be nothing about this case that makes avoiding the question of *KSR*'s impact result in a "miscarriage of justice." *See id.*

For all these reasons, I would not exercise our discretion to decide an issue LKQ forfeited below.[2]

C

LKQ argues any forfeiture should be excused because the Board was powerless to decide that *KSR* abrogated the *Rosen* reference requirement. *See* Rep. Br. 20 ("Unlike this Court, the Board had no power to determine that *Rosen* or *Durling* had been overruled."); *id.* (citing *Koninklijke Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*, 590 F.3d 1326, 1337 (Fed. Cir. 2010); *Merck & Co. v. Kessler*, 80 F.3d

---

[2] I might view the discretionary decision as to whether to excuse the forfeiture differently if this case is reheard en banc. That, of course, is not an issue I need to decide today.

1543, 1549-50 (Fed. Cir. 1996)). The authorities LKQ relies on for this proposition do not actually support the view that an administrative agency lacks the power to recognize that the Supreme Court has overruled what had been binding circuit court precedent. In fact, the portion of *Koninklijke* quoted by LKQ, that "[j]udicial precedent is as binding on administrative agencies as are statutes," 590 F.3d at 1337, instead clarifies that the Board is required to follow *KSR*, just as this court must.

I believe the Board—like a district court[3] or a panel of our court[4]—has the power, indeed an obligation, to recognize when the Supreme Court has overruled previously binding precedent, and in such an instance (which is likely to be exceedingly rare) all of us are bound to follow the Supreme Court, not the overruled circuit court caselaw. *See Hyatt v. Heckler*, 807 F.2d 376, 379 (4th Cir. 1986) ("The separation of powers doctrine requires administrative agencies to follow the law of the circuit whose courts have jurisdiction over the cause of action. In the absence of a controlling decision by the Supreme Court, the respective courts of appeals express the law of the circuit.").

If *KSR* truly overruled *Durling*, expressly or implicitly, then the Board was bound to follow *KSR* as controlling Supreme Court precedent regardless of what our decisions

[3] "Ordinarily, a trial court may not disregard its reviewing court's precedent. There are two narrow exceptions: if the circuit's precedent is expressly overruled by statute or by a subsequent Supreme Court decision." *Strickland v. United States*, 423 F.3d 1335, 1338 n. 3 (Fed. Cir. 2005) (internal citations omitted).

[4] "[W]e are bound by prior panel decisions until they are overruled by the court en banc or the Supreme Court." *Deckers Corp. v. United States*, 752 F.3d 949, 965 (Fed. Cir. 2014); *see also Texas Am. Oil Corp. v. U.S. Dep't of Energy*, 44 F.3d 1557, 1561 (Fed. Cir. 1995) (en banc).

said. This is the same principle that allows LKQ to argue, as it does, that this panel can depart from *Durling* without needing to go en banc. Oral Arg. at 4:57-5:10. Moreover, it is clear that LKQ believed the Board was empowered to directly apply *KSR*, as LKQ specifically argued step two of *Durling* had been modified, if not abrogated outright, and therefore asked the Board not to follow step two of *Durling*.

Relatedly, the court's opinion today excuses LKQ's failure to clearly raise the issue it now presses on appeal because the argument would have been made "to an unreceptive audience," citing a previous Board decision (which was nonprecedential) rejecting a *KSR* challenge to current law. Maj. Op. 12 (citing *Johns Manville Corp. v. Knauf Insulation, Inc.*, 2017 Pat. App. LEXIS 3419, at *63-64 (P.T.A.B. Jan. 11, 2017)). I disagree with this reasoning, both because the Board is always bound to follow controlling Supreme Court caselaw—notwithstanding its own prior rulings—and because we know LKQ understood its *KSR* contentions were not futile, since it chose to present one of them to the Board.

Again, then, I would hold that LKQ forfeited the *KSR* argument it urges on us.

## II

Because my colleagues find no forfeiture, they address the impact of *KSR* on our existing obviousness doctrine with respect to design patents, concluding "it is not clear the Supreme Court has overruled *Rosen* or *Durling*." Maj. Op. 13. I agree it is not clear.

Despite the lack of clarity, I think it worth noting that there is, at minimum, substantial tension between the Supreme Court's holding in *KSR* and our *Durling* test. In *KSR*, 550 U.S. at 419, the Supreme Court explained that "when a court transforms [a] general principle into a rigid rule that limits the obviousness inquiry . . . it errs." *See also id.* at 415 ("Throughout this Court's engagement with

the question of obviousness, our cases have set forth an expansive and flexible approach . . . ."). A strong case can be made that the step one *Rosen* reference requirement is precisely the type of limiting, rigid rule *KSR* faulted: if a design patent challenger fails to identify a *Rosen* reference, the obviousness analysis stops. In this way, the *Durling* test can prevent the consideration of a combination of prior art references. *See Durling*, 101 F.3d at 103 ("*Before* one can begin to combine prior art designs, however, one *must* find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design.") (emphasis added; internal quotation marks omitted). It also may deprive the tribunal of the opportunity to consider other factors that often drive the analysis in utility patent obviousness cases. This all seems to conflict with *KSR*'s instruction that "[o]ften, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art." 550 U.S. at 418.

Similarly, *KSR* says that "a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* But the requirement to identify a *Rosen* reference, and the consequence that the analysis proceeds no further if the challenger fails to do so, appears to prevent consideration of the ordinary designer's creativity, at least in cases like the one before us now.

Additional rigidity that might not be appropriate in a post-*KSR* world arguably exists at step two of the *Durling* test, which limits consideration solely to prior art references that are "so related" to the identified *Rosen* reference that "the appearance of certain ornamental features in one would suggest the application of those features to the other." *Durling*, 101 F.3d at 103 (internal citations omitted). This is essentially the *KSR* challenge that LKQ presented to the Board yet only presses generally on appeal.

*See* Op. Br. 51 ("[T]his restrictive, formulaic test, and *particularly* its requirement that the court identify a single prior art reference . . . is inconsistent with *KSR*.") (emphasis added); *see also KSR*, 550 U.S. at 421 ("Rigid, preventative rules that deny factfinders recourse to common sense, however, are neither necessary under our case law nor consistent with it.").[5]

Accordingly, I can see how one might conclude that *KSR* implicitly overrules the *Durling* test. Alternatively, I can also see how one might persuasively argue that design patents are so fundamentally different than utility patents that they warrant their own test for obviousness, a test that the Supreme Court would likely allow to coexist alongside the *KSR* test we apply to utility patents. Judge Lourie, in his additional views, admirably sets out how such a conclusion might be reached.

---

[5] Another potential problem in our design patent obviousness test concerns claim construction. At least as the Board applied the law here, it imposed on LKQ the obligation to articulate "'the correct visual impression created by the patented design as a whole'" and held that LKQ's failure to do so was itself a sufficient basis on which to reject LKQ's obviousness challenge. J.A. 50-51 (quoting *Durling*, 101 F.3d at 103). Neither the Board—nor GM, in arguing for affirmance—cites any of our own cases supporting the proposition that a patent challenger's failure to articulate the correct construction of a design patent is a dispositive failing. If that is a correct understanding of our caselaw, an issue on which I do not today express a view, it would certainly be an additional rigidity reserved only for design patents. No one would argue, I think, that *KSR* or our obvious standards for utility patents hold that an obviousness challenge fails at the point at which the challenger proposes an incorrect claim construction.

This case does not require us to decide the continuing vitality of the *Durling* test post-*KSR* because, as I have explained, LKQ forfeited the only specific challenge it makes here to that test—the step one *Rosen* reference requirement—by not presenting it to the Board. If (or when) we have to confront this issue, it should be in a case in which we have thorough and thoughtful briefing on the differences between design and utility patents, and most preferably a case in which we have the benefit of the tribunal of first instance's analysis. All of this, of course, is lacking here.

III

In sum, in my view, LKQ forfeited the *KSR* issue it now raises on appeal. I would not reach the question of whether the Supreme Court's *KSR* decision overruled the first part of our *Durling* test, *i.e.*, our *Rosen* reference requirement. Instead, I would proceed directly from finding the issue forfeited to considering whether the Board's application of the *Durling* test was supported by substantial evidence, which I agree it was. For these reasons, I join the majority's opinion except for parts III(A) and III(B) and I concur in affirming the Board.