**No. 2021-2348**

# In the
# United States Court of Appeals
## for the Federal Circuit

LKQ CORP. & KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,
*Appellants,*

*v.*

GM GLOBAL TECHNOLOGY OPERATIONS LLC,
*Appellee.*

*Appeal from the United States Patent and Trademark Office*
*Patent Trial and Appeal Board in IPR2020-00534*
*(JJ. Scott A. Daniels, Grace K. Obermann, and Christopher G. Paulraj)*

## APPELLANTS' REQUEST FOR REHEARING EN BANC

Barry F. Irwin
Iftekhar A. Zaim
Andrew C. Himebaugh
**IRWIN IP LLP**
150 N. Wacker Drive, Suite 700
Chicago, IL 60606
Tel: (312) 667-6080
birwin@irwinip.com
izaim@irwinip.com
ahimebaugh@irwinip.com

Mark A. Lemley
Mark P. McKenna
**Lex Lumina, PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (646) 898-2055
mlemley@lex-lumina.com
mark@lex-lumina.com

*Counsel for Appellants*
*LKQ Corp. and Keystone Automotive Industries, Inc.*

**FORM 9. Certificate of Interest**                                    Form 9 (p. 1)
                                                                        July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2021-2348 |
| **Short Case Caption** | LKQ Corporation, et al. v. GM Global Technology Operations LLC |
| **Filing Party/Entity** | LKQ Corporation |

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/23/2023

Signature:  /s/ Barry F. Irwin

Name:  Barry F. Irwin

**FORM 9. Certificate of Interest**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| LKQ Corporation | | None |
| Keystone Automotive Industries, Inc, | | LKQ Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Reid Huefner | Margaret Herrmann | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| LKQ Corp., et al. v. GM Global Technology Operations LLC, Fed. Cir. Case No. 2022-1253 | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

STATEMENT OF RELATED CASES .................................................. 1

RULE 35(B) STATEMENT ............................................................... 2

REASONS FOR GRANTING THE PETITION .................................... 3

SUMMARY OF THE APPEALED FINAL WRITTEN DECISION .................... 4

SUMMARY OF THE PANEL DECISION ......................................... 6

ARGUMENT .................................................................................... 8

    I.    *Rosen* And *Durling* are Incompatible with 35 U.S.C. § 103 as Interpreted in *KSR*. ............................................................. 8

        A.    Design Patents are Subject to 35 U.S.C. § 103 ......................... 8

        B.    *KSR* Barred Rigid Restrictions on the Obviousness Analysis .................................................................................. 9

        C.    *Rosen* and *Durling* Require a Rigid, Restrictive Approach to Obviousness ..................................................................... 10

            1.    *Durling's Requirement that a Challenger First "Discern the Correct Visual Impression Created by the Patented Design as a Whole" is Inconsistent with § 103, KSR and Markman.* ................................. 11

            2.    *The Rosen Requirement that a Challenger Identify "a Single Reference that Creates 'Basically the Same' Visual Impression" as the Claimed Design, as a Prerequisite to the Obviousness Analysis, is Inconsistent with § 103 and KSR.* ................................. 12

            3.    *Durling's Requirement that the Primary Reference May Only be Modified If Specific, Restrictive Conditions are Met is Inconsistent with § 103 and KSR.* ............................................................................ 14

            4.    *Supreme Court Precedent Supports Greater Latitude for Combining References* ............................. 16

D.    *Rosen* and *Durling* Improperly Constrict the Obviousness Inquiry by Foreclosing Analysis of What a Designer Would, in Fact, Have Found Obvious .................................... 16

E.    This Court Should Grant En Banc Review to Overrule *Rosen* and *Durling* and Replace Them with a Test Consistent with *KSR*, *Graham*, and *Whitman Saddle* ............. 19

II.    LKQ's Challenge of *Rosen* and *Durling* is Properly Presented and Warrants Resolution. .................................................................19

CONCLUSION ................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
　573 U.S. 208 (2014) ..................................................................20

*Bilski v. Kappos*,
　561 U.S. 593 (2010) ..................................................................21

*Cancer Rsch. Tech., Ltd. v. Barr Lab'ys., Inc.*,
　637 F.3d 1293 (Fed. Cir. 2011) ................................................21

*Dobson v. Dornan*,
　118 U.S. 10 (1886) ....................................................................12

*Durling v. Spectrum Furniture Co., Inc.*,
　101 F.3d 100 (Fed Cir. 1996) ............................................*passim*

*eBay Inc. v. MercExchange, L.L.C.*,
　547 U.S. 388 (2006) ..................................................................21

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
　543 F.3d 665 (Fed. Cir. 2008) ..................................................12

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
　535 U.S. 722 (2002) ..................................................................21

*Forshey v. Principi*,
　284 F.3d 1335 (Fed. Cir. 2002) ............................................7, 20

*Graham v. John Deere Co. of Kansas City*,
　383 U.S. 1 (1966) ......................................................................... 3

*Hadco Prods., Inc. v. Walter Kidde & Co.*,
　462 F.2d 1265 (3d Cir. 1972) ...................................................18

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
　579 U.S. 93 (2016) ...............................................................20, 21

*Hotchkiss v. Greenwood*,
　52 U.S. 248 (1850) ....................................................................10

*Icon Health and Fitness, Inc. v. Strava, Inc.*,
   849 F.3d 1034 (Fed. Cir. 2017) ........................................................20

*In re Laverne*,
   356 F.2d 1003 (CCPA 1966) ............................................................18

*In re Nalbandian*,
   661 F.2d 1214 (CCPA 1981) .........................................................9, 18

*In re Rosen*,
   673 F.2d 388 (CCPA 1982) ................................................ 2, 3, 10, 11

*KSR Int'l Co. v. Teleflex, Inc.*,
   550 U.S. 398 (2007) ...............................................................*passim*

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) .........................................................................12

*MRC Innovations v. Hunter Mfg., LLP*,
   747 F.3d 1326 (Fed. Cir. 2014) .......................................................12

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) .........................................................................20

*Octane Fitness, LLC v. ICON Health and Fitness, Inc.*,
   572 U.S. 545 (2014) .........................................................................21

*Smith v. Whitman Saddle Co.*,
   148 U.S. 674 (1893) ...............................................................3, 16, 17

*Titan Tire Corp. v. Case New Holland, Inc.*,
   566 F.3d 1372 (Fed. Cir. 2009) .......................................................19

**Statutes**

35 U.S.C. § 103 ...................................................................*passim*

35 U.S.C. § 171 ............................................................................ 2

35 U.S.C. § 171(b) ...............................................................2, 3, 9, 17

## STATEMENT OF RELATED CASES

No appeal has been previously taken from the Patent Trial and Appeal Board's decision in IPR2020-00534. Appellants identify as a related case the co-pending appeal in Case No. 2022-1253 (Fed. Cir.), which was related before the panel, decided on the same day, and is the subject of a petition for rehearing en banc filed on the same day.

## **RULE 35(B) STATEMENT**

Based on my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance:

1.  Whether the rigid approach to evaluating the obviousness of designs under *In re Rosen*, 673 F.2d 388, 391 (CCPA 1982) and *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100 (Fed Cir. 1996) is consistent with the Supreme Court's interpretation of 35 U.S.C. § 103 in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007); and

2.  What standard, consistent with *KSR* and 35 U.S.C. § 171, should replace the current requirement that a patent challenger identify a primary reference that is basically the same as the claimed design as a prerequisite to evaluating obviousness and the further limitation that allows modification of the primary reference only if there is a secondary reference that is "so related" to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other.

Based on my professional judgment, I believe the panel decision is contrary to the statutory language of 35 U.S.C. §§ 103 and 171(b), and the following decisions of the Supreme Court of the United States: *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S.

398 (2007); *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966); and *Smith v. Whitman Saddle Co.*, 148 U.S. 674 (1893).

## REASONS FOR GRANTING THE PETITION

In *KSR*, the Supreme Court rejected a rigid approach to obviousness that relies on bright-line rules or mandatory formulas. 550 U.S. at 419. It reiterated that 35 U.S.C. § 103 requires an assessment that focuses on the knowledge and motivations of a person having ordinary skill in the relevant art ("PHOSITA"). That interpretation of § 103 applies with equal force to design patents, which are generally subject to the same requirements as patents for inventions. 35 U.S.C. §171(b). Indeed, the Supreme Court has long applied a flexible test for design patent obviousness that permits combining two different references if doing so was obvious to a PHOSITA. *See Whitman Saddle*, 148 U.S. at 681.

This Court and its predecessor have, for more than forty years, approached design patent obviousness with just the sort of rigid, mandatory formula that the Supreme Court rejected in *KSR*. Specifically, this Court requires, as a prerequisite to determining whether the claimed design is obvious in light of the prior art, identification of a single reference the design characteristics of which are "basically the same" as the claimed design. *Rosen*, 673 F.2d at 391. If and only if there is such a primary reference, then other references may be combined, but only if they are deemed "so related" to the claimed design that the appearance of certain ornamental

3

features in one would suggest the application of those features to the other.  *Durling*, 101 F.3d at 103.

That framework has no statutory basis and is at odds with *KSR*, *Graham*, and *Whitman Saddle*.  It is also inconsistent with the way designers create new designs. This Court should rehear this case en banc to recognize that *Rosen* and *Durling* are inconsistent with *KSR*, and to set forth a standard for design patent obviousness that is faithful to the law.

## SUMMARY OF THE APPEALED FINAL WRITTEN DECISION

LKQ argued to the Board that the '625 Patent was invalid as obvious to a designer of ordinary skill in the art ("DOSA") in view of U.S. Design Pat. No. D773,340 ("Lian") alone or in combination with a Hyundai promotional brochure ("Tucson").  Appx0134-0218.  *See also* Appx1314:



| '625 PATENT *CLAIMED DESIGN* | LIAN (PRIOR ART) *PRIMARY REFERENCE* |
|---|---|



| '625 PATENT<br>*CLAIMED DESIGN* | LIAN (PRIOR ART)<br>*PRIMARY REFERENCE* |
|---|---|

In its Final Written Decision ("FWD"), the Board determined that LKQ "fail[ed] to . . . identify 'the correct visual impression created by the patented design as a whole'—a required step in identifying a *Rosen* reference." Appx0050, FWD at 50. Then, "[f]or purposes of completeness, and alternatively," the Board concluded

that LKQ "fail[ed] to identify 'a single reference that creates basically the same visual impression' as the patented design." Appx0051. The Board then terminated the analysis without considering whether the claimed design's modifications to Lian would have been obvious to a DOSA. Appx00058.

## SUMMARY OF THE PANEL DECISION

Before the Panel, GM argued that LKQ forfeited its argument that the *Rosen/Durling* obviousness framework did not survive *KSR*. But the panel majority found LKQ's assertions in its Petition regarding *KSR*'s applicability "sufficient to preserve the argument … that *KSR* overrules our current test for design patent obviousness." PD at 12. It also found that LKQ's challenge "to *Rosen* and *Durling* is a pure question of law that undoubtedly presents a significant question of general impact, favoring the exercise of our discretion to hear and decide this issue." *Id.* The panel further noted that this Court "may decide to apply the correct law even if the parties did not argue it, so long as the issue is properly before the Court." *Id.* (citing *Forshey v. Principi*, 284 F.3d 1335, 1356-57 (Fed. Cir. 2002) (en banc)).

Nevertheless, the Panel found that it, "as a panel, c[ould not] overrule *Rosen* or *Durling* without a clear directive from the Supreme Court." PD at 13. Noting that "*KSR* did not involve or discuss design patents," the Panel felt "bound to apply existing law to this appeal" because it felt "it [was] not clear the Supreme Court ha[d] overruled *Rosen* or *Durling*." *Id.*

Applying *Rosen* and *Durling*, the Panel affirmed the Board's non-obviousness determination. It found that substantial evidence supported the determination that "LKQ failed to show that Lian creates 'basically the same' visual impression as the claimed design." PD at 15. Like the Board, the Panel never considered what changes to Lian would have been routine or obvious to a DOSA.

Judge Lourie, providing Additional Views, stated that design patents differ from utility patents and that *KSR* did not overrule *Rosen*. Dkt. 48, ECF 17-19 (J. Lourie, Additional Views). But Judge Lourie also noted that "*Rosen* may have overstated its point in adding to the quoted *Jennings* language such as that the primary reference must have design characteristics that are 'basically the same.'" *Id.* at 19.[1] Judge Stark noted that all three parts of the *Rosen*/*Durling* test for design patent obviousness potentially run contrary to the Supreme Court's *KSR* holding. *See* Dkt. 48, ECF 20 *et seq.* ("J. Stark Concurrence"). And, in oral argument, Judge Clevenger noted that one could not envision a more rigid rule than "if you don't have the *Rosen* reference, we don't look at the prior art." Dkt. 42, Hearing Recording at 15:40-15:50.

---

[1] Judge Clevenger, in oral argument, noted that *Rosen* misstated *Jennings* in imposing this requirement. Dkt. 42, Hearing Recording at 3:21-4:00.

**ARGUMENT**

### I.   *ROSEN* AND *DURLING* ARE INCOMPATIBLE WITH 35 U.S.C. § 103 AS INTERPRETED IN *KSR*

Like the TSM test this Court applied in hundreds of cases over many years, the *Rosen*/*Durling* framework for design patent obviousness is incompatible with 35 U.S.C. § 103 as the Supreme Court interpreted that section in *KSR*.  *Rosen* and *Durling* rigidly restrict the obviousness inquiry, leading the analysis away from the statutorily mandated question: whether the claimed design would have been obvious to a DOSA.  The framework also conflicts with the Supreme Court's prior design patent precedent, which contemplated combining references that were not "basically the same" as the claimed design.

### A.   Design Patents are Subject to 35 U.S.C. § 103

The Patent Act denies protection for claimed inventions that would have been obvious to a PHOSITA.  35 U.S.C. § 103.  That rule applies with equal force to designs.  35 U.S.C. § 171(b).  No provision of the Patent Act exempts design patents from § 103, no statutory language modifies how § 103 applies to designs, and this Court's predecessor acknowledged that designs are subject to § 103 and cases interpreting it.  *See In re Nalbandian*, 661 F.2d 1214, 1217 (CCPA 1981) ("designs must be evaluated on the same basis as other patents, the test of *Graham* must be followed.").

8

### B.    *KSR* Barred Rigid Restrictions on the Obviousness Analysis

"In *KSR* the Supreme Court rejected the 'rigid, mandatory formula' embodied in the Federal Circuit's then-prevailing 'teaching suggestion motivation' requirement as improperly limiting the obviousness inquiry and, instead, prescribed a more flexible approach to obviousness and motivation to combine prior art teachings." PD at 11, n. 2.  The Supreme Court's objection to the TSM test was not that it believed teaching, suggestion, or motivation are irrelevant to the obviousness inquiry, but that this Court applied the TSM test as a rigid formula.  *See KSR*, 550 U.S. at 418-19:

> When it first established the requirement of demonstrating a teaching, suggestion, or motivation to combine known elements in order to show that the combination is obvious, the [C.C.P.A.] captured a helpful insight.
>
> …
>
> Helpful insights, however, need not become rigid and mandatory formulas; and when it is so applied, the TSM test is incompatible with our precedents.

*KSR* also acknowledged that the TSM requirement was properly motivated by concern about hindsight bias.  *Id.* at 421.  Nonetheless, *KSR* instructed that "[r]igid preventative rules that deny factfinders recourse to common sense … are neither necessary under our case law nor consistent with it."  *Id. See also id.* at 419 ("When a court transforms the general principle into a rigid rule that limits the obviousness inquiry, … it errs.").

*KSR* endorsed the flexible multifactor approach prescribed in *Graham*, which, in turn, "reaffirmed the 'functional approach' of *Hotchkiss*[.]" *Id.* at 415 (citing *Hotchkiss v. Greenwood*, 52 U.S. 248 (1850)).

**C.    *Rosen* and *Durling* Require a Rigid, Restrictive Approach to Obviousness**

*Durling* creates a rigid sequential test for evaluating obviousness of design patents.  First, the adjudicator must:

> (1) discern the correct visual impression created by the patented design as a whole; and (2) determine whether there is a single reference that creates 'basically the same' visual impression.

*Durling*, 101 F.3d at 103 (quoting *Rosen*, 673 F.2d at 391).  "[I]n comparing the patented design to a prior art reference, ***the trial court judge*** may determine ***almost instinctively*** whether the two designs create basically the same visual impression." *Id.* (emphasis added).  Only if the adjudicator concludes that there is a single reference that is "basically the same" as the claimed design (a "*Rosen* reference") can other references even be considered.  Even then:

> [t]hese secondary references may only be used to modify the primary reference if they are so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other.

*Id*. (cleaned up).

### 1.   Durling's *Requirement that a Challenger First "Discern the Correct Visual Impression Created by the Patented Design as a Whole" is Inconsistent with § 103,* KSR *and* Markman

The first *Durling* step "imposed on LKQ the obligation to articulate 'the correct visual impression created by the patented design as a whole' and held that LKQ's failure to do so was itself a sufficient basis on which to reject LKQ's obviousness challenge."  J. Stark Concurrence, Dkt. 48, ECF 31, n.5.  However, as Judge Stark explained:

> If that is a correct understanding of our caselaw, … it would certainly be an additional rigidity reserved only for design patents.  No one would argue, I think, that *KSR* or our obviousness standards for utility patents hold that an obviousness challenge fails at the point at which the challenger proposes an incorrect claim construction.

*Id.*  Furthermore, *High Point LLC v. Buyers Direct, Inc.'s* reference to verbal articulation of a design focuses on *courts*, not challengers,[2] and is needed only so "the parties and appellate courts can discern the trial court's reasoning in identifying a primary reference." *MRC Innovations v. Hunter Mfg., LLP*, 747 F.3d 1326, 1332 (Fed. Cir. 2014).  As *MRC* makes clear, even that rule does not *require* detailed verbal claim construction.  *Id.*  Such a requirement would be inconsistent with other Federal Circuit precedent stating a detailed verbal description of a claimed design is

---

[2] To the extent it was imposed on challengers, that would violate *Markman v. Westview Instruments, Inc.*  517 U.S. 370 (1996).

not required. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) ("As the Supreme Court has recognized, a design is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'") (citing *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)).  GM cannot defend the Panel's failure to recognize *KSR*'s impact on the *Rosen/Durling* framework by reference to yet another way in which the Panel ignored binding precedent.  No detailed written claim construction is required as a prerequisite to considering obviousness of a design patent.[3]

> **2. The Rosen Requirement that a Challenger Identify "a Single Reference that Creates 'Basically the Same' Visual Impression" as the Claimed Design, as a Prerequisite to the Obviousness Analysis, is Inconsistent with § 103 and KSR**

If ever there was a rigid rule of obviousness, it is *Rosen*'s primary reference requirement.  "[I]f a design patent challenger fails to identify a *Rosen* reference, the obviousness analysis stops." J. Stark Concurrence, Dkt. 48, ECF 30.  No other information can even be considered unless this threshold primary reference requirement is satisfied.  That rule denies courts "the opportunity to consider other factors that often drive the analysis in utility patent obviousness cases." *Id.*  In

---

[3]  Regardless, the Board itself held on institution that no further claim construction was necessary.  Appx0782-0783.  It would be particularly outrageous to conclude that LKQ was barred from demonstrating the obviousness of the claimed design because it did not offer the very thing the Board had just said it need not offer.

particular, it "appears to prevent consideration of the ordinary designer's creativity, at least in cases like the one before us now." *Id.*

Following *Rosen*'s rigid formula, the Board focused solely on whether Lian was 'basically the same' as the claimed design; it never considered the design process or even looked at the secondary reference even though there was extensive uncontradicted evidence of what Lian taught an ordinary designer. *See, e.g.*, Appx0406-0408; Appx1316-1336. The Board considered the perspective of an ordinary designer only in evaluating whether the designs were "basically the same;" it never asked whether the claimed design would have been obvious to a DOSA given the prior art. Appx0053.

The Board's conclusion demonstrates just how *Rosen* distracts from the statutorily-mandated question. The issue is not whether the claimed design is different from any individual piece of prior art (if it were not, it would be anticipated), but whether a DOSA would have found the claimed design obvious in light of Lian's teaching and disclosure. The Board merely looked at Lian; it never even considered what a DOSA would understand from Lian. This is not consistent with the realities of the professional design process, which *KSR* puts at the center of the inquiry. It is undisputed that designers are trained and skilled professionals who combine and change existing designs. *See* Appx1302 ("The ordinary designer is still a skilled design professional, with the creativity that would be expected of such a

13

professional and the capability to envision solutions to at least routine problems encountered in the field of automotive design.").

       ***3.***      **Durling's *Requirement that the Primary Reference May Only be Modified If Specific, Restrictive Conditions are Met is Inconsistent with § 103 and* KSR**

Finally, *Durling* requirement that such secondary reference be "so related" to the primary reference that "the appearance of certain ornamental features in one would suggest the application of those features to the other" is inconsistent with *KSR*. J. Stark Concurrence, Dkt. 48, ECF 30-31. In this case it was **undisputed** that a single secondary reference, the Tucson, was not only the very same sort of design as the primary reference but that it disclosed **every feature** of the claimed design that allegedly differed from Lian. Nonetheless, the *Rosen*/*Durling* test prevented the Board from considering the combination. *See e.g.* Appx1314:



The Board's application of *Rosen* and *Durling* to find the claimed design nonobvious *as a matter of law* in spite of two closely related prior art references that disclose every nuanced feature of the claimed design, is irreconcilable with § 103 post-*KSR*.

### 4.    Supreme Court Precedent Supports Greater Latitude for Combining References

The *Rosen/Durling* framework contradicts the only Supreme Court design patent obviousness precedent. In *Whitman Saddle*, the claimed design essentially consisted of a combination of the front half of one saddle and the back of another. 148 U.S. at 680. Neither of those two saddles was "basically the same" as the claimed design. Still, the Supreme Court had no trouble combining the two references and stating the combination would be ineligible for protection:

> Nothing more was done in this instance . . . than to put the two halves of these saddles together in the exercise of the ordinary skill of workmen of the trade, and in the way and manner ordinarily done.

*Id.* at 681. *Rosen* and *Durling* forbid the very approach the Supreme Court used.

### D.    *Rosen* and *Durling* Improperly Constrict the Obviousness Inquiry by Foreclosing Analysis of What a Designer Would, in Fact, Have Found Obvious

Rejecting the rigid formula of *Rosen* and *Durling* does not mean that every design will be obvious just because it is technically possible for designers to combine features from multiple pieces of prior art. *Cf.* Sarah Burstein, *In defense of* Rosen *references*, Patently-O (Dec. 6, 2022), https://patentlyo.com/patent/2022/12/defense-rosen-references.html. (suggesting that the primary reference requirement is necessary to avoid the "Frankenart" approach). Design patent obviousness is and will continue to be bounded by the practices of ordinary designers, just as obviousness in utility patent law is bounded

by the practices of those with ordinary skill in the relevant art.  There is no reason to believe that designers work from a single reference; there is also no reason to think that designers take into account only the technical ability to combine features.

Regardless, even Burstein recognizes that the test, as-applied, overly restricts the obviousness inquiry.  *Id.* ("the Federal Circuit's current § 103 … cases apply the proper primary reference requirement too strictly.").  While the idea of starting with a primary reference may provide a helpful insight and be rationally motivated, "rigid preventative rules that deny factfinders recourse to common sense … are neither necessary under our case law nor consistent with it." *KSR* at 421.

Any analysis that reaches a conclusion on obviousness without considering what a DOSA would find obvious or even looking at the universe of prior art cannot stand.  Yet, *Durling* inverts § 103's mandate and instructs the trial court to supplant the skill, knowledge, and creativity of the designer with a preliminary, "almost instinctive[]" determination of "basic similarity" by the decision-maker that ignores whether modifications would be routine and obvious.  101 F.3d at 103.

Nor can the *Rosen/Durling* regime justified on the ground that designs are different or that "[o]rnament is in the eyes of the beholder."  J. Lourie, Additional Views, Dkt. 45, ECF 18.  First, the Patent Act plainly applies the same § 103 to design patents.  35 U.S.C. § 171(b).  Second, this Court already rejected *Laverne*'s view that "design is nothing more than appearance" and "no special skill is required

to determine what things look like." *See Nalbandian*, 661 F.2d at 1216 (*quoting In re Laverne*, 356 F.2d 1003, 1006 (CCPA 1966)) (citing cases); *see also Hadco Prods., Inc. v. Walter Kidde & Co.*, 462 F.2d 1265, 1269-70, 1272-74 (3d Cir. 1972) (vacating a district court decision whose "reasoning and conclusion on [obviousness] were actually based on subjective visual impressions," insisting that the analysis focus on common practices and design features in the field).

Finally, even if it were true that utility patent obviousness considerations like routine modifications, unexpected effects, and teaching away, are inapplicable to design patents, J. Lourie, Additional Views, Dkt. 48, ECF 18-19, that would not mean that a rigid rule is any more appropriate for design patents than utility patents. *See Nalbandian*, 661 F.2d at 1217 (*Graham* allows for consideration of objective evidence bearing on obviousness) (citing cases).  Regardless, the suggestion that those considerations are not relevant to design is incorrect.  Record evidence from both parties shows certain design features are routine and achieve intended effects, *e.g.* directing gaze and emphasizing or de-emphasizing features, Appx1319; invoking associations with a brand, Appx0884; or manipulating surface light and shadow.  Appx0897.

**E.    This Court Should Grant En Banc Review to Overrule *Rosen* and *Durling* and Replace Them with a Test Consistent with *KSR*, *Graham*, and *Whitman Saddle***

By improperly and rigidly restricting the design patent obviousness analysis, the *Rosen*/*Durling* framework unlawfully extends the patent monopoly in a way that frustrates the Constitutional purpose of the patent regime.  *KSR*, 550 U.S. at 402.

In *Titan Tire*, this Court recognized that *KSR* likely applies to design patents, but did not need to resolve that issue.  *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1384-85 (Fed. Cir. 2009).  It should now.

It may be desirable for this Court to grant en banc review not only to overrule *Rosen* and *Durling* but also to consider how to apply that precedent in the design context.  In resolving that latter question, it may be desirable to invite the parties and amici to brief how *KSR* translates to the world of design patents.

**II.    LKQ'S CHALLENGE OF *ROSEN* AND *DURLING* IS PROPERLY PRESENTED AND WARRANTS RESOLUTION**

GM argued that LKQ forfeited its argument that the *Rosen*/*Durling* test as-applied in the FWD could not survive *KSR*.  Resp. Br. at 40-43.  However, as the Panel majority found, LKQ did argue that *KSR* governs design patent obviousness, and specifically "enunciate[d] concern that the applied obviousness test was 'overly restrictive' in light of *KSR*, which [was] the heart of [LKQ's] argument on appeal."  PD at 12.  Even Judge Stark acknowledged that LKQ's arguments to the Board "impl[ied] that *KSR maybe* overruled unspecified aspects of our design patent

obviousness doctrine." J. Stark Concurrence, Dkt. 48, ECF 24 n.1. Further, until the Board reversed its own Institution Decision and held that *Rosen* prevented it from even considering the prior art, LKQ had no reason to object to the Board's handling of those issues. Presenting additional arguments based on *Rosen* cannot be grounds for forfeiture.

Indeed, LKQ raised its *KSR* challenge more clearly than the parties to *KSR* raised the problems with this Court's former TSM test. *See* Reply Br. at 17-18. And in numerous cases where the Supreme Court significantly changed patent law, it did so *sua sponte* or when the appellants first challenged the law on appeal. *Id.* at 18 (citing *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014); *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016)).

Regardless, whether *KSR* applies to design patents was a "pure question of law that undoubtedly presents a significant question of general impact, favoring exercise of [the Court's] discretion to hear and decide this issue." PD at 12 (citing *Icon Health and Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1040 (Fed. Cir. 2017)). And, the Court "may decide to apply the correct law even if the parties did not argue it, so long as the issue is properly before the Court." PD at 12 (citing *Forshey*, 284 F.3d at 1356-57). Indeed, it is not merely that the Court *may* choose to apply the correct law; it has an obligation to do so.

## CONCLUSION

Retiring the unduly restrictive *Rosen/Durling* test is due.  It represents one of the last vestiges of formalistic, restrictive patent law tests that the Supreme Court has repeatedly rebuked.  *See Cancer Rsch. Tech., Ltd. v. Barr Lab'ys., Inc.*, 637 F.3d 1293 (Mem.), 1296 (Fed. Cir. 2011) (en banc) (JJ. Prost, Gajarsa, Moore, and O'Malley, dissenting) ("the Supreme Court has repeatedly—and recently— cautioned against such excessive formalism in application of the patent laws," and "[i]n each of th[o]se cases, flexibility was favored over rigidity.") (citing *Bilski v. Kappos*, 561 U.S. 593 (2010); *KSR¸* 550 U.S. at 419-22; and *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006)).  That list of stricken, unduly rigid doctrines was not exhaustive in 2011, and has only grown.  *See, e.g.*, *Halo Elecs., Inc.*, 579 U.S. at 105-106; *Octane Fitness, LLC v. ICON Health and Fitness, Inc.*, 572 U.S. 545, 553 (2014); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 738 (2002).  It is time for this Court to correct the unduly rigid and restrictive *Rosen/Durling* test as well.

Petitioner respectfully requests that this Court grant en banc review, vacate the Panel Decision, and align its standards for design patent obviousness with 35 U.S.C. § 103 as it is understood post-*KSR*.

21

Dated: March 23, 2023

Respectfully submitted,

By: */s/ Barry F. Irwin*
Barry F. Irwin
Iftekhar A. Zaim
Andrew C. Himebaugh
**IRWIN IP LLP**
150 N. Wacker Dr., Suite 700
Chicago, IL 60606
Tel: (312) 667-6080
birwin@irwinip.com
izaim@irwinip.com
ahimebaugh@irwinip.com

Mark A. Lemley
Mark P. McKenna
**Lex Lumina, PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (646) 898-2055
mlemley@lex-lumina.com
mark@lex-lumina.com

*Attorneys for Appellants*
*LKQ Corporation and*
*Keystone Automotive Industries, Inc.*

# ADDENDUM

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**
*Appellants*

**v.**

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**
*Appellee*

———————————

2021-2348

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-00534.

———————————

Decided: January 20, 2023

———————————

MARK A. LEMLEY, Lex Lumina PLLC, New York, NY, argued for appellants. Also represented by MARK P. MCKENNA; ANDREW HIMEBAUGH, BARRY IRWIN, IFTEKHAR ZAIM, Irwin IP LLC, Chicago, IL.

JOSEPH HERRIGES, JR., Fish & Richardson P.C., Minneapolis, MN, argued for appellee. Also represented by JOHN A. DRAGSETH; NITIKA GUPTA FIORELLA, Wilmington, DE; LAURA E. POWELL, Washington, DC.

———————————

Before LOURIE, CLEVENGER, and STARK, *Circuit Judges*.

Opinion for the court filed PER CURIAM.

Additional views filed by *Circuit Judge* LOURIE.

Opinion concurring in part and concurring in judgment
filed by *Circuit Judge* STARK.

PER CURIAM.

LKQ Corp. and Keystone Automotive Industries, Inc.
(collectively, "LKQ") appeal from a final written decision of
the U.S. Patent and Trademark Office Patent Trial and Ap-
peal Board ("the Board") holding that LKQ failed to show
by a preponderance of the evidence that U.S. Patent
D797,625 (the "'625 patent") was anticipated or would have
been obvious over the cited prior art before the effective fil-
ing date. *See LKQ Corp. v. GM Glob. Tech. Operations
LLC*, IPR2020-00534, Paper 28 (P.T.A.B. Aug. 4, 2021)
("*Decision*"), J.A. 1–60. For the reasons provided below, we
*affirm*.

## BACKGROUND

GM Global Technology Operations LLC ("GM") owns
the '625 patent, which is directed to an "ornamental design
for a vehicle front fender" as shown below.



FIG. 1

FIG. 3

FIG. 2

FIG. 4

GM manufactures and sells automotive vehicles. LKQ sells automotive body repair parts for most mainstream vehicle models available, including front fenders for vehicles manufactured by GM. GM and LKQ had previously been parties to a license agreement, under which LKQ was granted a license to many of GM's design patents. The license agreement expired in February 2022 following a breakdown of renewal negotiations, after which GM sent letters to LKQ's business partners alleging that the now unlicensed LKQ parts infringe its patents.

LKQ petitioned for *inter partes* review of the '625 patent, asserting that it was anticipated by U.S. Patent D773,340 ("Lian") and would have been obvious over Lian alone or in combination with the design of the 2010 Hyundai Tucson as disclosed in a promotional brochure ("Tucson"). The Board issued a final written decision concluding that LKQ had not demonstrated by a preponderance of the evidence that the '625 patent was anticipated or would have been obvious before the effective filing date. *Decision*, J.A. 1–60.

First, the Board determined that the ordinary observer would include both retail consumers who purchase replacement fenders and commercial replacement part buyers. *Decision*, J.A. 20–23. In so doing, the Board emphasized that the "'625 design claims a 'vehicle front fender,' not a vehicle in total." *Decision*, J.A. 21.

Second, applying that understanding of the ordinary observer, the Board concluded that, although there were some similarities between the claimed design and Lian, there were a number of key differences, including: (1) the wheel arch shape and terminus, (2) the door cut line, (3) the protrusion, (4) the sculpting, (5) the first and second creases, (6) the inflection line (*i.e.*, third crease), and (7) the concavity line. *Decision*, J.A. 30–45. The Board found that these differences in the claimed features contributed to different overall appearances in the design. *Id.* For example, the Board found that the claimed design's sculpting and crease pattern contributed to a smooth, curved overall appearance, whereas Lian depicted substantially linear, angled lines. *Decision*, J.A. 43. The Board was ultimately not persuaded that an ordinary observer would be deceived into purchasing the Lian front fender supposing it to be the claimed fender, finding no anticipation. *Decision*, J.A. 45.

Third, applying the tests established in *Rosen* and *Durling*, the Board found that LKQ failed to identify a sufficient primary reference, and therefore failed to prove obviousness by a preponderance of the evidence. *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100 (Fed. Cir. 1996); *In re Rosen*, 673 F.2d 388 (C.C.P.A. 1982); *Decision*, J.A. 48–58. Because the Board found that Lian did not qualify as a proper primary reference under *Rosen*, the Board did not turn to *Durling* step two and look beyond Lian to Tucson. *Decision*, J.A. 58.

In summary, the Board concluded that LKQ had not demonstrated that the claimed design of the '625 patent was anticipated or would have been obvious before the

effective filing date.  LKQ appealed.  We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

LKQ raises two main challenges on appeal.  First, LKQ contends that the Board erred in finding that the ordinary observer would include only retail consumers who purchase replacement fenders and commercial replacement part buyers, and, ultimately, in finding no anticipation.  Second, LKQ contends that the *Rosen* and *Durling* tests on which the Board relied in its obviousness analysis have been implicitly overruled by the Supreme Court's decision in *KSR International Co. v. Telflex, Inc.*, 550 U.S. 398 (2007).  We address each argument in turn.

We review the Board's legal conclusions *de novo* and its factual findings for substantial evidence.  *Campbell Soup Co. v. Gamon Plus, Inc.*, 939 F.3d 1335, 1339 (Fed. Cir. 2019).  Anticipation is a question of fact reviewed for substantial evidence.  *Id.*; *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1237 (Fed. Cir. 2009).  The ultimate determination of obviousness is reviewed *de novo*, and any underlying factual findings are reviewed for substantial evidence.  *Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1275 (Fed. Cir. 2021).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

I

As an initial matter, GM raises a threshold issue, contending that LKQ lacks standing to appeal and forfeited the opportunity to demonstrate otherwise by not presenting any evidence or argumentation on the issue in its opening brief.  Standing requires an "injury in fact," meaning evidence of "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs.*

*of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks and citations omitted). If a party is "currently engaged in conduct creating a substantial risk of infringement," standing may exist. *Gen. Elec. Co. v. Raytheon Techs. Corp.*, 983 F.3d 1334, 1341–42 (Fed. Cir. 2020).

We find that LKQ did establish that it has standing. LKQ asserted in its opening brief that it is currently engaged in conduct creating a substantial risk of infringement. Appellant Br. at 1. For purposes of evaluating standing, we must accept this representation as true. *Amerigen Pharm. Ltd. v. UCB Pharma GmBH*, 913 F.3d 1076, 1082 (Fed. Cir. 2019). And, indeed, GM does not dispute this assertion. That LKQ supplied additional facts in its reply brief in response to GM's challenge does not change the facts themselves or render LKQ's original assertion insufficient. LKQ represents that it sells a replacement fender for GM's 2018–2022 Chevrolet Equinox, which GM has asserted comprises a front fender that practices the '625 patent. *See* Appellant Reply Br. at 2–3. Indeed, GM sent a letter to at least one of LKQ's business partners alleging that the now unlicensed LKQ parts, including the replacement fender for the 2018–2022 Chevrolet Equinox, infringe its patents. *Id.* For purposes of evaluating standing, we accept these representations as true. *Amerigen*, 913 F.3d at 1082. LKQ is therefore currently engaged in conduct creating a substantial risk of infringement, and we find that it has standing to appeal.

## II

We next consider LKQ's challenge to the Board's determination that LKQ failed to meet its burden to prove that the '625 patent was anticipated by Lian. LKQ first argues that the Board erred in not finding that original retail vehicle purchasers are the correct ordinary observer. LKQ notes that replacement parts are merely a downstream consequence of prior whole vehicle sales, that front fenders are not sold in the first instance as replacement products,

and that replacement products make up a small subset of total fender sales. LKQ further asserts that that alleged error led the Board to place undue emphasis on allegedly trivial differences between the claimed design of the '625 patent and Lian that would not have mattered to the correct ordinary observer, and that the Board failed to properly compare the designs as a whole.

GM responds that the Board correctly defined the ordinary observer. GM emphasizes that the '625 patent is not directed to the design of a whole vehicle, but rather a design for a specific part of a vehicle. Therefore, GM argues that the ordinary observer must be the person who purchases that part or is otherwise sufficiently interested in that part, not necessarily the vehicle as a whole. GM further argues that, regardless of the ordinary observer, the Board's holding that the claimed design of the '625 patent is not anticipated by Lian was supported by substantial evidence.

We agree with GM that the Board's finding that the ordinary observer would include both retail consumers who purchase replacement fenders and commercial replacement part buyers who purchase replacement fenders was supported by substantial evidence. Defining the ordinary observer is a fact-dependent inquiry. *See Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1323 (Fed. Cir. 2007) (abrogated on other grounds by *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008)). It is through the lens of the ordinary observer that the anticipation inquiry is viewed. *Gorham Co. v. White*, 81 U.S. 511, 528 (1871). The Board's finding that the ordinary observer here includes repair professionals and vehicle owners purchasing replacement parts, and does not include retail vehicle purchasers, is well-grounded in the record, LKQ itself recognized that repair shop mechanics and auto parts store employees who order replacement parts may be ordinary observers of front fenders. J.A. 182–83. And LKQ cannot disagree that there is a market

for the claimed fender alone, given that its business is sell-ing individual replacement parts. *See* Appellant Reply Br. at 2. That GM sells whole vehicles to retail consumers, ra-ther than fenders to car manufacturers, is of no conse-quence. As the Board noted, the ordinary observer test requires consideration of the features visible in the "normal use" lifetime of the accused product, *i.e.*, "from the comple-tion of manufacture or assembly until the ultimate destruc-tion, loss, or disappearance of the article." *Decision*, J.A. 18 (quoting *Int'l Seaway*, 589 F.3d at 1241). *See also Contessa Food Prods. v. Conagra, Inc.*, 282 F.3d 1370, 1380 (Fed. Cir. 2002) ("[T]he 'ordinary observer' analysis is not limited to those features visible during only one phase or portion of the normal use lifetime of an accused product."). The "normal use" would thus include repair or replace-ment.

Most notably, the claimed design of the '625 patent is not the design of a whole vehicle, but rather a design of a specific part of a vehicle. J.A. 61–64. In *Arminak* and *Key-stone*, we recognized that the ordinary observer can be the purchaser of a component part of a later-assembled product as opposed to the purchaser of the later-assembled product. *Arminak*, 501 F.3d at 1321–24; *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1451 (Fed. Cir. 1993). The same is true here. In this case, substantial ev-idence supports the Board's conclusion that the ordinary observer is a person who purchases that part or is other-wise sufficiently interested in that part, not the vehicle as a whole. *See Egyptian Goddess*, 543 F.3d at 665.

When determining whether a design patent is antici-pated, we consider:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other . . . .

*Gorham*, 81 U.S. at 528.[1]  Under this standard, substantial evidence supported the Board's finding of no anticipation.

The Board concluded that the design claimed in the '625 patent and Lian design created different overall impressions.  The Board pointed to several differences between the designs, namely: (1) the wheel arch shape and terminus, (2) the door cut line, (3) the protrusion, (4) the sculpting, (5) the first and second creases, (6) the inflection line (*i.e.*, third crease), and (7) the concavity line.  *Decision*, J.A. 30–45.  And LKQ's claim that the Board failed to properly compare the designs as a whole is without merit. The Board explained how the aforementioned differences contributed to the overall appearance of both the '625 patent and Lian, noting, for example, the claimed design's smooth, curved overall appearance, and Lian's substantially linear, angled overall appearance.  *Decision*, J.A. 43. We agree and find that the Board's finding of no anticipation was supported by substantial evidence.

## III

LKQ next argues that the Supreme Court's decision in *KSR* implicitly overruled the long-standing *Rosen* and *Durling* tests for obviousness of design patents, and therefore the Board's decision applying such test must at least be vacated and remanded.  For design patent obviousness, *Durling* outlines a two-step analysis. First, it must be determined whether a primary reference, also known as a *Rosen* reference, exists with characteristics "basically the same" as the claimed design by discerning the visual

---

[1]    While the test articulated in *Gorham* was with regard to infringement, we have found "that the same tests must be applied to infringement and anticipation," as to "prevent an inconsistency from developing between the infringement and anticipation analyses." *Int'l Seaway*, 589 F.3d at 1240.

impression of the design as a whole. *Durling*, 101 F.3d at 103; *Rosen*, 673 F.2d at 390–91. Second, if a satisfactory primary reference exists, the court must consider whether an ordinary designer would have modified the primary reference to create a design with the same overall visual appearance as the claimed design. *Id.* This test safeguards against a challenger picking and choosing features from multiple references to create something entirely new, fundamentally changing the overall visual impression of the original designs. *See In re Jennings*, 182 F.2d 207, 208 (C.C.P.A. 1950) (explaining that one must start with "something in existence—not with something that might be brought into existence by selecting individual features from prior art and combining them").

While *KSR* does not address *Rosen* or *Durling*, LKQ argues that its holding implicates the test established in these cases. GM argues that LKQ has forfeited this argument by not raising it before the Board, and even if it were not forfeited, *KSR* does not overrule *Rosen* or *Durling*.

A

As a general proposition, a federal appellate court does not consider issues not raised before the lower tribunal. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). The exact phrasing of the argument need not have been used below "so long as it can be said that the tribunal was 'fairly put on notice as to the substance of the issue.'" *Nike Inc. v. Adidas AG,* 812 F.3d 1326, 1342 (Fed. Cir. 2016) (citing *Consolidation Coal Co. v. United States,* 351 F.3d 1374, 1378 (Fed. Cir. 2003) (quoting *Nelson v. Adams,* 529 U.S. 460, 469 (2000) ("But [issue preservation] does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue."))).

But even if an issue was not presented below, there is no absolute bar to considering and deciding the issue on appeal, as forfeiture is a matter of discretion. *Harris Corp.*

*v. Ericsson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 2005) ("An appellate court retains case-by-case discretion over whether to apply waiver."). In *Icon Health and Fitness, Inc. v. Strava, Inc.*, we set forth some relevant considerations to guide the exercise of such discretion. 849 F.3d 1034, 1040 (Fed. Cir. 2017) (citing *Automated Merch. Sys., Inc. v. Lee*, 783 F.3d 1376, 1379 (Fed. Cir. 2015)). These considerations include whether the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice, and whether the issue presents significant questions of general impact. *Id.*

In this case, appellants argue that *KSR*, 550 U.S. 398, overrules this court's long-standing precedents, *Rosen*, 673 F.2d 388, and *Durling*, 101 F.2d 100, which outline the test for determining design patent obviousness. In their petition to the Board, the appellants raised their *KSR* argument in the following manner:

> As a final matter, the Federal Circuit has, to date, been silent regarding whether the Supreme Court's opinion in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007), governs design patent obviousness, other than to say that it was "not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of KSR." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1384–85 (Fed. Cir. 2009).[2] In a design patent obviousness analysis, to modify a primary reference, a secondary reference must be "so related [to the

---

[2]    In *KSR*, the Supreme Court rejected the "rigid, mandatory formula" embodied in the Federal Circuit's then-prevailing "teaching suggestion motivation" requirement as improperly limiting the obviousness inquiry and, instead, prescribed a more flexible approach to obviousness and motivation to combine prior art teachings. *KSR*, 550 U.S. at 420–22.

primary reference] that the appearance of certain
ornamental features in one would suggest the ap-
plication of those features to the other." *Titan Tire*,
566 F.3d at 1381 (quoting *Durling*, 101 F.3d at
103). To the extent that the "so related" test oper-
ates to unduly limit the scope of design patent ob-
viousness, such an overly restrictive view would
run afoul of *KSR*'s proscription against rigid re-
strictions on the scope of an obviousness analysis.

J.A. 174.

We consider that this assertion in the petition is suffi-
cient to preserve the argument that LKQ seeks to make,
that *KSR* overrules our current test for design patent obvi-
ousness. While not extensive, LKQ's argument enunciates
concern that the applied obviousness test was "overly re-
strictive" in light of *KSR*, which is the heart of its argument
on appeal. To be sure, LKQ could have made its argument
in depth. However, such arguments would have been to an
unreceptive audience, as the Board already had heard and
rejected the argument. *See, e.g.*, *Johns Manville Corp. v.
Knauf Insulation, Inc.*, IPR2015-1453, 2017 Pat. App.
LEXIS 3419 at *63-64 (P.T.A.B. Jan. 11, 2017) (concluding
that there was no suggestion that *KSR* is "germane to an
obviousness determination in design patents, or has any
effect upon the relevance of the *Durling* analysis," and
that, regardless, the "basically the same test" is consistent
with *KSR*).

Further, this challenge to *Rosen* and *Durling* is a pure
question of law that undoubtedly presents a significant
question of general impact, favoring the exercise of our dis-
cretion to hear and decide this issue. *See Icon Health*, 849
F.3d at 1040. Moreover, we may decide to apply the correct
law even if the parties did not argue it, so long as the issue
is properly before the court. *Forshey v. Principi*, 284 F.3d
1335, 1356–57 (Fed. Cir. 2002) (en banc) (superseded by
statute on other grounds, *Flores v. Nicholson*, 476 F.3d

1379, 1381 (Fed. Cir. 2006)). Given the aforementioned considerations and in our discretion, we decline to find LKQ's *KSR* argument forfeited.

## B

Appellant argues that the Supreme Court, in reviewing *Teleflex, Inc. v. KSR Int'l Co.*, 119 Fed. App'x 282 (Fed. Cir. 2005), overruled *Rosen* and *Durling*. The Court stated, "[t]he obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation . . . ." *KSR*, 550 U.S. at 419. The Court did note that the teaching, suggestion, and motivation test "captured a helpful insight," but it found it overly "rigid." *Id.* at 418. However, *KSR* did not involve or discuss design patents, which is the type of patent we have here before us and that was addressed by *Rosen* and *Durling*.

And we note that in the more than fifteen years since *KSR* was decided, this court has decided over fifty design patent appeals. In these appeals, this court has continually applied *Rosen* and *Durling* just as it had in the decades preceding. Notably, the correctness of our current law in light of *KSR* was raised in only two of those over fifty appeals, only tangentially, and not addressed in our decisions in those two cases. This challenge is therefore an outlier.

We, as a panel, cannot overrule *Rosen* or *Durling* without a clear directive from the Supreme Court. *Deckers Corp. v. United States*, 752 F.3d 949, 965 (Fed. Cir. 2016) (explaining panels are "bound by prior panel decisions until they are overruled by the court en banc or the Supreme Court"). *See also California Inst. Of Tech. v. Broadcom Ltd.,* 25 F.4th 976, 990–91 (Fed. Cir. 2022) (explaining the panel only had authority to overrule circuit precedent without en banc action given the Supreme Court's reasoning undermining said circuit precedent). As explained above, it is not clear the Supreme Court has overruled *Rosen* or *Durling*. The panel is therefore bound to apply existing law to this appeal.

C

Finally, applying existing law, we affirm the Board's non-obviousness determination and conclude that its factual findings are supported by substantial evidence.

The Board subdivided the first part of the *Durling* test into two sub-steps. First, the Board concluded that LKQ failed to identify "the correct visual impression created by the patented design as a whole." *Durling*, 101 F.3d at 103; *Rosen*, 673 F.2d at 390–91. The Board found that LKQ's proposed construction "offers a starting point, but does not go far enough, in describing the overall appearance of the claimed design." *Decision*, J.A. 14–17, 48. The Board noted that additional elements of the claimed design, unaddressed by Lian, included (1) a consistently curved door cut line and a circular wheel arch, (2) a consistent width lower rearward terminus defined between the wheel arch and door cut line, (3) a top protrusion having an upper surface having a thickness and consistent width that mirrors the inside surface of the u-shaped notch, (4) a gently curving first and second crease extending forward from the door cut line and defining a concavity line there between, and (5) below the first and second crease, an inflection line extending between the wheel arch and door cut line. *Decision*, J.A. 14–17, 50.

In reaching these determinations, the Board credited the testimony of GM's expert witness and other witnesses. *Id*. We cannot find that the Board erred in valuing certain testimony over others. *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002) (where "two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence"). The factual findings here that informed the Board's articulation of the visual impression created by the claimed design are supported by substantial evidence. However, we, like the Board,

proceed to consider whether LKQ identified a *Rosen* reference that is "basically the same" as the claimed design.

LKQ failed to show that Lian creates "basically the same" visual impression as the claimed design. *Durling*, 101 F.3d at 103; *Rosen*, 673 F.2d at 390–91. The Board found while Lian and the claimed design shared certain elements, "a complete visual comparison of the overall appearance of both designs sufficiently shows that the two designs are quite different." *Decision*, J.A. 53. For example, the Board noted the claimed design's smooth, curved overall appearance as compared to Lian's substantially linear, angled overall appearance. *See, e.g.*, *id.* at 54. Here too, the Board credited the testimony of GM's witnesses, in addition to considering the images presented from the perspective of an ordinary designer. *Id.* at 53–58. We likewise find the Board's finding that Lian failed to create "basically the same" visual impression as the claimed design is therefore supported by substantial evidence.

We therefore affirm the Board's conclusion that LKQ did not show that the '625 patent would have been obvious over the cited references.

CONCLUSION

We have considered LKQ's remaining arguments but find them unpersuasive. For the foregoing reasons, the decision of the Board is *affirmed*.

**AFFIRMED**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**
*Appellants*

**v.**

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**
*Appellee*

_____

2021-2348

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-00534.

_____

LOURIE, *Circuit Judge*, additional views.

The panel resolves this case by determining that substantial evidence supports the Board's conclusion that the claims of the '625 patent are not unpatentable as anticipated or obvious. I agree. I write separately to respond to the assertion by appellant that the Board improperly relied on our predecessor court's *Rosen* decision for its rationale in deciding its case. Appellant argues that *Rosen*, whatever its validity at the time it was decided, is inconsistent with, and hence was implicitly overruled, by the Supreme Court in *KSR*. The panel resolves the case without having

to reach this issue, but I comment separately on the argument appellant raises, but which we do not reach.

*Rosen* was decided by the Court of Customs and Patent Appeals in 1982, sitting with its usual en banc panel of Judges Markey, Rich, Baldwin, Miller, and Nies, hardly a group unversed in patent law. *Rosen*, in reversing the Patent Office's Board of Appeals, stated that "there must be a reference, a something in existence, the design characteristics of which are basically the same as the claimed design in order to support a holding of obviousness." *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982) (citing *In re Jennings*, 182 F.2d 207, 208 (C.C.P.A. 1950)).

Appellant argues that the Supreme Court in reviewing *Teleflex, Inc. v. KSR Int'l Co.*, 119 Fed. Appx. 282 (Fed. Cir. 2005), a non-precedential decision of ours that recited almost as boilerplate the longstanding requirement that, in evaluating a combination of references asserted to render a claimed invention obvious, there must be some teaching, suggestion, or motivation shown in the prior art to combine the references, overruled *Rosen*. The Court stated, "[t]he obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation . . . ." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 419 (2007). The Court did note that the teaching, suggestion, and motivation test "captured a helpful insight," but it found it overly "rigid." *Id.* at 418. That essentially is the broad concept that appellant now asserts has overruled an almost forty-year-old design patent decision that this court has been bound to follow and has continued to follow in the decade since *KSR* was decided.

I disagree. First, *KSR* did not involve design patents, which is the type of patent we have here before us. Utility patents and design patents are distinct types of patents. Utility patents protect processes, machines, manufactures, compositions of matter, and improvements thereof. But their inventions must be "useful." 35 U.S.C. § 101. A design

patent protects ornamentation, the way an article looks, 35 U.S.C. § 171. *See* M.P.E.P. § 1502.01. Claims and claim construction in design patents are thus quite different compared with utility patents. *See Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010) (questioning how "a court could effectively construe design claims, where necessary, in a way other than by describing the features shown in the drawings."); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) (citing *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)) (finding that a design is better represented by an illustration than a description).

While 35 U.S.C. § 103, which deals with obviousness, does not differentiate between types of inventions, and hence applies to all types of patents, the considerations involved in determining obviousness are different in design patents. Obviousness of utility patents requires considerations such as unexpected properties, utility, and function. Design patents, on the other hand, relate to considerations such as the overall appearance, visual impressions, artistry, and style of ornamental subject matter. Ornament is in the eyes of the beholder. Functional utility is objective.

What is the utility or function of something that is ornamental? To be sure, it may also be functional and have use, as do the fenders in the case before us, but that function is beside the point when considering whether its ornamental features would have been obvious. And what is an unexpected property in the context of design patents, for it must be related to ornament, as function is not to be considered in evaluating obviousness of a design?

Obviousness of an ornamental design thus requires different considerations from those of a utility invention. *KSR* did not address any of these considerations, and it did not even mention design patents. Surely, it did not intend to speak to obviousness of designs, and what was said about a test long applied to utility inventions was not

indicated to apply to design patents. It cannot reasonably be held to have overruled a precedent of one of our predecessor courts involving a type of patent it never mentioned.

A comprehensive review of obviousness in design patents, *Overcoming the "Impossible Issue" of Nonobviousness in Design Patents*, supports the view that "*KSR* has very limited, if any, applicability to design patents." Janice M. Mueller and Daniel Harris Brean, 99 KY. L. J., 419, 518 (2011). It further states that, "[m]ost of the *KSR* Court's discussion is completely irrelevant to what design patents protect." *Id.* It notes that "[t]he subject matter of a design patent is fundamentally different from a utility patent, as evidenced by the separate statutory provisions that define the eligible subject matter of each type of patent." *Id.* "Indeed, a patented design 'need not have any practical utility,' the antithesis of a utility invention." *Id.*

Second, while *Rosen* may have overstated its point in adding to the quoted *Jennings* language such as that the primary reference must have design characteristics that are "basically the same" as those of the claimed design, this statement hardly reflects the rigidity the Court was condemning in *KSR*. 673 F.2d at 391.

And finally, *Rosen* was not essentially incorrect. In any obviousness analysis, the question is whether the claimed invention was obvious, but obvious over *what*. One has to start from somewhere. *See K/S Himpp v. Hear-Wear Techs.*, 751 F.3d 1362, 1366 (Fed. Cir. 2014) (finding that an examiner may not rely on his common knowledge without a supporting prior art reference) (citing M.P.E.P. § 2144.03).

In any event, whether *Rosen* was right or wrong, or over-simplified, the Supreme Court, in *KSR*, reviewing a decision involving a utility patent, did not address the basic concept of beginning an obviousness analysis in design patents by looking for a "something in existence." And, especially, it did not overrule *Rosen*.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**
*Appellants*

**v.**

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**
*Appellee*

_____

2021-2348

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-00534.

_____

STARK, *Circuit Judge*, concurring in part and concurring in judgment.

I agree with the majority's conclusion that the Board had substantial evidence to conclude LKQ failed to show the '625 patent was anticipated or would have been obvious. Accordingly, I join the majority's anticipation analysis as well as its substantive obviousness analysis. Where I part ways is on the issue of forfeiture. The majority concludes that LKQ did not forfeit its argument that *KSR* overruled our precedent's requirement that a party claiming a design patent is obvious must, as the first step in its

invalidating efforts, identify a single reference providing "basically the same" visual impression as the patented design. Because LKQ did not raise this issue before the Board, I would find it was forfeited. Accordingly, I do not believe we need to address the merits of LKQ's *KSR* argument. Therefore, I respectfully decline to join the relevant portions of the majority's opinion, namely sections III.A and III.B.

## I

I would resolve this case without reaching the merits of LKQ's *KSR* argument as I believe the argument was forfeited before the Board.

As the majority notes, normally an issue is forfeited if it cannot "be said that the tribunal was fairly put on notice as to the substance of the issue." Maj. Op. 10 (citing *Nike Inc. v. Adidas AG*, 812 F.3d 1326, 1342 (Fed. Cir. 2016)) (internal citation and quotation marks omitted); *see also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) ("If a party fails to raise an argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court, we may deem that argument [forfeited] on appeal."); *Wallace v. Dep't of the Air Force*, 879 F.2d 829, 832 (Fed. Cir. 1989) ("Ordinarily, appellate courts refuse to consider issues not raised before an administrative agency."). As we have previously stated, an issue being pressed on appeal "must be raised with sufficient specificity and clarity that the tribunal is aware that it must decide the issue." *Wallace*, 879 F.2d at 832. Here, LKQ's briefing before the Board was not nearly so specific and clear as to make the Board aware it had to decide the issue on which LKQ would now have us decide its appeal. In fact, to the contrary, the PTAB judges who heard this case would, I imagine, be surprised to see how this case has morphed into one about whether *KSR* overruled our "*Rosen* reference" requirement.

A

To demonstrate how unfair LKQ is being to the Board, I will first set out our current standard for evaluating design patent obviousness challenges, the "*Durling* test." *See Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (citing *In re Rosen*, 673 F.2d 388, 390 (CCPA 1982)). The *Durling* test proceeds in two steps. First, what we have called a "*Rosen* reference" must be identified. To assess whether a *Rosen* reference exists, the reviewing tribunal must "(1) discern the correct visual impression created by the patented design as a whole; and (2) determine whether there is a *single reference that creates 'basically the same' visual impression*" as that patented design." *Durling*, 101 F.3d at 103. If a *Rosen* reference cannot be identified, the obviousness analysis is done, and the validity challenge is defeated. *See Rosen*, 673 F.2d at 391. If, but only if, a *Rosen* reference exists, the analysis proceeds to a second step, in which "the trier of fact must determine whether, using secondary references, an ordinary designer would have modified the primary reference to create a design that has the same overall visual appearance as the claimed design." *Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1275 (Fed. Cir. 2021). The secondary references relied on must be "so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Durling*, 101 F.3d at 103 (internal citations and quotation marks omitted; alteration in original). If a secondary reference does not meet this standard, it may not be relied on as part of an obviousness combination, and there is then no need even to consider whether a designer of ordinary skill would have been motivated to combine such a secondary reference with the *Rosen* primary reference. *See Rosen*, 673 F.2d at 391.

With this background, I will now repeat below the same excerpt from LKQ's briefing before the Board that is included in the majority opinion—this also happens to be the

4                                    LKQ CORPORATION v.
                    GM GLOBAL TECHNOLOGY OPERATIONS LLC

entirety of the briefing LKQ provided to the Board on the *KSR* issue. Thereafter, I will present what LKQ is arguing to us, in this appeal, about *KSR*'s impact on the *Durling* test.

Here is what LKQ argued to the Board in its petition:

[1]  As a final matter, the Federal Circuit has, to date, been silent regarding whether the Supreme Court's opinion in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007), governs design patent obviousness, other than to say that it was "not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of *KSR*." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1384–85 (Fed. Cir. 2009).  [2]  In a design patent obviousness analysis, to modify a primary reference, a secondary reference must be "so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other."  *Titan Tire*, 566 F.3d at 1381 (quoting *Durling*, 101 F.3d at 103).  [3]  To the extent that the "so related" test operates to unduly limit the scope of design patent obviousness, such an overly restrictive view would run afoul of *KSR*'s proscription against rigid restrictions on the scope of an obviousness analysis.

J.A. 174 (bracketed number alterations and emphasis added).[1]  As can be seen, in sentence [1] LKQ correctly

---

[1]    In the well-chosen words of GM, LKQ also "vaguely stated" (Ans. Br. 40) the following to the Board: "In *KSR*, the Supreme Court rejected the 'rigid, mandatory formula' embodied in the Federal Circuit's then-prevailing 'teaching suggestion motivation' requirement as improperly limiting the obviousness inquiry and, instead, prescribed a more flexible approach to obviousness and motivation to combine

stated we have not definitively decided if *KSR* applies to design patent cases, in sentence [2] LKQ made a point exclusively directed to the *second step* of the *Durling* test, and in sentence [3] LKQ made clear that it challenged Federal Circuit doctrine only "*to the extent*" that the second step of our *Durling* test is too rigid for *KSR*.

But here is how LKQ describes the issue presented to our court in this appeal:

> Whether, in finding that the claimed design was not obvious under 35 U.S.C. § 103:

> the Board erred in applying *Rosen* and demanding a *single primary reference* as a predicate to the obviousness analysis despite the Supreme Court's rejection of such bright-line rules in connection with the obviousness analysis in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007) . . . .

Op. Br. 6 (emphasis added). Elsewhere in its briefing to us, LKQ writes: "*Rosen* cannot survive *KSR*," "The *Rosen* requirement to identify a single reference that is 'basically the same' as the claimed design is not consistent with *KSR*," and "*Rosen*'s requirement that a design patent challenger identify, as a predicate to the obviousness analysis, a 'primary reference' that is 'basically the same' as the claimed design represents an even more rigid bright-line

———————————————

prior art teachings." J.A. 174. As even LKQ acknowledges, this statement—like other general statements LKQ made about the holding of *KSR*—does no more than *imply* that *KSR maybe* overruled unspecified aspects of our design patent obviousness doctrine. *See* Rep. Br. 17 (citing J.A. 174-75, 205-06, 1124, 1126-27, 1132-33); *see also id.* (LKQ arguing "its obviousness grounds and evidence" as presented to Board "*assumed KSR* may supersede *Rosen* and *Durling*") (first emphasis added).

barrier than the TSM test did." Op. Br. 50, 54 (emphasis omitted and capitalization modified).

That the *KSR* issue LKQ presses here was not fairly presented to the Board is evident by comparing the above excerpts from the briefing. In the three-sentence argument LKQ made to the Board, LKQ plainly and unambiguously challenged the post-*KSR* vitality of the *Durling* test's "so related" second step, and *only* that portion of the *Durling* test. LKQ articulated *no challenge* to the *Rosen* reference requirement, remaining entirely silent as to whether this first step of the *Durling* test survives *KSR*. In this way, LKQ directed the Board *away* from having to assess whether the *Rosen* requirement remains viable.

In this appeal, by contrast, LKQ completely shifts its focus to the first step of the *Durling* test, directing its attack squarely at our *Rosen* reference requirement. The repeated, explicit arguments to us—that the need for a primary reference that is visually "basically the same" as the patented design cannot withstand the Supreme Court's analysis in *KSR*—stands in striking contrast to the *KSR* challenge presented to the Board, which omitted any reference to *Rosen* or the first step of the *Durling* test.

A party's articulation of its arguments tells the tribunal what issues it is being asked to decide, as well as what issues are *not* presented. I do not think the Board, or any tribunal we review, should, ordinarily, face the potential of being reversed on an issue no party asked it to address. Fairness to the tribunal of first instance—and fairness to the opposing party—requires that we hold parties to their obligation to raise arguments clearly at the first available opportunity. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 864 (Fed. Cir. 2020) ("The very word 'review' presupposes that a litigant's arguments have been raised and considered in the tribunal of first instance. To abandon that principle is to encourage the practice of 'sandbagging'" suggesting or permitting, for strategic reasons, that the

[lower tribunal] pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error.").

B

Nor am I persuaded that the situation here is so exceptional that we should exercise our discretion to address it. In *Forshey v. Principi*, 284 F.3d 1335, 1355-57 (Fed. Cir. 2002) (en banc) (superseded by statute on other grounds), we enumerated four limited circumstances in which it is appropriate to consider forfeited issues: (1) "[w]hen new legislation is passed while an appeal is pending, courts have an obligation to apply the new law if Congress intended retroactive application even though the issue was not decided or raised below;" (2) "when there is a change in the jurisprudence of the reviewing court or the Supreme Court after consideration of the case by the lower court;" (3) "appellate courts may apply the correct law even if the parties did not argue it below and the court below did not decide it, but only if an issue is properly before the court;" and (4) "where a party appeared pro se before the lower court, a court of appeals may appropriately be less stringent in requiring that the issue have been raised explicitly below."

Only the third possibility is even potentially relevant here. Yet, *Forshey* makes clear that this exception is for situations when an issue is clearly presented but neither party argues for the legally correct answer. *Forshey* uses the example of the standard of proof. *See id.* at 1357. So, for example, if one party argues for preponderance of the evidence and the other argues for proof beyond a reasonable doubt, the court is free to apply the legally correct standard of clear and convincing evidence (in a case where this is, in fact, the correct standard). *See id.* Here, the panel unanimously agrees that the Board committed no legal error in finding LKQ failed to identify a *Rosen* reference as required under *Durling*. Thus, the parties are not

asking us to decide between adopting a forfeited position and applying the incorrect law. This is not a case in which affirming the Board requires us to adopt or approve of the application of a self-evidently incorrect legal standard. Indeed, as the majority opinion observes, the Board applied the legal standard we have applied in every one of the more than 50 post-*KSR* design patent cases we have decided.

Our unbroken, and largely unquestioned, application of the *Durling* test in dozens of post-*KSR* design patent obviousness cases confirms, for me, that we have strong grounds for not exercising our discretion to reach out and decide the forfeited challenge in this case. The majority notes that the issue of the correctness of our current law in light of *KSR* has only been raised twice before this appeal, which suggests it may not actually be a "significant question[] of general impact." *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1040 (Fed. Cir. 2017). There also seems to be nothing about this case that makes avoiding the question of *KSR*'s impact result in a "miscarriage of justice." *See id.*

For all these reasons, I would not exercise our discretion to decide an issue LKQ forfeited below.[2]

## C

LKQ argues any forfeiture should be excused because the Board was powerless to decide that *KSR* abrogated the *Rosen* reference requirement. *See* Rep. Br. 20 ("Unlike this Court, the Board had no power to determine that *Rosen* or *Durling* had been overruled."); *id.* (citing *Koninklijke Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*, 590 F.3d 1326, 1337 (Fed. Cir. 2010); *Merck & Co. v. Kessler*, 80 F.3d

---

[2] I might view the discretionary decision as to whether to excuse the forfeiture differently if this case is reheard en banc. That, of course, is not an issue I need to decide today.

1543, 1549-50 (Fed. Cir. 1996)).  The authorities LKQ re-
lies on for this proposition do not actually support the view
that an administrative agency lacks the power to recognize
that the Supreme Court has overruled what had been bind-
ing circuit court precedent.  In fact, the portion of *Kon-
inklijke* quoted by LKQ, that "[j]udicial precedent is as
binding on administrative agencies as are statutes," 590
F.3d at 1337, instead clarifies that the Board is required to
follow *KSR*, just as this court must.

I believe the Board—like a district court[3] or a panel of
our court[4]—has the power, indeed an obligation, to recog-
nize when the Supreme Court has overruled previously
binding precedent, and in such an instance (which is likely
to be exceedingly rare) all of us are bound to follow the Su-
preme Court, not the overruled circuit court caselaw.  *See
Hyatt v. Heckler*, 807 F.2d 376, 379 (4th Cir. 1986) ("The
separation of powers doctrine requires administrative
agencies to follow the law of the circuit whose courts have
jurisdiction over the cause of action.  In the absence of a
controlling decision by the Supreme Court, the respective
courts of appeals express the law of the circuit.").

If *KSR* truly overruled *Durling*, expressly or implicitly,
then the Board was bound to follow *KSR* as controlling Su-
preme Court precedent regardless of what our decisions

---

[3]    "Ordinarily, a trial court may not disregard its re-
viewing court's precedent.  There are two narrow excep-
tions: if the circuit's precedent is expressly overruled by
statute or by a subsequent Supreme Court decision."
*Strickland v. United States*, 423 F.3d 1335, 1338 n. 3 (Fed.
Cir. 2005) (internal citations omitted).

[4]    "[W]e are bound by prior panel decisions until they
are overruled by the court en banc or the Supreme Court."
*Deckers Corp. v. United States*, 752 F.3d 949, 965 (Fed. Cir.
2014); *see also Texas Am. Oil Corp. v. U.S. Dep't of Energy*,
44 F.3d 1557, 1561 (Fed. Cir. 1995) (en banc).

said.  This is the same principle that allows LKQ to argue, as it does, that this panel can depart from *Durling* without needing to go en banc.  Oral Arg. at 4:57-5:10.  Moreover, it is clear that LKQ believed the Board was empowered to directly apply *KSR*, as LKQ specifically argued step two of *Durling* had been modified, if not abrogated outright, and therefore asked the Board not to follow step two of *Durling*.

Relatedly, the court's opinion today excuses LKQ's failure to clearly raise the issue it now presses on appeal because the argument would have been made "to an unreceptive audience," citing a previous Board decision (which was nonprecedential) rejecting a *KSR* challenge to current law.  Maj. Op. 12 (citing *Johns Manville Corp. v. Knauf Insulation, Inc.*, 2017 Pat. App. LEXIS 3419, at *63-64 (P.T.A.B. Jan. 11, 2017)).  I disagree with this reasoning, both because the Board is always bound to follow controlling Supreme Court caselaw—notwithstanding its own prior rulings—and because we know LKQ understood its *KSR* contentions were not futile, since it chose to present one of them to the Board.

Again, then, I would hold that LKQ forfeited the *KSR* argument it urges on us.

## II

Because my colleagues find no forfeiture, they address the impact of *KSR* on our existing obviousness doctrine with respect to design patents, concluding "it is not clear the Supreme Court has overruled *Rosen* or *Durling*."  Maj. Op. 13.  I agree it is not clear.

Despite the lack of clarity, I think it worth noting that there is, at minimum, substantial tension between the Supreme Court's holding in *KSR* and our *Durling* test.  In *KSR*, 550 U.S. at 419, the Supreme Court explained that "when a court transforms [a] general principle into a rigid rule that limits the obviousness inquiry . . . it errs."  *See also id.* at 415 ("Throughout this Court's engagement with

the question of obviousness, our cases have set forth an expansive and flexible approach . . . ."). A strong case can be made that the step one *Rosen* reference requirement is precisely the type of limiting, rigid rule *KSR* faulted: if a design patent challenger fails to identify a *Rosen* reference, the obviousness analysis stops. In this way, the *Durling* test can prevent the consideration of a combination of prior art references. *See Durling*, 101 F.3d at 103 ("*Before* one can begin to combine prior art designs, however, one *must* find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design.") (emphasis added; internal quotation marks omitted). It also may deprive the tribunal of the opportunity to consider other factors that often drive the analysis in utility patent obviousness cases. This all seems to conflict with *KSR*'s instruction that "[o]ften, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art." 550 U.S. at 418.

Similarly, *KSR* says that "a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* But the requirement to identify a *Rosen* reference, and the consequence that the analysis proceeds no further if the challenger fails to do so, appears to prevent consideration of the ordinary designer's creativity, at least in cases like the one before us now.

Additional rigidity that might not be appropriate in a post-*KSR* world arguably exists at step two of the *Durling* test, which limits consideration solely to prior art references that are "so related" to the identified *Rosen* reference that "the appearance of certain ornamental features in one would suggest the application of those features to the other." *Durling*, 101 F.3d at 103 (internal citations omitted). This is essentially the *KSR* challenge that LKQ presented to the Board yet only presses generally on appeal.

*See* Op. Br. 51 ("[T]his restrictive, formulaic test, and *particularly* its requirement that the court identify a single prior art reference . . . is inconsistent with *KSR*.") (emphasis added); *see also KSR*, 550 U.S. at 421 ("Rigid, preventative rules that deny factfinders recourse to common sense, however, are neither necessary under our case law nor consistent with it.").[5]

Accordingly, I can see how one might conclude that *KSR* implicitly overrules the *Durling* test. Alternatively, I can also see how one might persuasively argue that design patents are so fundamentally different than utility patents that they warrant their own test for obviousness, a test that the Supreme Court would likely allow to coexist alongside the *KSR* test we apply to utility patents. Judge Lourie, in his additional views, admirably sets out how such a conclusion might be reached.

---

[5]    Another potential problem in our design patent obviousness test concerns claim construction. At least as the Board applied the law here, it imposed on LKQ the obligation to articulate "'the correct visual impression created by the patented design as a whole'" and held that LKQ's failure to do so was itself a sufficient basis on which to reject LKQ's obviousness challenge. J.A. 50-51 (quoting *Durling*, 101 F.3d at 103). Neither the Board—nor GM, in arguing for affirmance—cites any of our own cases supporting the proposition that a patent challenger's failure to articulate the correct construction of a design patent is a dispositive failing. If that is a correct understanding of our caselaw, an issue on which I do not today express a view, it would certainly be an additional rigidity reserved only for design patents. No one would argue, I think, that *KSR* or our obvious standards for utility patents hold that an obviousness challenge fails at the point at which the challenger proposes an incorrect claim construction.

This case does not require us to decide the continuing vitality of the *Durling* test post-*KSR* because, as I have explained, LKQ forfeited the only specific challenge it makes here to that test—the step one *Rosen* reference requirement—by not presenting it to the Board.  If (or when) we have to confront this issue, it should be in a case in which we have thorough and thoughtful briefing on the differences between design and utility patents, and most preferably a case in which we have the benefit of the tribunal of first instance's analysis.  All of this, of course, is lacking here.

## III

In sum, in my view, LKQ forfeited the *KSR* issue it now raises on appeal.  I would not reach the question of whether the Supreme Court's *KSR* decision overruled the first part of our *Durling* test, *i.e.*, our *Rosen* reference requirement. Instead, I would proceed directly from finding the issue forfeited to considering whether the Board's application of the *Durling* test was supported by substantial evidence, which I agree it was.  For these reasons, I join the majority's opinion except for parts III(A) and III(B) and I concur in affirming the Board.

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2021-2348

**Short Case Caption:** LKQ Corporation, et al. v. GM Global Technology Operations LLC

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  3,887  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 03/23/2023

Signature: /s/ Barry F. Irwin

Name: Barry F. Irwin