21-2348

# United States Court of Appeals for the Federal Circuit

LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,
*Appellants*

v.

GM GLOBAL TECHNOLOGY OPERATIONS LLC,
*Appellee*

Appeal from the United States Patent and Trademark Office Patent Trial and Appeal Board in IPR2020-00534
(JJ. Scott A. Daniels, Grace K. Obermann, and Christopher G. Paulraj)

**TYC BROTHER INDUSTRIAL CO., LTD. AND TYC AMERICAS' *AMICI CURIAE* BRIEF IN SUPPORT OF APPELLANTS' REQUEST FOR REHEARING EN BANC**

Christopher T. Holland
Lori L. Holland
HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Telephone: 415-200-4980
Fax: 415-200-4989

*Attorneys for Amici Curiae TYC Brother Industrial Co., Ltd. and TYC Americas*

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2021-2348

**Short Case Caption** LKQ Corporation et al. v. GM Global Tech. Oper. LLC

**Filing Party/Entity** TYC Americas

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/06/2023

Signature: /s/ Christopher T. Holland

Name: Christopher T. Holland

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| TYC Americas | | TYC Brother Industrial Co. Ltd.;<br>Innova Holding Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2021-2348

**Short Case Caption** LKQ Corporation et al. v. GM Global Tech. Oper. LLC

**Filing Party/Entity** TYC Brother Industrial Co., LTD

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/06/2023

Signature: /s/ Christopher T. Holland

Name: Christopher T. Holland

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☑ None/Not Applicable |
| TYC Brother Industrial Co. Ltd. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST

TABLE OF AUTHORITIES .......... ii

STATEMENT OF INTEREST .......... 1

INTRODUCTION .......... 2

ARGUMENT .......... 4

I. INVALID AUTOMOTIVE DESIGN PATENTS BLOCK CONSUMER ACCESS TO AFFORDABLE AFTERMARKET REPAIR PARTS .......... 5

II. FAILURE TO GRANT EN BANC REVIEW WOULD LIKELY RESULT IN FAR REACHING HARM TO CONSUMERS BY STIFLING ACCESS TO AFTERMARKET REPAIR PARTS .......... 8

CONCLUSION .......... 11

CERTIFICATE OF COMPLIANCE .......... 12

# TABLE OF AUTHORITIES

## CASES

*Durling v. Spectrum Furniture Co.*,
101 F.3d 100 (Fed. Cir. 1996) ....................3, 4, 6

*In re Rosen*,
673 F.2d 388 (C.C.P.A. 1982) ....................3, 4, 6

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................2, 3, 5, 6, 11

## STATUTES

35 U.S.C. § 103 ....................2

## OTHER AUTHORITIES

Automotive Body Parts Association, *Consumer Issues in the Collison Repair Industry* (https://www.regulations.gov/comment/FTC-2019-0013-0088) ............9

Sarah Burstein, *Is Design Patent Examination Too Lax?*, 33 Berkeley Tech. L.J. 607 (2018) (https://ssrn.com/abstract=3329899)....................4, 6

Dennis D. Crouch, *A Trademark Justification for Design Patent Rights* (August 10, 2010), Harvard Journal of Law and Technology, Vol. 24, 2010, University of Missouri School of Law Legal Studies Research Paper No. 2010-17 (https://ssrn.com/abstract=1656590) ....................4

Joshua J. Du Mont, *A Non-Obvious Design: Reexamining the Origins of the Design Patent Standard,* Gonzaga Law Review, Vol. 45, No. 3 (2010) (https://ssrn.com/abstract=1461390) ....................................................................3

Exec. Order No. 14036, 86 Fed. Reg. 36987 (July 9, 2021) (https://www.govinfo.gov/content/pkg/FR-2021-07-14/pdf/2021-15069.pdf).....6

FTC, *Nixing the Fix: An FTC Report to Congress on Repair Restrictions* (May 2021) (https://www.ftc.gov/reports/nixing-fix-ftc-report-congress-repair-restrictions) ..........................................................................................................9

H.R.3364 – Smart Act, 117th Congress (2021-2022) (https://www.congress.gov/bill/117th-congress/house-bill/3664/text) .................5

Insurance Information Institute, *Monopoly and the Generic Auto Parts Controversy - An Economic Perspective*, (https://www.iii.org/presentation/monopoly-and-the-generic-auto-parts-controversy-an-economic-perspective-073113#top) ............................................8

Aaron Perzanowski, *White Paper on the Right to Equitable and Professional Auto Industry Repair (REPAIR) Act, H.R. 6570, 117th Congress* (September 2022) (https://carcoalition.com/wp-content/uploads/2020/07/Repair-Act-white-paper-09-13-2022-1.pdf) .......................................................................8, 9

Jason Rantanen, *The Federal Circuit's New Obviousness Jurisprudence: An Empirical Study*, 16 Stan. Tech. L. Rev. 709 (2013) (https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2210049) .........................5

Joshua D. Sarnoff, *Updated White Paper on Protecting the Consumer Patent Law Right of Repair and the Aftermarket for Exterior Motor Vehicle Repair Parts: The SMART Act, H.R. 1879, 117th Congress* (September 2022), (https://carcoalition.com/wp-content/uploads/2020/07/Sarnoff-SMART-Act-White-Paper-Final-002-1.pdf) ........................................................................2, 9

## STATEMENT OF INTEREST[1]

Founded in 1964, TYC Brother Industrial Co., Ltd. designs, manufacturers, and sells automotive aftermarket replacement parts, including exterior parts such as headlamps, taillamps, and side mirrors. Its subsidiary, TYC Americas, is the North American distributor of TYC products. (TYC Brother Industrial Co., Ltd. and TYC Americas are referred to collectively herein as "*Amici*".) *Amici* sell their products primarily to do-it-yourself (DIY) car owners via multiple well-known retail automotive aftermarket outlets such as O'Reilly and AutoZone, as well as to independent automotive repair shops. Those direct channels of trade provide consumers with a reliable, convenient, and affordable alternative to having their cars repaired at a dealership using more expensive original equipment manufacturer ("OEM") parts.

However, for more than a decade, automobile manufacturers have been using design patents to eliminate fair and reasonable competition in the auto repair parts industry. Specifically, several car companies have been applying for and

[1] Counsel for *Amici* have been advised that all parties have consented to the filing of this brief. No party, party's counsel, or person other than the identified amici authored the brief in whole or in part or contributed money intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(b)(4), (a)(4)(E). *Amici* have no direct interest in the outcome of this appeal.

receiving design patents on each individual, exterior, repair part.[2] When car companies assert those design patents, aftermarket parts suppliers rely on invalidity defenses such as obviousness.

Invalid automotive design patents stifle competition, impede consumers' access to affordable repair parts, and generally undermine the legitimacy of the patent system. *Amici* have a significant interest in ensuring that the statutory limit to the patent monopoly set forth in 35 U.S.C. § 103 is enforced in accordance with Supreme Court precedent, including *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), and can provide this Court with unique insight on the potential industry-wide consequences should the Court deny en banc review.

## INTRODUCTION

Design patents are typically challenged on various invalidity theories, including obviousness under 35 U.S.C. § 103. In *KSR*, the Supreme Court rejected a rigid approach to obviousness that relies on bright-line rules or mandatory formulas. However, as noted by Appellants, this Court has approached design patent obviousness with just the sort of rigid, mandatory formula that the Supreme

[2] Joshua D. Sarnoff, *Updated White Paper on Protecting the Consumer Patent Law Right of Repair and the Aftermarket for Exterior Motor Vehicle Repair Parts: The SMART Act, H.R. 1879, 117th Congress*, at 9 (September 2022), (https://carcoalition.com/wp-content/uploads/2020/07/Sarnoff-SMART-Act-White-Paper-Final-002-1.pdf) (analyzing design patent filing trends by major car manufacturers from 1990 to 2022).

Court rejected in *KSR* by imposing the *Rosen/Durling* framework uniquely upon design patents. That framework requires identification of a single, primary prior art reference with "basically the same" design characteristics as the claimed design. *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982). If (and only if) there is such a primary reference, then another reference may be used to modify the primary reference if that reference is "so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Durling v. Spectrum Furniture Co*., 101 F.3d 100, 103 (Fed. Cir. 1996) (brackets in original).[3]

The *Rosen*/*Durling* framework is an extra-statutory standard that this Court, and in turn the U.S. Patent and Trademark Office ("USPTO") and lower courts, apply, with the practical effect being a near absolute bar to finding obvious design patents invalid. In fact, as at least one legal commentator has observed, this Court's current design patent jurisprudence "has made it nearly impossible for the USPTO to reject any design patent claim—regardless of how ordinary, banal, or

[3] *See, e.g*., Joshua J. Du Mont, *A Non-Obvious Design: Reexamining the Origins of the Design Patent Standard*, Gonzaga Law Review, Vol. 45, No. 3, p. 531, at 609 n. 483 (2010) (https://ssrn.com/abstract=1461390) ("Assuming they are strictly applied, the primary reference requirement and the requirement that the references be so similar ornamentally that they suggest the application of reciprocal features, would both likely be overruled as mandatory requirements under *KSR*.").

functional the claimed design might be."[4] Moreover, as *Amici* explain more fully below, in this industry in particular the Court's *Rosen*/*Durling* obviousness standard has the practical effect of unnecessarily stifling the aftermarket parts industry and thus harms consumers, who are required to pay monopoly prices for auto repair parts because of invalid patents.

Here, Appellants' request for en banc review seeks to eliminate the *Rosen*/*Durling* formula for invalidating a design patent as obvious, so that design patents are treated like every other type of patent. En banc review should be granted so that this Court can correct the obviousness standard in this important area of patent law.

## ARGUMENT

Appellants' request for en banc review is important not only because it identifies a precedent-setting question of exceptional importance, but also because denial of the request would significantly impact the ability to bring more affordable automobile repair parts to consumers. Specifically, should the Court deny en banc review and allow the *Rosen*/*Durling* restrictive obviousness formula

[4] Sarah Burstein, *Is Design Patent Examination Too Lax?*, 33 Berkeley Tech. L.J. 607, 610-611 (2018) (https://ssrn.com/abstract=3329899) (citing Dennis D. Crouch, *A Trademark Justification for Design Patent Rights* (August 10, 2010), Harvard Journal of Law and Technology, Vol. 24, 2010, University of Missouri School of Law Legal Studies Research Paper No. 2010-17, at 19 (https://ssrn.com/abstract=1656590) (the USPTO has "abdicat[ed] … its gatekeeper function in the realm of design patents.")).

to stand, car companies will continue their campaign to eliminate competition in the repair parts industry by obtaining and asserting low quality design patents that would otherwise be found obvious under a more flexible approach to the prior art that comports with *KSR*.[5]

The far-reaching harm to consumers caused by lack of competitive alternatives for repair parts has been widely recognized, in terms of increased repair costs and insurance premiums, delayed or forgone repairs, and resultant risks to public safety, as explained in more detail below.

## I. INVALID AUTOMOTIVE DESIGN PATENTS BLOCK CONSUMER ACCESS TO AFFORDABLE AFTERMARKET REPAIR PARTS

Members of Congress have recognized the benefits offered by aftermarket repair parts, as well as the risks presented by OEMs' aggressive design patent enforcement, in presenting to both the 117th and 118th Congress the bipartisan "Save Money on Auto Repair Transportation (SMART) Act," which would reduce the time car manufacturers can enforce design patents on collision repair parts against aftermarket parts suppliers from 14 years to 2.5 years.[6] Likewise, on July

[5] *See, e.g.,* Jason Rantanen, *The Federal Circuit's New Obviousness Jurisprudence: An Empirical Study*, 16 Stan. Tech. L. Rev. 709, 713-714, 737 n. 89 (2013) (https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2210049) (analysis of post-*KSR* Federal Circuit decisions on obviousness of utility patents "suggest[s] a Federal Circuit that is more willing to conclude that the inventions it reviews are obvious.").

[6] *See* H.R.3364 – Smart Act, 117th Congress (2021-2022) (https://www.congress.gov/bill/117th-congress/house-bill/3664/text).

9, 2021, President Biden issued an Executive Order on Promoting Competition in the American Economy, which encourages the FTC to limit OEMs from restricting consumers' ability to use independent repair shops or do DIY repairs.[7]

While these legislative and executive actions are positive developments for consumers and the repair parts industry, unless and until this Court replaces its *Rosen*/*Durling* framework with a more flexible approach, these actions will remain essentially band-aids trying to correct a systemic problem that starts with the USPTO allowing—and then the courts enforcing—design patents that quite plainly do not meet the statutory requirement of non-obviousness.[8]

Importantly, the risk that invalid design patents present to the affordability and supply of auto repair parts is not merely hypothetical. For instance, in January 2023, the U.S. International Trade Commission ("ITC") provided the public with notice that it had found violations of Section 337 under 37 design patents held by Kia and Hyundai directed to headlamps and taillamps, implicating multiple model years of at least 37 Kia and Hyundai car models, and intended to issue exclusion orders to block the aftermarket headlamps and taillamps in question from entering

---

[7] Exec. Order No. 14036, 86 Fed. Reg. 36987 (July 9, 2021) (https://www.govinfo.gov/content/pkg/FR-2021-07-14/pdf/2021-15069.pdf).

[8] *See, e.g.,* Burstein, *supra* note 4 at 617 ("As long as the Federal Circuit keeps requiring such a high degree of visual similarity for primary references, it will be difficult for the USPTO to reject design patent claims as obvious.").

the United States.[9] The ITC found such violations despite Respondents' robust challenges to validity of the Kia/Hyundai patents, including on obviousness grounds. (Respondents in those ITC actions include the current *Amici* and Appellants.)

In response, several aftermarket parts distributors and trade associations—including the American Property Casualty Insurance Association ("APCIA"), which is the primary national trade association for auto insurers, and the Certified Automotive Parts Association ("CAPA"), the non-profit certification organization for automotive crash parts)—submitted public interest statements to the ITC outlining the harm that any exclusion order would cause to consumers, public safety, the U.S. economy, and the aftermarket parts industry.[10] Various industry observers and stakeholders have also voiced similar concerns to Congress and the FTC while providing support for right-to-repair legislation such as the SMART Act. The collective concerns of those parties are discussed in more detail below.

---

[9] *Certain Replacement Automotive Lamps*, Inv. No. 337-TA-1291, Request for Submissions on the Public Interest (January 25, 2023) (EDIS DocId 788550); *Certain Replacement Automotive Lamps II*, Inv. No. 337-TA-1292, Request for Submissions on the Public Interest (January 31, 2023) (EDIS DocId 789032).

[10] *See, e.g., Certain Replacement Automotive Lamps*, Inv. No. 337-TA-1291, EDIS DocIds 791490; 791116; 791083; 791014; 790997; 790940; 790933; 790861; 790854; 790432.

## II. FAILURE TO GRANT EN BANC REVIEW WOULD LIKELY RESULT IN FAR REACHING HARM TO CONSUMERS BY STIFLING ACCESS TO AFTERMARKET REPAIR PARTS

According to APCIA, "American consumers have benefited greatly from lower auto repair costs, and consequently lower insurance costs, as a result of the availability of competitive repair parts, also referred to as aftermarket parts or generic parts."[11] Allowing OEMs to eliminate aftermarket parts—through, for example, aggressive enforcement of low quality, obvious patents—would significantly increase consumer costs:

> The elimination of competition from the crash parts business could easily lead to price increases of 50 to 100 percent or more. The higher cost for parts will also lead directly to more cars being declared constructive total losses. This is because higher repair costs create a disincentive to effect repairs. Insurers will simply pay policyholders the actual cash value of the vehicle and, in turn, will have to charge higher premiums to cover the costs of the increased number of total losses.[12]

As one industry observer has noted, "[w]ithout accessible, affordable, and reliable repair, vehicle lifespans would suffer considerably – a loss that could cost American consumers hundreds of billions of dollars annually."[13]

---

[11] *See id.*, EDIS DocID 79140 (Public Interest Comments) (March 1, 2023).

[12] Insurance Information Institute, *Monopoly and the Generic Auto Parts Controversy - An Economic Perspective*, at 3 (https://www.iii.org/presentation/monopoly-and-the-generic-auto-parts-controversy-an-economic-perspective-073113#top).

[13] Aaron Perzanowski, *White Paper on the Right to Equitable and Professional Auto Industry Repair (REPAIR) Act, H.R. 6570, 117th Congress*, at 11 (September 2022) (https://carcoalition.com/wp-content/uploads/2020/07/Repair-

Similarly, in its Report to Congress on repair restrictions, the FTC received evidence from the Automotive Body Parts Association ("ABPA") "that car manufacturers' use of intellectual property laws results in rising costs for repairs and repair parts."[14] Indeed, the FTC noted that empirical data shows that "'[t]he misuse of design patents on repair parts to block competition from producing equivalent parts is creating an environment with less competition and a significant pricing increase in the marketplace.'"[15] Notably, research shows that once an OEM acquires a patent for a repair part, the price for that OEM part increases dramatically.[16]

Moreover, since several components of a vehicle are often damaged in an accident, an OEM design patent eliminating competition for even just one of those components—thereby forcing a consumer to use a dealer's shop for all of the

---

Act-white-paper-09-13-2022-1.pdf); *see also id*. at 13-14 ("… firms like General Motors boast profit margins of more than 30% on aftermarket parts …. [t]his trend helps explain why, according to the United States Bureau of Labor Statistics, the price of vehicle repair increased by more than 60 percent from 2000 to 2017.)"; *see also* Sarnoff, *supra* note 1 at 2 ("Typically, these 'aftermarket' parts have been up to 50% less expensive than OEM parts, and the existence of that competition in the parts market has also induced OEMs to lower the costs of OEM parts to consumers by about 8%.").

[14] FTC, *Nixing the Fix: An FTC Report to Congress on Repair Restrictions*, at 22 (May 2021) (https://www.ftc.gov/reports/nixing-fix-ftc-report-congress-repair-restrictions) (citing Automotive Body Parts Association, *Consumer Issues in the Collison Repair Industry* ("ABPA Presentation"), at 18-19) (https://www.regulations.gov/comment/FTC-2019-0013-0088).

[15] *Id.* (quoting ABPA research data).

[16] ABPA Presentation, *supra* note 14 at 19.

repairs—would drive sales of other non-patented replacement parts by that dealer, potentially increasing prices for those other non-patented components as well.

Higher parts costs also result in higher repair estimates. If a repair estimate exceeds the value of the vehicle, it is considered a total loss and not worth repairing. As a result, "consumers would be harmed both by having to pay higher repair costs and by having to purchase a replacement vehicle, rather than being able to have their own vehicles repaired in a cost effective matter."[17]

Finally, the elimination of readily available and affordable aftermarket repair parts could cause consumers to delay or forgo needed repairs, which clearly creates a safety risk for themselves as well as other drivers. Such concerns are particularly acute for rural Americans, who often have limited access to OEM repair facilities and rely exclusively on aftermarket parts. And without an aftermarket parts market, customers would be left with no other source of repair part should dealers lack inventory of OEM parts, whether due to supply chain issues or because the OEM no longer makes the car model in question.

In sum, consumer access to affordable auto repair parts expands consumer choice, makes repair and/or replacement of these parts less costly for drivers and insurers, and enhances competition in the automobile repair parts market. Those

---

[17] *Certain Replacement Automotive Lamps*, Inv. No. 337-TA-1291, EDIS DocID 79140 (Public Interest Comments) (March 1, 2023).

economic benefits would remain at great risk from invalid patents unless the Court grants en banc review and aligns the obviousness standard for design patents with the flexible and common sense approach mandated by the Supreme Court in *KSR*.

## CONCLUSION

For the forgoing reasons, the Court should grant rehearing en banc.

Dated: April 6, 2023

Respectfully submitted,

/s/ Christopher T. Holland
Christopher T. Holland
Lori L. Holland
HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Telephone: 415-200-4980
Fax: 415-200-4989

*Attorneys for Amici Curiae TYC Brother Industrial Co., Ltd. and TYC Americas*

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Federal Circuit Rule 35(g), the foregoing Brief was prepared in MS Word, is proportionally spaced, has a typeface of 14-point Times New Roman, and contains 2,408 words, excluding those sections identified in Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

Dated: April 6, 2023

/s/ Christopher T. Holland
Christopher T. Holland