**CASE NO. 2021-2348**

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

**LKQ CORP. & KEYSTONE AUTOMOTIVE INDUSTRIES, INC.**

*Appellants,*

v.

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**

*Appellee.*

Appeal from the United States Patent and Trademark Office Patent Trial and Appeal Board in PGR2020-00055 (JJ. Ken B. Barrett, Scott A. Daniels, and Robert L. Kinder)

# BRIEF OF AMICI CURIAE INTELLECTUAL PROPERTY LAW PROFESSORS IN SUPPORT OF APPELLANTS' REQUEST FOR REHEARING EN BANC

Phillip R. Malone
JUELSGAARD INTELLECTUAL PROPERTY AND INNOVATION CLINIC
Mills Legal Clinic at Stanford Law School
559 Nathan Abbott Way
Stanford, California 94305-8610
Tel: (650) 724.1900
Jipic@law.stanford.edu

*Counsel for Amici Curiae*

## CERTIFICATE AS TO PARTIES, CONSENT TO FILE, RULINGS, RELATED CASES, AND SEPARATE BRIEFING

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for *amici curiae* certifies that:

1. The full names of the amici I represent are: Intellectual Property Law Professors (See Attachment A).

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) I represent is: N/A.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the amici curiae I represent are: None.

4. The names of all law firms and the partners or associates that appeared for the amici I represent or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are: None.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal: LKQ Corp., et al. v. GM Global Technology Operations LLC, Fed. Cir. Case No. 2022-1253.

6. All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases is: None.

April 6, 2023

/s/ Phillip R. Malone
Phillip R. Malone
Counsel for Amici Curiae
JUELSGAARD INTELLECTUAL PROPERTY AND INNOVATION CLINIC
Mills Legal Clinic at Stanford Law School

## ATTACHMENT A TO CERTIFICATE OF INTEREST

**Professor Mark Bartholomew**
University at Buffalo School of Law
The State University of New York

**Professor Amy Landers**
Thomas R. Kline School of Law
Drexel University

**Professor Ana Santos Rutschman**
Charles Widger School of Law
Villanova University

**Professor Sharon K. Sandeen**
Mitchell Hamline School of Law

**Professor Joshua D. Sarnoff**
DePaul University College of Law

**TABLE OF CONTENTS**


CERTIFICATE AS TO PARTIES, CONSENT TO FILE, RULINGS, RELATED CASES, AND SEPARATE BRIEFING ..... i

ATTACHMENT A TO CERTIFICATE OF INTEREST ..... iii

TABLE OF AUTHORITIES ..... v

INTEREST OF AMICI CURIAE ..... 1

I. Congress Foreclosed Design Patent Doctrinal Exceptionalism. ..... 1

II. This Court Should Conform Its Design Patent Doctrines to the PHOSITA's (DOSA's) Perspective. ..... 3

III. This Court Should Conform Its Design Patent Obviousness Doctrine to *KSR's* Treatment of the *PHOSITA's* Creativity. ..... 7

CONCLUSION ..... 9

ATTACHMENT A – LIST OF AMICI

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Thermplastics Co. v. Faytex Corp.*,
974 F.2d 1279 (Fed. Cir. 1992) (en banc) (Rich, J., dissenting from the denial of rehearing en banc) .......... 6

*In re Clay*,
966 F.2d 656 (Fed. Cir. 1992) .......... 8

*Durling v. Spectrum Furniture Co.*,
191 F.3d 100 (Fed. Cir. 1996) .......... 6, 7, 10

*Ecolochem, Inc. v. Southern California Edison Co.*,
227 F.3d 1361 (Fed. Cir. 2000) .......... 8

*Egyptian Goddess Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) (en banc) .......... 4, 5

*Gorham v. White*,
81 U.S. (14 Wall.) 511 (1871) .......... 4, 5

*Int'l Seaway Trading Corp. v. Walgreen's Corp.*,
589 F.3d 1233 (Fed. Cir. 2009) .......... 5

*KSR International Co. v. Teleflex, Inc.*,
550 U.S. 398 (2007) .......... 7, 8, 9

*In Re Nalbandian*,
661 F.2d 1214 (C.C.P.A. 1981) (en banc) .......... 5

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) .......... 3

*In re Rosen*,
673 F.2d 388 (C.C.P.A. 1982) (en banc) .......... 6, 7, 8, 10

*Smith v. Whitman Saddle*,
148 U.S. 674 (1893) .......... 4, 5

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,
520 U.S. 17 (1997) .......... 4

**Statutes**

35 U.S.C. § 103 .......... 3, 5

35 U.S.C. § 112(a) .......... 3

35 U.S.C. § 171(b) .......... 2, 3

35 USC .......... 2

Act of Aug. 29, 1842, Ch. 263, § 3, 5 Stat. 543-44 (1842) .......... 2

**Other Authorities**

Howard T. Markey, Talk given April 26, 1983 (quoted in Ronald D. Hantman, *Why Not the Statute? Revisited,* 83 J. Pat. & Trademark Off. Soc'y 685 (2001) .......... 2

Jason J. DuMont & Mark D. Janis, *The Origins of American Design Patent Protection,* 88 IND. L.J. 837 (2013) .......... 1

Mark Bartholomew, *Nonobvious Design,* 108 IOWA L. REV. 601, 604-05 (2023) .......... 6

Walter Isaacson, *Steve Jobs* (2011) .......... 5

U.S. Const., Art. I, § 8, cl. 8 .......... 3

## INTEREST OF AMICI CURIAE

Amici Curiae are the intellectual property law professors at law schools in the United States listed in Attachment A. They regularly study, teach and write about patent law, including design patent law. They have no personal interest in the outcome of this case. But they do share a professional interest in assuring the conceptual clarity and proper functioning of the patent laws so as to serve the public interest. In particular, they are concerned about the over-extension of protection based on conceptual mistakes, however made and however well-meaning.[1]

### I. Congress Foreclosed Design Patent Doctrinal Exceptionalism.

Congress chose to place the protection of aesthetic advances for physically useful articles of manufacture under the patent laws. Jason J. DuMont & Mark D. Janis, *The Origins of American Design Patent Protection,* 88 IND. L.J. 837, 847-74 (2013). But Congress simultaneously made clear that all the same utility patent law requirements were to apply to designs, except where Congress had explicitly provided otherwise: "all the regulations and provisions which now apply to the obtaining and protection of patents not inconsistent with the provisions of this act

[1] All parties have received notice of the filing of this brief. Counsel for Appellants indicated they consent to the filing of this brief; counsel for Appellee indicated they do not oppose the motion. No party or party's counsel authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting this brief. No person other than amici or their counsel contributed money that was intended to fund preparing or submitting this brief.

shall apply to [design patents].” Act of Aug. 29, 1842, Ch. 263, § 3, 5 Stat. 543-44 (1842).

Congress preserved this language essentially unmodified in every major revision to the design patent law. The most recent formulation is even more explicit in rejecting design patent exceptionalism: “The provisions of this title relating to patents for inventions shall apply to patents for designs, *except as otherwise provided*.” 35 U.S.C. § 171(b) (emphasis added).

Thus, except where *Congress* has explicitly specified otherwise, there should be no “exceptional” approach to design patent law doctrines that render them different from utility patent law doctrines. Congress, not the Supreme Court, has imposed this requirement of consistency. As Professors DuMont and Janis have explained, “[b]y retaining the incorporation clause as utility patent law diverged from copyright law, Congress has forced blind obedience to a principle that even [Patent Commissioner] Ellsworth might not have supported.” DuMont & Janis, *supra,* at 874. Unfortunately, sometimes blind obedience is required. As the former Chief Judge of this court used to say, “When all else fails, read the instructions…. When the patent statute (35 USC) is present, the advice has been far too often ignored.” Howard T. Markey, Talk given April 26, 1983 (quoted in Ronald D. Hantman, *Why Not the Statute? Revisited,* 83 J. Pat. & Trademark Off. Soc’y 685, 685 (2001).

## II. <u>This Court Should Conform Its Design Patent Doctrines to the PHOSITA's (DOSA's) Perspective.</u>

Utility patent law doctrines are to be determined by reference to the hypothetical "person having ordinary skill in the art to which the claimed invention pertains" (the "PHOSITA" or "POSA"). 35 U.S.C. § 103. *See also, e.g.,* 35 U.S.C. § 112(a) ("any person skilled in the art to which it pertains, or with which it is most nearly connected"); *Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) ("the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art"). Given Section 171(b), *all* design patent law doctrines *should be* determined by reference to the "Designer of Ordinary Skill in the Art" ("DOSA") – really to a PHOSITA in designer's clothing.

The reason to focus on the PHOSITA/DOSA, moreover, is because the purpose of the patent laws is to "promote the Progress of … useful Arts." U.S. Const., Art. I, § 8, cl. 8. *Cf. id.* ("promote the Progress of Science"). Thus, patent laws (even for designs) should focus on technological or aesthetic *advancement,* not on protecting consumers or competitors from marketplace confusion. The latter is the purpose and function of the trademark and unfair competition laws.

Yet, for design patent infringement and novelty doctrines, the Supreme Court and this Court have improperly employed the perspective of the "ordinary observer," seeking to protect that person from "confusion." This departs from Congress'

explicit statutory command to follow utility patent law principles. The Supreme Court made this mistake in its first design patent case, *Gorham v. White,* 81 U.S. (14 Wall.) 511 (1871), when holding that design patent *infringement* is to be based on the confusion of ordinary observers, rather than on factual identity with the patented design (or, under the doctrine of equivalents, on sufficient factual similarity to the patented design, *see, e.g., Warner-Jenkinson Co. v. Hilton Davis Chemical Co*., 520 U.S. 17, 24-30, 39-40 (1997)). As the Court held in *Gorham*, "identity of appearance" or "sameness of effect upon the eye" to an "ordinary observer" is the test for design patent infringement, since "human ingenuity has never yet produced a design, in all its details, exactly like another, so like that an expert could not distinguish them." 81 U.S. (14 Wall.) at 527.

Based on *Gorham,* the Supreme Court in *Smith v. Whitman Saddle*, 148 U.S. 674 (1893), extended the ordinary observer perspective to the statutory novelty requirement. "'The true test of identity of design is sameness of appearance,-in other words, sameness of effect upon the eye; that it is not necessary that the appearance should be the same to the eye of an expert, and that the test is the eye of an ordinary observer….'" *Id.* at 679-80 (citation omitted).

Similarly, this court has adopted an "ordinary observer" test for both infringement and novelty. *See Egyptian Goddess Inc. v. Swisa, Inc.,* 543 F.3d 665, 669-79 (Fed. Cir. 2008) (en banc) (rejecting the "non-trivial advance" "point of

novelty" test for assessing factual similarity for infringement in favor of the *Gorham* "ordinary observer" test); *Int'l Seaway Trading Corp. v. Walgreen's Corp.,* 589 F.3d 1233, 1240 (Fed. Cir. 2009) ("In light of Supreme Court precedent and our precedent holding that the same tests must be applied to infringement and anticipation, and our holding in *Egyptian Goddess* . . . we now conclude that the ordinary observer test must logically be the sole test for anticipation as well."). But, given the express language in Section 103, this court has retained the PHOSITA's perspective for nonobviousness. *See In Re Nalbandian,* 661 F.2d 1214, 1215-17 (C.C.P.A. 1981) (en banc) (overruling *In re Laverne*, 356 F.2d 1003 (C.C.P.A. 1966)).

These mistakes fail to address the patent law nature of design patent doctrine, and whether and when a design constitutes a creative advance in aesthetics that is being appropriated by a third party. Whether or not they know of the neurobiological bases for the aesthetic responses achieved in consumers or other viewers, DOSAs (like other PHOSITAs) are invariably seeking to achieve particular (perceptual) effects by employing different "shapes" that have different aesthetic "utility." *Whitman Saddle,* 148 U.S. at 681. *See generally, e.g.,* WALTER ISAACSON, STEVE JOBS (2011). In contrast, at least one opinion below incorrectly treated designs as exceptional, by classifying design as fine art rather than as useful art.

> [T]he considerations involved in determining obviousness are different in design patents. Obviousness of utility patents requires considerations such as unexpected properties, utility, and function. Design patents, on the other hand, relate to considerations such as the overall appearance,

> visual impressions, artistry, and style of ornamental subject matter. *Ornament is in the eyes of the beholder. Functional utility is objective.*

Dkt. 45, ECF No. 18 (emphasis added). *But see, e.g.,* Mark Bartholomew, *Nonobvious Design,* 108 IOWA L. REV. 601, 604-05 (2023) (discussing the neurobiology of aesthetics).

It would be highly controversial for this court to refuse to follow the Supreme Court's erroneous precedent in adopting the "ordinary observer" test for design patent infringement and novelty, even if this court is authorized to do so because those precedents are clearly contrary to superior statutory command. *Cf., e.g., Atl. Thermplastics Co. v. Faytex Corp.,* 974 F.2d 1279, 1281 (Fed. Cir. 1992) (en banc) (Rich, J., dissenting from the denial of rehearing en banc) ("'A[n earlier panel] decision that fails to consider [superior] Supreme Court precedent does not control if the court determines that the prior panel would have reached a different conclusion if it had considered controlling precedent.'") (citation omitted).

But this court *can* without hesitation reverse its *own* erroneous precedents for nonobviousness, which misunderstand the nature of designs, of designing, and of the DOSA's creativity. This Court should avoid perpetuating conceptual errors that result in exceptional treatment for designs, as Congress has foreclosed such treatment and the Supreme Court has *not* required it.

It is particularly inappropriate to preserve the *In re Rosen,* 673 F.2d 388 (C.C.P.A. 1982) (en banc), and *Durling v. Spectrum Furniture Co.*, 191 F.3d 100 (Fed. Cir. 1996), precedents (collectively, the *Rosen* approach). The Supreme Court

in *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007), reversed precisely the same kinds of erroneous approaches (as in *Rosen* and *Durling*) to a PHOSITA's (DOSA's) skill and creativity that underlay this court's pre-*KSR* approach to utility patent nonobviousness doctrine.

## III. **<u>This Court Should Conform Its Design Patent Obviousness Doctrine to *KSR's* Treatment of the *PHOSITA's* Creativity.</u>**

This brief notes only two significant "exceptional" departures of the *Rosen* approach to design patents from that of *KSR* for utility patents. The first is to require starting with a single, prior art reference "the design characteristics of which are basically the same as the claimed design." *Rosen,* 673 F.2d at 391. The second is that "secondary references may *only* be used to modify the primary reference if they are '*so related* [to the primary reference] that the appearance of certain ornamental features in one *would suggest* the application of those features to the other.'" *Durling,* 191 F.3d at 103 (emphasis added and citation omitted).

First, *KSR* rejected precisely the same constricted "teaching, suggestion, or motivation" ("TSM") approach of this court in *Durling*, which had required a "suggestion" in the prior art itself to find obviousness. "The obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation, or by overemphasis on the importance of published articles and the explicit content of issued patents." *KSR,* 550 U.S. at 419. Indeed, "[t]he diversity of inventive pursuits and of modern technology counsels against limiting the analysis

in this way. In many fields . . . it often may be the case that market demand, rather than scientific literature, will drive *design* trends." *Id*. (emphasis added).

Further, the Supreme Court in *KSR* rejected any requirement that modification (by combining disparate prior art elements) occur in any particular order, starting with a "primary" reference. Prior to *KSR,* this court had decided *Ecolochem, Inc. v. Southern California Edison Co.,*227 F.3d 1361 (Fed. Cir. 2000), in which it sought to prevent "blueprinting" (combining multiple prior art elements) in an effort to combat potential "hindsight bias." But *KSR* instead found it "[c]ommon sense. . . that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." 550 U.S. at 420-21. The Court concluded that "[r]igid preventative rules that deny factfinders recourse to common sense" are "neither necessary under our case law nor consistent with it." *Id*.

Second, the "basically the same" design characteristics approach of *Rosen* perpetuates the over-extended "analogous art" approach of *In re Clay,* 966 F.2d 656, 658-59 (Fed. Cir. 1992), which *KSR* also impliedly overturned. The Supreme Court noted that a PHOSITA may start with *any* element in the prior art and may modify it or combine it with other elements in the art to achieve the patented invention, even by seeking to solve *a different problem* than that actually solved by the inventor. "The question is not whether the combination was obvious to the patentee but

whether the combination was obvious to a person with ordinary skill in the art. Under the correct analysis, *any need or problem* known in the field of endeavor at the time of invention and addressed by the patent *can provide a reason for combining the elements* in the manner claimed." *Id.* at 420. The Court continued by noting that it was an error to assume that a PHOSITA would "be led only to those elements of prior art designed to solve the same problem . . . . The idea that a designer hoping to make an adjustable electronic pedal would ignore Asano because Asano was designed to solve the constant ratio problem makes little sense," because a "person of ordinary skill is also a person of ordinary creativity, not an automaton." *Id.* at 425. As a result, "[j]ust as it was possible to begin with the objective to upgrade Asano to work with a computer-controlled throttle, so too was it possible to take an adjustable electronic pedal like Rixon and seek an improvement that would avoid the wire-chafing problem." *Id*. at 420, 425 (emphasis added).

In other words, there is no requirement in utility patent law to start with a "primary reference" in the same field having "basically the same" characteristics, which then can only be modified by "secondary" references in order to prove obviousness for inventions. And the statute requires that utility patent requirements apply to design patents, especially for obviousness.

## **CONCLUSION**

This court should rehear this case en banc and reverse *Rosen* and *Durling*.

April 6, 2023

Respectfully submitted,

By: /s/ Phillip R. Malone

Phillip R. Malone
JUELSGAARD INTELLECTUAL
PROPERTY AND INNOVATION CLINIC
Mills Legal Clinic at Stanford
Law School
559 Nathan Abbott Way
Stanford, CA 94305-8610
Tel: (650) 725-6369
jipic@law.stanford.edu

Counsel for Amici Curiae

# ATTACHMENT A – LIST OF AMICI

**Professor Mark Bartholomew**
University at Buffalo School of Law
The State University of New York

**Professor Amy Landers**
Thomas R. Kline School of Law
Drexel University

**Professor Ana Santos Rutschman**
Charles Widger School of Law
Villanova University

**Professor Sharon K. Sandeen**
Mitchell Hamline School of Law

**Professor Joshua D. Sarnoff**
DePaul University College of Law

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2023, I caused the foregoing BRIEF OF AMICI CURIAE INTELLECTUAL PROPERTY LAW PROFESSORS IN SUPPORT OF APPELLANT to be served by electronic means via the Court's CM/ECF system on all counsel registered to receive electronic notices.

April 6, 2023

/s/ Phillip R. Malone

Phillip R. Malone
JUELSGAARD INTELLECTUAL PROPERTY AND INNOVATION CLINIC
Mills Legal Clinic at Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305-8610
Tel: (650) 725-6369
jipic@law.stanford.edu

*Counsel for Amici Curiae*

**CERTIFICATE OF COMPLIANCE WITH**

**TYPE-VOLUME LIMITATIONS**

I hereby certify as follows:

1. The foregoing BRIEF OF AMICI CURIAE INTELLECTUAL PROPERTY LAW PROFESSORS IN SUPPORT OF APPELLANT complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A), as in effect of this case's docketing date. The brief is printed in proportionally spaced 14-point type, and the brief has 2278 words according to the word count of the word-processing system used to prepare the brief (excluding the parts of the motion exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)).

2. The brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point Times New Roman font.

April 6, 2023

/s/ Phillip R. Malone
Phillip R. Malone

*Counsel for Amici Curiae*