**No. 2021-2348**

# United States Court of Appeals
## for the Federal Circuit

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**

*Appellants,*

v.

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**

*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2020-00534
(JJ. Scott A. Daniels, Grace K. Obermann, and Christopher G. Paulraj)

**BRIEF OF *AMICUS CURIAE* EAGLE EYES TRAFFIC INDUSTRIAL CO., LTD, IN SUPPORT OF APPELLANTS**

ALEXANDER CHEN
**INHOUSE CO. LAW FIRM**
7700 Irvine Center Dr., Suite 800
Irvine, California 92618
Telephone: (714) 932-6659
alexc@inhouseco.com

*Counsel for Amicus Curiae Eagle Eyes Traffic Industrial Co., Ltd.*

**FORM 9. Certificate of Interest**

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2021-2348 |
| **Short Case Caption** | LKQ Corporation, et al. v. GM Global Technology Operations LLC |
| **Filing Party/Entity** | Eagle Eyes Traffic Industrial Co. Ltd. |

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: __08/28/2023__

Signature: /s/ Alexander Chen

Name: Alexander Chen

FORM 9. Certificate of Interest

Form 9 (p. 2)
July 2020

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Eagle Eyes Traffic Industrial Co. Ltd. | None | None |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| Alexander Chen | | |
|---|---|---|

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐   None/Not Applicable          ☐   Additional pages attached

| LKQ Corp., et al. v. GM Global Technology Operations LLC, Fed. Cir. Case No. 2022-1253 | | |
|---|---|---|

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

SUMMARY OF THE ARGUMENT .......................................................2

QUESTIONS PRESENTED...................................................................4

ARGUMENT. ..................................................................................... 5

    A.   *KSR* IMPLICITLY ABROGATED *ROSEN* AND *DURLING* ................................ 6

        1.   There is No Dispute That Obviousness of Utility and Design Patents are Subject to the Same Law ............................. 6

        2.   The Supreme Court in *KSR* Explicitly Rejected the Application of Rigid Rules Limiting the Analysis of Obviousness ........... 7

        3.   The Rigid Limitations Imposed by *Rosen-Durling* are Irreconcilable with *KSR* and Must be Deemed Abrogated Thereby .................................................................. 8

    B.   THE *ROSEN-DURLING* TEST SHOULD BE ELIMINATED ............................... 9

        1.   Each Step of the *Rosen-Durling* Test is Impermissibly Rigid and Limiting ................................................................. 9

        *2.*   *Rosen-Durling* Encourages Monopolization by OEMs by Permitting the Patentability of Obvious Designs ............... 11

            *a.*   Rosen-Durling *Directly Contradicts § 103 and Subsumes it into § 102* ....................................................................11

            *b.*   Rosen-Durling *Interferes with the Court and USPTO's Ability to Prohibit Obvious Designs* ...................... 12

    C.   THE TEST FOR OBVIOUSNESS AS APPLIED TO DESIGN PATENTS SHOULD MIRROR *KSR* BY RETURNING TO CONSIDERATION OF THE ORDINARY DESIGNER ................................................................. 14

    D.   NO PRECEDENT FROM THIS COURT HAS CLARIFIED THE *ROSEN-DURLING* TEST AFTER *KSR* ................................................... 16

    E.   APPLYING *KSR* TO DESIGN PATENTS DECREASES, NOT INCREASES, UNCERTAINTY AS *ROSEN-DURLING* CANNOT BE CONSIDERED "SETTLED" ................................................................ 18

1.    *Rosen*'s "Basically the Same" Primary Reference is Applied Arbitrarily..................................................................18

2.    *Durling's* Verbal Claim Construction Requirement is Confusing and Applied Inconsistently........................................................19

3.    *Durling's* "So Related" Secondary Reference is Uncertai*n* …. 20

4.    The Final Obviousness Determination under *Rosen-During* is No Clearer …………………………………………………… 21

F.    THE DIFFERENCES BETWEEN DESIGN AND UTILITY PATENTS DO NOT MERIT DIFFERENT TESTS FOR DETERMINING OBVIOUSNESS UNDER § 103 ………………………………………………….. 22

CONCLUSION ......................................................................................25

# TABLE OF AUTHORITIES

## Cases

*3form, Inc. v. Lumicor, Inc.*,
678 F. App'x 1002 (Fed. Cir. 2017) ………………………………………… 17, 18

*Apple, Inc. v. Samsung Elecs. Co.*,
678 F.3d 1314 (Fed. Cir. 2012)..................................................... 17, 18, 19, 23

*Application of Bergel*,
292 F.2d 955 (C.C.P.A. 1961) ....................................................................3

*Campbell Soup Co. v. Gamon Plus, Inc.*,
10 F.4th 1268 (Fed. Cir. 2021) *(Campbell II)* …………………………... 17, 18

*Campbell Soup Co. v. Gamon Plus, Inc.*,
939 F.3d 1335 (Fed. Cir. 2019) *(Campbell I)* …………………………… 17, 18

*Dobson v. Dornan*,
118 U.S. 10 (1886)........................................................................10

*Durling v. Spectrum Furniture Co., Inc.*,
101 F.3d 100 (Fed. Cir. 1996)...................................................... *passim*

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008)................................................. …. 20

*Fields v. Schuyler*,
472 F.2d 1304 (D.C. Cir. 1972) ...............................................22

*Foster v. Crossin*,
44 F. 62 (D.R.I. 1890)........................................................................6

*G.B. Lewis Co. v. Gould Prods., Inc.*,
436 F.2d 1176 (2d Cir. 1971)..................................................22

*Golden Eye Media USA, Inc. v. Evo Lifestyle Prod. Ltd.*,
No. 2021-2096, 2022 WL 2232517 (Fed. Cir. June 22, 2022) .............................. 17, 18

*Graham v. John Deere Co. of Kansas City*,
383 U.S. 1 (1966)........................................................................ *passim*

*Hadco Prods., Inc. v. Walter Kidde & Co.*,

462 F.2d 1265 (3d Cir. 1972)............................................................ .... 22

*High Point Design LLC v. Buyer's Direct, Inc.*,
621 F. App'x 632 (Fed. Cir. 2015)...............................................12

*High Point Design LLC v. Buyers Direct, Inc.*,
730 F.3d 1301 (Fed. Cir. 2013)........................................... *passim*

*Hotchkiss v. Greenwood*,
52 U.S. 248 (1850).........................................................................8

*Hudgens v. N.L.R.B.*,
424 U.S. 507 (1976).......................................................................7

*Ideker Farms, Inc. v. United States*,
71 F.4th 964 (Fed. Cir. 2023).......................................................7

*In re Borden*,
90 F.3d 1570 (Fed. Cir. 1996)................................................ 5, 20

*In re Carter*,
673 F.2d 1378 (C.C.P.A. 1982) ............................................ …..19

*In re Cooper*,
480 F.2d 900 (C.C.P.A. 1973) ....................................................21

*In re Nalbandian*,
661 F.2d 1214 (C.C.P.A. 1981) ........................................ *passim*

*In re Owens*,
710 F.3d 1362 (Fed. Cir. 2013)...................................................17

*In re Rosen*,
673 F.2d 388 (C.C.P.A. 1982) .......................................... *passim*

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
589 F.3d 1233 (Fed. Cir. 2009)........................................... 17, 21

*Kolcraft Enterprises, Inc. v. Graco Children's Prod., Inc.*,
927 F.3d 1320 (Fed. Cir. 2019)...................................................17

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)............................................................ *passim*

*MRC Innovations, Inc. v. Hunter Mfg., LLP*,

747 F.3d 1326 (Fed. Cir. 2014) .......................................................... *passim*

*Northrup v. Adams*,
12 O.G. 430 (E.D. Mich. 1877) ................................................................6

*Sealy Tech., LLC v. SSB Mfg. Co.*,
825 F. App'x 795 (Fed. Cir. 2020) (*Sealy I*).......................................17, 18

*Sealy Tech., LLC v. SSB Mfg. Co.*,
825 F. App'x 801 (Fed. Cir. 2020) (*Sealy II*)....................................... 17, 18

*Sidewinder Marine, Inc. v. Starbuck Kustom Boats & Prods., Inc.*,
597 F.2d 201 (10th Cir. 1979)................................................................22

*Smith v. Whitman Saddle Co.*,
148 U.S. 674 (1893) ........................................................... ……… 6

*Spigen Korea Co. v. Ultraproof, Inc.*,
955 F.3d 1379 (Fed. Cir. 2020) ....................................................... 17, 18

*Titan Tire Corp. v. Case New Holland, Inc.*,
566 F.3d 1372 (Fed. Cir. 2009)...................................................... ……… 16, 17

*Troy v. Samson Mfg. Corp.*,
758 F.3d 1322 (Fed. Cir. 2014) .................................................... ... 7, 8

## Statutes

35 U.S.C. § 103 ....................................................................................... *passim*

35 U.S.C. § 171……………………………………………………………… 2, 6

35 U.S.C. § 289 ........................................................................................23

U.S. Const., art. I, § 8, cl. 8........................................................ ... 2, 6, 8, 24

## Other Authorities

Antonin Scalia, *The Rule of Law as the Law of Rules*,
56 U. CHI. L. REV. 1175 (1989) ...............................................................8

Christopher Buccafusco, Mark A. Lemley, & Jonathan S. Masur*,*
*Intelligent Desi*gn, 68 Duke Law Journal 75 (2018)...............................................23

Dennis Crouch, *A Trademark Justification for Design Patent Rights*,
    24 Harv. J. L. Tech. (2010) ................................................................. 13

Dunstan H. Barnes, Design Patent Rejections—Update, BIGPATENTDATA
    (Apr. 14, 2019) (www.bigpatentdata.com/2019/04/design-patent-rejections-
    update) ……………………………………………………………….….. 13

Mark Bartholomew, *Nonobvious Design*,
    108 Iowa L. Rev. 601 (2023) ............................................................... 11

*PTAB Trial Statistics, FY22 End of Year Outcome Roundup IPR, PGR*,
    (https://www.uspto.gov/sites/default/files/documents/ptab_aia_fy2022_
    roundup.pdf) ....................................................................................... 14

Ryan T. Holte & Ted Sichelman, *Cycles of Obviousne*ss,
    105 Iowa L. Rev. 107 (2019) ............................................................... 14

Sarah Burstein & Saurabh Vishnubhakat, *The Truth About Design Paten*ts,
    71 Am. U. L. Rev. 1221 (2022) ........................................................... 14

Sarah Burstein, *Costly Designs*,
    77 Ohio St. L. J. (2016) ................................................... …. 23

Sarah Burstein, *Is Design Patent Obviousness Too La*x?,
    33 Berkeley Tech. L. J. (2018) ...................................................... 13, 19

4

# I.     INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Eagle Eyes Traffic Industrial Co., Ltd ("Eagle Eyes"), is a professional automotive lamp supplier that has been specializing in the development and production of automotive lamps, including head, rear, corner, side, bumper, fog, and center high mounted stop lamps, for over 40 years. Eagle Eyes submits this brief in an effort to protect competition in the secondary market and repair of automobile parts and to secure uniformity in the application of the obviousness standard, 35 U.SC. § 103 ("Section 103"), to utility and design patents alike.

This case concerns whether or not the flexible obviousness test articulated by recent U.S. Supreme Court precedent, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) ("*KSR*") in a utility patent case should apply to design patents. Historically, design patents have been subject to a rigid *Rosen-Durling*[2] test, under which virtually no design patents have ever been invalidated. Eagle Eyes is well suited to opine on this issue given its lengthy history in the secondary auto part and repair markets. Eagle Eyes further has a strong interest in the result of this case, because if design patents are not analyzed pursuant to *KSR*, original equipment manufacturers such as appellee will be permitted to file endless design patents and reduce or destroy the ability of companies like Eagle Eyes to compete with OEMs, thus decimating competition and

---

[1] This brief is submitted under Federal Rule of Appellate Procedure 29(a). Consent of the parties is not required. Dkt. 86, ¶ 6. Undersigned counsel certify that this brief was not authored in whole or part by counsel for the parties; no party or counsel contributed money for the brief; and no one other than *amicus* and counsel have contributed money for this brief.
[2] *In re Rosen*, 673 F.2d 388 (C.C.P.A. 1982) ("*Rosen*"); *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) ("*Durling*").

resulting in higher prices and less options for customers.

## I.      SUMMARY OF THE ARGUMENT

The primary question addressed herein is whether the *KSR* test applies to design

patents as well as utility patents. Eagle Eyes submits that it must. Design and utility

patents are issued pursuant to the same law and subject to an identical prohibition on

ordinary inventions set forth in the Constitution and the Patent Act. U.S. Const., art. I,

§ 8, cl. 8; 35 U.S.C. §§ 103, 171(b). However, case law applies a different test to

determine obviousness when it comes to design patents, the *Rosen-Durling* test, which

is so rigid and inflexible that virtually no design patents have ever been invalidated

due to Section 103.

In *KSR*, the U.S. Supreme Court rejecting the rigid "teaching-suggestion-

motivation" ("TSM") test for utility patent obviousness, writing:

> "Throughout this Court's engagement with the question of
> obviousness, our cases have set forth an expansive and flexible
> approach [to obviousness] . . . [W]hen a court transforms [a] general
> principle into a rigid rule that limits the obviousness inquiry, as the
> Court of Appeals did here, it errs."

*KSR Int'l Co. v. Teleflex Inc.*, *supra*, 550 U.S. at 415-9.

The *Rosen-Durling* test's rigidity is irreconcilable with the flexible approach to

obviousness that *KSR* mandates. It imposes rigid rules that so limit the obviousness

inquiry for design patents that invalidation on that ground is virtually impossible. In

order to even begin the obviousness analysis, *Rosen* requires the challenger to provide

a single reference to prior art that has design characteristics that are "basically the

6

same" as the claimed design. *Durling*, 101 F.3d at 103 (quoting *Rosen*, 673 F.2d at 391). Even if the challenger is able to find such a reference, *Durling* precludes consideration of secondary references unless they are "so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Durling*, 101 F.3d at 103.

These rigid rules permit the issuance and enforcement of patents based on obvious designs, and *Rosen-Durling* is even more stringent than the TSM test rejected by *KSR*, which precluded courts from finding a utility patent obvious over a combination of prior art references unless there was a specific teaching, suggestion, or motivation in the prior art for the prior art references to be combined.[3] The Supreme Court in *KSR* expressly found that such rigid rules were inconsistent with Supreme Court precedent and the Patent Act. While not expressly stated, *KSR* implicitly abrogated *Rosen* and *Durling*, because to interpret identical law as permitting rigid rules with respect to one type of patent and forbidding such rigidity with respect to another is illogical and has no basis in law.

The *Rosen-Durling* framework is inconsistent with the Constitution, Supreme Court precedent, and the Patent Act, and it should be abrogated. The appropriate test for design patent obviousness is the expansive and flexible approach prescribed by *Graham* and refined by *KSR*, applied in the manner that it was intended: that is, to

---

[3] *KSR*, 550 U.S. at 418 (citing *Application of Bergel*, 292 F.2d 955, 956–57 (C.C.P.A. 1961)).

determine whether, in light of the facts and evidence, a person having ordinary skill in the art would have found the claimed design obvious. Otherwise, as evidenced by this case, design patents on obvious subject matter will persist, effectively wiping out competition against OEMs from the secondary market for automobile parts and raising prices for consumers. Eagle Eyes estimates that the proliferation of these obvious patents is causing consumer prices to rise up to 30%.

## II.   QUESTIONS PRESENTED

The Order granting appellant's petition for rehearing *en banc* specifies the following questions for review:

A.      Does *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), overrule or abrogate *In re Rosen*, 673 F.2d 388 (C.C.P.A. 1982), and *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100 (Fed. Cir. 1996)?

B.      Assuming that *KSR* neither overrules nor abrogates *Rosen* and *Durling*, does *KSR* nonetheless apply to design patents and suggest the court should eliminate or modify the *Rosen-Durling* test?  In particular, please address whether *KSR*'s statements faulting "a rigid rule that limits the obviousness inquiry," 550 U.S. at 419, and adopting "an expansive and flexible approach," *id.* at 415, should cause us to eliminate or modify: (a) *Durling*'s requirement that "[b]efore one can begin to combine prior art designs . . . one must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design,'" 101 F.3d at 103 (quoting *Rosen*, 673 F.2d at 391); and/or (b) *Durling*'s requirement that secondary references "may only

be used to modify the primary reference if they are 'so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other,'" *id.* at 103 (quoting *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996)) (internal alterations omitted).

C.      If the court were to eliminate or modify the *Rosen-Durling* test, what should the test be for evaluating design patent obviousness challenges?

D.      Has any precedent from this court already taken steps to clarify the *Rosen-Durling* test?  If so, please identify whether those cases resolve any relevant issues.

E.      Given the length of time in which the *Rosen-Durling* test has been applied, would eliminating or modifying the design patent obviousness test cause uncertainty in an otherwise settled area of law?

F.      To the extent not addressed in the responses to the questions above, what differences, if any, between design patents and utility patents are relevant to the obviousness inquiry, and what role should these differences play in the test for obviousness of design patents?

## III.   ARGUMENT

### A.     *KSR* IMPLICITLY ABROGATED *ROSEN* AND *DURLING*.

*KSR* involved a utility patent, and thus did not expressly address the *Rosen-Durling* test. However, because both utility and design patents are subject to the same prohibition against obviousness found in Section 103, the logic underpinning *KSR*

9

necessarily applies in the design patent context. The rigid limits imposed by *Rosen-Durling* in the design patent context are irreconcilable with *KSR*'s mandate against rigid obviousness analysis.

### 1. There is no Dispute that Obviousness of Utility and Design Patents are Subject to the Same Law

The Constitution and the Patent Act forbid patents on obvious subject matter for both utility and design patents. *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 6 (1966); U.S. Const., art. I, § 8, cl. 8; 35 U.S.C. § 103; 35 U.S.C. §171(b) ("The provisions of this title relating to patents for inventions shall apply to patents for designs…."). Section 103 forbids granting of a patent if "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103.

This Court, as well as the Supreme Court itself, have expressly recognized that judicial interpretations of Section 103 concerning obviousness are equally applicable to design and utility patents. *In re Nalbandian*, 661 F.2d 1214, 1217 (CCPA 1981) ("in view of the statutory requirement that patents for designs must be evaluated on the same basis as other patents, the test of *Graham* must be followed"); *Smith v. Whitman Saddle Co.,* 148 U.S. 674, 679 (1893) (*quoting Northrup v. Adams*, 12 O.G. 430 (E.D. Mich. 1877); citing *Foster v. Crossin*, 44 F. 62 (D.R.I. 1890) ("the law

applicable to design patents 'does not materially differ from that in cases of

mechanical patents, and 'all the regulations and provisions which apply to the

obtaining or protection of patents for inventions or discoveries … shall apply to

patents for designs").

### 2. The Supreme Court in *KSR* Explicitly Rejected the Application of Rigid Rules Limiting the Analysis of Obviousness

The *KSR* opinion rejected all rigid rules that limit the finder of fact's inquiry

into obviousness, beginning its analysis by stating "[t]hroughout this Court's

engagement with the question of obviousness, our cases have set forth an expansive

and flexible approach inconsistent with the way the Court of Appeals applied its TSM

test here." *KSR*, 550 U.S. at 415.

The Supreme Court has clearly stated that it can abrogate or overrule prior

decisions, including those by the Supreme Court itself, by implication instead of

requiring an explicit statement every time. *See, e.g., Hudgens v. N.L.R.B.,* 424 U.S.

507, 518 (1976); *Ideker Farms, Inc. v. United States*, 71 F.4th 964, 988 n.11 (Fed. Cir.

2023) ("Precedent is not ironclad until the Supreme Court explicitly says otherwise");

*Troy v. Samson Mfg. Corp*., 758 F.3d 1322, 1326 (Fed. Cir. 2014).

While *KSR* did not expressly mention *Rosen* or *Durling*, that does not mean that

these cases are still good law. Indeed, *KSR* was not limited to the TSM test, making

clear that it was abrogating what the Supreme Court believed to be "fundamental

misunderstandings identified above led the Court of Appeals in this case to apply a

11

test inconsistent with our patent law decisions." *KSR*, 550 U.S. at 422. The Supreme

Court in *KSR* rejected rigid tests such as TSM, stating:

> "[A]s progress beginning from higher levels of achievement is
> expected in the normal course, the results of ordinary innovation are
> not the subject of exclusive rights under the patent laws. *Were it
> otherwise patents might stifle, rather than promote, the progress of
> useful arts*. See U.S. Const., Art. I, § 8, cl. 8. These premises led to
> the bar on patents claiming obvious subject matter established in
> *Hotchkiss* and codified in § 103. *Application of the bar must not be
> confined within a test or formulation too constrained to serve its
> purpose*."

*KSR*, 550 U.S. 427 (emphasis added). The Supreme Court went on to state that the

Court of Appeals had "analyzed the issue in a narrow, rigid manner inconsistent with

§ 103 and our precedents." *Id.* at 428.

*KSR* rejected an approach based upon inflexible standards, which in turn

abrogated all cases insofar as they practiced that approach. Decisions such as *KSR*

may be controlling if they "undercut the theory or reasoning underlying precedent in

such a way that cases are clearly irreconcilable." *Troy v. Samson Mfg. Corp.*, 758 F.3d

1322, 1326 (Fed. Cir. 2014). "[L]ower courts are bound not only by the holdings of

higher courts' decisions but also by their mode of analysis." *Id.* at 1326 (citing

Antonin Scalia, *The Rule of Law as the Law of Rules*, 56 U. Chi. L. Rev. 1175, 1177

(1989)) (cleaned up).

### 3. The Rigid Limitations Imposed by *Rosen-Durling* are Irreconcilable with *KSR* and Must be Deemed Abrogated Thereby

*KSR* prescribed a clear approach to obviousness: eschew rigid rules, evaluate

the *Graham* factors, and flexibly inquire into those considerations that bear upon the determination of whether a person having ordinary skill in the art would have found the claimed invention obvious. *KSR*, 550 U.S. at 415-16. The *Rosen-Durling* test is not only irreconcilable with *KSR*, but the antithesis of *KSR*'s mandate. Indeed, *Rosen-Durling* is even more rigid than the TSM rule. Given that the Supreme Court has repeatedly held that the same law and principles apply to both design and utility patents, *KSR*'s abrogation of rigid tests necessarily includes that of *Rosen-Durling*.

**B.    THE *ROSEN-DURLING* TEST SHOULD BE ELIMINATED**

Should this Court determine that *KSR* does not abrogate or overrule *Rosen-Durling*, it should find that *KSR* applies to design patents and the *Rosen-Durling* test should be abrogated or modified to be consistent with *KSR*.

**1.  Each Step of *Rosen-Durling* is Impermissibly Rigid and Limiting**

The *Rosen-Durling* test imposes rigid limitations on the obviousness inquiry at every step, which are even stricter than the TSM test analyzed in *KSR*. First, *Rosen* requires that prior to beginning any obviousness analysis, the challenger must supply a primary reference that is "basically the same" as the claimed design. *Durling*, 101 F.3d at 103. Without this *Rosen* reference, the court *cannot even consider* the level of skill in the art, the teachings of other prior art references, or objective indicia of obviousness or nonobviousness, much less the factors articulated by *KSR* that the Court stated should be considered when analyzing the broader question of whether or not the claimed design would have been obvious to an ordinary designer. There is no

13

basis for the *Rosen* reference in law and the requirement is incompatible with the evidence-based analysis required by the Supreme Court in *KSR*. *See KSR*, 550 U.S. at 417-8 (explaining the principles underlying prior Supreme Court obviousness decisions and linking all of them to what would have been within the knowledge, skill, or creativity of a person having ordinary skill in the art).

The *Rosen* reference requirement was intended to prevent hindsight bias which, while helpful insight, cannot justify the rigid rule into which it evolved. *See Rosen*, 673 F.2d at 291 (emphasizing the need to consider whether the availability of all of the elements of a design in the prior art would have made their combination obvious to a designer, and requiring comparison with "something in existence"). The Supreme Court held that to do so is error. *KSR*, 550 U.S. at 419. Further, *Rosen*'s requirement of a single reference is far more rigid than the test rejected in *KSR*. The TSM test applied to cases where two or more references had to be combined; *Rosen* prohibits even looking beyond the primary reference unless it is basically the same as the patented design. The Supreme Court's holding that the TSM test was too rigid because it did not permit a thorough analysis of what a person with ordinary skill in the art would have found obvious must apply to *Rosen*, which permits zero such analysis in the absence of a near-identical primary reference.

Even if the challenger is able to supply a near-identical primary reference, *Durling* next requires that the primary reference only be modified based on the teachings of prior art that is "so related to the primary reference that the appearance of

certain ornamental features in one would suggest the application of those features to the other." *Durling*, 101 F.3d at 103. As with the *Rosen* primary reference requirement, *Durling's* "so related" requirement is a more rigid application of the TSM test and accordingly conflicts directly with *KSR*. *Durling* limits potential secondary references to only those bearing similar visual appearances to the primary reference, which ignores the reality that obvious design changes are not limited to prior art that meets the "so related" requirement. *See* Mark Bartholomew, *Nonobvious Design*, 108 Iowa L. Rev. 601, 645-46 (2023) (noting several references a designer may have taken into account when designing a new beverage pouch). In the underlying case, appellant submitted evidence that automobile designers do not just look to visually similar designs when doing routine design modifications; they draw from a wide variety of sources that may, especially to a lay person, look different or seem unrelated in appearance (*see, e.g.*, Appx 0372-3) and need not rely upon specific sources to modify routine designs (*see* Appx1302, Appx1332-1336). *Durling* thus compounds the removal of the ordinary designer from *Rosen's* analysis in direct contradiction to the Constitutional and Patent Act requirement that the ordinary designer's point of view be taken into consideration.

### 2. *Rosen-Durling* Encourages Monopolization by OEMs by Permitting the Patentability of Obvious Designs

#### a. Rosen-Durling *Directly Contradicts § 103 and Subsumes it into § 102*

*KSR* addressed Section 103's ordinary designer standard as follows: "[a] person

of ordinary skill in the art *is also a person of ordinary creativity, not an automaton*." *Id.* at 421 (emphasis added). By essentially prohibiting any evidence of what would have been obvious to an ordinary designer from obviousness analysis, *Rosen* and *Durling* improperly reduce the ordinary designer to a mere automaton, permitting patents over subject matter that would have been obvious to an ordinary designer. Since *Rosen* only permits the primary reference to differ in minimal ways from the claimed design, *Rosen* removes all meaningful consideration of the ordinary observer. *Durling's* "so related" requirement goes even further by essentially limiting an ordinary designer's ability to copying features from similar designs.

Further, *Rosen's* "basically the same" primary reference requirement inexplicably subsumes the prohibition against obviousness into another patent prohibition – anticipation (35 USC § 102). A design is invalid for anticipation if it is substantially the same as a single prior art design, which is substantively identical to *Rosen's* "basically the same" primary reference requirement. *See High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 636 (Fed. Cir. 2015). To permit the test for obviousness to be the same as that for anticipation renders the Legislature's act of making two separate sections meaningless.

### b.    Rosen-Durling *Interferes with the Court and USPTO's Ability to Prohibit Obvious Designs*

Despite the mandate in both the Constitution and Section 103 of the Patent Act, the practical effect of the *Rosen-Durling* analysis has been to allow obvious patents to

be granted and enforced as the USPTO and taken away any discretion the Courts have

to find them obvious. *See* 35 U.S.C. § 103; *KSR*, 550 U.S. at 415-16. Studies have

found that unlike utility patents, design patent applications are almost never rejected

on prior art grounds (1.2% per Dennis Crouch, *A Trademark Justification for Design*

*Patent Rights*, 24 HARV. J. L. TECH. at 19 (2010); 2.1% per Dunstan H. Barnes,

Design Patent Rejections—Update, BIGPATENTDATA (Apr. 14, 2019)

(www.bigpatentdata.com/2019/04/design-patent-rejections-update), and that 90% of

design patent applications are granted. Crouch at 18.

    Given that the obviousness prohibition applies equally to design and utility

patents, the only logical reason for this discrepancy is that the rigidity of the *Rosen-*

*Durling* test has virtually eliminated invalidity based on obviousness. The "USPTO's

*sub silento* [sic] abdication of its gatekeeper function in the realm of design patents,"

Crouch at 19, is a reflection of the fact that the current law "makes it nearly

impossible for the USPTO to reject most design patent claims—no matter how banal,

trivial, or uncreative." Burstein, 33 BERK. TECH. L. J. at 624.

    After issuance, it is even harder to have a design patent invalidated due to

obviousness. Design patent challenges only rarely meet the *Rosen* primary reference

requirement and when they do, the *Rosen* reference is nearly identical to the claimed

design. See Burstein, 33 BERK. TECH. L. J. at 616 ("In recent years, however, it has

become rare for courts to even reach step two because the Federal Circuit has required

such a high degree of similarity at step one.").

In U.S. District Courts, between 2008 and 2020, design patents were invalidated only 11.6% of the time; at the International Trade Commission, between 2011-2020, design patents were invalidated only 5% of the time; and in the Patent Trial and Appeal Board, since 2013, design patents are invalidated only 21% of the time. Sarah Burstein & Saurabh Vishnubhakat, *The Truth About Design Patents*, 71 AM. U. L. REV. 1221, 1271-1276 (2022). In contrast, from 2003 to 2013 utility patent obviousness determinations in U.S. District Courts increased from 27% to 46% and nonobviousness determinations decreased from 69% to 48%. Ryan T. Holte & Ted Sichelman, *Cycles of Obviousness*, 105 IOWA L. REV. 107, 141 (2019). Further, of the 17,440 claims on which the PTAB issued an institution decision in FY22, it instituted IPR or PGR as to 10,045 (58%), and of the 7,024 claims on which the PTAB issued a determination of patentability in AIA proceedings in FY22, it found 5,371 (76%) of those claims unpatentable. *PTAB Trial Statistics, FY22 End of Year Outcome Roundup IPR, PGR*, at 14 (https://www.uspto.gov/sites/default/files/documents/ptab __aia_fy2022_roundup.pdf).

Permitting the *Rosen-Durling* test to remain obviates Section 103 as it applies to design patents. As such, it must be replaced by a test in line with the Constitution and the Patent Act, such as the one stated in *KSR*.

### C.    THE TEST FOR OBVIOUSNESS AS APPLIED TO DESIGN PATENTS SHOULD MIRROR *KSR* BY RETURNING TO CONSIDERATION OF THE ORDINARY DESIGNER

Once the *Rosen-Durling* test has been abrogated, the test for obviousness as

applied to design patents should return to the principles in the Constitution and the

Patent Act, articulated in *Graham*:

> "Under § 103, the scope and content of the prior art are to be
> determined; differences between the prior art and the claims at issue
> are to be ascertained; and the level of ordinary skill in the pertinent art
> resolved. Against this background, the obviousness or nonobviousness
> of the subject matter is determined. Such secondary considerations as
> commercial success, long felt but unsolved needs, failure of others,
> etc., might be utilized to give light to the circumstances surrounding
> the origin of the subject matter sought to be patented."

*KSR*, 550 U.S. at 406 (quoting *Graham*, 383 U.S. at 17-18).

Applying *Graham* and *KSR* to design patents would provide a uniform and

Supreme-Court endorsed flexible method of determining obviousness or lack thereof.

This Court and other Circuit Courts prior to the creation of the Federal Circuit have

applied *Graham* in design patent contexts before, most notably in *Nalbandrian*, 661

F.2d at 1216-7. As this Court stated, "we do not believe the determination of the level

of ordinary skill in the art, as required under [*Graham*], cannot be made with respect to

designs. Thus, in view of the statutory requirement that patents for designs must be

evaluated on the same basis as other patents, the test of *Graham* must be followed."

*Nalbandrian* at 1217.

*Graham* and *KSR* require consideration of things that are equally relevant in

design and utility patent cases: the scope and content of prior art, evaluation of the new

matter and whether or not it is novel, and the level of skill in the art for the applicable

ordinary designer. *Graham* and *KSR* set out a standard that requires contextual inquiry,

not an unbending rule. That inquiry calls for case-by-case development and the collection of evidence about what an ordinary designer in a given case would have known, their capabilities, and what the relevant prior art would have disclosed to them or taught them. That it may not always be easy to conduct this case-specific analysis is not a basis to apply a different test; what matters is uniformity and definiteness as set forth in the Patent Act. *See Graham*, 383 U.S. at 18. Courts should look beyond prior art references to the actual design process, as there are a variety of reasons designers might choose to incorporate something into a new design or find another to be obvious. *See KSR*, 550 U.S. at 418:

> "Often, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue."

The Courts have access to expert testimony, design demands, and market pressures in applying the *Graham/KSR* factors.

### D.    NO PRECEDENT FROM THIS COURT HAS CLARIFIED THE *ROSEN-DURLING* TEST AFTER *KSR*

In short, this Court has not often relied upon *Rosen-Durling* in sustaining design patents, and in the few cases in which the Federal Circuit has referenced *Rosen-Durling*, the validity of the test itself was not challenged.

Only once, in *Titan Tire*, has the Court considered whether *KSR* applied to

20

design patents. Ultimately, the Court held that it was unnecessary to resolve the issue because the patent-in-suit was obvious even under *Rosen-Durling* as the primary reference was nearly identical to the claimed design. *Titan Tire*, 566 F.3d at 1385. But the Court noted that *KSR* may apply to design patents. *Ibid.*

Otherwise, excepting this appeal and its companion case and not counting any summarily affirmed cases, this Court has issued opinions in design patent obviousness cases only fourteen times since the Supreme Court's *KSR* decision in 2007.[4] Only ten of those cases turned on application of the *Rosen-Durling* framework.[5] In six of those cases, obviousness was found even under the *Rosen-Durling* framework

---

[4] *Titan Tire*, 566 F.3d 1372 (Fed. Cir. 2009); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009); *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1330 (Fed. Cir. 2012*); In re Owens*, 710 F.3d 1362, 1369 (Fed. Cir. 2013); *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1313 (Fed. Cir. 2013); *MRC Innovations,* 747 F.3d at 1331-38; *3form, Inc. v. Lumicor, Inc.*, 678 F. App'x 1002, 1010 (Fed. Cir. 2017); *Kolcraft Enterprises, Inc. v. Graco Children's Prod., Inc.*, 927 F.3d 1320, 1326 (Fed. Cir. 2019); *Campbell Soup Co. v. Gamon Plus, Inc.*, 939 F.3d 1335, 1339-42 (Fed. Cir. 2019) ("*Campbell Soup* I"); *Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020); *Sealy Tech., LLC v. SSB Mfg. Co.*, 825 F. App'x 795, 799-800 (Fed. Cir. 2020) ("*Sealy I*"); *Sealy Tech., LLC v. SSB Mfg. Co.* 825 F. App'x 801, 805-06 (Fed. Cir. 2020) ("*Sealy II*"); *Campbell Soup Co. v. Gamon Plus, Inc.,* 10 F.4th 1268, 1276 (Fed. Cir. 2021) ("*Campbell Soup* II"), *cert. denied*, 142 S. Ct. 1129 (2022); *Golden Eye Media USA, Inc. v. Evo Lifestyle Prod. Ltd.*, No. 2021-2096, 2022 WL 2232517, at *3 (Fed. Cir. June 22, 2022).

[5] In *Int'l Seaway*, the Court did not rule substantively on obviousness because the district court had not made its summary judgment decision based on obviousness. 589 F.3d at 1240. In *Owens*, the priority of the patent application was at issue. 710 F.3d at 1369. In, *Kolcraft*, the conception date and priority of the design patents were at issue and the PTAB's substantive obviousness analysis was expressly not disputed. 927 F.3d at 1326. *Campbell Soup II* concerned secondary indicia of nonobviousness; not the PTAB's application of the *Rosen-Durling* framework, which had already been addressed in *Campbell Soup I*. 10 F.4th at 1276.

because they were the rare cases where the primary references only varied in trivial ways from the patented design.[6] In only three cases has the Court found nonobviousness based upon the requirements of *Rosen-Durling*, each of which reversed district court decisions finding obviousness under the *Rosen-Durling* test. *See*, *Apple*, 678 F.3d at 1322*; High Point*, 730 F.3d at 1304; *titaen*, 955 F.3d at 1382. The patent challengers in those cases understandably did not argue the standard under which they had already prevailed. As a result, this Court was not faced with the question of whether the *Rosen-Durling* standard survived *KSR*.

Therefore, a precedential opinion from this Court concerning the effect of *KSR* on the continued applicability of *Rosen-Durling* is sorely needed.

### E. APPLYING *KSR* TO DESIGN PATENTS DECREASES, NOT INCREASES, UNCERTAINTY AS *ROSEN-DURLING* CANNOT BE CONSIDERED "SETTLED"

The *Rosen-Durling* test is already so arbitrary and confusing that applying *KSR* instead would actually reduce uncertainty and increase accuracy.

#### 1. *Rosen*'s "Basically the Same" Primary Reference is Applied Arbitrarily

Courts have struggled to consistently determine how similar a reference must be

---

[6] *MRC*, 747 F.3d at 1331-38 (nearly identical dog jerseys); *3form*, 678 F. App'x at 1010 (nearly identical reed patterns); *Campbell Soup I*, 939 F.3d at 1339-42 (nearly identical soup can display); *Sealy I*, 825 F. App'x at 799-800 (nearly identical mattresses); *Sealy II*, 825 F. App'x at 805-06 (same); *Golden Eye*, 2022 WL 2232517, at *3 (nearly identical grocery bags).

to be considered "basically the same" such that it qualifies as an acceptable proper primary reference. Sarah Burstein, *Is Design Patent Examination Too Lax?*, 33 Berkeley Tech L.J. 607, 617 n.44 (2018). For example, this Court's predecessor in *Carter* found the primary reference and claimed infant garment design "nearly identical" even though the primary reference had a differently shaped flap, a differently cinched waistband, and different end portions to the waistband. *In re Carter*, 673 F.2d 1378, 1380 (C.C.P.A. 1982). Yet, in *Apple v. Samsung*, this Court held that the primary reference was not "basically the same" as the claimed design because the prior art had "noticeable differences", specifically perforations on the frame corner, wider bottom edges of the tablet, and contrasts between the frame surrounding the screen and the screen itself. 678 F.3d at 1331. There is no objective reason that these differences were found to be *de minimis* in one case yet material in another. Eagle Eyes refers to and incorporates herein by reference the tables included in appellant's opening brief at pages 49-50. Given that the *Rosen* primary reference requires courts to determine "almost instinctively" whether or not the designs are basically the same, these arbitrary results can hardly come as a surprise.

### 2. *Durling's* Verbal Claim Construction Requirement is Confusing and Applied Inconsistently

*Durling's* requirement that a patent challenger "discern the correct overall visual impression created by the patented design," *Durling,* 101 F.3d at 103, further demonstrates current law has not been settled. *Durling* reversed a district court

determination of obviousness for failure to "evoke a visual image consonant with the claimed design" and "focusing on the design concept" of the claimed design. 101 F.3d at 104. However, in *Egyptian Goddess*, this Court acknowledged the Supreme Court's recognition that "a design is better represented by an illustration than it could be by any description and a description would probably not be intelligible without the illustration." 543 F.3d 665, 679 (Fed. Cir. 2008) (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)) (cleaned up). Thus, this Court discouraged detailed verbal descriptions of claimed designs and cautioned against "the risks entailed in such a description, such as the risk of placing undue emphasis on particular features of the design." *Id*. at 679-680. Nevertheless, in *High Point*, decided two years after *Egyptian Goddess*, this Court continued to interpret *Durling* to demand a detailed verbal claim construction. 730 F.3d at 1314. Then, this Court reversed course in *MRC Innovations*, holding that no detailed verbal description was needed. *Id.* at 1332.

### 3. *Durling's* "So Related" Secondary Reference is Uncertain

*Durling's* requirement that secondary references be "so related" causes further confusion and results in inconsistent rulings. In *Borden*, the court held that similarities in product type and configuration supported combining its primary and secondary prior art references and supplying the "two specific design elements that would convert the [primary] reference into [the] claimed design." 90 F.3d at 1575-76. However, in *MRC Innovations*, this Court suggested that it was "mere similarity in appearance that itself provides the suggestion that one should apply certain features to

another design." 747 F.3d at 1334. Since so few design patents are invalidated under

*Rosen-Durling*, there has been little opportunity for courts to clarify this portion of the

test.

### 4. The Final Obviousness Determination under Rosen-During is No Clearer

In *Durling*, the court stated that after a primary reference is found, "other

references may be used to modify it to create a design that has the same overall visual

appearance as the claimed design." 101 F.3d at 103. This is contradicted by this

Court's subsequent opinions.

The *International Seaway* court unambiguously stated that the final

determination of obviousness required comparison of the modified prior art reference

with the claimed design via the ordinary observer test. 589 F.3d at 1240. Then, four

years later, in *High Point*, when the district court applied the ordinary observer test as

in *International Seaway*, this Court reversed for failing to apply the correct standard.

730 F.3d at 1313.

*MRC Innovations* then held that a claimed design was obvious even though at

least one feature was not disclosed by any prior art reference. 747 F.3d at 1335, citing

*Nalbandian*, 661 F.2d at 1217, a pre-*Rosen* case decided entirely under *Graham*, and

*In re Cooper*, 480 F.2d 900, 901-02 (C.C.P.A. 1973), a pre-*Nalbandia*n case decided

under the C.C.P.A.'s prior "ordinary intelligent man" test. The *MRC Innovations* court

found that "adding ornamental surge stitching on top of a preexisting seam was an

insubstantial change that would have been obvious to a skilled designer." *Ibid*. However, *MRC* did not specify whether it was the insubstantial nature of the change or that the change was obvious to a skilled designer that made the claimed design obvious despite the novelty of the changed feature.

### F.    THE DIFFERENCES BETWEEN DESIGN AND UTILITY PATENTS DO NOT MERIT DIFFERENT TESTS FOR DETERMINING OBVIOUSNESS UNDER § 103

Design and utility patents do differ, but not in a way that merits applying different tests to determine the applicability of the same statute. While design patents cover ornamental designs, described in images, and utility patents cover inventions, described in words, they are still governed by the same law. Design patents are subject to the same constitutional and statutory prohibitions on obtaining patents on obvious subject matter as utility patents, and the fundamental principle that rigid rules cannot be used to undermine those prohibitions still applies. Nearly every Circuit has rejected the notion that the approach set forth in *Graham* cannot apply to design patents. See, e.g., *G.B. Lewis Co. v. Gould Prods., Inc.*, 436 F.2d 1176, 1178-79 (2d Cir. 1971) (applying the *Graham* factors to analyze design patent obviousness); *Hadco Prods.*, 462 F.2d at 1269 (same); *Fields v. Schuyler*, 472 F.2d 1304, 1305-06 (D.C. Cir. 1972) (same); *Schnadig Corp. v. Gaines Mfg. Co., Inc.*, 494 F.2d 383, 389-90 (6th Cir. 1974) (same); *Sidewinder Marine, Inc. v. Starbuck Kustom Boats & Prods., Inc.*, 597 F.2d 201, 209-11 (10th Cir. 1979) (same). Even the C.C.P.A., just a year before developing its *Rosen* requirement, aligned itself with the majority of Circuits by

discontinuing its prior ordinary intelligent man test and applying *Graham*.

*Nalbandian*, 661 F.2d at 1216-18.

That application of a flexible approach is necessary to ensure that obvious

design patents are not obtained is reinforced by the additional remedy available to

design patents. Unlike utility patents, a finding of design patent infringement awards

the patent owner the infringer's total profits. 35 U.S.C. § 289. In the wake of the

astonishing damages award in *Apple v. Samsung*, the combination of low procurement

costs, virtually nonexistent examination by the USPTO, and massive potential

rewards, the results have been predictable: an exponential surge in the number of

design patents being obtained in certain industries, including GM, over the last

century. See table in AOB, p. 60.

Companies such as GM have taken advantage of the scattered application of the

overly-rigid *Rosen-Durling* test to monopolize the secondary market for parts and

repair, which is the opposite of the Constitution's stated purpose for patent protection:

encouraging invention. This trend has increased costs to consumers, reduced

competition, and provided monopolizers like GM with record profits at the expense of

society itself. See Sarah Burstein, *Costly Designs*, 77 OHIO ST. L. J. at 117-124, 128-

29, 137-141 (arguing that while design patents on replacement parts such as vehicle

fenders are allowed because of prevailing validity laws and desirable because of low

cost and total profit damage potential, they have "low or negative social value"

because they involve "little or no visual invention" and that they "merely provide[] a

27

windfall to the car's manufacturer"); Christopher Buccafusco, Mark A. Lemley, & Jonathan S. Masur, *Intelligent Design*, 68 DUKE LAW JOURNAL 75, 114-18 (2018) (noting that the design patent validity makes them a lucrative form of property in exchange for little social value).

Despite the generous granting of design patents by the USPTO to companies like GM, it is simply false that every single part made by GM warrants patent protection. As stated in *KSR*, "the results of ordinary innovation are not the subject of exclusive rights under the patent laws. Were it otherwise patents might stifle, rather than promote, the progress of useful arts." 550 U.S. at 427 (citing U.S. Const. art. I, § 8, cl. 8). The rigidity of the *Rosen-Durling* test and the virtual impossibility of having a design patent invalidated as obvious following therefrom has made it so that no one can fully enforce Section 103. *KSR* cautioned that "[a]pplication of the bar [on patents claiming obvious subject matter] must not be confined within a test or formulation too constrained to serve its purpose." *Ibid*.

Eagle Eyes estimates that the proliferation of these obvious patents is causing consumer prices to rise up to 30%. If OEMs such as GM sell a patented headlight at $100, end users would be able to purchase licensed non-OEM aftermarket headlights at $80. Whereas, if there are no patents at play, the price for the customer would be between $55 and $60. As such, customers experience a substantial price increase from what results from natural competition.

In order to fulfill the aims of the Constitution and Section 103, the *Rosen-*

28

*Durling* test must be abrogated.

//

## IV.    CONCLUSION

Eagle Eyes respectfully requests that this Court overrule *Rosen* and *Durling* and find that a flexible test based on *KSR* permitting evidence of how the designer of ordinary skill in the art would actually approach an invention is the proper approach to obviousness.

Dated: August 28, 2023                              Respectfully submitted,

By:  /s/ *Alexander Chen*
ALEXANDER CHEN
INHOUSE CO. LAW FIRM
7700 Irvine Center Dr., Suite 800
Irvine, California 92618
Telephone: (714) 932-6659
alexc@inhouseco.com

*Counsel for Amicus Curiae Eagle Eyes*
*Traffic Industrial Co., Ltd.*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 2021-2348

**Short Case Caption:** LKQ Corporation, et al. v. GM Global Technology Operations LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 6,460 words.

Date: 08/28/2023

Signature: */s/ Alexander Chen*

Name: Alexander Chen