No.: 2021-2348

# IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

◆

LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,

*Plaintiffs-Appellees,*

v.

GM GLOBAL TECHNOLOGY OPERATIONS LLC,

*Defendant-Appellant.*

◆

APPEAL FROM THE UNITED STATES COURT OF APPEALS FOR THE FEDRAL CIRCUIT
CASE NO. 21-2348, CIRCUIT JUDGES LOURIE, CLEVENGER, AND STARK

## BRIEF FOR AMICUS CURIAE NEW YORK INTELLECTUAL PROPERTY LAW ASSOCIATION IN SUPPORT OF NO PARTY

CHARLES R. MACEDO
*Co-Chair, PTAB Committee*
DAVID P. GOLDBERG
*Board Liaison, Amicus Briefs Committee, and Board Liaison, PTAB Committee*
AMSTER, ROTHSTEIN & EBENSTEIN, LLP
405 Lexington Ave Floor 48
New York, NY 10174
(212) 336-8000
Cmacedo@arelaw.com

ROBERT J. RANDO
*President*
Greenspoon Marder LLP
590 Madison Avenue, Suite 1800
New York, NY 10022

PAUL COLETTI, *application pending*
*Co-Chair, Amicus Briefs Committee*
Johnson & Johnson
1 Johnson and Johnson Plaza
New Brunswick, NJ 08933

KSENIA TAKHISTOVA
*Co-Chair, Inventor of the Year Committee*
7 Ellison Ave.
E. Brunswick, NJ 08816

August 28, 2023

# **TABLE OF CONTENTS**

I.   INTEREST OF AMICUS CURIAE ................................................................1

II.  SUMMARY OF THE ARGUMENT ...............................................................3

III. ARGUMENT.....................................................................................................4

    A.   Design Patents Utilize the Same Statutory Framework as Utility Patents, Unless Otherwise Provided................................................................... 4

    B.   The Federal Circuit's pre-KSR Jurisprudence on Obviousness ..................... 5

    C.   The Supreme Court's Decision in KSR Adopted a More Flexible Approach to Obviousness Under 35 U.S.C. § 103 ............................................. 6

    D.   The Federal Circuit's Current Approach to Design Patents Is Less Flexible Than KSR ................................................................................................ 8

    E.   If The Federal Circuit Adopts a Flexible Approach to Design Patent Obviousness, the Approach Should Consider KSR and Develop Through Caselaw ................................................................................................ 9

IV.  CONCLUSION ................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**                                                                        **Page(s)**

*Durling v. Spectrum Furniture Co.*,
   101 F.3d 100 (Fed. Cir. 1996) ................................................................ 5, 8, 10

*Gorham Co. v. White*,
   81 U.S. (14 Wall.) 511 (1871) ........................................................................ 9

*In re Bergel*,
   292 F.2d 955 (1961) ...................................................................................... 5

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ................................................... 3, 4, 5, 6, 7, 8, 9, 10, 11

*LBT IP I LLC v. Apple Inc.*,
   Nos. 2022-1613, -1614, -1615, -1616, -1617, 2023 U.S. App. LEXIS 14376
   (Fed. Cir. June 9, 2023) ................................................................................. 8

*LKQ Corp. v. GM Glob. Tech. Operations L.L.C.*,
   No. 2021-2348, 2023 U.S. App. LEXIS 1412 (Fed. Cir. Jan. 20, 2023) ............ 8

**Statutes**

35 U.S.C. § 102 ...................................................................................... 3, 4
35 U.S.C. § 103 ...................................................................................... 3, 4, 6
35 U.S.C. § 171 ............................................................................................. 4

**Other**

David L. Schwartz & Xaviere Giroud, *An Empirical Study of Design Patent Litigation*,
   72 Ala. L. Rev. 417 (2020) ............................................................................ 10

## I.   INTEREST OF AMICUS CURIAE

The New York Intellectual Property Law Association ("NYIPLA" or "Association") respectfully submits this amicus curiae brief in support of no party.[1] The NYIPLA is a bar association of attorneys who practice in the area of patent, trademark, copyright, and other intellectual property ("IP") law. It is one of the preeminent regional IP bar associations in the United States. Its members include in-house counsel for businesses and their organizations, and attorneys in private practice who represent both IP owners and their adversaries (many of whom are also IP owners). Its members represent inventors, entrepreneurs, businesses, universities, and industry and trade associations.

Many of the NYIPLA's member attorneys actively participate in patent prosecution, patent licensing, and patent litigation, representing patent applicants, challengers, licensors, licensees, owners, and accused infringers in the U.S. Patent and Trademark Office, the marketplace, and the courts—including with respect to design patents. The NYIPLA thus brings the informed and well-rounded perspective of stakeholders to patent issues. The NYIPLA, its members, and their

---

[1] Pursuant to this Court's Order of June 30, 2023 granting the Petition for Rehearing *En Banc*, amicus curiae are invited to submit briefs without consent and leave of the Court.

respective clients share a strong interest in the particular design patent issues presented in this case.

The arguments set forth in this amicus curiae brief were approved on August 23, 2023, by an absolute majority of the officers and members of the Board of Directors of the NYIPLA (including any officers or directors who did not vote for any reason, including recusal), but do not necessarily reflect the views of a majority of the members of the NYIPLA, or of the law or corporate firms with which those members are associated.

No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. No person other than amicus curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

After reasonable investigation, the NYIPLA believes that no officer, director, or member of the Committee on Amicus Briefs who voted in favor of filing this brief, nor any attorney associated with such officer, director or committee member in any law or corporate firm, represents a party in this litigation.

## II. SUMMARY OF THE ARGUMENT

It is a fundamental principle of patent law that unless the statute otherwise provides, the same statutory provisions that apply to utility patents also apply to design patents. As such, the same prior art provisions of Title 35 (Sections 102 and 103) should apply to both design patents and utility patents.

The Association respectfully urges the Federal Circuit to provide clarity as to whether a more flexible approach as set forth in *KSR* for utility patents should be applied to design patents. To the extent this Court determines that the distinction between utility patent functionality analysis and design patent ornamentality assessment does not require a different approach to determining obviousness, the Association urges this Court to adopt a more flexible approach similar to that adopted by the Supreme Court for utility patents in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), to determine obviousness for design patents.

Specifically, the Supreme Court in *KSR* rejected the Federal Circuit's restrictive approach to obviousness analysis for utility patents. In this design patent case, the Federal Circuit's continued application of the so-called *Rosen* test may be considered potentially inconsistent with the Supreme Court's rationale in *KSR*.

Should the Court find that the flexibility of *KSR* is applicable to design patents, the Association urges this Court to adopt a more flexible approach to

determining obviousness of design patents, akin to *KSR*, in which the *Rosen* test is one potential rationale for finding obviousness of design patents, but not the exclusive rationale available. Future cases can develop other potential rationales that could be used for determining obviousness of design patents consistent with the flexible approach in *KSR*.

## III. ARGUMENT

### A. *Design Patents Utilize the Same Statutory Framework as Utility Patents, Unless Otherwise Provided*

Pursuant to the Patent Act, 35 U.S.C. § 171(a), "[w]hoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title." As a default, Section 171(b) confirms "[t]he provisions of this title [Title 35] relating to patents shall apply to patents for design, *except as otherwise provided*" (emphasis added). Thus, design patent law statutes require that, by default, the same statutory provisions for conditions for patentability for inventions apply to design patents and utility patents.

With respect to prior art, the same Sections 102 and 103 of Title 35 apply to both design and utility patents. At issue here is how the courts should determine obviousness under Section 103 for design patents.

### B.     *The Federal Circuit's pre-KSR Jurisprudence on Obviousness*

Prior to the U.S. Supreme Court's decision in *KSR*, the U.S. Court of Appeals for the Federal Circuit (and its predecessor courts, the Court of Customs and Patent Appeals and Court of Claims) adopted two separate tests for obviousness of utility and design patents. With respect to utility patents, the Federal Circuit and its predecessor courts had adopted the so-called Teaching/ Suggestion/ Motivation to combine test ("TSM"), which was applied in a relatively restrictive manner. *See In re Bergel*, 292 F.2d 955, 956–57 (1961) (establishing the TSM test). The TSM test required "demonstrating a teaching, suggestion, or motivation to combine known elements in order to show that the combination is obvious." *KSR,* 550 U.S. at 418 (discussing *Bergel*).

For design patents, the Federal Circuit and its predecessor courts, prior to *KSR*, had adopted the *Rosen* test as the sole test for determining obviousness. Determining obviousness of the ornamental design under the *Rosen* test first requires identifying "a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'" *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (quoting *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982)). Second, if a satisfactory primary reference exists, the court asks: whether an ordinary designer would have modified the

primary reference to create a design with the same overall visual appearance as the claimed ornamental design. *Id.*

One arguable benefit of the *Rosen* test is predictability—users of the patent system know what the rule is and how to apply it. However, it does seem to be the kind of strict test, similar to the TSM test for utility patents, that the Supreme Court has rejected in the past. This Court now has the opportunity to clarify whether *Rosen* should remain as the sole test for obviousness of a design patent, or whether a more flexible approach, in addition to the *Rosen* test, should be adopted. If it adopts a more flexible approach now, this Court can preserve the *Rosen* test as one of a number of rationales for obviousness and may be able to avoid an outright rejection of the *Rosen* test by the Supreme Court in the future.

### C. The Supreme Court's Decision in KSR Adopted a More Flexible Approach to Obviousness Under 35 U.S.C. § 103

In *KSR Int'l Co. v. Teleflex Inc.*, the Supreme Court rejected a narrow, inflexible application of the TSM test in favor of a more flexible approach. 550 U.S. 398 (2007). The broad thrust driving the *KSR* decision was that "[t]hroughout this Court's engagement with the question of obviousness, our cases have set forth an expansive and flexible approach." *Id.* at 415. "Rigid preventative rules that deny factfinders recourse to common sense … are neither necessary under our [obviousness] case law nor consistent with it." *Id.* at 421.

Regarding utility patents, "[t]he obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation, or by overemphasis on the importance of published articles and the explicit content of issued patents." *Id.* at 419. Indeed, "[i]t is common sense that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 421.

Thus, in *KSR*, the Supreme Court recognized that any of a variety of relevant rationales could support a finding of obviousness, including: (1) the "teaching-suggestion-motivation" approach; (2) combining prior art elements according to known methods to yield predictable results; (3) simple substitution of one known element for another to obtain predictable results; (4) use of a known technique to improve similar devices, methods, or products in the same way; (5) applying a known technique to a known device, method, or product ready for improvement to yield predictable results; (6) the "obvious to try" approach — choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success; and (7) known work in one field of endeavor may prompt variations of that to be used in either the same field or a different one based on design incentives or other market forces, if the variations are predictable to one of ordinary skill in the art. *KSR Int'l Co.*, 550 U.S. 398.

### D. The Federal Circuit's Current Approach to Design Patents Is Less Flexible Than KSR

In response to *KSR*, the Federal Circuit has adapted its obviousness analysis for utility patents to be more flexible. *See, e.g., LBT IP I LLC v. Apple Inc.*, Nos. 2022-1613, -1614, -1615, -1616, -1617, 2023 U.S. App. LEXIS 14376, at *18-19 (Fed. Cir. June 9, 2023). But, for design patents, this Court has continued to apply the *Rosen* test exclusively. *See, e.g., LKQ Corp. v. GM Glob. Tech. Operations L.L.C.,* No. 2021-2348, 2023 U.S. App. LEXIS 1412, at *11 (Fed. Cir. Jan. 20, 2023) (discussing the "long-standing *Rosen* and *Durling* tests for obviousness of design patents.")

*Rosen's* requirements for ornamental design patent obviousness analysis have been viewed as parallel to those of the rigid TSM utility patent test that the Supreme Court rejected in *KSR*. *Rosen's* requirement to identify a single reference, which is "essentially the same" as the allegedly obvious design patent, has been considered as the type of "[r]igid preventative rules that den[y] factfinders recourse to common sense" that *KSR* struck down. 550 U.S. at 421; *see also LKQ*, 2023 U.S. App. LEXIS 1412, at *35-36 (Stark, J., concurring) ("A strong case can be made that the step one *Rosen* reference requirement is precisely the type of limiting, rigid rule *KSR* faulted.").

### E. If the Federal Circuit Adopts a Flexible Approach to Design Patent Obviousness, the Approach Should Consider KSR and Develop Through Caselaw

The Supreme Court in *KSR* criticized the narrow conception of the TSM test as the sole test for determining obviousness but did not address the *Rosen* test for design patents. It is unclear if *KSR* is limited to utility patents, or if it also applies to design patents. The Association thus respectfully urges that the Federal Circuit provide clarity as to whether *KSR* requires that a more flexible approach to obviousness be applied to design patents.

Should this Court determine that the distinction between utility patent functionality analysis and design patent ornamentality visual assessment does not require a different approach to determining obviousness for each type of patent, the Association respectfully urges the Federal Circuit to apply the same types of flexible principles underlying *KSR* to design patents, taking into consideration that the nature of design patents is ornamental rather than functional. As the Supreme Court noted in *Gorham Co. v. White*, for design patents "it is the effect upon the eye [of the ordinary observer] which adds value to articles of trade or commerce." *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 526 (1871). It is also noteworthy that the variety of relevant rationales for finding obviousness with utility patents are based upon analyses that relate to functionality and utility rather than visual appearance as required with design patents.

Formulating a flexible obviousness standard for ornamental design is a dynamic process, best formulated through caselaw progression. As noted in the panel opinion that preceded this *en banc* hearing, the Federal Circuit has heard over fifty design patent cases since *KSR*. In these appeals, the Court has continually applied *Rosen* and *Durling*. Should the Federal Circuit adopt a more flexible approach encompassing obviousness tests beyond just *Rosen and Durling*, the Federal Circuit will have many opportunities for a flexible caselaw on design patent obviousness to develop. *See generally* David L. Schwartz & Xaviere Giroud, *An Empirical Study of Design Patent Litigation*, 72 ALA. L. REV. 417 (2020) (noting increasing rates of design patent prosecution and litigation in the 20th century).

For example, like in *KSR*, where for utility patents a Person of Ordinary Skill in the Art (POSA) could combine prior art elements according to known methods to yield predictable results, similarly, for determining obviousness of design patents, the Court potentially may consider whether a Designer of Ordinary Skill in the Art (DOSA) could combine prior art design elements according to known ornamental design methods to yield predictable results (but while avoiding casting too wide a net of prior art ornamental designs).

## IV. CONCLUSION

By their very nature, design patents (which protect ornamental designs) and utility patents (which protect functional and structural inventions) are different. It is thus unclear whether *KSR* should apply to design patents. Should this Court determine that *KSR* does apply to design patents, it will need to develop an obviousness standard, like the Supreme Court did in *KSR*, which adopts a wide variety of potentially relevant rationales for considering obviousness of a new ornamental design.

Dated:  August 28, 2023          By: */s/ Charles R. Macedo*
                                  CHARLES R. MACEDO
                                  *Co-Chair of the PTAB Committee*
                                  DAVID P. GOLDBERG
                                  *Board Laison Amicus Brief Committee, and Board Liaison, PTAB Committee*
                                  AMSTER, ROTHSTEIN & EBENSTEIN, LLP
                                  405 Lexington Ave Floor 48
                                  New York, NY 10174
                                  (212) 336-8000
                                  Cmacedo@arelaw.com


                                  ROBERT J. RANDO
                                  *President*
                                  Greenspoon Marder LLP
                                  590 Madison Avenue, Suite 1800
                                  New York, NY 10022

PAUL COLETTI
*Co-Chair Amicus Brief Committee*
Johnson & Johnson
1 Johnson And Johnson Plaza
New Brunswick, NJ 08933

KSENIA TAKHISTOVA
*Co-Chair Inventor of the Year Committee*
LCM Biosensor Technologies
20 Maple Avenue
East Setauket, NY 11733

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1460, 23-1559

**Short Case Caption:** LKQ Corporation, et al. v. GM Global Technology Operations, LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✓] the filing has been prepared using a proportionally-spaced typeface and includes __2,253__ words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 08/28/2023

Signature: /s/ Charles R. Macedo

Name: Charles R. Macedo

Save for Filing