**No. 2021-2348**

# United States Court of Appeals
## for the Federal Circuit

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**

*Appellants,*

v.

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**

*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2020-00534
(JJ. Scott A. Daniels, Grace K. Obermann, and Christopher G. Paulraj)

**BRIEF OF *AMICUS CURIAE* TAIWAN AUTO BODY PARTS ASSOCIATION (SUPPORTING APPELLANTS)**

ROBERT J. FIGA
DEAN & FULKERSON, P.C.
100 West Big Beaver Rd., Suite 650
Troy, MI 48084
(248) 362-1300
RFiga@DFLaw.com

Attorneys for Amicus Curiae Taiwan Auto Body Parts Association

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2021-2348

**Short Case Caption** LKQ Corporation et al v GM Global Technology Operations

**Filing Party/Entity** TAIWAN AUTO BODY PARTS ASSOCIATION

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/28/2023

Signature: /s/ Robert J. Figa

Name: Robert J. Figa

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Taiwan Auto Body Parts Association | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

**I. STATEMENT OF THE INTEREST OF THE AMICUS CURIAE** ........1
**II. QUESTIONS PRESENTED**........3
**III. ARGUMENT** ........4
**IV. CONCLUSION** ........16

## TABLE OF AUTHORITIES

**Cases**

*Auto Body Parts Ass'n v Flord Glob Tech, LLC 930 F3d 1314 (Fed Cir 2019)* .......5

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc*., 489 U.S. 141 (1989)....................16

*Durling v. Spectrum Furniture Co*., 101 F.3d 100, 103 (Fed. Cir. 1996) ........ 4,5,6,7

*Ford Global Tech. v. Int'l Trade Commission,* No. 2007-1357 and 2007-1526, USCA for the Fed. Cir. 331 FedAppx 739 (Fed Cir. Apr. 2009).........................11

*In Re General Motors Corp*., 99 F.T.C. 464.465 (1982) ..........................................2

*Graham v. John Deere Co*., 383 U.S. 1 (1966)................................................ 12, 16

*KSR International Co. v. Teleflex In*c., 550 U.S. 398 (2007)............ 3,4,5,7,9-11, 14

*Power Controls Corp. v. Hybrinetics, Inc.,* 806 F.2d 234 (Fed.Cir.1986).................4

*In re Rosen*, 673 F.2d 388 (CCPA 1982).................................................... 3-7,9, 12

*Smith v. Whitman Saddle Co*., 148 U.S. 674 (1893)..................................................8

**Statutes**

19 U.S.C. § 1337 ..........................................................................................10

35 U.S.C. § 101 ..............................................................................................7

35 U.S.C. § 103 .................................................................................. 4, 7, 16

35 U.S.C. § 171 ...........................................................................................4,7

U.S. Const., art. I, § 8, cl. 8...........................................................................15

**Other Authorities**

*Certain Replacement Automotive Lamps,* Inv. No. 337-TA-1291 (January 25, 2023); *Certain Replacement Automotive Lamps II*, Inv. No. 337-TA-1292, (January 31, 2023) ....................12

*In re Certain Automotive Parts*, Inv. 337-TA557, Pub. No. 4012 (June 1, 2008)...10

*In The Matter of Certain Auto Parts* USTIC No. 337-TA-557 Jul 5, 2007 11,12

Joshua J. Du Mont, A Non-Obvious Design: Reexamining the Origins of the Design Patent Standard, Gonzaga Law Review, Vol. 45, No. 3, p. 531 ................6

Rep. Darrell Issa March 22, 2023 Press Release ....................15

Rep. Zoe Lofgren. February 2012 Press Release....................15

“REPAIR Act” (H.R. 906) ....................13

"SMART" Act (H.R. 1707)....................13

Updated White Paper on Protecting the Consumer Patent Law Right of Repair and The SMART Act, H.R. 1879, by Joshua D. Sarnoff, Professor of Law, DePaul University College of Law....................10

## I. STATEMENT OF THE INTEREST OF THE AMICUS CURIAE[1]

The Taiwan Auto Body Parts Association ("TABPA") is a national trade association in Taiwan comprised of member companies and affiliates that manufacture, distribute and sell automobile repair parts many of which are sold in the United States, and throughout the world. These parts are a reliable and cost reducing alternative to original equipment manufacturer (OEM's) repair parts. Since many of the these parts are replacements used either by repair facilities in the event of damage or by do- it-yourself car owners, the parts need to be similar in appearance to the original damaged part it is replacing, However, due to automobile manufacturers overuse of design patents to stifle and eliminate competition in the repair parts industry for these parts, TABPA members are forced to make a decision as to providing parts which are subject to the plethora of design patents obtained by the OEM's.

The OEM repair parts subject to the design patents (i.e. fenders, hoods, bumpers, side mirrors, front and rear lamps, lower fascia, skid plates, lip moldings, and other parts) are more expensive than those supplied in the United States by

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), counsel for amicus curiae states that no counsel for any party authored this brief in whole or in part, and no party or counsel for a party made any monetary contribution intended to fund the preparation or submission of this brief. No person other than amicus curiae, their members, or their counsel made any monetary contribution to the brief's preparation or submission.

TABPA members, thus costing consumers and insurance more money. The increasing volume of design patents obtained by the original manufacturers means that consumers are left with no choice but to purchase the more expensive OEM replacement parts.

Original equipment manufacturers have been seeking and obtaining design patents on replacement parts where the designs are nothing more than the combination of well-known design features. Design patents are increasingly used to give the OEM an advantage in the marketplace and specifically automobile manufacturers have found design-patent protection very attractive under the current standards that are applied. This practice is especially prevalent in the aftermarket or replacement parts industry for automobiles, specifically in the market for "crash parts". Crash parts are metal, plastic and glass components such as bumpers. fenders, hoods, door panels, lamp assemblies, and doors used in the repair of damaged automobiles. See *In re General Motors Corp*., 99 F.T.C. 464.465 (1982). Design patent owners can enforce their patents in proceedings before the U.S. International Trade Commission (ITC) to block the importation of parts as well as within the judicial system, and sell original equipment manufacturer parts at higher prices.

The *amicus curiae* is interested in this *en banc* proceeding because clarity and predictability are needed in the interpretation of design patents that impact the

automotive parts industry. *Amius curie* have a significant interest that design patents are valid and enforced in accordance with Supreme Court precedent, including *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398 (2007).

On June 30, 2023, this Court granted Appellant's petition for rehearing *en banc* and invited amicus curiae briefs in accordance with Federal Rule of Appellate Procedure 29 and Federal Circuit Rule 29 to address design patent infringement questions concerning the test for obviousness of design patents. The amicus curiae address these questions below. The Order dated June 30, 2023, allows that amicus curiae may be filed without consent and leave of court. Dkt 86.

## II. QUESTIONS PRESENTED

This Court granted a petition for rehearing en banc and requested briefing on the following questions.

A. Does *KSR International Co. v. Teleflex Inc*., 550 U.S. 398 (2007), overrule or abrogate *In re Rosen*, 673 F.2d 388 (CCPA 1982), and *Durling v. Spectrum Furniture Co., Inc*., 101 F. 3d 100 (Fed. Cir. 1996)?

B. Assuming that KSR neither overrules nor abrogates *Rose*n and *Durling,* does *KSR* nonetheless apply to design patents and suggest the court should eliminate or modify the *Rosen-Durling* test?

C. If the court were to eliminate or modify the *Rosen-Durling* test, what should the test be for evaluating design patent obviousness challenges?

D. Has any precedent from this court already taken steps to clarify the *Rosen-Durling* test? If so, please identify whether those cases resolve any relevant issues.

E. Given the length of time in which the *Rosen-Durling* test has been applied, would eliminating or modifying the design patent obviousness test cause uncertainty in an otherwise settled area of law?

F. To the extent not addressed in the responses to the questions above, what differences, if any, between design patents and utility patents are relevant to the obviousness inquiry, and what role should these differences play in the test for obviousness of design patents?

## III. ARGUMENT

### A. Does KSR International Co. v. Teleflex Inc., 550 U.S. 398 (2007), overrule or abrogate In re Rosen, 673 F.2d 388 (CCPA 1982), and Durling v. Spectrum Furniture Co., Inc., 101 F.3d 100 (Fed. Cir. 1996)?

KSR implicitly overrules the test of *Durling* and *Rosen* as to design patents. Design patent protection may be obtained for a design that is new, original, ornamental and non-obvious. 35 U.S.C. §§ 103, 171. Ornamental designs are protected by design patents and the design cannot be dictated by functional requirements. *Power Controls Corp. v. Hybrinetics, Inc.,* 806 F.2d 234, 238, 231 USPQ 774, 777 (Fed.Cir.1986). Parts of this type to repair damaged parts on the outside of the vehicle - fenders, bumpers, hoods, door panels - are attractive for design patents as the patent holders argue that these types of parts are not dictated by function and are ornamental. See *Auto Body Parts Ass'n v Flord Glob Tech,*

*LLC* 930 F3d 1314 (Fed Cir 2019) where the Cort of Appeals held that designs for pick-up truck hood and headlamps were not functional.

As to obviousness, in the design patent context, a rigid test has been developed. The first step requires that "one must find a single reference ..., the design characteristics of which are basically the same as the claimed design." *See Durling v. Spectrum Furniture Co*., 101 F.3d 100, 103 (Fed. Cir. 1996) If, and only if, this primary or "Rosen reference" is found, then the second step is reached. *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982). This second step dictates that "other references may be used to modify it to create a design that has the same overall visual appearance as the claimed design" so long as these secondary references are "so related" to the primary reference. *Durling*, 101 F.3d at 103.

In 2007, the Supreme Court decided *KSR International Co. v. Teleflex Inc.*, which disapproved of the rigid test that that the Federal Circuit was applying and instead emphasized a common-sense approach. *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 419 (2007). The patent in *KSR* was a utility patent and because of this, both the district courts and the Federal Circuit have questioned its applicability in the design-patent context. *KSR Inc'I Co. v. Teleflex Inc*., 550 U.S. 398, 399,419 (2007) (rejecting as overly rigid the Federal Circuit's application of the "teaching, suggestion, or motivation" (TSM) test for combining the disclosures of multiple

prior arc references to establish that a claimed invention would have been obvious).

The current test for design patent non-obviousness analysis is inappropriate in light of *KSR* as it is rigid and narrows the prior art on which an obviousness analysis may rely. The effect of application of the *Rosen/Durling* framework, which goes beyond the statute, is a near absolute bar to invalidity of obvious design patents[2]. This standard and its application has emboldened the automobile manufacturers to eliminate competition for "crash" replacement parts, many of which would be supplied at reduced cost by TABPA members. Despite the fact that *KSR* involved a utility patent, it is equally applicable to design patents and implicitly overrules *Durling* and *Rosen*.

**B. Assuming that KSR neither overrules nor abrogates Rosen and Durling, does KSR nonetheless apply to design patents and suggest the court should eliminate or modify the Rosen-Durling test?**

Even if *KSR* does not overrule *Rosen* and *Durling*, eliminating or modifying the *Rosen-Durling* test would support the history and goals of the design patent

[2] See, e.g., Joshua J. Du Mont, A Non-Obvious Design: Reexamining the Origins of the Design Patent Standard, Gonzaga Law Review, Vol. 45, No. 3, p. 531, at 609 n. 483 (2010) (https://ssrn.com/abstract=1461390) (has made it nearly impossible for the USPTO to reject any design patent claim—regardless of how ordinary, banal, or functional the claimed design might be)

system as *KSR* was intended to apply to design patents.

Utility patents are granted on an invention falling within one or more of the subject matter categories enumerated in 35 U.S.C. § 101; that is, a "process, machine, manufacture, or composition of matter." *Id.* The subject matter of patentable designs is separately governed by 35 U.S.C. § 171. (A design patent is available for a "new, original and ornamental design for an article of manufacture ... subject to the conditions and requirements of this title."). The obviousness requirement for both utility and design patents comes from 35 U.S.C. § 103 which provides that:

> [a] patent may for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

35 U.S.C. § 171. ("The provisions of this title relating to patents for inventions shall apply to patents for designs .... ").

Before the statutory requirement of non-obviousness, courts required that designs for patent demonstrate an "invention". In the early case of *Smith v. Whitman Saddle Co*., the Supreme Court in 1893 addressed patent designs and first imposed a qualitative "invention" requirement for design patents. *Smith v. Whitman*

*Saddle Co*., 148 U.S. 674 (1893). *Whitman Saddle* concerned the patentability of a design for a saddle *Smith v. Whitman Saddle Co*., 148 U.S. 674 (1893). The Court began its analysis by setting forth the statutory requirements for design protection, namely that a person must have "invented and produced any new and original design for a manufacture . . .”. *Whitman Saddle*, 148 U.S. at 677.

*Whitman Saddle* ultimately held that the patented saddle design lacked the requisite invention, reasoning that there existed "several hundred styles of saddles or saddletrees belonging to the prior art, and that it was customary for saddlers to vary the shape and appearance of saddletrees in numerous ways according to the taste and fancy of the purchaser." *Whitman Saddle*, 148 U.S. at 681. Further, the two prior art saddles that were combined to make the patented saddle design were shown to have frequently included design feature variations of the type found in the patented design. *Id*.

Thus, a design is not deserving of protection if it is substantially the same to a prior design. There are differences in utility and design patents, but that does not mean that they are completely unrelated to one another. The KSR decision is applicable irrespective of whether the patent is a utility patent or design patent. The two-part test of *Rosen-Durling* to assess obviousness needs to conform to the flexible approach in *KSR*.

The *Rosen* decision was limited to whether the primary reference ("Rosen reference") was proper. *In re Rosen*, 673 F.2d 388,390 (C.C.P.A. 1982). The *Durling* court explained that "[b]efore one can begin to combine prior art designs, ... one must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'" *Id*. at !03 (quoting *In re Rosen*, 673 F.2d at 391).

The “something in existence” and “so related as to suggest” requirements are too rigid and lacking in common sense under *KSR*. Rigidly restricting prior art that can be considered does not fit under *KSR* which did reference design:

> Often, it will be necessary for a court to look to interrelated teachings of multiple patents; to the effects of demands *known to the design community* or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.

*KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 418 (2007). (emphasis added).

The *KSR* Court, referring to the “invention” requirement, added:

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a

combination was obvious to try might show that it was obvious under§ 103. See *KSR*, 550 U.S. at 421.

The number of design patents awarded to automobile manufacturers has dramatically increased.[3] The International Trade Commission decision of *In re Certain Automotive Parts* appears to have increased the drive for design patents of replacement crash parts in order to eliminate imported automobile replacement parts [4]. In the case of *In Re Certain Automotive Parts*, the United States International Trade Commission ("ITC") precluded manufacturers of replacement parts from importing items in the U.S. that copied patented component parts owned by the OEM. *Id.* By having common sense protection for design patents as to replacement parts, this market will be open to healthy competition.

The International Trade Commission referenced *KSR* as to alleged violations of section 337 of the Tariff Act of 1930 (19 U.S.C. § 1337)("section 337") as to the importation into the United States, sale for importation, and sale within the United States after importation of certain automotive parts by reason of infringement of design patents. The Commission made a determination not to review the Administrative Law Judge's final Initial Decision, which had sustained the validity

[3] See Updated White Paper on Protecting the Consumer Patent Law Right of Repair and the Aftermarket for Exterior Motor Vehicle Repair Parts: The SMART Act, H.R. 1879, 117th Congress by Joshua D. Sarnoff, Professor of Law, DePaul University College of Law September 2022.

[4] See *In re Certain Automotive Parts*, Investigation No. 337-TA-557, Publication No. 4012 (I.T.C. June 1, 2008).

of seven design patents against a charge of obviousness, contrary to the Supreme Court's decision in *KSR*. The ITC in *Investigation No. 337-TA-557* declined reconsideration stating "[t]he ALJ's decision was not based on a lack of an explicit suggestion to combine prior art references, which was the key issue in KSR." *Id*. at 6. The ITC reviewed *KSR* and determined that the "ALJ applied a flexible TSM test as approved in KSR . . . and that "the ALJ's obvious analysis is wholly consistent with KSR". See *In The Matter of Certain Automotive Parts* USTIC Inv No. 337-TA-557 Jul 5, 2007[5].

Contrary to the ITC Opinion, the Commission in 337-TA-557 improperly focused only on minute differences between the patented designs and the prior art and the ALJ's nonobvious findings were based on a lack of an explicit motivation to combine references, contrary to *KSR*. *Id*. In *KSR*, the Supreme Court eliminated a strict requirement of a motivation to combine prior art references but may be explained using common sense. 550 U.S. at 418

Despite not properly applying *KSR*, the ITC did apply *KSR* to design patents. Although KSR had not been decided at the time of the initial ALJ's decision, the issue of *KSR*'s applicability arose on a Motion for Reconsideration with the Commission which stated: "In our view, the ALJ applied a flexible TSM test as

[5] *Ford Global Technologies v. International Trade Commission*, No. 2007-1357 and 2007-1526, United States Court of Appeals for the Federal Circuit. 331 FedAppx 739 (Fed Cir. Apr. 2009). Appeal dismissed on stipulation.

approved in *KSR* and the *Graham* analysis to the facts of the investigation, and correctly determined that the Respondents failed to meet their burden regarding obviousness. USITC Inv. No. 337-TA-557 2007 WL 2021234 July 5, 2007. “Therefore, we believe that the ALJ's obvious analysis is wholly consistent with *KSR”*. *Id.* While it is not agreed KSR was correctly applied in the case, it is the ITC did apply KSR to design patents at issue regarding replacement automobile parts.

In a recent ITC decision also as to automobile replacement parts, the Commission found violations under 37 design patents held by OEM’s as to replacement headlamps and taillamps and again issued exclusion orders as to the importation of these parts.[6] These violations were found despite challenges to the validity of the patents based on obviousness. The ITC in this most recent case applied the *Rosen-Durling* analysis without mention of *KSR* to the obviousness issue. See 337-TA-1291 p 14 and 337-TA-1292 p. 15.

This Court’s decision to overrule and/or modify the *Rosen-Durling* analysis to fall under *KSR* will provide clarity in this area.

[6] *Certain Replacement Automotive Lamps*, Inv. No. 337-TA-1291, Request for Submissions on the Public Interest (January 25, 2023) (EDIS DocId 788550); *Certain Replacement Automotive Lamps II*, Inv. No. 337-TA-1292, Request for Submissions on the Public Interest (January 31, 2023) (EDIS DocId 789032).

As to combining multiple prior art designs against a claimed design, where the differences between the prior art design and the claimed design are very few and very minor (essentially de minimis or virtually unnoticeable in terms of effect on the overall appearance), and those trivial differences are disclosed in prior art designs of the exact same type of article, then the claimed design has not succeeded in creating a different overall impression and should not be awarded a design patent. Such is the case with automobile crash parts which in many instances will not be patent-worthy as the designs make only de minimis changes to a prior art design.

The rigid test of *Rosen-Durling* is relied upon by OEMs to seek questionable design patents to gain a distinct advantage in the balance between intellectual property rights and competition in the replacement parts industry. Congress has several times looked into this attempt at manipulation and most recently sought to curb this anticompetitive behavior with the recent reintroduction of the REPAIR Act (H.R. 906)[7] and the SMART Act (H.R. 1707)[8]. Bills of this nature are

---

[7] "Right to Equitable and Professional Auto Industry Repair Act" or the "REPAIR Act" is to ensure consumers have access to data relating to their motor vehicles, critical repair information, and tools, and to provide them choices for the maintenance, service, and repair of their motor vehicles, and for other purposes.
[8] The Save Money on Auto Repair Transportation (SMART) Act, introduced by Rep. Darrell Issa (R-Calif.) would reduce the amount of time car manufacturers can enforce patent designs on repair parts against non-OEM parts suppliers from

designed to maintain competitive markets in limiting the use of design patents on replacement automobile parts which ultimately benefits consumers.

### C. If the court were to eliminate or modify the Rosen-Durling test, what should the test be for evaluating design patent obviousness challenges?

*KSR* allows for more prior art to be considered in the design patent context. The Federal Circuit should apply *KSR* in design patent cases. Utility patent and design patents have the same non-obviousness requirement of § 103. The design patent non-obviousness analysis benefits from the allowance of common sense and good judgment. The errors the *KSR* Court attributed were the "rigid approach of the [Federal Circuit]" that the Supreme Court rejected. Thus, courts should not too narrowly limit the scope of prior art that could be used to infer combination and should not limit "factfinders recourse to common sense". *KSR Int'l Co. v. Teleflex Inc.,* 550 US 389, 420 (2007).

This common-sense approach is the best solution in the analysis between protecting innovation balanced against market competition. As stated as part of the goal of the "SMART ACT" is to open the repair market to multiple sources[9]

---

14 years to 2.5 years. The bill is largely the same as previous versions introduced in prior sessions of Congress.

[9] SMART Act is designed to "expand consumer choice for automobile collision repair parts, decrease costs to both drivers and insurers, and enhance competition in the automobile repair parts market". Rep. Darrell Issa Press Release, March 22, 2023).

> This is not the time to raise repair costs for Americans depending on their cars so they can get their kids to school and drive to work. We need a balanced approach, and this bipartisan bill encourages competition for an innovative quality auto parts market at the best price for consumers[10].

**D. Given the length of time in which the Rosen-Durling test has been applied, would eliminating or modifying the design patent obviousness test cause uncertainty in an otherwise settled area of law?**

The current obviousness analysis for design patents helps shield OEM's from competition in the crash part replacement market and allows improper infringement claims and exclusions of certain imported parts. Competition in the marketplace for replacement crash parts keeps prices down to the benefit of consumers. Article I, Section 8, Clause 8 of the Constitution gives Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." This Clause "reflects a balance between the need to encourage innovation and the avoidance of monopolies which stifle competition without any concomitant advance in the 'Progress of Science and useful Arts."' *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 146 (1989). As the Supreme Court noted:

---

[10] Rep. Zoe Lofgren. February 2012 Press Release. https://lofgren.house.gov/media/press-releases/reps-lofgren-and-issa-introduce-legislation-preserve-consumer-choice-and

> [T]he Clause contains both a grant of power and certain limitations upon the exercise of that power. Congress may not create patent monopolies of unlimited duration, nor may it "authorize the issuance of patents whose effects are to remove existent knowledge from the public domain, or to restrict free access to materials already available."

*Id*. (citing *Graham v. John Deere Co*., 383 U.S. 1, 6 (1966).

A design patent is invalid under 35 U.S.C. § 103 if the differences between the subject matter sought to be patented and the prior are such that the subject matter as a whole would have been obvious at the time the invention was made. Under *KSR*, the test should be an approach based upon common knowledge and common sense.

## IV. CONCLUSION

This Court should overrule *Rosen* and *Durling* and adopt the flexible test of *KSR* as crucial to a design patent analysis and as required by Supreme Court precedent.

August 28, 2023

Respectfully Submitted,

By: /s/ Robert J. Figa

ROBERT J. FIGA
DEAN & FULKERSON, P.C.
100 West Big Beaver Rd., Suite 650
Troy, MI 48084
(248) 362-1300
RFiga@DFLaw.com

Attorneys for *Amicus Curiae* Taiwan Auto Body Parts Association

**FORM 19. Certificate of Compliance with Type-Volume Limitations** **Form 19 July 2020**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 21-2348

**Short Case Caption:** LKQ Corporation et al v GM Global Technology Operations LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 3,867 words.
- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 08/28/2023

Signature: /s/ Robert J. Figa

Name: Robert J. Figa

Save for Filing