**No. 2021-2348**

# United States Court of Appeals
## for the Federal Circuit

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**
*Appellants,*

v.

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**
*Appellee.*

*Appeal from the United States Patent and Trademark Office,*
*Patent Trial and Appeal Board in No. IPR2020-00534*
*(JJ. Scott A. Daniels, Grace K. Obermann, and Christopher G. Paulraj)*

# EN BANC BRIEF OF AMICUS CURIAE AUTO CARE ASSOCIATION IN SUPPORT OF APPELLANTS LKQ CORPORATION AND KEYSTONE AUTOMOTIVE INDUSTRIES, INC.

SETH D. GREENSTEIN
**CONSTANTINE CANNON LLP**
1001 PENNSYLVANIA AVE. NW 1300N
WASHINGTON, D.C. 20004
(202) 204-3500
SGREENSTEIN@CONSTANTINECANNON.
COM

*Counsel for Amicus Curiae*
*Auto Care Association*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2021-2348

**Short Case Caption** LKQ Corp., et al. v. GM Global Tech. Ops. LLC

**Filing Party/Entity** Auto Care Association, amicus curiae in support of Appellants

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/28/2023

Signature: /s/ Seth D. Greenstein

Name: Seth D. Greenstein

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Auto Care Association | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF INTEREST ...................................................................... 1

ARGUMENT................................................................................................ 5

I. The Court Should Apply the *KSR* Obviousness Test to Design Patents........ 5

II. The Proper Test for Obviousness to Design Patents Is Crucial to Competition and Consumer Rights to Repair and Replace. ........................... 9

A. The potential harm from a rigid obviousness test is exacerbated by the increasing number of design patents. ................... 9

B. Improvidently granted design patents cause outsized harm to car repair, competition, and consumer rights......................................... 13

CONCLUSION........................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Alliance for Automotive Innovation v. Andrea Joy Campbell*,
Case No. 1:20-cv-12090 (D. Mass filed Nov. 20, 2020)............................ 4

*Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*,
67 F.2d 428 (6th Cir. 1933)........................................................................ 9

*Best Lock Corp. v. Ilco Unican Corp.*,
94 F.3d 1563 (Fed. Cir. 1996)................................................................... 9

*Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*,
908 F.2d 951 (Fed. Cir. 1990)................................................................... 8

*Durling v. Spectrum Furn. Co.*,
101 F.3d 100 (Fed. Cir. 1996)............................................................... 6, 7

*Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp.*,
340 U.S. 147 (1950).................................................................................. 6

*Impression Prods. Inc. v. Lexmark Intern., Inc.*,
581 U.S. 360 (2017).................................................................................. 9

*In re Rosen*,
673 F.2d 388 (CCPA 1982) .................................................................. 6, 7

*In the Matter of Certain Automotive Parts*,
Inv. No. 337-TA-557 (June 6, 2007)......................................................... 9

*In the Matter of Certain Automotive Parts*,
Inv. No. 337-TA-651 (May 8, 2009).......................................................... 9

*In the Matter of Certain Replacement Automotive Lamps*,
Inv. No. 337-TA-1291 (Final ID Jan. 24, 2023; decision to review
May 11, 2023)........................................................................................ 10

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)............................................................................ 5, 6, 7

*LKQ Corp. v. GM Global Tech. Ops. LLC*,
Case 21-2348, Doc. 86, Order (June 30, 2023)........................................... 1

*Pashek v. Dunlop Tire & Rubber Co.*,
8 F.2d 640 (N.D. Ohio 1925) .................................................................... 9

*Quanta Computer, Inc. v. LG Elec., Inc.*,
533 U.S. 617 (2008)........................................................................ 9

*Samsung Elecs. v. Apple, Inc.*,
580 U.S. 53 (2016).......................................................................... 10

*Titan Tire Corp. v. Case New Holland*,
566 F.3d 1372 (Fed. Cir. 2009)......................................................... 5, 6

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
778 F.3d 1365 (Fed. Cir. 2015)........................................................... 15

**Statutes**

35 U.S.C. § 103............................................................................................ 6

35 U.S.C. § 171............................................................................................ 6

35 U.S.C. § 171(b)........................................................................................ 5

35 U.S.C. § 173............................................................................................ 5

ITC Section 337 ..................................................................................9, 10, 12

Digital Millennium Copyright Act Section 1201(a) ............................................ 4

**Regulations**

80 Fed. Reg. 65944 (Oct. 28, 2015) .................................................................. 4

83 Fed. Reg. 54010 (Oct. 26, 2018) .................................................................. 4

86 Fed. Reg. 59627 (Oct. 28, 2021) .................................................................. 4

D.C. Mun. Regs. Tit 18 § 733.4 – 733.6............................................................ 8

Md. Code Regs. 11.14.02.08.............................................................................. 8

**Legislative**

Hearing Before the House Committee on the Judiciary, "Design Patents and Auto Replacement Parts," Serial No. 111-112 p. 2 (March 22, 2010), https://www.govinfo.gov/comtent/pkg/CHRG-111hhrg55596/pdf/CHRG-111hhrg55596.pdf......................................................................... 12

**Texts and Law Reviews**


Aaron Perzanowski, *The Right to Repair* (2022). .............................................. 12

David L. Schwartz and Xaviere Giroud, “An Empirical Study of Design Patent Litigation,” 72 Alabama Law Review 418 (2020). ................................. 12


**Other Authorities**


2023 Design Patent 100 List, Top Design Patent Owners List, Top Companies In Design Patents, https://harrityllp.com/design-patent-100-list/ ............. 11

Alexander J. Neuworth, Scott D. Anderson, Christopher K. Brunnquell, “Design Patent Protection Remains a Valuable Tool for Automotive Manufacturers,” https://www.foley.com/en/insights/publications/2022/12/design-patent-protection-automotive-manufacturers (Dec. 8, 2022). .............................. 11

Auto Care Factbook 2024 ..................................................................... 1, 2, 3, 14

Consumer Price Index for All Urban Consumers: Motor Vehicle Parts and Equipment in U.S. City Average, https://fred.stlouisfed.org/series/CUUR0000SETC (updated Aug. 10, 2023). .......................................................................... 13

Dustin Hawley, “Aftermarket vs Manufacturer Car Parts,” J.D. Power (May 31, 2023), https://www.jdpower.com/cars/shopping-guides/aftermarket-vs-manufacturer-car-parts https://www.jdpower.com/cars/shopping-guides/ aftermarket-vs-manufacturer-car-parts ..................................................... 3

Elizabeth D. Ferrill, Alissa E. Green, “Appeals Court Upholds Replacement Part Design Patents,” (July 24, 2020) https://www.finnegan.com/en/insights/articles/CDMR-appeals-court-upholds-replacement-part-design-patents.html ......................................... 11

Erika Giovanetti, “43% of Americans Driven Into Debt Over Car Troubles,” https://www.lendingtree.com/personal/car-repair-debt-survey/ (July 28, 2020). .......................................................................................... 15

Federal Trade Commission, “FTC announces three right-to-repair cases: Do your warranties comply with the law?” (July 7, 2022), https://www.ftc.gov/business-guidance/blog/2022/07/ftc-announces-three-right-repair-cases-do-your-warranties-comply-law ........................... 4

Federal Trade Commission, *Nixing the Fix: An FTC Report to Congress on Repair Restrictions*, 40 n. 219 (May 2021), https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf. .................................................................. 3, 12

Kelley Blue Book Analysis: Average New-Vehicle Transaction Price in June Posts Smallest Annual Gain in Nearly 4 Years, (July 11, 2023) https://mediaroom.kbb.com/2023-07-11-Kelley-Blue-Book-Analysis-Average-New-Vehicle-Transaction-Price-in-June-Posts-Smallest-Annual-Gain-in-Nearly-4-Years................................................................ 13

Massachusetts Question 1, "Right to Repair Law" Vehicle Data Access Requirement Initiative (2020), https://ballotpedia.org/Massachusetts_Question_1,_%22Right_to_Repair_Law%22_Vehicle_Data_Access_Requirement_Initiative_(2020) ............................................................................... 4

National Highway Traffic Safety Administration, "Overview of Motor Vehicle Traffic Crashes in 2021," DOT HS 813 435, 7 (April 2023) https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/813435......... 2

News Release, IHS, "Average Age of Light Vehicles in the U.S. Rises Slightly in 2015 to 11.5 years," July 29, 2015, http://press.ihs.com/press-release/automotive/average-age-lightvehicles-us-rises-slightly-2015-115-years-ihs-reports ..................................................................... 14

Policy Statement of the Federal Trade Commission on Repair Restrictions Imposed by Manufacturers and Sellers, https://www.ftc.gov/system/files/documents/publicstatements/1592330/p194400 repairrestrictionspolicystatement.pdf ........................................................ 5

Quality Parts Coalition,"DisturbingTrend," http://www.keepautopartsaffordable.org/sites/all/themes/framework/pdf_resouce/design+patents+on+collision+repair+parts_graph-2.pdf. ..... 12

Statista, Number of design patent application filings in the United States from FY 2000 to FY 2021, https://www.statista.com/statistics/256576/number-of-design-patent-application-filings-in-the-us/ .................................................................. 11

Statista, Number of design patents issued in the United States from FY 2000 to FY 2021, https://www.statista.com/statistics/256589/number-of-design-patent-grants-in-the-us/ ........................................................................... 11

Sterne Kessler Goldstein & Fox, Ivy Clarice Estoesta, "ITC: Design Patents Continue to Outperform on Obtaining Remedies at the International Trade Commission," 2022 Design Patents Year in Review, Analysis & Trends (2d Ed.),. https://www.jdsupra.com/legalnews/2022-design-patents-year-in-review-6699582/......................................................................... 10

TT Consultants,
"What Did the Patent Landscape for General Motors Look Like?" https://ttconsultants.com/articles/what-did-the-patent-landscape-of-general-motors-look-like/;
"What Did the Patent Landscape for Ford Motor Look Like?" https://ttconsultants.com/articles/what-did-the-patent-landscape-of-ford-motor-look-like/;
"What Did the Patent Landscape for Honda Look Like?" https://ttconsultants.com/articles/what-did-the-patent-landscape-of-honda-look-like/; and,
"What Did the Patent Landscape for BMW Look Like?" https://ttconsultants.com/articles/what-did-the-patent-landscape-of-bmw-look-like/ ........................................................................... 11

U.S. Patent Activity Calendar Years 1790 to the Present, https://www.uspto.gov/web/offices/ac/ido/oeip/taf/h_counts.htm ............ 11

U.S. Patent Statistics Chart Calendar Years 1963 – 2020, https://www.uspto.gov/web/offices/ac/ido/oeip/taf/us_stat.htm................ 11

USPTO, Design Data June 2023, https://www.uspto.gov/dashboard/patents/design.html............................. 11

## STATEMENT OF INTEREST

Auto Care Association ("Auto Care") is a national trade organization that that represents the interests of more than 500,000 businesses providing automotive aftermarket products and services.[1] Our members include parts manufacturers and distributors, parts stores, and independent service and repair shops. The vehicle aftermarket is an over $400 billion industry comprised of more than 4.7 million American professionals.

The aftermarket for motor vehicle parts and service contributes substantially to the American economy, reaching $477.6 billion, including $360.4 billion for repair of automobiles, in 2022.[2] As of January 2023, there were 284 million light vehicles and 293.4 million total registered motor vehicles in the United States.[3] The aftermarket has assumed greater importance to consumers with the rising costs of new and used vehicles. The average age of "light" vehicles steadily increased over the last decade, reaching 12.2 years as of January 1, 2022 and an estimated 12.5 years in January 1, 2023.[4]

---

1 Consent for the filing of this brief was granted by the Court, *LKQ Corp. v. GM Global Tech. Ops. LLC*, Case 21-2348, Doc. 86, Order at ¶ 6 (June 30, 2023). No counsel for a party authored this brief in whole or in part, or made a monetary contribution intended to fund preparation or submission of this brief. No person other than amicus curiae made a monetary contribution to its preparation or submission. LKQ Corp. is a member of Auto Care.

2 Auto Care Factbook 2024 (hereinafter "Factbook") p. 13.

3 *Id*. p. 114.

4 *Id*. p. 30.

Design patents for automobiles (including the fenders involved in this case) affect competition and consumer choice in the aftermarket for body work. In 2021, more than 6.1 million car crashes were reported to the police, *i.e.*, were significant enough to require body work.[5] American consumers spent an estimated $44.3 billion in 2022 on vehicle body work.[6] Approximately 71% of that repair revenue was paid to the more than 35,400 independent body shops in the U.S., with 29% going to dealerships.[7]

Consumers prefer independent body shops because they offer quality repairs with lower costs of service and use less expensive non-OEM replacement parts. As the Federal Trade Commission recently observed in its *Nixing the Fix* report to Congress, "Where non-manufacturer parts are available, competition can rein in cost, as historically exemplified by the auto industry. For example, the [Auto Body Parts Association] stated in its empirical research submission that '[f]or more than 60 years, the alternative collision parts industry has been offering quality alternative parts to consumers, typically 15-50% less expensive than car company non-patented

5 National Highway Traffic Safety Administration, "Overview of Motor Vehicle Traffic Crashes in 2021," DOT HS 813 435 at 1, 7 (April 2023) (estimating 6,102,936 police-reported traffic crashes in 2021, with 4,335,820 property damage-only crashes), https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/813435.

6 Factbook p. 14.

7 *Id.*, pp. 14, 17. Approximately 5.4% of body work was performed by "do-it-yourselfers" rather than a shop. *Id.* p. 15.

repair parts.'"[8] A more recent survey by the Property Casualty Insurers of America found that OEM parts generally cost about 60% more than aftermarket car parts.[9] These increased costs, even if not paid by consumers directly, inevitably are passed on to consumers through higher insurance premiums.

Auto Care research further confirms the lower cost of using non-OEM replacement body parts. Average prices for non-OEM replacement parts purchased at an independent shop rather than a dealership are almost $70 lower for the top 50 car fenders, almost $90 lower for the top 50 car bumpers, and more than $140 lower for the top 50 car hoods.[10] Without price competition from independent parts suppliers, OEM replacement parts prices would be even higher.[11]

Major automobile original OEMs have attempted to thwart aftermarket competition through multifarious legal maneuvers targeting independent servicers and parts suppliers. OEMs have mounted court challenges to State-enacted "Right to Repair" laws, even where those laws have passed with overwhelming voter

---

8 Federal Trade Commission, *Nixing the Fix: An FTC Report to Congress on Repair Restrictions*, p. 40 n. 219 (May 2021), https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf.

9 Dustin Hawley, "Aftermarket vs Manufacturer Car Parts," J.D. Power (May 31, 2023), https://www.jdpower.com/cars/shopping-guides/aftermarket-vs-manufacturer-car-parts

10 Factbook p. 100.

11 *See, Nixing the Fix*, p. 40 n. 219 (May 2021) (competition reduced the cost of OEM auto parts by approximately 8%) citations omitted).

approval.[12] OEMs have attempted unsuccessfully to void warranties of consumers who used non-OEM replacement parts.[13] OEMs' attempts to use the Digital Millennium Copyright Act to stymie independent repair of parts controlled by embedded computer software were thwarted by the Librarian of Congress, who has permitted repair of these modules as a fair use exception to Section 1201(a) of the Digital Millennium Copyright Act.[14]

During this same period, OEMs have amped up their efforts to obtain and exploit design patents for vehicle body parts. *See infra* at Section II. The OEMs' focus on obtaining design patents for insignificant design changes over the past twenty years has restricted aftermarket competition, to the detriment of consumers. The FTC "uncovered evidence that manufacturers and sellers may, without reasonable justification, be restricting competition for repair services in numerous

---

12 *See*, *Alliance for Automotive Innovation v. Andrea Joy Campbell*, Case No. 1:20-cv-12090 (D. Mass filed Nov. 20, 2020); Massachusetts Question 1, "Right to Repair Law" Vehicle Data Access Requirement Initiative (2020), https://ballotpedia.org/Massachusetts_Question_1,_%22Right_to_Repair_Law%22_Vehicle_Data_Access_Requirement_Initiative_(2020).

13 *See*, Federal Trade Commission, "FTC announces three right-to-repair cases: Do your warranties comply with the law?" (July 7, 2022), https://www.ftc.gov/business-guidance/blog/2022/07/ftc-announces-three-right-repair-cases-do-your-warranties-comply-law.

14 *See*, Library of Congress, Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 80 Fed. Reg. 65944 (Oct. 28, 2015); amended and expanded in Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 83 Fed. Reg. 54010 (Oct. 26, 2018); and renewed in Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 86 Fed. Reg. 59627 (Oct. 28, 2021).

ways, including: … asserting patent rights and enforcement of trademarks in an overbroad manner. . . .”[15]

For these reasons, in response to the Court's Questions B and C, Auto Care respectfully submits it is crucial that minimal design changes do not effectively grant OEMs a monopoly over individual replacement parts for the useful life of the vehicle. The Court should adopt the *KSR* test for design patent obviousness.[16]

## ARGUMENT

### I. The Court Should Apply the *KSR* Obviousness Test to Design Patents.

As this Court observed in *Titan Tire*, "it is not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of *KSR*." *Id.*, 566 F.3d at 1385. Auto Care submits that, as a matter of statutory interpretation and policy, this Court should apply the *KSR* test for obviousness to design patents as well.

The Patent Act applies to utility and design patents, with limited differences. 35 U.S.C. § 171(b). Where Congress determined that design patents required different treatment, it enacted specific requirements and limitations, such as the 15-year patent term. 35 U.S.C. § 173. Where Congress did not enact a statutory exception, courts should presume that Congress intended the same laws applicable to utility patents to apply to design patents. Section 103 defines obviousness with

---

15 Policy Statement of the Federal Trade Commission on Repair Restrictions Imposed by Manufacturers and Sellers, https://www.ftc.gov/system/files/documents/public_statements/1592330/p194400repairrestrictionspolicystatement.pdf.

16 *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).

no exceptions or limitations for design patents, and so should be applied equally to utility and design patents. *See*, *Titan Tire Corp. v. Case New Holland*, 566 F.3d 1372, 1380, (Fed. Cir. 2009) ("Design patents are subject to the nonobviousness requirement of 35 U.S.C. § 103. *See* 35 U.S.C. § 171.")

*KSR* addressed the test for obviousness in the context of utility patents, but the Court's opinion does not limit its holding to that context. Rather, *KSR* describes the contours of obviousness in terms of principles that favor an "expansive and flexible" analysis, and "a broad inquiry" that considers multiple factors and "secondary considerations that would prove instructive." *KSR*, 550 U.S. at 415. The Court further cited from a policy perspective the harm created by an overly strict test obviousness test that "obviously withdraws what is already known into the field of its monopoly and diminishes the resources available" to those skilled in the relevant art. *Id*. 550 U.S. at 416, *quoting Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp.*, 340 U.S. 147, 152-53 (1950). Thus, under any obviousness inquiry, "[i]f a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability." *KSR*, 550 U.S. at 401.

This Court's *Rosen* and *Durling* decisions apply the design patent equivalent of the "teaching, suggestion, or motivation" test that the Supreme Court held to be

an impermissibly "rigid approach" to obviousness in *KSR*.[17] For example, unlike the *Rosen/Durling* analysis requiring that virtually all design elements be contained in a "primary reference," *KSR* states that"[o]ften, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *Id*. 550 U.S. at 418. One can readily envision a design process whereby OEM automobile designers look to multiple prior design references for car body parts – not for inspiration or innovation but to merely find some potentially patentable difference that would enable the OEM to maintain its monopoly on the lucrative parts aftermarket for the life of the vehicle.

Where designs are claimed for common functional objects the line between ornamentation and functionality can be blurred or elusive, requiring that the test for obviousness should be applied not only flexibly but with all due care. Car parts are a paradigmatic example of how functional, structural, and regulatory constraints such as shape, fit, aerodynamics, weight, strength, and ease and cost of mass manufacture narrow the available range of ornamental design. Fender shapes need

17 *In re Rosen*, 673 F.2d 388 (CCPA 1982); *Durling v. Spectrum Furn. Co.*, 101 F.3d 100 (Fed. Cir. 1996).

to fit the contours of the remaining body parts on all four edges, the inside of the fender, and tires; and must be a certain height to avoid contact with pavement. State laws may require fenders to cover the tread or full tire.[18] Fenders are designed to meet certain strength requirements both in ordinary use and in case of collision. Principles of aerodynamics require that fenders be designed to reduce coefficient of drag; and drag and weight affect fuel economy.

For such reasons, courts have denied patents for automotive part designs. For example, in affirming the denial of a preliminary injunction based on a truck fender design patent, this Court observed that "[t]he question of when the functionality of a design so permeates an article of manufacture that design patent protection is not available under the law is a complex issue and one that continues to be the subject of considerable judicial attention." *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 954 (Fed. Cir. 1990) (agreeing the district court could reasonably conclude that the validity of the fender design patent "was in some doubt"). In an early case, a court held that, regardless of the uniqueness of the design, "an automobile tire tread is not a proper subject for a design patent. . . The tread surface is broken up and given certain characteristics for reasons of function and utility. . . Ornamentation and decoration have little if any relation thereto. . . In use the tire tread is not intended to be ornamental or decorative. It is intended for

18 *See, e.g.*, D.C. Mun. Regs. Tit 18 § 733.4 – 733.6; Md. Code Regs. 11.14.02.08.

hard wear upon rough surfaces and under all conditions of mud and weather." *Pashek v. Dunlop Tire & Rubber Co.*, 8 F.2d 640, 640-41 (N.D. Ohio 1925).[19]

## II. The Proper Test for Obviousness to Design Patents Is Crucial to Competition and Consumer Rights to Repair and Replace.

Over the last two decades the Supreme Court twice has clarified the expansive scope of permissible repair under the doctrine of patent exhaustion.[20] During that time, OEMs' efforts to use intellectual property laws to stifle otherwise lawful auto repair have largely been unsuccessful, with one exception: design patents.

### A. The potential harm from a rigid obviousness test is exacerbated by the increasing number of design patents.

OEMs' increasing use of design patents as the mode to exclude aftermarket competition is no coincidence, but the result of a deliberate strategy. In 2005, Ford Motor Company filed a complaint at the U.S. International Trade Commission under Section 337, seeking to exclude rival aftermarket replacement collision body parts for its Ford 150 pickup. *In the Matter of Certain Automotive Parts*, Inv. No. 337-TA-557 (general exclusion order issued June 6, 2007). Ford's Section 337 complaint filed the following year concerning design patents for the Ford Mustang settled. *In the Matter of Certain Automotive Parts*, Inv. No. 337-TA-651 (terminated May 8,

---

19 *See, Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428 (6th Cir. 1933) (invalidating as functional a combination ash tray-electric lighter). *See also, Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563 (Fed. Cir. 1996) (key design dictated by function).

20 *Impression Prods. Inc. v. Lexmark Intern., Inc.*, 581 U.S. 360 (2017); *Quanta Computer, Inc. v. LG Elec., Inc.*, 533 U.S. 617 (2008).Static Control

2009). A recent ALJ initial determination finding a violation of Section 337 with respect to 20 design patents owned by Kia Corp. of Seoul, Korea and Kia America, Inc. for replacement car lamps is currently under Commission review. *In the Matter of Certain Replacement Automotive Lamps*, Inv. No. 337-TA-1291 (Final ID 1/24/2023; decision to review May 11, 2023).

The International Trade Commission has become an extraordinarily hospitable venue for design patent owners. For ITC Section 337 cases that terminated between 2015-2022, "the rate of getting a [General Exclusion Order] issued for investigations involving design patents grew to seven times greater than those asserting just utility patents."[21] ITC cases involving design patents also resulted in almost twice as many limited exclusion orders, and almost three times as many cease and desist orders. *Id*.

Not surprisingly, during this same period manufacturers, particularly OEM automobile manufacturers, dramatically accelerated filing applications for design patents. Between 2000 and 2020, design patent applications increased 2.5-fold, and design patents granted by the U.S. Patent and Trademark Office more than

21 Sterne Kessler Goldstein & Fox, Ivy Clarice Estoesta, "ITC: Design Patents Continue to Outperform on Obtaining Remedies at the International Trade Commission," 2022 Design Patents Year in Review, Analysis & Trends (2d Ed.); (footnotes omitted). https://www.jdsupra.com/legalnews/2022-design-patents-year-in-review-6699582/ In light of the Supreme Court's holding in *Samsung Elecs. v. Apple, Inc*., 580 U.S. 53 (2016), exclusion and injunctive relief will often be a more powerful remedy than infringement damages – and therefore, the greater threat to competition.

doubled.[22] To date in 2023, the cumulative design patent allowance rate by the USPTO is a whopping 83.8%.[23]

By one estimate, the USPTO issued more than 45,000 automotive design patents just between 2013-2022.[24] Between 2015-2020, the USPTO issued more than 2,500 design patents to the top five automakers.[25] In 2022, 12 of the top 100 recipients of design patents from the USPTO were automobile manufacturers.[26] In 2021, General Motors had 1,605 active design patents; Ford had 732 active design patents; Honda had 1,494 active design patents; and BMW had 1,660 active design patents.[27]

---

22 *See*, U.S. Patent Activity Calendar Years 1790 to the Present, https://www.uspto.gov/web/offices/ac/ido/oeip/taf/h_counts.htm; U.S. Patent Statistics Chart Calendar Years 1963 – 2020, https://www.uspto.gov/web/offices/ac/ido/oeip/taf/us_stat.htm. See also, https://www.statista.com/statistics/256576/number-of-design-patent-application-filings-in-the-us/; https://www.statista.com/statistics/256589/number-of-design-patent-grants-in-the-us/

23 USPTO, Design Data June 2023, https://www.uspto.gov/dashboard/patents/design.html

24 Alexander J. Neuworth, Scott D. Anderson, Christopher K. Brunnquell, "Design Patent Protection Remains a Valuable Tool for Automotive Manufacturers," https://www.foley.com/en/insights/publications/2022/12/design-patent-protection-automotive-manufacturers (Dec. 8, 2022).

25 Elizabeth D. Ferrill, Alissa E. Green, "Appeals Court Upholds Replacement Part Design Patents," (July 24, 2020) https://www.finnegan.com/en/insights/articles/CDMR-appeals-court-upholds-replacement-part-design-patents.html

26 2023 Design Patent 100 List, Top Design Patent Owners List, Top Companies In Design Patents, https://harrityllp.com/design-patent-100-list/

27 TT Consultants, "What Did the Patent Landscape for General Motors Look Like?" https://ttconsultants.com/articles/what-did-the-patent-landscape-of-general-motors-look-like/; "What Did the Patent Landscape for Ford Motor Look Like?" https://ttconsultants.com/articles/what-did-the-patent-landscape-of-ford-motor-look-like/; "What Did the Patent Landscape for Honda Look Like?" https://ttconsultants.com/articles/what-did-the-patent-landscape-of-honda-look-like/; and, "What Did the Patent Landscape for BMW Look Like?" https://ttconsultants.com/articles/what-did-the-patent-landscape-of-bmw-look-like/

This upsurge in the number of design patents did not result from a sudden burst of creativity but, rather, from industry recognition of the power of Section 337 exclusion orders to eliminate competition from imported parts.[28] The number of design patent cases filed in federal court also continually increased during this time, despite that design patents are less likely to be held by non-practicing entities than utility patents.[29]

As Representative Lofgren noted at a 2010 committee hearing, "the creative enforcement of design patents may threaten [aftermarket] competition. … Without third-party suppliers, effective competition in the crash parts market is not possible, and no consumer will ever look at the price of replacement exterior parts in deciding whether to buy a new car. So the situation invites price gouging of consumers after they have no other option."[30] As more recently observed, "design patents threaten to undermine that competitive landscape, forcing consumers and repair shops to purchase original parts at inflated prices."[31]

---

28 "Other tactics described by commenters involve allegations of potentially exclusionary conduct, such as making products difficult or impossible to disassemble, in order to maintain market position and exclude aftermarket competitors, or the anti-competitive assertion of patent rights and enforcement of trademarks by manufacturers to restrict repairs not authorized by OEMs." FTC, *Nixing the Fix* pp. 10, 15. Quality Parts Coalition, "Disturbing Trend," http://www.keepautopartsaffordable.org/sites/all/themes/framework/pdf_resouce/design+patents+on+collision+repair+parts_graph-2.pdf.

29 *See* David L. Schwartz and Xaviere Giroud, "An Empirical Study of Design Patent Litigation," 72 Alabama Law Review 418, 421, 450 (2020).

30 Hearing Before the House Committee on the Judiciary, "Design Patents and Auto Replacement Parts," Serial No. 111-112 p. 2 (March 22, 2010), https://www.govinfo.gov/comtent/pkg/CHRG-111hhrg55596/pdf/CHRG-111hhrg55596.pdf.

31 Aaron Perzanowski, The Right to Repair (2022).

Given the dramatic increase in both the number of design patents and the assertion of design patents against aftermarket competitors, it is all the more crucial that patent examiners, the PTAB, and the courts uniformly apply the correct standards and tests for obviousness, and that applicants critically consider the likely outcome of an obviousness analysis before applying for questionable design patents.

### B. Improvidently granted design patents cause outsized harm to car repair, competition, and consumer rights.

Anyone involved in a car accident has felt the cost of body work and replacement body parts. The Consumer Price Index for motor vehicle parts and equipment, largely flat for some twenty years, began to rise in 2005 and has continued to outpace inflation since.[32] With more than 6.1 million accidents in the United States each year, more than $44.3 billion spent on body work in 2022, and a 15-50% differential in price between OEM and aftermarket parts, the decision of this Court in this case will have a significant impact on commerce, competition, and consumer rights. *Supra* pp. 1-3.

With the average cost of light vehicles increasing to more than $48,800 as of June 2023,[33] consumers are extending the useful life of their current automobiles up

32 *See* Consumer Price Index for All Urban Consumers: Motor Vehicle Parts and Equipment in U.S. City Average, https://fred.stlouisfed.org/series/CUUR0000SETC (updated Aug. 10, 2023).

33 Kelley Blue Book Analysis: Average New-Vehicle Transaction Price in June Posts Smallest Annual Gain in Nearly 4 Years, (July 11, 2023) https://mediaroom.kbb.com/2023-07-11-Kelley-Blue-Book-Analysis-Average-New-Vehicle-Transaction-Price-in-June-Posts-Smallest-Annual-Gain-in-Nearly-4-Years.

to an average of 12.5 years.[34] Given the average life of 12.5 years, an OEM armed with design patents with 15-year terms can effectively prevent development of any independent aftermarket for external car parts. Thus, improvidently-issued design patents will diminish all incentives to create aftermarket parts in the first instance, and deprive the market of the benefits of competition for the life of the vehicle.

Repair shops need replacement parts that satisfy the functional requirements of form, fit, and safety. For many parts, ornamentation is virtually irrelevant. Many consumers would willingly trade ornamentation for hundreds of dollars in savings – with one major exception. In the case of matched parts, such as fenders or doors, consumers cannot reasonably replace one damaged piece of a set with a non-matching part. The specific ornamentation may be unimportant – the need is to match rather than to have a particular "look," This practical consideration creates further OEM monopoly opportunities not specifically attributable to *the* patented design, but rather to the need to match *any* design.

Design patents for auto body parts inevitably increase consumer costs of repair for non-patented parts as well. Following an accident, if only an OEM patented body part can be used, consumers may be forced to use OEM-authorized

34 Factbook at 30. This is an increase from 12.2 years as of 2022, *Id.*, and an increase of a full year since 2015. News Release, IHS, "Average Age of Light Vehicles in the U.S. Rises Slightly in 2015 to 11.5 years," July 29, 2015, http://press.ihs.com/press-release/automotive/average-age-lightvehicles-us-rises-slightly-2015-115-years-ihs-reports.

repair shops to repair all damage caused by the accident – including for non-patented external and internal parts and service that could be performed less expensively by an independent repair shop using non-OEM parts. A patent owner would not be able to obtain damages in an infringement action based on such sales. "Being sold together merely for 'convenience or business advantage' is not enough. If the convoyed sale has a use independent of the patented device, that suggests a non-functional relationship."[35] Yet, that collateral benefit often is obtained by OEM design patent holders, where efficiency requires all repairs to be performed by a single facility that has access to parts covered by design patents as well as non-patented parts.

Finally, the higher cost of OEM parts harms public safety. A 2020 survey found that 43% of all Americans and 58% of millennials have gone into debt to repair their vehicles, and that 58% of drivers have foregone necessary repair and maintenance because they could not afford it.[36] Thus, where consumers cannot easily afford the increased costs associated with OEM parts and service, those consumers may be driving cars that are less safe – which is hazardous not only to the vehicle owner but to others sharing the road. Thus, adopting the *KSR*

---

35 *See, e.g.*, Warsaw Orthopedic, Inc. v. NuVasive, Inc., 778 F.3d 1365, 1375 (Fed. Cir. 2015) (lost profits damages for convoyed sales must be functionally related, and the losses must be reasonably foreseeable) (citations omitted).

36 *See* Erika Giovanetti, "43% of Americans Driven Into Debt Over Car Troubles," https://www.lendingtree.com/personal/car-repair-debt-survey/ (July 28, 2020).

obviousness test for design patents is not only important for the development of patent law. It will benefit competition, consumer finances, and public safety.

## CONCLUSION

The Court should overrule its prior *Rosen/Durling* test and adopt the *KSR* test as the test for design patent obviousness, vacate the decision of the Patent Trial and Appeal Board, and remand with instructions to reconsider based on the correct test for obviousness.

August 28, 2023

Respectfully submitted,

*/s/ Seth D. Greenstein*

Seth D. Greenstein
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave., NW
1300 N
Washington, D.C. 20004
Tel.: (202) 204-3500
Fax: (202) 204-3501
sgreenstein@constantinecannon.com

*Counsel for Amicus Curiae*
*Auto Care Association*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 21-2348

**Short Case Caption:** LKQ Corp. v. GM Global Tech. Operations, LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 3,802 words.
- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 08/28/2023

Signature: /s/ Seth D. Greenstein

Name: Seth D. Greenstein