No. 2021-2348

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

LKQ CORPORATION & KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,

*Appellants*,

v.

GM GLOBAL TECHNOLOGY OPERATIONS LLC,

*Appellee*.

*Appeal from the United States Patent and Trademark Office*
*Patent Trial and Appeal Board in IPR2020-00534*
*(JJ Scott A. Daniels, Grace K. Obermann, and Christopher G. Paulraj)*

## EN BANC BRIEF OF AUTOMOTIVE BODY PARTS ASSOCIATION AS AMICUS CURIAE IN SUPPORT OF APPELLANTS

Robert G. Oake, Jr.
**Oake Law Office, PLLC**
700 S. Central Expressway, Suite 400
Allen, Texas 75013
Telephone: 214.207.9066
Facsimile: 469.519.5454
rgo@oake.com

Attorney for Amicus Curiae
Automotive Body Parts Association

August 28, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number**   2021-2348

**Short Case Caption**   LKQ Corporation, et al v. GM Global Technology Operatior

**Filing Party/Entity**   Amicus Curiae Automotive Body Parts Association

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/28/2023

Signature: /s/ Robert G. Oake, Jr.

Name: Robert G. Oake, Jr.

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Automotive Body Parts Association | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Robert G. Oake, Jr.<br>Oake Law Office, PLLC | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐    Yes (file separate notice; see below)    ☐    No    ☑    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

PAGE

I.    INTEREST OF THE AMICUS CURIAE    …………………… 1

II.   SUMMARY OF ARGUMENT ……………………………….. 2

III.  QUESTIONS PRESENTED    …………………………… 4

IV.   ARGUMENT    ……………………………………… 6

A.    *KSR* Abrogates the Mandatory *Rosen-Durling* Test ………….. 5

B.    *KSR* Applies to Design Patents and this Court should Eliminate the rigid *Rosen-Durling* Test    ……………………… 6

1.    Introduction ……..…………………………… 6

2.    The *Rosen-Durling* Test is Overly Rigid and Improper    7

3.    Historical Review of the Obviousness Test Development in Design Patent Cases  ………………… 8

(a)   Historically, Obviousness did not Require a Primary Reference ……………………… 9

(b)   The Origins of the Primary Reference Requirement    …………………………… 11

(c)   The Importance of the "As a Whole" Principle … 12

(d)   Passage of the 1952 Patent Act and the *Graham v. John Deere Co.* Decision …………… 12

(e)   *In re Glavas* and the Rule for Combining Primary and Secondary References ……………………… 13

(f)   Standard for Evaluating Obviousness Changed to Designer of Ordinary Skill  ………… 15

i

(g) *In re Rosen* and the Requirement that a Primary Reference be "Basically the Same" ……………. 15

(h) *In re Harvey* and the Focus on Overall Visual Appearances ………………………………... 16

4. Historical Review Highlights the Error in Always Requiring a Primary Reference ………………….... 17

C. The Test for Obviousness Should Apply the *Graham/KSR* Factors and Focus on Whether a Reason Exists that a Designer of Ordinary Skill would Combine Prior Art References to Achieve the Claimed Design …………………………… 18

D. No Precedent from this Court has Clarified the *Rosen-Durling* Test ……………………………………………….. 21

E. Correcting and Improving Design Patent Obviousness Principles Results in Less Uncertainty ………………………… 21

F. Differences Between Design Patents and Utility Patents Do Not Justify Fundamentally Different Frameworks for Determining Obviousness ……………………………………………….. 21

CONCLUSION ………………………………………………... 22

TABLE OF AUTHORITIES

**<u>CASES</u>**                                                                      <u>PAGE</u>

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988) …………………………… 19

*Campbell Soup Co. v. Gamon Plus, Inc.*,
    10 F.4th 1268 (Fed. Cir. 2021) ………………………… 7, 19

*Cavu Clothes, Inc. v. Squires, Inc.*,
    184 F.2d 30 (6th Cir. 1950)        …………………………… 8

*Columbus Plastic Products, Inc. v. Rona Plastic Corp.*,
    111 F. Supp. 623 (D.N.Y. 1953) ………………………… 13

*Dobson v. Dornan*,
    118 U.S. 10 (1886)………………………………………… 12

*Durling v. Spectrum Furniture Co., Inc.*,
    101 F.3d 100 (Fed. Cir. 1996)    ……………………… 4, 17, 18, 22

*Egyptian Goddess v. Swisa*,
    543 F.3d 665 (Fed. Cir. 2008)    …………………………… 21

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
    796 F.3d 1312 (Fed. Cir. 2015) ………………………… 19

*Graham v. John Deere Co. of Kansas City*,
    383 U.S. 1 (1966) ………………………………………… 7, 12, 13, 19,
                                                                              21, 22

*In re Borden*,
    90 F.3d 1570 (Fed. Cir. 1996)    …………………………… 5,

*In re Garbo*,
    287 F.2d 192 (C.C.P.A. 1961)    …………………………… 20

*In re Glavas*,
    230 F.2d 447 (C.C.P.A. 1956)    ………………………… 13, 14, 15,
                                                                              16

                                                                    PAGE

*In re Harvey*,
        12 F.3d 1061 (Fed. Cir. 1993)    ……………………………    16, 17

*In re Hopkins*,
        17 C.C.P.A. 621, 34 F.2d 1016 (C.C.P.A. 1929)    ……………    18

*In re Jennings*,
        182 F.2d 207 (C.C.P.A. 1950)    ……………………………    11, 12, 16

*In re Johnson*,
        175 F.2d 791 (C.C.P.A. 1949)    ……………………………    8

*In re Nalbandian*,
        661 F.2d 1214 (C.C.P.A. 1981) ……………………………    15

*In re Rosen*,
        673 F.2d 388 (C.C.P.A. 1982)    ……………………………    1, 2, 3, 15,
                                                                    18, 22

*In re Stevens*,
        81 U.S.P.Q 362, 173 F.2d 1015 (C.C.P.A. 1949)    …………    18

*Knapp v. Will & Baumer*,
        273 F. 380 (2nd Cir. 1921)        ……………………………    9, 17

*KSR International Co. v. Teleflex Inc.*,
        550 U.S. 398 (2007)        ……………………………………    1, 3, 4, 5, 6,
                                                                    7, 8, 21, 22

*MRC Innovations, Inc. v. Hunter Mfg., LLP*,
        747 F.3d 1326 (Fed. Cir. 2014) ……………………………    17

*Olsen v. Baby World Co. Inc. et al.*,
        126 F. Supp. 660 (D.C.N.Y. 1954)        ………………………    18

*Sidewinder Marine, Inc. v. Starbuck Kustom Boats & Prods.*,
        597 F.2d 201 (10th Cir. 1979)    ……………………………    7, 19

*Smith v. Whitman Saddle*,
        148 U.S. 674 (1893)        ……………………………………...    3, 6, 9, 17

PAGE

*Western Auto Supply Co. v. Am.-National Co.*,
    114 F.2d 711 (6th Cir. 1940)   …………………………   11, 17

**STATUTES AND RULES**

35 U.S.C. § 103   ………………………………………………..   6, 13

35 U.S.C. § 171   ………………………………………………..   12

35 U.S.C. § 171 (a)   ………………………………………   6

35 U.S.C. § 171 (b)   ………………………………………   6

Federal Rule of Appellate Procedure 29(a)(4)(E)   …………………   2

Federal Rule of Appellate Procedure 29   ……………………….   2

Federal Circuit Rule 29   …………………………………………   2

MPEP § 1504.03 II.   ………………………………………   20

**OTHER AUTHORITIES**

Sarah Burstein, *Visual Invention*,
    16 Lewis & Clark L. Rev. 169 (2012) ………………………   14

Janice M. Mueller & Daniel Harris Brean*, Overcoming the*
*"Impossible Issue" of Nonobviousness in Design Patents*,
    99 KY. L.J. 419 (2011)   ……………………………………   14

## I.    INTEREST OF THE AMICUS CURIAE

The Automotive Body Parts Association (ABPA) is a coalition dedicated to serving the collision repair industry with quality replacement parts. There are more than 160 Members of the ABPA, occupying more than 400 separate collision parts distribution, bumper sales, recycling facilities, and manufacturing plants. Collectively, ABPA Members are responsible for distributing more than 90% of independently produced aftermarket collision replacement parts sold to the collision repair trade.

In ABPA's view, the "basically the same" primary reference requirement from *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982) is an overly rigid rule that is inconsistent with long-standing principles of design patent invention, obviousness, and the Supreme Court opinion in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). A primary reference, while sometimes helpful in determining obviousness in the design patent context, should not be required when analyzing the obviousness of claimed designs because its strict application fails to capture some designs that are obvious when proper legal principles are applied.

When patents are allowed on automotive part designs that should be considered obvious, it harms consumers and poses a significant risk to the automotive repair parts supply chain in the United States. Consumers rely on automotive parts to repair their vehicles and bring them to pre-accident condition.

Allowing patents on obvious designs leads to higher motor vehicle repair costs due to lack of competition to the Original Equipment Manufacturers. Additionally, consumers face higher automotive insurance costs due to more expensive parts pricing as well as a significant time delay in getting their vehicles repaired due to fewer options in the supply chain.

Pursuant to F.R.A.P. 29(a)(4)(E), counsel for amicus curiae states that no counsel for any party authored this brief in whole or in part, and no party or counsel for a party made any monetary contribution intended to fund the preparation or submission of this brief. No person other than amici curiae, their members, or their counsel made any monetary contribution to the brief's preparation or submission. This brief is submitted under Federal Rule of Appellate Procedure 29 and Federal Circuit Rule 29.  Consent of the parties is not required. Dkt. 86, ¶ 6.

## II.    SUMMARY OF ARGUMENT

The rigid requirement of a primary reference that is "basically the same" as the claimed design arose in *Rosen, supra*, a case where the claimed design was a table design and the primary reference was a desk design. The court apparently believed such a primary reference was required to prevent combinations of design elements from prior art references based only on hindsight reasoning.

The error occurred when the courts began mandating a primary reference requirement in all design patent cases, even when a reason to combine prior art

references existed other than through a primary reference. The *Rosen* mandatory reference requirement was contrary to earlier case law such as *Smith v. Whitman Saddle*, 148 U.S. 674 (1893), where even though a primary reference arguably did not exist, a claimed design could be considered obvious based on other reasons to combine such as industry custom, common practice, and knowledge possessed by a designer of ordinary skill.

*KSR* confirms that a rigid approach to obviousness exemplified by the *Rosen* primary reference requirement is improper. The obviousness test must be flexible and expansive and consider not only the appearance of prior art references, but also the teachings of the prior art and general knowledge of an ordinary designer. The current strict and exclusive *Rosen-Durling* approach is inconsistent with *KSR*, inconsistent with other Supreme Court precedent, and inconsistent with other well-reasoned case authority.

The primary reference requirement is not needed to prevent hindsight reasoning when analyzing whether prior art references should be combined. Other well-established principles, such as the requirement to consider the claimed design and prior art references as a whole and the importance of identifying "a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does," *KSR, supra*, at 418-19, are adequate protections against impermissible hindsight reasoning.

Under the rationale of *KSR*, reasons to combine design elements can include factors such as industry custom and common practice, design trends, market pressures, ideas adapted or derived by analogy from prior usage, manufacturing efficiencies, design expediencies known to those of ordinary skill in the art, and the appearance of the prior art references.

## III.   QUESTIONS PRESENTED

A.   Does *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), overrule or abrogate *In re Rosen*, 673 F.2d 388 (CCPA 1982), and *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100 (Fed. Cir. 1996)?

B.   Assuming that *KSR* neither overrules nor abrogates *Rosen* and *Durling*, does *KSR* nonetheless apply to design patents and suggest the court should eliminate or modify the *Rosen-Durling* test? In particular, please address whether *KSR's* statements faulting "a rigid rule that limits the obviousness inquiry," 550 U.S. at 419, and adopting "an expansive and flexible approach," *id.* at 415, should cause us to eliminate or modify: (a) *Durling's* requirement that "[b]efore one can begin to combine prior art designs … one must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design,'" 101 F.3d at 103 (quoting *Rosen*, 673 F.2d at 391); and/or (b) *Durling's* requirement that secondary references "may only be used to modify the primary reference if they are 'so related to the primary reference that the appearance of

4

certain ornamental features in one would suggest the application of those features to the other,'" *id.* at 103 (quoting *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996)) (internal alterations omitted).

C.    If the court were to eliminate or modify the *Rosen-Durling* test, what should the test be for evaluating design patent obviousness challenges?

D.    Has any precedent from this court already taken steps to clarify the *Rosen-Durling* test? If so, please identify whether those cases resolve any relevant issues.

E.    Given the length of time in which the *Rosen-Durling* test has been applied, would eliminating or modifying the design patent obviousness test cause uncertainty in an otherwise settled area of law?

F.    To the extent not addressed in the responses to the questions above, what differences, if any, between design patents and utility patents are relevant to the obviousness inquiry, and what role should these differences play in the test for obviousness of design patents?

## IV.    ARGUMENT

### A.    *KSR* Abrogates the Mandatory *Rosen-Durling* Test

*KSR* abrogates the rigid primary reference requirement in *Rosen* and *Durling*. The *KSR* and *Rosen-Durling* approaches to obviousness analysis are inconsistent in that *KSR* requires an expansive and flexible approach to finding a reason to modify

5

or combine prior art references whereas *Rosen-Durling* strictly requires a primary reference that looks "basically the same" as the claimed design before the obviousness analysis may proceed. As explained below, the *Rosen-Durling* approach is inconsistent with *KSR*, *Whitman Saddle*, and other case authority.

> **B.** *KSR* **Applies to Design Patents and this Court should Eliminate the rigid *Rosen-Durling* Test**

> **1.    Introduction**

The fundamental principle in *KSR* that rigid rules should not limit the obviousness inquiry applies to design patents and therefore requires that the rigid requirement of a primary reference be eliminated.

*KSR* involved a utility patent, and the underlying statutory framework for analyzing obviousness is the same for both design patents and utility patents. 35 U.S.C. § 171 (a) and (b) state "[w]hoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title" and "[t]he provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided. One of the "conditions and requirements" that apply to design patents is 35 U.S.C. § 103, which states in relevant part "[a] patent for a claimed invention may not be obtained … if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious

before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains."

For both utility patents and design patents, the obviousness inquiry requires consideration of the four *Graham* factors: "(1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness." *Campbell Soup Co. v. Gamon Plus, Inc.,* 10 F.4th 1268, 1275 (Fed. Cir. 2021). Like utility patents, when a patented design is a combination of selected elements in the prior art, a holding of obviousness requires that there be some reason why it would have been obvious to a designer of ordinary skill to make the particular selection and combination made by the patentee. *See, e.g., Sidewinder Marine, Inc. v. Starbuck Kustom Boats & Prods.,* 597 F.2d 201, 209 (10th Cir. 1979) (court articulated reasons why design patent covering the ornamental design for a boat was obvious over the prior art).

## 2. The *Rosen-Durling* Test Is Overly Rigid and Improper

A continuing challenge in patent law is to properly define the appropriate reasons why a person of ordinary skill in the art would have made a particular prior art combination to render claimed subject matter obvious. The objective is continued refinement of the obviousness analysis to make it more uniform and consistent. In the utility patent context, the teaching suggestion motivation (TSM) test was developed to advance this objective. *See KSR* at 407.

In *KSR*, the Supreme Court held that although the TSM test captured a helpful insight, it was overly rigid and inconsistent with the expansive and flexible approach required in a utility patent obvious analysis. *See KSR* at 415. Similarly, this Court should hold that the *Rosen-Durling* test is an overly rigid mandatory formula and must yield to a more flexible approach to establishing a reason why it would have been obvious to a designer of ordinary skill to make the particular selection and combination. To understand why this is so, it is helpful to review the historical development of the principles underlying obviousness analysis for design patent claims.

### 3.    Historical Review of the Obviousness Test Development in Design Patent Cases

Early design patent statutes included the term "invention," which was interpreted as requiring an inventive quality for patentability. *See Cavu Clothes, Inc. v. Squires, Inc.*, 184 F.2d 30, 33 (6th Cir. 1950). Courts were candid about the difficulty of establishing a specific rule for invention but nonetheless offered helpful general principles to consider. In *In re Johnson*, 175 F.2d 791 (C.C.P.A. 1949), the court stated '[t]he courts seem to be of one accord in stating that the fourth element of the formula which tests the patentability of a design, viz., the exercise of the inventive faculty, defies definition and resides as a subjective standard in the mind of the judge considered as an "average observer." *Id.* The court continued "[w]hile patentable designs may result from regrouping familiar forms and decorations, the

substitution of a slightly different form already in use in articles of the class to which the design is applied, does not merit a monopoly [citation omitted] [and] [t]he degree of difference required to establish novelty occurs when the average observer takes the new design for a different, and not a modified already existing, design." *Id.*

During this time, an obviousness analysis did not require a primary reference that was "basically the same" as the claimed design. Rather, courts found lack of invention when there was a reason to combine prior art references based on, for example, industry custom and practice, ideas adapted or derived by analogy from prior usage, and what the prior art *taught* as well as what it showed.

**(a)    Historically, Obviousness did not Require a Primary Reference**

In *Smith v. Whitman Saddle*, 148 U.S. 674 (1893), a case concerning whether an accused saddle design infringed upon a design patent for a saddle, the Supreme Court discussed that a design would not be patentable when "[n]othing more was done in this instance (except as hereafter noted) than to put the two halves of these saddles together in the exercise of the ordinary skill of workmen of the trade, and in the way and manner ordinarily done." *Id.* at 681. Since two different halves were brought together, a single primary reference that was "basically the same" as the claimed design arguably did not exist.

In *Knapp v. Will & Baumer*, 273 F. 380 (2nd Cir. 1921), a case involving a candle design patent, the court found the design patent to be unpatentable because it

was not an "inventive act" to take "an ordinary coach handle, with a bell shaped tip,"

change "the column from a round one into a square one," and add "a self-fitting base

in accordance with the teachings of the art since 1861." *Id.* at 384-385. There

arguably was no primary reference that was basically the same as the accused design.

Rather, the prior art was relied upon to show prior forms and common practices.

*****



Image from *Knapp* disclosing the different candle cuts

In *Western Auto Supply Co. v. Am.-National Co.*, 114 F.2d 711 (6th Cir. 1940), a case involving a coaster wagon design, the Sixth Circuit found the design patent invalid due to lack of invention. The court explained "[i]f the variation sought to be patented is of such nature that it would naturally occur to one of average skill in the field, it is in reality in potential possession of the public, and to reward it with the monopoly of a patent would be out of harmony with the purpose and intent of the statute." *Id.* at 712. Notably, the court explained that prior art could render the patent invalid both "[w]hen the idea is adapted or derived by analogy from prior usage, or when it is embodied in a design resembling the prior art in general appearance or central theme…." *Id.* Lack of patentability therefore could result even when no primary reference existed.

**(b)    The Origins of the Primary Reference Requirement**

*In re Jennings*, 182 F.2d 207 (C.C.P.A. 1950) involved a claimed vacuum condenser design. The patent office considered the claimed design unpatentable over the five prior art references, and the Board of Appeals affirmed.

In discussing the Board's decision, the Court stated "it seems to have been held that by selecting features taken from five different patents, that is, one feature from one patent, another from another, etc., a device might be considered which would so closely resemble the drawings of appellant that his design would not be patentable over such possible construction." *Id.* at 208. The Court reversed the

Board's decision and stated "[i]n considering patentability of a proposed design the appearance of the design must be viewed as a whole, as shown by the drawing, or drawings, and compared with something in existence - not with something that might be brought into existence by selecting individual features from prior art and combining them, particularly where combining them would require modification of every individual feature, as would be required here." *Id.* The court did not address how close the "something in existence" had to be to the claimed design and did not require it to be "basically the same" as the claimed design.

### (c)    The Importance of the "As a Whole" Principle

*Jennings* also stressed the principle that the claimed design and the prior art designs must be viewed and compared as a whole. This was an old principle of design patent law.  *See Dobson v. Dornan*, 118 U.S. 10, 15 (1886) ("Undoubtedly the claim in this case covers the design as a whole, and not any part of it as a part; and it is to be tested as a whole, as to novelty and infringement.").  The "as a whole" principle prevented the Patent Office, the Board, and courts from selecting design elements for combination without considering the overall visual impact of the design the elements were extracted from.

### (d)    Passage of the 1952 Patent Act and the *Graham v. John Deere Co.* Decision

Two years after *In re Jennings* was decided, the Patent Act was passed. The 1952 Patent Act set forth design patent requirements in 35 U.S.C. § 171 and codified

the requirement for non-obviousness in 35 U.S.C. § 103. These statutes were not intended to substantially change the law. *See Columbus Plastic Products, Inc. v. Rona Plastic Corp.*, 111 F. Supp. 623, 627 (D.N.Y. 1953) (§ 171); *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 3-4 (1966) (§ 103). In 1966, the Supreme Court clarified that although patentability ultimately was an issue of law, the section 103 condition lends itself to the four factual inquires set forth above. *See Graham, supra*, at 17. These legal frameworks did not require a primary reference that was basically the same as the claimed design to establish obviousness.

### (e)   *In re Glavas* and the Rule for Combining Primary and Secondary References

In 1956, *In re Glavas*, 230 F.2d 447 (C.C.P.A. 1956) was decided. *Glavas* involved a claimed design for a swimming float. The three prior art references considered by the examiner consisted of a life preserver comprising two float members (Armstrong Patent), a flat rectangular pillow (Patton Patent), and a baby supporter in the form of a wedge-shaped cushion (Knecht Patent). The Board of Appeals affirmed the Examiner's rejection based on obviousness and relied primarily on Armstrong in view of Patton.  The patent applicant argued that the pillow was from a field of non-analogous art and should not be used as an auxiliary prior art reference. The Board rejected the applicant's argument, stating "it is well established that all arts are analogous in considering the shape of an object." *Id.* at 449.

The Court reversed the Board of Appeals and announced the rule that "[t]he question in design cases is not whether the references sought to be combined are in analogous arts in the mechanical sense, but whether they are so related that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Id.* at 450. The Court considered the Examiner's position plausible that "pillows are sometimes adapted to serve as floats," *id.* at 451 (and so were analogous in a functional or mechanical sense) but stated "we are unable to find anything in either of the former patents which would suggest modifying the Armstrong float in such a manner as to produce appellant's design." *Id.* Specifically, the Court stated "[t]he Patton patent shows a float pillow having opposite concavities in its narrow edge portions or, as the examiner described it, 'concave portions on a knife edge margin[,]' [but] [t]his would not suggest the broad concave upper and lower surfaces of appellant's float, which is clearly of an entirely different over-all appearance from Patton's pillow." *Id.*

Commentators have suggested that *Glavas* is confusing and does not properly explain when and how an auxiliary or secondary reference can be combined with a primary reference. *See* Sarah Burstein, *Visual Invention*, 16 Lewis & Clark L. Rev. 169, 206 (2012) (stating "the Federal Circuit's current rules for modifying primary references are, at best, unclear."); Janice M. Mueller & Daniel Harris Brean*, Overcoming the "Impossible Issue" of Nonobviousness in Design Patents,* 99 KY.

L.J. 419, 545-546 (2011) (stating "the *Glavas* test requiring that references be "so related" as to "suggest" the combination of design features is vague and nonsensical.").

**(f)   Standard for Evaluating Obviousness Changed to Designer of Ordinary Skill**

In 1981, the standard for evaluating obvious was clarified to be a designer of ordinary skill rather than an "ordinary intelligent man." *See In re Nalbandian*, 661 F.2d 1214, 1215 (C.C.P.A. 1981).

**(g)   *In re Rosen* and the Requirement that a Primary Reference be "Basically the Same"**

One year later, the court in *In re Rosen*, 673 F.2d 388 (Fed. Cir. 1982) reviewed an obviousness holding where the claimed design was a coffee table and the primary prior art reference was a desk. The other three prior art references considered were a display stand and two tables.

The Board, in affirming the obviousness rejection of the Examiner, concluded that one of ordinary skill in the art would consider the prior art references and combine them to achieve the claimed design. The Court reversed the Board. The Court agreed that under the new standard of a designer of ordinary skill that the prior art references would fall within the realm of knowledge of the ordinary designer,[1]

---

[1] The court observed that "the test for obviousness may well bring more art into consideration since we must look to the knowledge of the 'ordinary designer' rather than that of the 'ordinary intelligent man.'" *Id.* at 390.

but then stated, "we are left with the matter of whether the various elements selected by the PTO from each of these references would have made the overall appearance of the claimed design obvious." *Id.* at 390.    The Court began its analysis by quoting the *Glavas* test for combining references and quoting the *Jennings* requirement that the claimed design must be compared against "something in existence."  The Court then went further and stated that the "something in existence" must have "the design characteristics of which are basically the same as the claimed design in order to support a holding of obviousness." *Id.* at 391. Although the Court did not explain in detail what it meant by "basically the same," the Court stated that a qualifying reference needed to embody "similar design concepts," and that modifications of the prior art reference necessary to achieve the claimed design should not "destroy fundamental characteristics" of the reference design. *Id.* at 391.

### (h)    *In re Harvey* and the Focus on Overall Visual Appearances

*In re Harvey*, 12 F.3d 1061 (Fed. Cir. 1993) involved claimed designs for vases. The Board affirmed a rejection for obviousness based on prior art vases, with a prior Harvey vase design used as the primary reference. On appeal, the applicant argued that the Board improperly analyzed Harvey's prior art vase as a "design concept" rather than the disclosure of specific design characteristics. *Id.* at 1063. This Court agreed, holding that the Board should have focused on actual appearances, rather than "design concepts." *Id.* at 1064. This Court further found the Board erred

because it "improperly compared the visual impressions of selected, separate features of the prior art designs to the '904 and '906 designs, rather than the visual impression of the designs as a whole." *Id.* at 1065.

In short, according to *In re Harvey*, when searching for a primary reference and attempting to combine secondary references, the focus must remain on the overall visual impression created by the designs as a whole. This rule was applied by this Court in rejecting the putative primary reference in *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100 (Fed. Cir. 1996) ("the district court's description merely represents the general concept of a sectional sofa with integrated end tables …. however, the focus in a design patent obviousness inquiry should be on visual appearances rather than design concepts."). This Court affirmed the rule in *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1331 (Fed. Cir. 2014) ("The 'basically the same' test requires consideration of the 'visual impression created by the patented design as a whole.'" (citation omitted)).

### 4. Historical Review Highlights the Error in Always Requiring a Primary Reference

This historical review of how the obviousness test for design patents developed highlights the error in requiring a rigid primary reference. In cases such as *Whitman Saddle, Knapp v. Will & Baumer,* and *Western Auto Supply Co. v. Am.-National Co.*, *supra*, there *did* exist reasons to combine references other than through a primary reference. Such reasons included industry customs, prior forms and

common practices arising from teachings in the prior art, variations that would naturally occur to one of average skill in the field, and ideas adapted or derived by analogy from prior usage. Other potential reasons to combine include design trends, market pressures, manufacturing efficiencies, and design expediencies known to those of ordinary skill in the art.[2] All these reasons can serve as reasons to combine references even though the prior art references do not contain a primary reference as rigidly defined in *Rosen* and *Durling*.

In sum, the primary reference requirement must be eliminated as the exclusive method to prove obviousness because it improperly lowers the standard for obtaining a design patent. The accuracy of the obviousness determination at times results not only from what a designer of ordinary skill observes in the prior art, but also what is taught by the prior art. A designer of ordinary skill should be able to determine what would be obvious to bring into existence (if not currently in existence) based on the teachings of the prior art and general knowledge of an ordinary designer.

**C.    The Test for Obviousness Should Apply the *Graham/KSR* Factors and Focus on Whether a Reason Exists that a Designer of Ordinary Skill would Combine Prior Art References to Achieve the Claimed Design**

---

[2] Examples of well-known design expediencies that exist in design practice are duplication or multiplication of parts, *see Olsen v. Baby World Co. Inc. et al.*, 126 F. Supp. 660, 104 USPQ 51 (D.C.N.Y. 1954), "the mere choice of one well known geometric form rather than another equally well known, which does not in any way modify the other portions of the design" *see In re Hopkins*, 17 C.C.P.A. 621, 621, 34 F.2d 1016 (C.C.P.A. 1929), and obvious changes in proportion, *see In re Stevens*, 81 U.S.P.Q 362, 173 F.2d 1015 (C.C.P.A. 1949).

The test for evaluating design patent obviousness challenges should focus on the four *Graham* factors: "(1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness." *Campbell Soup Co., supra*. When analyzing the differences between the claims and the prior art, there must be some reason why a designer of ordinary skill would make the particular selection and combination to achieve the claimed design. *See Sidewinder Marine, supra,* at 209. The reason to select and combine prior art references can come not only from the appearance of prior art references, but also from reasons similar to those expressed in *KSR* and listed above such as industry customs, prior forms and common practices arising from teachings in the prior art, variations that would naturally occur to one of average skill in the field, ideas adapted or derived by analogy from prior usage, design trends, market pressures, manufacturing efficiencies, and design expediencies known to those of ordinary skill in the art.

Additionally, a reason to combine references can arise due to functional considerations. Although a design is not patentable if its overall design is primarily functional, or dictated by function, *see Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1329 (Fed. Cir. 2015), this Court has long recognized that articles and portions of articles to which designs are applied typically have functions. *See Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1563 (Fed. Cir. 1988).

Therefore, when considering the creation, modification, or adaption of a design, functional concerns may come into play. For example, MPEP § 1504.03 II states "[i]f the proposed combination of the references so alters the primary reference that its broad function can no longer be carried out, the combination of the prior art would not have been obvious to a designer of ordinary skill in the art."

Case law supports consideration of functional concerns. In *In re Garbo*, 287 F.2d 192 (C.C.P.A. 1961), the claimed design was for a cinematic multiple-place trainer for automobile drivers that had two rows of cars at different levels. The Board considered the claimed design obvious in light of a prior art magazine photograph that disclosed fourteen simulated car training units arranged in a fan-shaped pattern in staggered relationship on the same level. The Board reasoned that the applicant "merely adopted the well-known arrangement of seats in theaters and halls in arranging the training cars." *Id.* at 193. The Court affirmed, stating "if the objective of the designer, as here, motivates him to take old seating arrangements and adapt them to a specified area thereby bringing about an expected appearance, patentability is not present." *Id.*

Finally, regarding the concern that elimination of the *Rosen-Durling* primary reference as a mandatory threshold requirement will reduce the protections against hindsight analysis, this is not a legitimate concern in light of principle that the claimed design and prior art references must be considered as a whole and the

principle expressed in *KSR* regarding the importance of identifying "a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does," *KSR, supra*, at 418-19.

**D.    No Precedent from this Court has Clarified the *Rosen-Durling* Test**

ABPA is not aware of any precedent from this Court that has clarified the *Rosen-Durling* Test.

**E.    Correcting and Improving Design Patent Obviousness Principles Results in Less Uncertainty**

Design patent law has been in a highly active period of development since this Court's decision in *Egyptian Goddess v. Swisa*, 543 F.3d 665 (Fed. Cir. 2008) eliminated the point of novelty test in design patent infringement analysis. Improving design patent law to make sure principles and rules are consistent with the Constitution, underlying policies, and Supreme Court authority ultimately will result in less uncertainty in the obviousness analysis.

**F.    Differences Between Design Patents and Utility Patents Do Not Justify Fundamentally Different Frameworks for Determining Obviousness**

While it is true that utility patents primarily are concerned with function and design patents primarily with appearance, there are many factors in a design patent obviousness analysis, discussed above, that appropriately fall within the reach of *KSR*. Further, the underlying statutory and *Graham* framework for proving obviousness in utility patents and design patents is the same. Therefore, any

differences between design patents and utility patents do not justify a fundamentally different approach for determining obviousness.

## CONCLUSION

This Court should overrule the mandatory primary reference requirement of *Rosen* and *Durling*, vacate the decision of the PTAB, and remand with instructions to apply a flexible test based on *Graham*, *KSR,* and evidence of not only what a designer of ordinary skill observes in the prior art, but also what is taught by the prior art.

Dated: August 28, 2023

/s/ Robert G. Oake, Jr.
Robert G. Oake, Jr.
**Oake Law Office, PLLC**
700 S. Central Expressway, Suite 400
Allen, Texas 75013
Telephone: 214.207.9066
Facsimile: 469.519.5454
rgo@oake.com

Attorney for Amicus Curiae
Automotive Body Parts Association

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 2021-2348

**Short Case Caption:** LKQ Corporation, et al v. GM Global Technology Operations LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑  the filing has been prepared using a proportionally-spaced typeface and includes   5,134   words.

☐  the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐  the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 08/28/23          Signature:   /s/ Robert G. Oake, Jr.

                        Name:   Robert G. Oake, Jr.

Save for Filing

**FORM 30. Certificate of Service**

**Form 30**
**July 2020**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF SERVICE</u>

**Case Number**   2021-2348

**Short Case Caption**   LKQ Corporation, et al v. GM Global Technology Operation

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on _____

by   ☐   U.S. Mail    ☐   Hand Delivery    ☐ Email    ☐ Facsimile
    ☑   Other: <u>CM/ECF</u>

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| All counsel of record | Court's CM/ECF System |
|  |  |
|  |  |
|  |  |
|  |  |

☐   Additional pages attached.

Date: <u>August 28, 2023</u>

Signature: <u>/s/ Robert G. Oake, Jr.</u>

Name: <u>Robert G. Oake, Jr.</u>

<span style="color:red">Save for Filing</span>