**2021-2348**

# United States Court of Appeals for the Federal Circuit

LKQ CORPORATION; KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,

*Appellants,*

— v. —

GM GLOBAL TECHNOLOGY OPERATIONS LLC,

*Appellee.*

*On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-00534*

## BRIEF FOR *AMICUS CURIAE* INTELLECTUAL PROPERTY OWNERS ASSOCIATION IN SUPPORT OF APPELLEE

HENRY HADAD
  *Chair, Amicus Brief Committee*
SAMANTHA J. AGUAYO
  *Deputy Executive Director and
  Chief Policy Counsel*
INTELLECTUAL PROPERTY
  OWNERS ASSOCIATION
1501 M St. N.W., Suite 1150
Washington, D.C. 20005
(202) 507

PAUL H. BERGHOFF
  *Counsel of Record*
MCDONNELL BOEHNEN
  HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913–0001

*Counsel for Amicus Curiae
Intellectual Property Owners Association*

OCTOBER 26, 2023

CP COUNSEL PRESS    (800) 4-APPEAL • (324596)

FORM 9. Certificate of Interest                                   Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number**    2021-2348

**Short Case Caption**    LKQ Corporation v. GM Global Technology Operations LLC

**Filing Party/Entity**    Intellectual Property Owners Association

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/26/2023             Signature:    /s/ Paul H. Berghoff

                                          Name:     Paul H. Berghoff

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Intellectual Property Owners Association | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable            ☐    Additional pages attached

| | | |
|---|---|---|
| Paul H. Berghoff | | |
| McDonnell Boehnen Hulbert & Berghoff LLP | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐    Yes (file separate notice; see below)    ☐    No    ☑    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable            ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**TABLE OF CONTENTS**

**Contents**

TABLE OF CONTENTS............................................................2

TABLE OF AUTHORITIES ....................................................3

INTEREST OF THE *AMICUS CURIAE* ..................................5

SUMMARY OF THE ARGUMENT ........................................6

ARGUMENT ......................................................................10

CONCLUSION ...................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Berry Sterling Corp. v. Pescor Plastics, Inc.*, 215 F.3d 1351 (Fed. Cir. 1999) ......14

*Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1379 (Fed. Cir. 2023) ....................................................8

*Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100 (Fed. Cir. 1996) ....... passim

*Gorham v. White*, 81 U.S. 511 (1871) ...................................................6, 9

*Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966).................. 11, 12, 13

*High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1312–1313 (Fed. Cir. 2013) ........................................................14

*In re Borden*, 90 F.3d 1570, 1575–76 (Fed. Cir. 1996)...........................................14

*In re Harvey*, 12 F.3d 1061, 1063, 29 USPQ 2d 1206, 1208 (Fed. Cir. 1993) .......14

*In re Rosen*, 673 F.2d 388 (CCPA 1982)......................................................... passim

*KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) ................... 8, 9, 11, 13

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993) ...14

*MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326 (Fed. Cir. 2014) 10, 11, 14

*Smith v. Whitman Saddle*, 148 U.S. 674 (1893) ............................................ passim

**Statutes**

35 U.S.C. § 103 .........................................................................................5

35 U.S.C. § 171 .................................................................................5, 6

## INTEREST OF THE *AMICUS CURIAE*

*Amicus curiae* Intellectual Property Owners Association (IPO)[1] represents some of the most innovative companies in the United States.  IPO's almost 200 corporate members develop, manufacture, and sell innovative technology and design-based products in a wide range of industries.  IPO is committed to serving the interests of all intellectual property owners in all industries and all fields of technology and design.[2]

IPO's corporate members invest tens of billions of dollars annually in research and development and employ hundreds of thousands of scientists, engineers, and industrial designers in the United States to develop, produce, and market innovative new products and services.  To protect their inventions, IPO's members collectively hold tens of thousands of U.S. patents, both utility patents and design patents, and account for a substantial portion of the patent applications filed every year at the United States Patent and Trademark Office (USPTO).

Because of the investment of its members, this case presents a question of substantial practical importance to IPO: namely, what is the appropriate test for

---

[1] Pursuant to Rule 37.6, amicus affirms that no counsel for a party authored this brief in whole or in part, nor has any counsel, party, or third person other than amicus or its counsel made any monetary contribution intended to fund the preparation or submission of this brief.  The parties have consented to the filing of this brief.

[2] IPO procedures require approval of positions in briefs by a two-thirds majority of directors present and voting. The list of directors is attached after the brief.

determining the obviousness of patented designs.  IPO believes that the Federal Circuit's decisions in *In re Rosen*, 673 F.2d 388 (CCPA 1982) and  *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100 (Fed. Cir. 1996) set forth the appropriate framework for evaluating whether a patented design would have been obvious, a framework that is consistent with both the patent statute and the Supreme Court's prior decisions.[3]

## SUMMARY OF THE ARGUMENT

According to the patent statute: "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 171(a).  The statute also states that "[t]he provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."  35 U.S.C. § 171(b).  This makes it clear that the obviousness provisions of Section 103 apply to both design patents and utility patents.  *See* 35 U.S.C. § 103.  So far, so good.  But this statutory language leaves open the question of *how* to evaluate the obviousness of a design patent.

---

[3] IPO files this in support of appellee's view of the law, but takes no position concerning the validity of the specific patent in suit.

The Supreme Court's 1893 decision in *Smith v. Whitman Saddle* is the Supreme Court's only decision addressing the obviousness of design patents. *See Smith v. Whitman Saddle*, 148 U.S. 674 (1893). Importantly for the present matter, IPO believes that this Court's framework for assessing the obviousness of patented designs, as set forth in *Rosen* and *Durling,* is entirely consistent with the approach taken by the Supreme Court in *Whitman Saddle*.

In *Whitman Saddle*, the Supreme Court recognized that "the law applicable to design patents does not materially differ from that in cases of [utility] patents." 148 U.S. at 679. However, the Supreme Court also recognized that the validity of utility and design patents is necessarily judged by different standards: "In the one there must be novelty and utility; in the other, originality and beauty." *Id*. While the current statute has replaced the term "beauty" with "ornamental," 35 U.S.C. § 171, the point remains the same – the standard for judging the obviousness of a patented design is necessarily different from the obviousness standard for utility patents. *See also Gorham v. White*, 81 U.S. 511 (1871).

In *Whitman Saddle*, the Supreme Court began its analysis by stating that the prior art Granger saddle "was well known." 148 U.S. at 680. The Supreme Court then noted that "[t]he saddle design described in the specification differs from the Granger saddle in the substitution of the Jenifer cantle for the low, broad cantle of the Granger tree. In other words, the front half of the Granger and the rear half of

the Jenifer, or Jenifer-McClellan, make up the saddle in question…." *Id*. The Supreme Court also found that "[t]he evidence established that there were several hundred styles of saddles or saddletrees belonging to the prior art, and that it was customary for saddlers to vary the shape and appearance of saddletrees in numerous ways, according to the taste and fancy of the purchaser." *Id*. at 681. Based on this evidence, the Court went on to find that there were only two differences between the patented design and the primary Granger saddle. "[T]he design of the patent had two features of difference as compared with the Granger saddle, – one the [Jenifer] cantle, the other the drop [a perpendicular drop at the rear of the pommel]." *Id*. at 682. The Supreme Court focused on this perpendicular drop as being "material to the design" because "the saddle design of the patent does not otherwise differ from the old [Granger] saddle with the old [Jenifer] cantle added, – an addition frequently made." *Id*. Because the accused saddle did not include this drop, the only feature that the Court found could have rendered the patented design patentable, "there was no infringement." *Id*.

The *Rosen-Durling* framework matches up quite well with the Supreme Court's analysis of design patentability in *Whitman Saddle*. The Supreme Court started its analysis with the prior art Granger saddle, analogous to the "primary" reference of *Rosen*. The Supreme Court then looked to the secondary prior art references, all of which were saddles and therefore clearly "closely related" to the

patented design à la *Durling*.[4]  Moreover, all the prior art references considered by the Supreme Court were "in existence."  So while the Supreme Court did not use the exact language of *Rosen-Durling*, the Court followed the same analytical steps in evaluating the obviousness of the design patent at issue.

IPO believes that *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) does not compel a contrary result.  *KSR* neither explicitly nor implicitly overruled either *Rosen* or *Durling*.  Instead, the *KSR* opinion is entirely focused on the obviousness analysis necessary for utility patents, an analysis that the Supreme Court has recognized is fundamentally different than that required for design patents.  *KSR* never discusses, even tangentially, the unique issues presented by the intersection of Section 103 and design patents.

Accordingly, IPO believes that this Court should reaffirm the *Rosen-Durling* framework as being consistent with both the patent statute and the relevant Supreme Court precedent.

---

[4] This Court's recent decision in *Columbia Sportswear v. Seirus* is consistent with the "closely related" portion of the *Rosen-Durling* framework in holding that "to qualify as comparison prior art, the prior-art design must be applied to the article of manufacture identified in the claim."  *Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1379 (Fed. Cir. 2023).

# ARGUMENT

IPO provides the following additional comments in response to the six questions posed by the Court's Order of June 30, 2023.

## A. Does *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), overrule or abrogate *In re Rosen*, 673 F.2d 388 (CCPA 1982), and *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100 (Fed. Cir. 1996)?

IPO believes that *KSR* should not be viewed as overruling the *Rosen-Durling* framework. In *KSR*, the Supreme Court limited its reasoning to utility patent cases, even if this was not explicitly stated. Design patents were not at issue in *KSR* and were never mentioned. Instead, the focus in *KSR* was on mechanical elements and their functions, combinations that yield predictable results, and the "known problem for which there was an obvious solution" viewpoint. *KSR*, 550 U.S. at 420. All these considerations are the antithesis of design patents where the focus is on overall ornamental appearance, not functional problems. Designs that are dictated by function alone are not eligible for design patent protection. Moreover, the Supreme Court has made it clear since the 19th century in *Gorham v. White* (1871) and *Smith v. Whitman Saddle* (1893) that, notwithstanding the same statutory requirements applying to both design patents and utility patents, the legal frameworks for determining infringement and patentability can and should be different based on the differences between design inventions and utility inventions.

## B. Assuming that *KSR* neither overrules nor abrogates *Rosen* and *Durling*, does *KSR* nonetheless apply to design patents and suggest the court should

**eliminate or modify the *Rosen-Durling* test? In particular, please address whether *KSR*'s statements faulting "a rigid rule that limits the obviousness inquiry," 550 U.S. at 419, and adopting "an expansive and flexible approach," *id*. at 415, should cause us to eliminate or modify: (a) *Durling*'s requirement that "[b]efore one can begin to combine prior art designs . . . one must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design,'" 101 F.3d at 103 (quoting *Rosen*, 673 F.2d at 391); and/or (b) *Durling*'s requirement that secondary references "may only be used to modify the primary reference if they are 'so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other,'" *id*. at 103 (quoting *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996)) (internal alterations omitted).**

In IPO's view, while *Rosen-Durling* provides a well-defined framework, it is nonetheless an "expansive and flexible approach" that does not require modification.  Under this test, the requirement that the primary reference be "basically the same" in overall design characteristics allows for a range of potential references that would still meet this requirement, yet provides the necessary guard rails to avoid hindsight reconstruction of the claimed design based on a patchwork quilt of individual features found in the prior art.  *See In re Rosen*, 673 F.2d at 391. The *Rosen-Durling* framework already contemplates that this primary reference may be modified by secondary references, such that the "something in existence" requirement also serves as a guard against hindsight if the primary reference can be altered in the first place (as it is nearly impossible to "unsee" a design once it has been created.)  *Id*.  The "so related" requirement, which this Court affirmed in *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326 (Fed. Cir. 2014), is

also not "rigid".   Instead, it considers whether a secondary reference is "so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other" and render the claimed design obvious. *MRC Innovations, Inc.*, 747 F.3d at 1331.  And as discussed above, IPO believes that the *Rosen-Durling* framework is consistent with the Supreme Court's decision in *Smith v. Whitman Saddle* (1893).

**C. If the court were to eliminate or modify the *Rosen-Durling* test, what should the test be for evaluating design patent obviousness challenges?**

If this Court were to eliminate or substantially modify the *Rosen-Durling* framework as inconsistent with the "expansive and flexible approach" advocated in *KSR*, the Supreme Court's opinion in *KSR* would be of little help in formulating a new framework.  The *KSR* Court was focused on the function of various mechanical components in the claimed apparatus versus prior art apparatuses.  *See KSR*, 550 U.S. at 407–412.  As such, the analysis in *KSR* has little or no relevance to assessing obviousness of a nonfunctional, ornamental design.

Rather than *KSR*, IPO believes that this Court could look back to *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966) as the high level, foundational framework for assessing the obviousness of all types of inventions covered by the Patent Act.  As noted by the Court in *KSR*:

> In *Graham v. John Deere Co. of Kansas City*, 383 U. S. 1 (1966), the Court set out a framework for applying the statutory language of §103, language itself based on the logic of the earlier decision in *Hotchkiss v. Greenwood*,

11 How. 248 (1851), and its progeny. *See* 383 U. S., at 15-17.  The analysis is objective:

> "Under §103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.  Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *Id*., at 17-18, 86 S.Ct. 684.

> While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls.  If a court, or patent examiner, conducts this analysis and concludes the claimed subject matter was obvious, the claim is invalid under §103.

IPO believes that if the *Rosen-Durling* framework were to be eliminated or substantially modified, a result that IPO believes is both unnecessary and undesirable, the Court could adopt the basic rubric of *Graham* in its place.

Of course, any obviousness analysis of design patents needs to have a design-centric focus, that is, viewed from the standpoint of an ordinarily skilled designer (a "saddler" in the *Whitman Saddle* case) who is concerned with the overall appearance of an ornamental design to the ordinary observer, rather than the design's disembodied component parts or elements.  With the appropriate design-oriented focus, the *Graham* rubric, as informed by *Whitman Saddle* and subsequent appellate cases that formed the basis for *Rosen-Durling*, would be a workable, though less predictable, alternative framework for determining obviousness of design patent claims, recognizing though that some of the

traditional, more utility-focused secondary considerations, such as long-felt but unsolved needs and failure of others, would rarely if ever be relevant. On the other hand, evidence that the commercial success of an article of manufacture is the result of its patented design would be a relevant secondary consideration supporting nonobviousness. In any case, IPO would encourage the Court to consider implementing a design-specific analytical framework under the more general *Graham* factors, one that focuses on whether a claimed ornamental design, as a whole, would have been obvious to a designer of ordinary skill at the time the invention was made.[5]

**D. Has any precedent from this court already taken steps to clarify the *Rosen-Durling* test? If so, please identify whether those cases resolve any relevant issues.**

The *Rosen-Durling* framework has been reconsidered and further refined in numerous Federal Circuit opinions in the past four decades, notably before and after the Supreme Court's decision in *KSR*. See *In re Harvey*, 12 F.3d 1061, 1063, 29 USPQ 2d 1206, 1208 (Fed. Cir. 1993) (determining if a reference qualifies as

---

[5] IPO believes it would be important and helpful for this Court to define the analytical framework for assessing the obviousness of designs as requiring prior art that possesses actual design *characteristics* that are directly comparable to the claimed design. It should not be sufficient merely to point to prior art that, at a high level of abstraction, has a similar design "concept." Stated more plainly, if the prior art doesn't look like the patented design, it should not render that design obvious.

"primary"; discussing the standard for combining references); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993) (discussing the standard for combining references); *In re Borden*, 90 F.3d 1570, 1575–76 (Fed. Cir. 1996) (discussing the combination of primary and secondary references); *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 215 F.3d 1351 (Fed. Cir. 1999) (unpublished) (providing further details on how to determine if a reference qualifies as "primary"); *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1312–1313 (Fed. Cir. 2013) (considering the perspective of the ordinary designer in the art during the obviousness test); and *MRC Innovations, Inc. v. Hunter Mfg., LLP, 747 F.3d 1326, 1334* (Fed. Cir. 2014) (discussing the combination of primary and secondary references). However, IPO believes that these cases serve to clarify but do not alter the fundamental *Rosen-Durling* framework.

**E. Given the length of time in which the *Rosen-Durling* test has been applied, would eliminating or modifying the design patent obviousness test cause uncertainty in an otherwise settled area of law?**

IPO believes that eliminating the *Rosen-Durling* framework would create considerable uncertainty in a number of ways. Elimination would leave USPTO examiners and design patent owners without any analytical framework for evaluating obviousness tailored to design patents. (As noted above, precedents focused on the obviousness of utility patents do not shed light on how to assess the

obviousness of design patents due to their fundamentally different purposes.)

More importantly, because the *Rosen-Durling* framework has been in place for

more than four decades, its elimination or substantial modification would call into

question the validity of the 400,000 U.S. design patents currently in force.  Such a

decision would ricochet through the IP community, unsettling expectations and

rendering it more difficult to make business decisions about investing in the

development, implementation, and protection of innovative designs by U.S.

businesses of all sizes and in all industries.  The U.S. patent system as a whole

would benefit from more certainty in this regard, not less.

**F.  To the extent not addressed in the responses to the questions above, what differences, if any, between design patents and utility patents are relevant to the obviousness inquiry, and what role should these differences play in the test for obviousness of design patents?**

For the reasons already stated, IPO believes that the obviousness inquiry for

utility patents versus design patents is so fundamentally different that precedent

dealing solely with utility patents is of little use in assessing design patents.


**CONCLUSION**

IPO respectfully requests that this Court affirm the continued vitality of the

*Rosen-Durling* framework for evaluating the obviousness of design patents.  This

framework is consistent with the patent statute as well as the Supreme Court's

decision in *Whitman Saddle*.  Furthermore, it has performed admirably for over

16

four decades in protecting the rights of innovative industrial designers while

balancing the public's interest in unfettered access to public domain designs and

obvious variants thereof.  Let it be.

Respectfully submitted,

<table>
<tr><td>

HENRY HADAD
  *Chair, Amicus Brief Committee*
SAMANTHA J. AGUAYO
  *Deputy Executive Director and*
  *Chief Policy Counsel*
INTELLECTUAL PROPERTY
  OWNERS ASSOCIATION
1501 M St. N.W., Suite 1150
Washington, D.C. 20005
(202) 507-4500

</td><td>

/s/ PAUL H. BERGHOFF
PAUL H. BERGHOFF
    *Counsel of Record*
MCDONNELL BOEHNEN
  HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913–0001

</td></tr>
</table>

17

**Members of the Board of Directors**
**Intellectual Property Owners Association**

Steve Akerley
    InterDigital Holdings, Inc.

Brett Alten
    Hewlett Packard Enterprise

Matthew Anderson
    Medtronic, Inc.

Ronald Antush
    Nokia of Americas Corp.

Estelle Bakun
    Exxon Mobil Corp.

Scott Barker
    Micron Technology, Inc.

Thomas R. Beall
    Corning Incorporated

Tyrome Brown
    Dolby Laboratories

John J. Cheek
    Tenneco Inc.

Karen Cochran
    Shell Oil Company

Tonya Combs
    Eli Lilly and Co.

Buckmaster de Wolf
    General Electric Co.

Anthony DiBartolomeo
    SAP SE

Robert Earle
    Ericsson

Daniel Enebo
    Cargill, Inc.

Matthew Fitzpatrick
    Procter & Gamble Co.

Yen Florczak
    3M Innovative Properties Co.

Louis Foreman
    Enventys

Scott M. Frank
    AT&T

Darryl P. Frickey
    Dow Chemical Co.

Gary C. Ganzi
    Evoqua Water Technologies, LLC

Tanuja Garde
    The Boeing Co.

Mike Geise
    General Mills, Inc.

Robert Giles
    Qualcomm Inc.

Laura Ginkel
    Merck & Co.

Krish Gupta
    Dell Technologies

Henry Hadad
    Bristol-Myers Squibb Co.

Thomas R. Kingsbury
    Bridgestone Americas, Inc.

Laurie Kowalsky
    Koninklijke Philips N.V.

Aseem Mehta
    Bayer Intellectual Property GmbH

Kelsey L. Milman
    Caterpillar Inc.

Jeffrey Myers
    Apple Inc.

Robin Nava
    SLB

Troy Prince
    Raytheon Technologies

Kaveh Rashidi-Yazd
    Eaton Corporation

KaRan Reed
    BP America, Inc.

Corey Salsberg
    Novartis

Paul Saraceni
    Nike, Inc.

Matthew Sarboraria
    Oracle USA Inc.

Derek Scott
    Roche, Inc.

Laura Sheridan
    Google Inc.

Jessica Sinnott
    DuPont

Thomas Smith
    GlaxoSmithKline

Daniel Staudt
    Siemens Corp.

Gillian Thackray
    Thermo Fisher Scientific Inc.

Brian Tomko
    Johnson & Johnson

Phyllis Turner-Brim
    HP Inc.

Mark Vallone
    IBM Corp.

Stuart L. Watt
    Amgen, Inc.

Bryan Zielinski
    Pfizer Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  2021-2348

**Short Case Caption:**  LKQ Corporation v. GM Global Technology Operations LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  3,020  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date:  10/26/2023

Signature:  /s/ Paul H. Berghoff

Name:  Paul H. Berghoff

Save for Filing