2021-2348

# United States Court of Appeals for the Federal Circuit

LKQ CORP. & KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,
*Appellants*,

v.

GM GLOBAL TECHNOLOGY OPERATIONS LLC,
*Appellee*.

On Appeal From the United States Patent and Trademark Office, Patent Trial and Appeal Board in *Inter Partes* Review No. IPR2020-00534

## CORRECTED BRIEF OF *AMICUS CURIAE* FORD MOTOR COMPANY IN SUPPORT OF APPELLEE AND AFFIRMANCE

Frank A. Angileri
Marc Lorelli
Brooks Kushman P.C.
1000 Town Center, 22nd Floor
Southfield, Michigan 48075
Telephone: (248) 358-4400
fangileri@brookskushman.com
mlorelli@brookskushman.com

*Attorneys for Amicus Curiae Ford Motor Company*

Original Filed: October 26, 2023

Corrected Filed: October 27, 2023

# CERTIFICATE OF INTEREST

Counsel for *Amicus Curiae*, Ford Motor Company, certifies the following:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Ford Motor Company

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. None

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. None

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4). None

5. **Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). *See also* Fed. Cir.R.47.5(b). None

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6). None

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .......... i

TABLE OF AUTHORITIES .......... iii

INTEREST OF *AMICUS CURIAE* .......... 1

INTRODUCTION .......... 2

ARGUMENT .......... 3

A. The Supreme Court analyzes utility and design patent infringement very differently .......... 3

B. *KSR* does not overrule, abrogate, nor suggest eliminating or modifying the *Rosen-Durling* test .......... 5

C. The *Rosen-Durling* test appropriately reflects the Supreme Court's different treatment of utility and design patents in the infringement context .......... 8

CONCLUSION .......... 13

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS .......... 14

# TABLE OF AUTHORITIES

## Cases

*Anderson's–Black Rock, Inc. v. Pavement Salvage Co.*,
396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969)............................7

*Durling v. Spectrum Furniture Co., Inc.*,
101 F.3d 100 (Fed. Cir. 1996)..................................................10, 11

*Gorham Mfg. Co. v. White*,
81 U.S. 511 (1871)....................................................................3, 5, 7

*Gould v. Rees*,
82 U.S. 187 (1872)....................................................................4

*Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*,
340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950)..............................6

*In re Borden*,
90 F.3d 1570 (Fed. Cir. 1996).......................................................11

*In re Rosen*,
673 F.2d 388 (CCPA 1982)..........................................................10

*International Seaway Trading Corp. v. Walgreens Corp.*,
589 F.3d 1233 (Fed. Cir. 2009).......................................................9

*KSR International Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................................................2, 5-8, 11-13

*Lewmar Marine, Inc. v. Barient, Inc.*,
827 F.2d 744 (Fed. Cir. 1987).........................................................8

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
572 U.S. 915 (2014)....................................................................4

*PAR Pharmaceutical, Inc. v. TWI Pharmaceuticals, Inc.*,
773 F.3d 1186 (Fed. Cir. 2014).......................................................8

*Sakraida v. Ag Pro, Inc.*,
425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976) ........................ 7

*United States v. Adams*,
383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966) ............................ 7

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,
520 U.S. 17 (1997) .......................................................................... 5

## INTEREST OF *AMICUS CURIAE*[1]

Ford Motor Company ("Ford") files this amicus brief because design patents protect important innovation in the auto industry. Every year, Ford spends billions of dollars on the design and development of new automobiles. Because of its substantial investment in design and the ornamental appearance of automobiles and the components thereof, Ford frequently applies for and obtains patents on its innovative designs.

[1] No person, party or party's counsel, other than *amicus curiae* or its counsel, authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting this brief.

## INTRODUCTION

Ford's brief focuses on the Supreme Court's different treatment of utility and design patents in the infringement context, and how that different treatment impacts this Court's en banc issues. Based on the Supreme Court's different treatment of utility and design patents, Ford respectfully submits that: (1) *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), does not overrule, abrogate, nor suggest eliminating or modifying the *Rosen-Durling* test; and (2) the existing *Rosen-Durling* test appropriately addresses the difficult issues of design patent obviousness.

Ford also endorses GM's statements regarding the nature and importance of design patents in the auto industry. GM's brief at pages 7-8 explains the nuanced nature of vehicle design, including the importance of design details. GM's brief at page 49 explains how design patents are working appropriately to protect designs, address copying, and not interfere with design innovation. Ford supports GM's statements and its concerns about innovation and copying, and believes these concerns apply industry wide.

# ARGUMENT

## A. The Supreme Court analyzes utility and design patent infringement very differently

For at least 150 years, the Supreme Court has treated utility and design patents very differently for infringement purposes. Indeed, before *Gorham* articulated the now famous test for design patent infringement, it first *rejected* the lower court's decision that the "same principles which govern" utility patent infringement "must govern in determining the question of infringement in respect to a patent for a design." *Gorham Mfg. Co. v. White*, 81 U.S. 511, 522-23, 525-26 (1871). Raising concepts that have now become familiar in design patent analysis, the Court:

- *Rejected* the lower court's decision that a "patent for a design, like a patent for an improvement in machinery, must be for the means of producing a certain result or appearance, and not for the result or appearance itself." *Id.* at 524, 525.

- Held that for a design patent, "the thing invented or produced, for which a patent is given, is that which gives a peculiar or distinctive *appearance* to the manufacture." *Id.* at 525 (emphasis added).

- Concluded that "the controlling consideration is the resultant *effect*" of the design and rejected "speak[ing] of the invention as a *combination*." *Id.* at 525, 526 (emphasis added).

- Approved prior statements that "the important inquiry was whether there was any difference in the *effect* of the

> designs, *not* whether there were differences in the *details* of ornament." *Id.* at 526 (emphasis added).

After holding that design patent infringement turns on the "sameness of appearance" or "sameness of effect upon the eye" (*id*. at 526, 527), the Court turned to the test for design patent infringement. The Court established its now well-known test, which Ford will reference for convenience as the "deceptively similar" test:

> We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Id*. at 528.

Just one year after rejecting a "combination" methodology for design patents, the Court reaffirmed it for utility patents. In *Gould v. Rees*, the Court held jury instructions erroneous because they did not instruct "that the omission of one essential feature or element of the combination as claimed avoids the infringement." 82 U.S. 187, 192, 194-95 (1872). Since then, the Court has reaffirmed the critical all elements rule for utility patents. *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 572 U.S. 915, 921 (2014) ("a patent is: the conferral of rights in a particular claimed set of elements"); *Warner-Jenkinson Co. v. Hilton*

*Davis Chemical Co.*, 520 U.S. 17, 29 (1997) (because "[e]ach element contained in a patent claim" is "material to defining the scope of the patented invention," the "doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole").

As *Gorham* itself emphasized, the "combination" and "effects/appearance" methodologies are different. The Supreme Court's different infringement methodologies inform whether *KSR* impacts, and the appropriate test for, design patent obviousness.

### B. *KSR* does not overrule, abrogate, nor suggest eliminating or modifying the *Rosen-Durling* test

*KSR* does not overrule, abrogate, nor meaningfully impact the *Rosen-Durling* test for two principal reasons. First, and fundamentally, the Supreme Court itself treats utility and design patents very differently for infringement purposes. Therefore, there is no reason to presume that the Court would treat them the same for obviousness purposes. On the contrary, a more reasonable conclusion is that utility and design patents should be treated differently for obviousness, and the different approach for obviousness should reflect the different approach for infringement.

Second, *KSR* addressed an issue that does not arise in design patent obviousness. Generally, *KSR* addressed the appropriate methodology

"when the question is whether a patent claiming the *combination of elements* of prior art is obvious." 550 U.S. at 417 (emphasis added). More specifically, the Court addressed whether, when all the elements of a claim are in the prior art, a challenger must show "TSM" (teaching, suggestion, or motivation) to combine them. 550 U.S. at 407 (addressing the "test" that "a patent claim is only proved obvious if 'some motivation or suggestion to combine the prior art teachings' can be found in the prior art, the nature of the problem, or the knowledge of a person having ordinary skill in the art").

The Supreme Court held there is no TSM requirement for combining elements. 550 U.S. at 415. The Court reached that conclusion after identifying precedent and situations where combinations were obvious without any TSM. The Court cited the following examples where it was obvious to combine elements based on the elements' functions, means of operation, or predictable results:

- A "patent for a combination which only unites old elements with no change in their respective functions." 550 U.S. at 415-16 (quoting *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 152–153, 71 S.Ct. 127, 95 L.Ed. 162 (1950)).
- Concerning "the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result." 550 U.S. at 416

(citing *United States v. Adams*, 383 U.S. 39, 50-51, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966)).

- "The two in combination did no more than they would in separate, *sequential operation.*" 550 U.S. at 417 (emphasis added; citing *Anderson's–Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57, 60-62, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969)).
- The "patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement." 550 U.S. at 417 (quoting *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 282, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976)).
- "When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions." 550 U.S. at 421.

Significantly, none of this relates to design or design patents. First, as discussed above, the Supreme Court emphasized in *Gorham* that designs focus on overall appearance, not individual elements. *Gorham*, 81 U.S. at 524-26. Second, features of a design do not have functions, means of operation, nor predictable results. Therefore, obviousness of a design cannot turn on whether it is obvious to combine elements, and certainly not on whether it is obvious to combine elements based on their functions, means of operation, or predictable results, i.e., *KSR's* focus. 550 U.S. at 415-17.

In short, *KSR* does not impact design patent obviousness.

### C. The *Rosen-Durling* test appropriately reflects the Supreme Court's different treatment of utility and design patents in the infringement context

While *KSR* does not impact design patent obviousness, Ford submits that the Supreme Court's different treatment of utility and design patents in the infringement context does impact this Court's en banc issues in two ways. First, utility and design patents should be treated differently in analyzing invalidity including obviousness. Second, the invalidity/obviousness methodology for each should be consistent with the infringement methodology for each.

For utility patents, the invalidity/obviousness methodology tracks the infringement methodology's all elements focus. First, the anticipation test mirrors the infringement test—all claim elements in one reference. *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 747 (Fed. Cir. 1987). Second, obviousness requires all claim elements if references are combined, and asks whether it is obvious to combine the elements. *PAR Pharmaceutical, Inc. v. TWI Pharmaceuticals, Inc.,* 773 F.3d 1186, 1194 (Fed. Cir. 2014). *KSR* addressed whether a TSM was required for that combination, and held it was not. 550 U.S. at 415. The table below summarizes the consistent all elements focus for assessing utility patents.

| Issue | Utility Patent Test |
|---|---|
| **Infringement** | all *elements* in accused subject |
| **Anticipation** | all *elements* in one reference |
| **Obviousness** | all *elements* if combined;<br>obvious to combine *elements* |

To be consistent with the design patent infringement methodology, the design patent anticipation and obviousness tests must "focus on the overall designs." *International Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240-41 (Fed. Cir. 2009). The design patent anticipation test focuses on the overall appearance by applying the same test used for infringement—it asks whether there is a deceptively similar overall appearance in one reference. *Id.* at 1240. As discussed more fully below, the *Rosen-Durling* methodology addresses whether there is a deceptively similar overall appearance if a prior art reference is modified and asks whether the modification is obvious. The following table summarizes the consistent focus on the overall appearance.

| **Issue** | **Design Patent Test** |
|---|---|
| **Infringement** | deceptively similar *overall appearance* in accused subject |
| **Anticipation** | deceptively similar *overall appearance* in one reference |
| **Obviousness** | deceptively similar *overall appearance* if modified; obvious to modify *overall appearance* |

The *Rosen-Durling* methodology ensures that the obviousness test always focuses on the overall appearances of the patented design and the prior art. The first part of the *Rosen-Durling* analysis ensures that the decision maker focuses on overall appearances of the patent and primary reference. The second part of the *Rosen-Durling* analysis ensures that the decision maker focuses on overall appearances of the primary and secondary references.

More specifically, part one requires "a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'" *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (quoting *In re Rosen*, 673 F.2d 388, 391 (CCPA 1982)). Other briefs address what "basically the same" means.[2]

[2] *See, e.g.,* En Banc Response Brief of Appellee at pp. 32-36, 54-55; Brief of Amicus Curiae American Intellectual Property Law Association in Support of Neither Party at p.18.

Ford emphasizes the fact that this requirement focuses on the overall appearance of the primary reference and tries to ensure that the overall appearance of the primary reference is similar to the overall appearance of the patented design.

Part two requires secondary references "may only be used to modify the primary reference if they are 'so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other,'" *Durling,* 101 F.3d at 103 (quoting *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996)) (internal alterations omitted). This "so related" requirement tries to ensure that the overall appearance of the secondary reference is very similar to the overall appearance of the primary reference. This again ensures that the focus of the entire analysis remains on the overall appearances of the patent and prior art, to avoid the hindsight combining of elements, which has no role in design.

Finally, to the extent *KSR* criticized rigidity, that criticism does not apply to the *Rosen-Durling* test. The *Rosen-Durling* requirements merely ensure the obviousness analysis stays where the Supreme Court has focused design patent analysis in general—on the overall

appearances, and not individual elements, of the patented design and prior art references.

In sum, *KSR* (for utility patents) and *Rosen-Durling* (for design patents) rightly apply different obviousness analyses, and the two different analyses track the differences in the infringement analyses. The following table summarizes the different invalidity/obviousness analyses and how they track the different infringement analyses.

| **Issue** | **Utility Patent Test** | **Design Patent Test** |
|---|---|---|
| **Infringement** | all *elements* in accused subject | deceptively similar *overall appearance* in accused subject |
| **Anticipation** | all *elements* in one reference | deceptively similar *overall appearance* in one reference |
| **Obviousness** | all *elements* if combined; obvious to combine *elements* | deceptively similar *overall appearance* if modified; obvious to modify *overall appearance* |

## CONCLUSION

For the foregoing reasons, Ford respectfully submits that: (1) *KSR* does not overrule, abrogate, nor suggest eliminating or modifying the *Rosen-Durling* test; and (2) the existing *Rosen-Durling* test appropriately addresses the difficult issues of design patent obviousness.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

/s/ Frank A. Angileri

Frank A. Angileri
Marc Lorelli
Brooks Kushman P.C.
1000 Town Center, 22nd Floor
Southfield, Michigan 48075
Telephone: (248) 358-4400
fangileri@brookskushman.com
mlorelli@brookskushman.com

*Attorneys for Amicus Curiae*
*FORD MOTOR COMPANY*

Date: October 26, 2023

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

This filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☒ the filing has been prepared using a proportionally-spaced typeface and includes 2,109 words.

☐ the filing has been prepared using a monospaced typeface and includes ______ lines of text.

☐ the filing contains ______ pages / ______ words / ______lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

/s/ Frank A. Angileri
Frank A. Angileri
Marc Lorelli
Brooks Kushman P.C.
1000 Town Center, 22nd Floor
Southfield, Michigan 48075
Telephone: (248) 358-4400
fangileri@brookskushman.com
mlorelli@brookskushman.com

*Attorneys for Amicus Curiae*
*FORD MOTOR COMPANY*

Date: October 26, 2023