**2021-2348**

# United States Court of Appeals for the Federal Circuit

LKQ CORPORATION; KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,

*Appellants,*

– v. –

GM GLOBAL TECHNOLOGY OPERATIONS LLC,

*Appellee.*

*On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-00534*

## CORRECTED BRIEF OF *AMICUS CURIAE* INTERNATIONAL TRADEMARK ASSOCIATION ON BEHALF OF APPELLEE

MARTIN SCHWIMMER
LEASON ELLIS
One Barker Avenue
White Plains, New York 10601
(914) 288-0022
schwimmer@leasonellis.com

BRUCE R. EWING
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, New York 10019
(212) 415-9200
ewing.bruce@dorsey.com

*Counsel for Amicus Curiae International Trademark Association*

OCTOBER 30, 2023

COUNSEL PRESS (800) 4-APPEAL • (324596)

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2021-2348

**Short Case Caption** LKQ Corporation et al. v. GM Global Technology Ops. LLC

**Filing Party/Entity** International Trademark Association

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/26/2023

Signature: /s/ Bruce R. Ewing

Name: Bruce R. Ewing

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| International Trade Association | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Bruce R. Ewing<br>Dorsey & Whitney LLP | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## CERTIFICATIONS PURSUANT TO FED. R. APP. P. 29

Pursuant to FRAP 29(a)(4)(E), *amicus curiae* states that only INTA and its counsel authored this brief, and no part of this brief was authored by counsel to a party. No party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than amicus curiae and its counsel made such a monetary contribution to its preparation or submission.

# TABLE OF CONTENTS

**Page**

STATEMENT OF INTEREST OF *AMICUS CURIAE*............................................1

ARGUMENT ..................................................................................................3

CHANGING THE *ROSEN-DURLING* TEST THREATENS SIGNIFICANT DISRUPTION TO THE PROTECTION OF PRODUCT DESIGNS AGAINST INFRINGEMENT..........................................................................3

I. Design Patents and Trade Dress Are Complementary Forms of Protection That Promote Innovation While Simultaneously Protecting Against Confusion ..............................................................5

II. Design Patents Are Particularly Important to Anti-Counterfeiting Efforts........................................................................11

CONCLUSION ..............................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alan Tracy, Inc. v. Trans Globe Imports, Inc.*,
1995 U.S. App. LEXIS 14253 (Fed. Cir. June 2, 1995)....................................7

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*,
853 F.2d 1557 (Fed. Cir. 1988) ....................................................................9

*Beatriz Ball, L.L.C. v. Barbagallo Co., L.L.C.*,
40 F.4th 308 (5th Cir. 2022) ........................................................................8

*Bodum USA, Inc. v. A Top New Casting, Inc.*,
927 F.3d 486 (7th Cir. 2019) ........................................................................6

*Braun Inc. v. Dynamics Corp. of Am.*,
975 F.2d 815 (Fed. Cir. 1992) ..................................................................7, 9

*Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*,
80 F.4th 1363, 2023 U.S. App. LEXIS 24552 (Fed. Cir. 2023)...........................5

*Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*,
942 F.3d 1119 (Fed. Cir. 2019) ....................................................................9

*Crocs, Inc. v. Int'l Trade Comm'n*,
598 F.3d 1294 (Fed. Cir. 2010) ....................................................................5

*Durling v. Spectrum Furniture Co., Inc.*,
101 F.3d 100 (Fed. Cir. 1996) ............................................................*passim*

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) (en banc) .......................................................6

*Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*,
986 F.3d 250 (3d Cir. 2021), *modified by Kaisha v. Lotte Int'l Am. Corp.*, 2021 U.S. App. LEXIS 7026 (3d Cir. Mar. 10, 2021) ..............................9

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
58 F.3d 27 (2d Cir. 1995) ....................8

*Kohler Co. v. Moen Inc.*,
12 F.3d 632 (7th Cir. 1993) ....................8

*KSR International Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................4

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
988 F.2d 1117 (Fed. Cir. 1993) ....................9

*Midwest Industries, Inc. v. Karavan Trailers, Inc.*,
175 F.3d 1356 (Fed. Cir. 1999) ....................5

*In re Mogen David Wine Corp.*,
328 F.2d 925 (C.C.P.A. 1964) ....................5

*Pocket Plus, LLC v. Pike Brands, LLC*,
53 F.4th 425 (8th Cir. 2022) ....................6

*Qualitex Co. v. Jacobson Prods. Co.*,
514 U.S. 159 (1995)....................6

*In re Rosen*,
673 F.2d 388 (C.C.P.A. 1982) ....................*passim*

*Yurman Design, Inc. v. PAJ, Inc.*,
262 F.3d 101 (2d Cir. 2001) ....................7

**Statutes**

15 U.S.C. § 1051 *et seq*....................1, 2, 5

15 U.S.C. § 1052(e) ....................6

35 U.S.C. § 103....................4

35 U.S.C. § 173....................5

Korean Design Protection Act Article 33 and Japan Design Act....................13

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

Founded in 1878 as the United States Trademark Association, INTA is a not-for-profit organization dedicated to supporting and advancing trademarks and related intellectual property concepts as essential elements of trade and commerce. INTA's nearly 6,500 member organizations from 185 countries include trademark owners, law firms, and other professionals who regularly assist brand owners in the creation, registration, protection, and enforcement of their trademarks. INTA's members seek to promote an understanding of trademarks' essential role in fostering informed consumer decisions, efficient commerce, and fair competition.

INTA's members are frequent participants – as plaintiffs, defendants, and advisors – in actions brought under the U.S. Trademark Act of 1946, 15 U.S.C. § 1051 *et seq*. (the "Lanham Act"), and, therefore, are interested in the development of clear, consistent, and equitable principles of trademark and related areas of law. INTA has substantial expertise and has participated as *amicus curiae* in numerous cases involving significant Lanham Act and related issues.[1]

[1] Cases in which INTA has filed *amicus* briefs include: *Vidal v. Elster*, No. 22-704 (U.S. pending); *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. ___, 143 S. Ct. 2522 (2023); *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. ___, 143 S. Ct. 1578 (2023); *U.S. Patent & Trademark Office v. Booking.com B.V.*, 591 U.S. ___, 140 S. Ct. 2298 (2020); *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 590 U.S. ___, 140 S. Ct. 1492 (2020); *Peter v. NantKwest, Inc.*, 589 U.S. ___, 140 S. Ct. 365 (2019); *Iancu v. Brunetti*, 588 U.S. ___, 139 S. Ct. 2294 (2019); *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. ___, 139 S. Ct. 1652 (2019); *Fourth Estate Pub. Benefit Corp. v.*

INTA was founded in part to encourage enactment of federal trademark legislation after the invalidation on constitutional grounds of the United States' first trademark act. INTA has been instrumental in making recommendations and assisting legislators in connection with almost all major federal trademark legislation, including the Lanham Act.

INTA offers its view as *amicus curiae* in this *en banc* review because many INTA corporate members have intellectual property portfolios that feature trade dress and design patents to combat rampant counterfeiting in the marketplace. https://www.uspto.gov/sites/default/files/documents/USPTO-Counterfeit.pdf. INTA's interest here is to address Question 3(E) posed by the Court in its June 30, 2023 Order granting Appellants petition for rehearing *en banc*, ECF No. 86, namely:

> Given the length of time in which the *Rosen-Durling* test has been applied, would eliminating or modifying the design patent obviousness test cause uncertainty in an otherwise settled area of the law?

---

*Wall-Street.com, LLC*, 586 U.S. ___, 139 S. Ct. 881 (2019); *Matal v. Tam*, 582 US 218(2017); *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138 (2015); *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418 (2015); *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014); *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013); *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205 (2000); *Ferring B.V. v. Watson Labs., Inc.-Fla.*, 764 F.3d 1382 (Fed. Cir. 2014).

The answer to this question is yes. Because the elimination or substantial modification of the *Rosen-Durling* test threatens not only to create uncertainty in this settled area of design patent law, but also to upset the carefully crafted, long-established balance between design patent and trade dress protection, to the detriment of both intellectual property owners and consumers alike, INTA respectfully submits that the Court should retain the *Rosen-Durling* test without modification or, at a minimum, leave the test substantially intact.

## ARGUMENT

### CHANGING THE *ROSEN-DURLING* TEST THREATENS SIGNIFICANT DISRUPTION TO THE PROTECTION OF PRODUCT DESIGNS AGAINST INFRINGEMENT

The test articulated by *In re Rosen*, 673 F.2d 388 (C.C.P.A. 1982), and *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100 (Fed. Cir. 1996) (the "*Rosen-Durling*" test), that has governed the inquiry into obviousness for design patents for decades properly limits the ability of challengers to invalidate design patents, while simultaneously ensuring that granted design patents do not stifle competition or innovation. The balance between these two important principles of patent law is a key component of a broader intellectual property enforcement regime, in which design patents, together with trade dress, play critical roles in protecting both the interests of intellectual property owners and consumers.

In *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), the Supreme Court adopted a test to evaluate obviousness within the meaning of 35 U.S.C. § 103, which requires courts to pursue an "expansive and flexible" inquiry that takes into account: (i) the scope and content of the prior art; (ii) the differences between the prior art and the asserted claims; (iii) the level of ordinary skill in the art; and (iv) any secondary considerations of obviousness. The question now is whether the *Rosen-Durling* test is flexible enough to satisfy *KSR*. INTA does not take a position on this question directly, but instead urges this Court not to make unnecessary or substantial changes in the law to avoid the damaging effect such changes would have on the protections long afforded by design patents under U.S. law.

The abrogation or substantial modification of the *Rosen-Durling* test threatens to upset the balance between trade dress and design patent protection by weakening the enforceability of design patents. Trade dress protection is not available for certain designs because of statutory and judicial limits on the scope of that type of intellectual property protection, but such designs are capable of being protected by design patents in many circumstances. By making design patent protection harder to obtain, a gap will be created between what design patents and trade dress protect, thereby facilitating infringement, disincentivizing innovation, and ultimately harming consumers and intellectual property owners.

## I. Design Patents and Trade Dress Are Complementary Forms of Protection That Promote Innovation While Simultaneously Protecting Against Confusion

Since 1959, this Court and its predecessor have recognized that a product or package design can qualify for both design patent and trade dress protection. *See In re Mogen David Wine Corp.*, 328 F.2d 925, 931 (C.C.P.A. 1964); *Midwest Industries, Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1362 (Fed. Cir. 1999). However, over time, through the development of case law and refinements to the Lanham Act, this Court and many others have also come to recognize that design patent and trademark protection for product designs confer different kinds of exclusive rights, and carry with them important limitations.

Design patent protection is available only for non-functional, ornamental designs applied to an article of manufacture that are novel and not obvious. *Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 2023 U.S. App. LEXIS 24552, at *27-28 (Fed. Cir. 2023). Design patent protection is also limited to 15 years. 35 U.S.C. § 173. In terms of the test for design patent infringement, a design patent owner must prove that the overall appearance of an accused infringing product design is substantially the same as the patented design so that "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed.

Cir. 2010) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008) (en banc)). "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Egyptian Goddess*, 543 F.3d at 676.

In the context of product designs, trade dress protection is both more expansive and more limited than design patent protection. While trade dress, like design patents, does not protect functional design features, *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164-65 (1995); 15 U.S.C. § 1052(e), a product design in the aggregate can be protected as trade dress even if some of the design features are functional. *See Pocket Plus, LLC v. Pike Brands, LLC*, 53 F.4th 425, 433 (8th Cir. 2022) ("it is possible for a trade dress to comprise some functional elements and some arbitrary elements so that the trade dress *as a whole* is nonfunctional and eligible for protection, while competitors remain free to copy the functional elements in their own designs") (emphasis in original). Trade dress protection also has no time limit, unlike design patents. *See Bodum USA, Inc. v. A Top New Casting, Inc.*, 927 F.3d 486, 491 (7th Cir. 2019).

However, when it comes to product designs, trade dress protection is only available if the design has come to stand as a distinctive designation of source in the minds of consumers through use over time (*i.e.*, the design has acquired

secondary meaning). *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 210-211 (2000). And, in order to show that infringement has occurred, a plaintiff must prove that there is a likelihood of confusion between its products and those of the defendant that is attributable to the allegedly infringing design. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001). In support of its infringement claims, a trade dress plaintiff must articulate the elements of its claimed trade dress with specificity. *Id.*, 262 F.3d at 116-17.

Given the differences in protection afforded by design patents and trade dress, it is hardly surprising that both types of claims are commonly asserted by the owners of product designs against accused infringers, and it is not uncommon for a plaintiff to succeed on one claim, but not the other. *See Alan Tracy, Inc. v. Trans Globe Imports, Inc.*, 1995 U.S. App. LEXIS 14253 (Fed. Cir. June 2, 1995) (reversing verdict in favor of plaintiff on design patent claim but affirming trade dress verdict); *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815 (Fed. Cir. 1992) (affirming verdict of design patent infringement but reversing trade dress infringement verdict). The different types of exclusivity protected by design patents and trade dress, the differing standards governing what each form of intellectual property does and does not protect, and their different tests for infringement reflect a careful balance between them indicative of their complementary purposes. The primary purpose of design patents is to reward and

foster innovation. *Kohler Co. v. Moen Inc.*, 12 F.3d 632, 637 (7th Cir. 1993). In contrast, the primary purpose of trade dress is to protect consumers against confusion and deception, and manufacturers from the loss of goodwill. *Beatriz Ball, L.L.C. v. Barbagallo Co., L.L.C.*, 40 F.4th 308, 320 (5th Cir. 2022).

If the Court eliminates or substantially modifies the *Rosen-Durling* test, it is not just design patent law that will be affected, but trade dress law as well. A change of the sort advocated by Appellants would weaken design patent protections substantially and impel design patent owners to rely more heavily on trade dress claims to vindicate their rights. But, as summarized above, trade dress protection serves a purpose different from design patent protection and is limited in certain key respects when it comes to product designs. Unless trade dress law evolves to confer protection closer to that of design patents – a scenario that courts have cautioned against; *see Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995) ("overextension of trade dress protection can undermine restrictions in copyright and patent law that are designed to avoid monopolization of products and ideas") – there will be a gap in the current enforcement structure of which counterfeiters and infringers will certainly take advantage.

There are numerous examples of how trade dress protection cannot fill the gap that would be created if the *Rosen-Durling* test for non-obviousness is jettisoned. For instance, this Court has held that the presence of an accused

infringer's distinctive brand or logo on an allegedly infringing product design is often sufficient to make confusion unlikely and thereby defeat a trade dress infringement claim. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1134 (Fed. Cir. 1993); *Braun Inc.*, 975 F.2d at 827-28. In contrast, because design patent infringement does not consider consumer confusion as to source, such infringement "is not avoided 'by labeling.'" *Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1131 (Fed. Cir. 2019) (quoting *L.A. Gear*, 988 F.2d at 1126). If design patents are more challenging to obtain, an accused infringer will have an enhanced ability to evade liability completely simply by affixing its own branding to an accused design. Such a result would not promote the decorative arts, but inhibit them. *See Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1563 (Fed. Cir. 1988).

Likewise, in recent years, the U.S. Court of Appeals for the Third Circuit has adopted an expansive definition of functionality in the context of trade dress infringement involving product designs, in which any product feature that is "useful" is functional, and therefore unprotectable as trade dress. *See Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 256-58 (3d Cir. 2021), *modified by Kaisha v. Lotte Int'l Am. Corp.*, 2021 U.S. App. LEXIS 7026 (3d Cir. Mar. 10, 2021). While INTA believes that equating utility with functionality is incorrect for a number of reasons, *see* https://www.inta.org/amicus-brief/ezaki-

glico-co-v-lotte-international-america-corp/, that principle is currently controlling in the Third Circuit, and it significantly narrows the scope of product design features eligible for trade dress protection. If this Court adopts a new test for obviousness that makes it harder for a design patent owner to obtain design patents, then the ability to protect product designs in the Third Circuit will be so narrowed that the complementary purposes of design patent and trade dress protection will be hampered. Such a result would not simply be incorrect legally, but have pernicious practical effects.

The *amicus* brief submitted by the United States asserts that:

> Over the past decade, the USPTO has received increasing numbers of design patent applications, illustrating the prominent role designs play in our economy. Presently, the USPTO receives approximately 50,000 design patent applications a year. Design patents not only allow companies to differentiate their offerings, but they can also protect against knock-off goods that can erode our economy.

ECF No. 120 at 30. While INTA does not favor the modifications to the *Rosen-Durling* test recommended by the United States because they would be more difficult to apply and likely lead to inconsistent treatment of design patents, INTA agrees that robust design patent protection is vital to the U.S. economy, and to both product manufacturers and consumers. From a conceptual perspective, it is equally important that the careful balance between design patent and trade dress protection

for product designs be maintained, so that the weakening of the former does not leave an enforcement gap with the latter.

## II. Design Patents Are Particularly Important to Anti-Counterfeiting Efforts

In the arms race between brand owners and counterfeiters, the multi-faceted approaches to protection afforded by design patent and trade dress protection are necessary to counter the evolving sophistication and tactics of infringers and counterfeiters. For example, savvy counterfeiters are selling counterfeits online that forego the use of registered trademarks in the product listings to evade search engines searching for trademarks and brand names, and to avoid take-down actions to remove infringing products from online marketplaces. https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/. Counterfeiters also import products with infringing designs into the US without trademarks affixed to them to evade customs seizures and affix the trademarks after the goods arrive in the US. https://www.justice.gov/usao-edny/pr/four-defendants-arrested-multimillion-dollar-counterfeit-goods-trafficking-scheme.

In many ways, design patents have become the front line of defense to combat the growing counterfeiting problem plaguing many brand owners when it comes to product designs. Design patents can be used for online takedowns and in ITC actions to seek exclusion orders. In addition, in drafted (but not yet passed) bipartisan legislation, the Senate is working to allow Customs and Border

Protection to seize goods that infringe design patents as they currently do for goods that infringe registered trademarks, trade dress, and copyrights. https://www.congress.gov/bill/116th-congress/senate-bill/2987/all-actions.

Appellants' position in this appeal is that the threshold for attaining design patents should be heightened to make it harder to obtain them. But eroding design patent protection by creating new, unsupported higher standards for obviousness – thereby making design protection harder to obtain on an extra-statutory basis – will only make it harder for intellectual property owners, including brand owners, to combat infringement and counterfeiting that primarily harms consumers. Such a degradation of design patent rights would certainly create "substantial uncertainty in an otherwise settled area of the law." The *Rosen-Durling* test sets the appropriate balance for determining the obviousness of a design, and the Court should not abandon it.

Maintaining an obviousness standard for design patents that does not allow for the amalgamation of multiple alleged prior art designs, as advocated by Appellee, ensures that brand owners can continue to protect their valuable designs to try to stem the tide of rampant infringement and counterfeiting.

Further, by preserving the *Rosen-Durling* test, the United States will remain closer to the eligibility standards in jurisdictions like the EU that also begin their analysis with a single prior art reference and then consider the "freedom of the

designer" to make modifications given the technical and functional requirements of the product at hand (*e.g.*, every shoe needs an opening for the foot). Article 6(1)(b) of the Community Design Regulation (6/2002/EC). Similarly, Korea and Japan bar registration for a design where a person with ordinary skill in the particular field of design could easily have created the design from a single prior art design. *See* Korean Design Protection Act Article 33 and Japan Design Act No. 125 of 1959 Article 3. A system that allows a design patent to be invalidated based on a mosaic of prior art would be an outlier as compared to other countries' standards, making it more difficult to enable design innovators and brand owners to more effectively and uniformly combat rampant infringements and counterfeiting.

INTA has long advocated, both in the U.S. and internationally, for the protection of designs and the harmonization of design laws. This case presents an opportunity for this Circuit to reinforce design patent rights in the U.S., which will incentivize other countries to develop and enforce strong design patent rights as well, to the benefit of producers and the consuming public and to the detriment of counterfeiters and infringers.

## CONCLUSION

For the foregoing reasons, the Court should not adopt the modification to the *Rosen-Durling* test advocated by Appellants and, instead, leave the test intact or substantially so, in order to avoid creating uncertainty in this settled area of the law.

Dated: October 26, 2023

Respectfully submitted,

Bruce R. Ewing*
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, New York 10019
(212) 415-9200

* *Counsel of Record*

Martin Schwimmer
Leason Ellis
One Barker Avenue
White Plains, NY 10601
(914) 288-0022

*Counsel for Amicus Curiae International Trademark Association*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2021-2348

**Short Case Caption:** LKQ Corp. et al. v. GM Global Technology Ops. LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 2959 words.
- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 10/30/2023

Signature: /s/ Bruce R. Ewing

Name: Bruce R. Ewing

Save for Filing