No. 2021-2348

# United States Court of Appeals
## for the Federal Circuit

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**
*Appellants,*

v.

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**
*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2020-00534
(JJ. Scott A. Daniels, Grace K. Obermann, and Christopher G. Paulraj)

**CORRECTED EN BANC OPENING BRIEF OF APPELLANTS LKQ CORPORATION AND KEYSTONE AUTOMOTIVE INDUSTRIES, INC.**


BARRY F. IRWIN
IFTEKHAR A. ZAIM
ANDREW C. HIMEBAUGH
ARIEL H. KATZ
**IRWIN IP LLP**
150 N. Wacker Dr., Suite 700
Chicago, IL 60606
(312) 667-6080
birwin@irwinip.com
izaim@irwinip.com
ahimebaugh@irwinip.com
akatz@irwinip.com

MARK A. LEMLEY
MARK P. MCKENNA
**LEX LUMINA PLLC**
745 Fifth Ave., Suite 500
New York, NY 10151
(646) 898-2055
mlemley@lex-lumina.com
mark@lex-lumina.com

*Counsel for Appellants*
*LKQ Corporation and Keystone Automotive Industries, Inc.*

**CLAIM**

The ornamental design for a vehicle front fender, as shown and described.



FIG. 1



FIG. 2



FIG. 3



FIG. 4

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2021-2348

**Short Case Caption** LKQ Corporation, et al. v. GM Global Technology Operations LLC

**Filing Party/Entity** LKQ Corporation

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/23/2023

Signature: /s/ Barry F. Irwin

Name: Barry F. Irwin

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| LKQ Corporation | | None |
| Keystone Automotive Industries, Inc, | | LKQ Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

Case: 21-2348 Document: 22 Page: 3 Filed: 01/26/2023



**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Reid Huefner | Margaret Herrmann | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| LKQ Corp., et al. v. GM Global Technology Operations LLC, Fed. Cir. Case No. 2022-1253 | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

STATEMENT OF RELATED CASES ........ 1

JURISDICTIONAL STATEMENT ........ 1

INTRODUCTION ........ 1

QUESTIONS PRESENTED ........ 3

FACTUAL BACKGROUND ........ 4

SUMMARY OF THE ARGUMENT ........ 8

ARGUMENT ........ 10

A. *KSR* ABROGATED *ROSEN* AND *DURLING* ........ 10

1. Patents for Obvious Subject Matter are Constitutionally and Statutorily Prohibited and the Fundamental Principles Employed to Ensure that Prohibition is Satisfied Apply Equally to Design and Utility Patents. ........ 11

2. *KSR* Rejected Rigid Rules that Limit the Obviousness Inquiry. ........ 13

3. *Rosen* and *Durling* Impose Rigid Limitations that are Irreconcilable with *KSR* and, Thus, Should be Deemed Abrogated by *KSR*. ........ 15

B. THIS COURT SHOULD ELIMINATE THE *ROSEN-DURLING* TEST. ........ 17

1. Each Step of the *Rosen-Durling* Test is Rigidly Limiting and Inflexible, and Should Not Survive *KSR*. ........ 17

*a.* Rosen*'s Primary Reference Requirement is Rigidly Limiting and Inflexible.* ........ 18

*i.* *The* Rosen *Reference Requirement Precludes Analysis of the* Graham *Factors and* KSR *Considerations Unless a Near-Identical Prior Art Reference Exists.* ........ 18

ii. *The* Rosen *Reference Requirement is More Rigid than the TSM Test Overruled by* KSR. ....... 20

b. Durling*'s Requirement That the Primary Reference May Only be Modified by Secondary References that are "So Related" is Rigidly Limiting and Inflexible.* ........ 21

2. *The* Rosen-Durling *Test Extends the Patent Monopoly to Designs that Would Have Been Obvious to an Ordinary Designer in Contravention of the Principles Espoused by* KSR. ........ 23

a. *The* Rosen-Durling *Test Reduces the Ordinary Designer to an Automaton.* ........ 23

b. *The* Rosen-Durling *Test is Inconsistent with the Supreme Court's Analysis in* Whitman Saddle. ........ 24

c. *The* Rosen *Reference Requirement Reduces Obviousness to an Anticipation Analysis.* ........ 25

d. *The* Rosen-Durling *Test Hinders the Courts' and the USPTO's Ability to Enforce the Prohibition Against Design Patents on Obvious Subject Matter.* ........ 26

C. THE TEST FOR EVALUATING DESIGN PATENT OBVIOUSNESS SHOULD BE BASED ON WHAT AN ORDINARY DESIGNER WOULD ACTUALLY HAVE FOUND OBVIOUS. ........ 31

1. The Framework Set Forth in *Graham* as Elaborated Upon in *KSR* Should be Employed to Evaluate Design Patent Obviousness. ........ 32

2. The *Graham* Factors are Relevant to Evaluating Design Patent Obviousness. ........ 33

3. The *KSR* Considerations are Also Relevant to Evaluating Design Patent Obviousness. ........ 34

4. The Arguments for Rigid Design Patent Obviousness Rules Are Unpersuasive. ........ 38

D. NO PRECEDENT FROM THIS COURT HAS SUCCESSFULLY CLARIFIED THE *ROSEN-DURLING* TEST NOR HAS ANY PRECEDENT FROM THIS COURT RESOLVED THE RELEVANT ISSUES OF THIS CASE. ....42

E. FAITHFULLY APPLYING SUPREME COURT PRECEDENT WOULD NOT INCREASE UNCERTAINTY IN AN OTHERWISE SETTLED AREA OF LAW. ....45

1. The *Rosen-Durling* Test is Rife with Uncertainty and Causes Confusion....45

*a.* Durling*'s Claim Construction Requirement Causes Uncertainty.* ....46

*b.* *The* Rosen *Reference Requirement is Confusing and Incites Arbitrary and Inconsistent Decisions.*....47

*c.* Durling*'s Restriction of Prior Art Combinations to "So Related" References Causes Further Uncertainty.* ....51

*d.* *The Ultimate Determination of Obviousness under the* Rosen-Durling *Test Causes Further Uncertainty.* ....52

2. Settled Expectations Do Not Justify Ignoring the Supreme Court's Mandate....54

F. THE DIFFERENCES BETWEEN DESIGN PATENTS AND UTILITY PATENTS DO NOT WARRANT ANY DIFFERENCE IN THE FUNDAMENTAL PRINCIPLES APPLIED TO DETERMINE IF A CLAIMED DESIGN WAS OBVIOUS. ....56

CONCLUSION ....62

# TABLE OF AUTHORITIES

**Cases**

*3form, Inc. v. Lumicor, Inc.*,
678 F. App'x 1002 (Fed. Cir. 2017) ....................43

*ACS Hosp. Sys., Inc. v. Montefiore Hosp.*,
732 F.2d 1572 (Fed. Cir. 1984) ....................14

*Apple Inc. v. MPH Techs. Oy*,
28 F.4th 254 (Fed. Cir. 2022) ....................41

*Apple, Inc. v. Samsung Elecs. Co.*,
678 F.3d 1314 (Fed. Cir. 2012) ....................43, 44, 48, 49

*Application of Bergel*,
292 F.2d 955 (C.C.P.A. 1961) .................... 8

*Black & Decker, Inc. v. Pittway Corp.*,
636 F. Supp. 1193 (N.D. Ill. 1986) ....................50

*Campbell Soup Co. v. Gamon Plus, Inc.*,
10 F.4th 1268 (Fed. Cir. 2021) (*Campbell II*) ....................43

*Campbell Soup Co. v. Gamon Plus, Inc.*,
939 F.3d 1335 (Fed. Cir. 2019) (*Campbell I*) ....................43

*Dobson v. Dornan*,
118 U.S. 10 (1886) ....................46

*Durling v. Spectrum Furniture Co., Inc.*,
101 F.3d 100 (Fed. Cir. 1996) ....................*passim*

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ....................54

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ....................46, 55

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
556 U.S. 1167 (2009) ....................55

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002)..........55

*Fields v. Schuyler*,
472 F.2d 1304 (D.C. Cir. 1972)..........57

*Foster v. Crossin*,
44 F. 62 (D.R.I. 1890)..........13

*G.B. Lewis Co. v. Gould Prods., Inc.*,
436 F.2d 1176 (2d Cir. 1971)..........57

*Golden Eye Media USA, Inc. v. Evo Lifestyle Prod. Ltd.*,
No. 2021-2096, 2022 WL 2232517 (Fed. Cir. June 22, 2022)..........43

*Graham v. John Deere Co. of Kansas City*,
383 U.S. 1 (1966)..........*passim*

*Hadco Prods., Inc. v. Walter Kidde & Co.*,
462 F.2d 1265 (3d Cir. 1972)..........39, 57

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016)..........54

*High Point Design LLC v. Buyer's Direct, Inc.*,
621 F. App'x 632 (Fed. Cir. 2015)..........25

*High Point Design LLC v. Buyers Direct, Inc.*,
730 F.3d 1301 (Fed. Cir. 2013)..........*passim*

*Hotchkiss v. Greenwood*,
52 U.S. 248 (1850)..........11

*Hudgens v. N.L.R.B.*,
424 U.S. 507 (1976)..........14

*Ideker Farms, Inc. v. United States*,
71 F.4th 964 (Fed. Cir. 2023)..........14

*In re Borden*,
90 F.3d 1570 (Fed. Cir. 1996)..........3, 51

*In re Carter*,
673 F.2d 1378 (C.C.P.A. 1982)....................48, 49

*In re Cooper*,
480 F.2d 900 (C.C.P.A. 1973)....................53

*In re Dembiczak*,
175 F.3d 994 (Fed. Cir. 1999)....................14

*In re Fine*,
837 F.2d 1071 (Fed. Cir. 1988)....................14

*In re Geiger*,
815 F.2d 686 (Fed. Cir. 1987)....................14

*In re Jennings*,
182 F.2d 207 (C.C.P.A. 1950)....................20

*In re Laverne*,
356 F.2d 1003 (C.C.P.A. 1966)....................39

*In re Nalbandian*,
661 F.2d 1214 (C.C.P.A. 1981)....................*passim*

*In re Owens*,
710 F.3d 1362 (Fed. Cir. 2013)....................43

*In re Rosen*,
673 F.2d 388 (C.C.P.A. 1982)....................*passim*

*In re Rouffet*,
149 F.3d 1350 (Fed. Cir. 1998)....................14

*In re Vaidyanathan*,
381 F. App'x 985 (Fed. Cir. 2010)....................42

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
589 F.3d 1233 (Fed. Cir. 2009)....................43, 53

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
751 F.3d 1327 (Fed. Cir. 2014)....................41

*Kolcraft Enterprises, Inc. v. Graco Children's Prod., Inc.*,
927 F.3d 1320 (Fed. Cir. 2019) .....................................................................43

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)..................................................................................*passim*

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
988 F.2d 1117 (Fed. Cir. 1993) .....................................................................39

*McNeil-PPC, Inc. v. Perrigo Co.*,
516 F. Supp. 2d 238 (S.D.N.Y. 2007) ...........................................................14

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003)..........................................................................15

*MRC Innovations, Inc. v. Hunter Mfg., LLP*,
747 F.3d 1326 (Fed. Cir. 2014) ..............................................................*passim*

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014)........................................................................................54

*Northrup v. Adams*,
12 O.G. 430 (E.D. Mich. 1877).......................................................................13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014)..................................................................................54, 55

*Para Gear Equipment Co., Inc. v. Square One Parachutes, Inc.*,
No. 04 C 0601, 2005 WL 2266618 (N.D. Ill. Sept. 14, 2005) ...........................49

*Petersen Mfg. Co., Inc. v. Cent. Purchasing, Inc.*,
740 F.2d 1541 (Fed. Cir. 1984) .....................................................................49

*Schnadig Corp. v. Gaines Mfg. Co., Inc.*,
494 F.2d 383 (6th Cir. 1974)..........................................................................57

*Sealy Tech., LLC v. SSB Mfg. Co.*,
825 F. App'x 795 (Fed. Cir. 2020) (*Sealy I*)....................................................43

*Sealy Tech., LLC v. SSB Mfg. Co.*,
825 F. App'x 801 (Fed. Cir. 2020) (*Sealy II*) .................................................43

*Sidewinder Marine, Inc. v. Starbuck Kustom Boats & Prods., Inc.*,
597 F.2d 201 (10th Cir. 1979) .......... 57

*Smith v. Whitman Saddle Co.*,
148 U.S. 674 (1893) .......... 13, 24, 25

*Spigen Korea Co. v. Ultraproof, Inc.*,
955 F.3d 1379 (Fed. Cir. 2020) .......... 43, 44

*Titan Tire Corp. v. Case New Holland, Inc.*,
566 F.3d 1372 (Fed. Cir. 2009) .......... 12, 43, 44, 56

*Troy v. Samson Mfg. Corp.*,
758 F.3d 1322 (Fed. Cir. 2014) .......... 14, 15

*United States v. Adams*,
383 U.S. 39 (1966) .......... 41

*Vanguard Identification Sys. Inc. v. Patent of Bank of America*,
No. 2009-002973, 2009 WL 2342053 (B.P.A.I. July 31, 2009) .......... 50

*Vanguard Identification Sys., Inc. v. Kappos*,
407 F. App’x 479 (Fed. Cir. 2011) .......... 50

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997) .......... 55

**Statutes**

28 U.S.C. § 1295(a)(4)(A) .......... 1

35 U.S.C. § 103 .......... *passim*

35 U.S.C. § 171 .......... 12

35 U.S.C. § 289 .......... 59

35 U.S.C. §§ 141-144, 319 .......... 1

35 U.S.C. §§ 311-315 .......... 1

35 U.S.C. §171(b) .......... 10, 11

U.S. Const., art. I, § 8, cl. 8 .......... 1, 10, 11, 61

**Other Authorities**

Antonin Scalia, *The Rule of Law as the Law of Rules*,
56 U. CHI. L. REV. 1175 (1989) .......... 15

Christopher Buccafusco, Mark A. Lemley, & Jonathan S. Masur,
*Intelligent Design*, 68 Duke Law Journal 75 (2018) .......... 61

Dennis Crouch, *A Trademark Justification for Design Patent Rights*,
24 HARV. J. L. TECH. (2010) .......... 26

Dunstan H. Barnes, Design Patent Rejections—Update, BIGPATENTDATA
(Apr. 14, 2019) (www.bigpatentdata.com/2019/04/design-patent-rejections-update) .......... 26

Mark Bartholomew, *Nonobvious Design*,
108 Iowa L. Rev. 601 (2023) .......... 22

Mark P. McKenna & Jessica Silbey, *Investigating Design*,
84 U. Pitt. L. Rev. 127 (2022) .......... 37

*PTAB Trial Statistics*, *FY22 End of Year Outcome Roundup IPR*, *PGR*,
(https://www.uspto.gov/sites/default/files/documents/ptab__aia_fy2022_roundup.pdf) .......... 30

Ryan T. Holte & Ted Sichelman, *Cycles of Obviousness*,
105 Iowa L. Rev. 107 (2019) .......... 30

Sarah Burstein & Saurabh Vishnubhakat, *The Truth About Design Patents*,
71 Am. U. L. Rev. 1221 (2022) .......... 29

Sarah Burstein, *Costly Designs*,
77 Ohio St. L. J. (2016) .......... 40, 60

Sarah Burstein, *Is Design Patent Obviousness Too Lax?*,
33 Berkeley Tech. L. J. (2018) .......... 27, 28, 47, 51

Sarah Burstein, *Moving Beyond the Standard Criticisms of Design Patents*,
17 STAN. L. TECH. REV. (2013) .......... 23, 28

Sarah Burstein, *Visual Invention*,
16 Lewis & Clark L. Rev. (2012) .......... 25

## STATEMENT OF RELATED CASES

There have been no other appeals in or from the Patent Trial and Appeal Board ("PTAB")'s decision in IPR2020-00534 (concerning U.S. Design Patent D797,625 ("the '625 Patent")) before this or any other appellate court. Case No. 2022-1253, an appeal from the PTAB's decision in PGR2020-00055, is stayed pending this decision and will be directly affected by the Court's decision on this appeal.

## JURISDICTIONAL STATEMENT

The PTAB had jurisdiction over IPR2020-00534 under 35 U.S.C. §§ 311-315. On August 4, 2021, it entered a final decision and on October 7, Appellants timely appealed. On June 30, 2023, this Court ordered en banc review. Appellants sell products that they reasonably believe Appellee would assert infringe the '625 Patent. Jurisdiction exists under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. §§ 141-144, 319.

## INTRODUCTION

"Throughout this Court's engagement with the question of obviousness, our cases have set forth an expansive and flexible approach [to obviousness] . . . [W]hen a court transforms [a] general principle into a rigid rule that limits the obviousness inquiry, as the Court of Appeals did here, it errs." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415-19 (2007).

While the Supreme Court wrote those words in a utility patent case, they apply equally to design patents. As with utility patents, the U.S. Constitution and the Patent Act prohibit design patents on ordinary innovations. U.S. Const., art. I, § 8,

cl. 8; 35 U.S.C. §§ 103, 171(b). The fundamental principles established to ensure that those constitutional and statutory prohibitions are adhered to also apply to design patents. Yet, the rigid rule set out by the Court of Customs and Patent Appeals in *In re Rosen*, 673 F.2d 388 (C.C.P.A. 1982) ("*Rosen*"), and the additional structure established by this Court in *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) ("*Durling*"), are incompatible with the expansive and flexible approach to obviousness that *KSR* mandates, and instead impose rigid rules that limit the obviousness inquiry prohibited by *KSR*. *Rosen* prevents the finder of fact from even looking at the relevant prior art unless there is a single reference having design characteristics which are "basically the same" as the claimed design. *Durling*, 101 F.3d at 103 (quoting *Rosen*, 673 F.2d at 391). This is a rigid rule that permits patents on obvious designs to be obtained and enforced. And even if there is a single reference that satisfies *Rosen*'s rigid rule, *Durling* precludes consideration of secondary references unless they are "so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Durling*, 101 F.3d at 103. This is another rigid rule that permits patents on obvious designs to be obtained and enforced, and an even more stringent variation of the "teaching-suggestion-motivation" requirement rejected by *KSR*. The *Rosen-Durling* framework is inconsistent with the Constitution, Supreme

Court precedent, and the Patent Act, and it should be set aside. Otherwise, as evidenced by this case, design patents on obvious subject matter will persist.

**QUESTIONS PRESENTED**

A. Does *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), overrule or abrogate *In re Rosen*, 673 F.2d 388 (C.C.P.A. 1982), and *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100 (Fed. Cir. 1996)?

B. Assuming that *KSR* neither overrules nor abrogates *Rosen* and *Durling*, does *KSR* nonetheless apply to design patents and suggest the court should eliminate or modify the *Rosen-Durling* test? In particular, please address whether *KSR*'s statements faulting "a rigid rule that limits the obviousness inquiry," 550 U.S. at 419, and adopting "an expansive and flexible approach," *id.* at 415, should cause us to eliminate or modify: (a) *Durling*'s requirement that "[b]efore one can begin to combine prior art designs . . . one must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design,'" 101 F.3d at 103 (quoting *Rosen*, 673 F.2d at 391); and/or (b) *Durling*'s requirement that secondary references "may only be used to modify the primary reference if they are 'so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other,'" *id.* at 103 (quoting *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996)) (internal alterations omitted).

C. If the court were to eliminate or modify the *Rosen-Durling* test, what should the test be for evaluating design patent obviousness challenges?

D. Has any precedent from this court already taken steps to clarify the *Rosen-Durling* test? If so, please identify whether those cases resolve any relevant issues.

E. Given the length of time in which the *Rosen-Durling* test has been applied, would eliminating or modifying the design patent obviousness test cause uncertainty in an otherwise settled area of law?

F. To the extent not addressed in the responses to the questions above, what differences, if any, between design patents and utility patents are relevant to the obviousness inquiry, and what role should these differences play in the test for obviousness of design patents?

## FACTUAL BACKGROUND

The PTAB first found that LKQ was likely to prevail on both its anticipation and obviousness arguments. Subsequently, relying upon essentially the same evidence, the PTAB reversed its position and found that LKQ failed to show that its primary reference anticipated the claimed design, and that it was not close enough to initiate the obviousness inquiry.

LKQ argued in its Petition that GM's D797,625 Patent ("the '625 Patent") was invalid as anticipated or obvious in light of Lian alone or (to the extent an

express teaching of a rounded wheel arch and termination of the fender above the rocker panel was necessary) in combination with the closely related 2010 Hyundai Tucson fender as disclosed in photographs in a prior art Hyundai promotional brochure ("Hyundai Tucson"). Appx0134-0218. Images of the claimed design, Lian, and the Hyundai Tucson are presented below:

| ***'625 PATENT*** <br> ***CLAIMED DESIGN*** | ***LIAN*** <br> ***PRIMARY REFERENCE*** | ***TUCSON*** <br> ***SECONDARY REFERENCE*** |
|---|---|---|
|  <br> Appx0063, FIG. 2 |  <br> Appx0450, FIG. 4 <br> (cropped, annotated) |  <br> Appx0464 <br> (cropped, rotated) |
|  <br> Appx0064, FIG. 3 |  <br> Appx0449, FIG. 1 <br> (cropped, annotated) |  <br> Appx0462 <br> (cropped, flipped) |

| ***’625 PATENT***<br>**CLAIMED DESIGN** | ***LIAN***<br>***PRIMARY REFERENCE*** | ***TUCSON***<br>***SECONDARY REFERENCE*** |
|---|---|---|
| <br>Appx0064, FIG. 4 | <br>Appx0451, FIG. 5<br>(cropped, annotated) | <br>Appx0462<br>(cropped, flipped) |
| <br>Appx0063, FIG. 1 | <br>Appx0452, FIG. 6<br>(cropped, annotated) | <br>Appx0453<br>(cropped, flipped) |

Appx1134 (LKQ Reply at 30). LKQ’s Petition was supported by the testimony of James M. Gandy, a former Design Patent Practice Specialist for Technology Center 2900 at the United States Patent and Trademark Office (USPTO), and Jason C. Hill, an expert automobile designer. Appx0294-0418.

GM submitted a Preliminary Response advancing most of the arguments and alleged distinctions it later relied upon in its Patent Owner’s Response. Appx0694-0742. Specifically, GM argued that LKQ’s claim construction was deficient, that LKQ inappropriately defined the ordinary observer, and that because

of an alleged crowded field the ordinary observer would focus on every difference between the design and the prior art. Appx0704-0729.

The Board, in its Institution Decision, Appx0778-0813, considered and rejected GM's arguments and determined that its "comparison of the '625 design and Lian [was] consistent with LKQ's claim charts and analysis as supported by [LKQ's experts]." Appx0800 (Institution Decision at 23). The Board further considered and rejected each of the distinctions GM attempted to draw between Lian and the claimed design as to both anticipation and obviousness. In its anticipation analysis, the Board found:

> the creases, bends, and folds in the panel, although arguably dissimilar when analyzed in minute detail, those features do not appear as particularly different when considering the designs as a whole.

Appx0805 (Institution Decision at 28).

Nevertheless, in its Final Written Decision, the Board concluded that LKQ failed to discern the correct overall visual impression of the claimed design and that LKQ had not identified an appropriate primary reference as required by *Rosen* and *Durling*. Appx0050-0051. As a result, the Board terminated the obviousness inquiry and did not consider the other references identified by LKQ. Appx0058.

## SUMMARY OF THE ARGUMENT

The U.S. Constitution and the Patent Act prohibit patents on obvious subject matter. For more than fifty years[1] this restriction was undermined in the utility patent context by the application of the "teaching-suggestion-motivation" ("TSM") test, which precluded courts from finding a utility patent obvious over a combination of prior art references unless there was a specific teaching, suggestion, or motivation in the prior art for the prior art references to be combined. Similarly, in the design patent context, the restriction on obtaining patents on obvious subject matter has been undermined by *Rosen*'s even more stringent requirement that the patent challenger identify a primary reference that is "basically the same" as the claimed design and further by *Durling*'s rule that a patent challenger can only modify that primary reference with prior art that is so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other.

In *KSR*, the Supreme Court rejected rigid rules used to undermine the obviousness inquiry as inconsistent with Supreme Court precedent and the Patent Act. Thus, *KSR* implicitly abrogated *Rosen* and *Durling* as it makes no sense to interpret the same prohibitions as permitting rigid rules limiting application of those

[1] *KSR*, 550 U.S. at 418 (citing *Application of Bergel*, 292 F.2d 955, 956–57 (C.C.P.A. 1961), as first establishing the requirement of demonstrating a teaching, suggestion, or motivation to combine known elements in order to show that the combination is obvious).

prohibitions in one context, but forbidding rigid rules limiting application of those prohibitions in the other when there is no constitutional or statutory basis for doing so. Alternatively, to the extent *KSR* did not implicitly overrule or abrogate *Rosen* and *Durling*, this Court should find that the principle of *KSR*, rejection of rigid limitations on the obviousness inquiry, leads to the conclusion that the *Rosen-Durling* test should be eliminated because it is even more rigid than the TSM test that *KSR* overruled.

This Court should further find that the appropriate test for design patent obviousness is the expansive and flexible approach prescribed by *Graham* and refined by *KSR*, applied in the manner that approach was intended to be applied: that is, to determine whether, in light of the facts and evidence, a person having ordinary skill in the art would have found the claimed design obvious. The approach prescribed by *Graham* and *KSR* is relevant to evaluating whether designs are obvious. Further, applying that approach will not increase confusion or uncertainty in an otherwise settled area of the law because the *Rosen-Durling* test is itself rife with confusion and uncertainty. And, even if eliminating the *Rosen-Durling* test would create uncertainty, the rigid rules of *Rosen* and *Durling* should still be eliminated because they permit design patents on obvious subject matter in contravention of the Constitution and the Patent Act.

## ARGUMENT

### A. *KSR* ABROGATED *ROSEN* AND *DURLING*.

Although *KSR* did not expressly overrule either *Rosen* or *Durling* (and indeed had no opportunity to do so), those cases are no longer good law because the limits they impose are incompatible with the fundamental principles underlying the obviousness analysis as set forth in *KSR*. *See KSR*., 550 U.S. at 415. The Supreme Court in *Graham* explained that the Constitution forbids patents on obvious subject matter. *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 6 (1966). That constitutional limitation applies equally to utility and design patents because the authority for both arises from the same constitutional clause. U.S. Const., art. I, § 8, cl. 8. And, that "clause is both a grant of power and a limitation," which precludes patents from being allowed on non-innovative subject matter. *Graham*, 383 U.S. at 5-6. The statutory requirement of nonobviousness, 35 U.S.C. § 103, also applies equally to utility patents and design patents, as the Patent Act makes plain on its face. 35 U.S.C. §171(b).

The Supreme Court in *KSR* held that obviousness cannot be limited by rigid rules but must instead be based on a flexible and expansive inquiry. *KSR*, 550 U.S. at 415 ("Throughout this Court's engagement with the question of obviousness, our cases have set forth an expansive and flexible approach inconsistent with the way the Court of Appeals applied its TSM test here."); *see also id.* at 419 ("Helpful

insights, however, need not become rigid and mandatory formulas; and when it is so applied, the TSM test is incompatible with our precedents.”). The *Rosen-Durling* framework epitomizes the sort of rigid rules *KSR* rejected.

**1. Patents for Obvious Subject Matter are Constitutionally and Statutorily Prohibited and the Fundamental Principles Employed to Ensure that Prohibition is Satisfied Apply Equally to Design and Utility Patents.**

In *Graham*, the Supreme Court explained that prohibiting patents on obvious subject matter was necessary to satisfy the constitutional mandate that patents “promote the Progress of * * * useful Arts.” *Graham*, 383 U.S. at 5-6, (quoting U.S. Const., art. I, § 8, cl. 8). For nearly two centuries, the Supreme Court has held that constitutional mandate prohibits patents on subject matter within the ingenuity and skill of an ordinary artisan. *Graham*, 383 U.S. at 11-12 (citing *Hotchkiss v. Greenwood*, 52 U.S. 248 (1850))*; see also KSR*, 550 U.S. at 427 (“the results of ordinary innovation are not the subject of exclusive rights under the patent laws. Were it otherwise patents might stifle, rather than promote, the progress of useful arts.”) (citing U.S. Const., art. I, § 8, cl. 8). However, the *Rosen-Durling* test permits patents on designs which result from ordinary innovation and thus violates this constitutional mandate.

Section 103 of the Patent Act also prohibits patents on obvious subject matter and applies equally to both design and utility patents. 35 U.S.C. § 171(b); *Durling*, 101 F.3d at 103 (“To obtain [a design patent], however, one must satisfy the

patentability requirement of 35 U.S.C. § 103."); *In re Nalbandian*, 661 F.2d 1214, 1216 (C.C.P.A. 1981) ("That § 103 applies to designs follows from 35 U.S.C. § 171"). Section 103 forbids granting of a patent if "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. Yet, the *Rosen-Durling* test permits patents even though the claimed invention would have been obvious to a person of ordinary skill in the art and thus violates the statutory prohibition.

This Court (and its predecessor) has recognized that judicial interpretations of Section 103 setting forth the fundamental principles of the obviousness analysis in the context of utility patents are equally applicable to design patents:

> in view of the statutory requirement that patents for designs must be evaluated on the same basis as other patents, ***the test of Graham must be followed.***

*Nalbandian*, 661 F.2d at 1217 (emphasis added); *see also Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1384-85 (Fed. Cir. 2009) ("Design patents, like utility patents, must meet the nonobviousness requirement of 35 U.S.C. § 103, and it is not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of *KSR*."). Indeed, the Supreme Court has said as much. *See*

*Smith v. Whitman Saddle Co.*, 148 U.S. 674, 679 (1893) (quoting *Northrup v. Adams*, 12 O.G. 430 (E.D. Mich. 1877); citing *Foster v. Crossin*, 44 F. 62 (D.R.I. 1890)):

> the law applicable to design patents 'does not materially differ from that in cases of mechanical patents, and 'all the regulations and provisions which apply to the obtaining or protection of patents for inventions or discoveries * * * shall apply to patents for designs.'
>
> …
>
> The shape produced must be the result of industry, effort, genius, or expense, and new and original as applied to articles of manufacture. The exercise of the inventive or originative faculty is required, and a person cannot be permitted to select an existing form, and simply put it to a new use, any more than he can be permitted to take a patent for the mere double use of a machine.

### 2. *KSR* Rejected Rigid Rules that Limit the Obviousness Inquiry.

*KSR* reiterated the "expansive and flexible approach to the obviousness question" prescribed by *Graham*, and it rejected the use of rigid rules to limit that inquiry. *KSR*, 550 U.S. at 415 (citing *Graham*, 383 U.S. at 18). *KSR* did not just abrogate this Court's rigid application of a TSM test, but it abrogated any approach to the obviousness inquiry that imposed rigid rules. *See KSR*, 550 U.S. at 422 ("What we hold is that the fundamental misunderstandings identified above led the Court of Appeals in this case to apply a test inconsistent with our patent law decisions."). *See also id.* at 427-28 ("In rejecting the District Court's rulings, the Court of Appeals

analyzed the issue in a narrow, rigid manner inconsistent with § 103 and our precedents.”).

That *KSR* did not specifically cite or mention *Rosen* or *Durling* is not dispositive. *KSR* rejected an approach and thus abrogated all cases insofar as they practiced that approach. Cases reiterating the rigid approach to obviousness embodied by the TSM test that were not named in *KSR* but nonetheless were abrogated by *KSR* include *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1355-58 (Fed. Cir. 1998); *In re Fine*, 837 F.2d 1071, 1074 (Fed. Cir. 1988); *In re Geiger*, 815 F.2d 686, 688 (Fed. Cir. 1987); and *ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1577 (Fed. Cir. 1984). *See also McNeil-PPC, Inc. v. Perrigo Co.*, 516 F. Supp. 2d 238, 247-48 (S.D.N.Y. 2007), aff’d, 274 F. App’x 899 (Fed. Cir. 2008) (recognizing that *KSR* had abrogated the TSM test, and as a result, abrogated the corresponding portions of *Rouffet* and *ACS Hosp. Sys.*).

The Supreme Court has made clear that it can abrogate even its own prior holdings by implication. *See, e.g.*, *Hudgens v. N.L.R.B.*, 424 U.S. 507, 518 (1976). This Court has also acknowledged that the Supreme Court can implicitly overrule its decisions. *Ideker Farms, Inc. v. United States*, 71 F.4th 964, 988 n.11 (Fed. Cir. 2023) (“Precedent is not ironclad until the Supreme Court explicitly says otherwise”); *Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014)

(citing *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc)). Such an intervening decision may be controlling even if the issues are not identical if the intervening decision "undercut the theory or reasoning underlying [this Court's prior] precedent in such a way that the cases are clearly irreconcilable." *Troy*, 758 F.3d at 1326. "[L]ower courts are bound not only by the holdings of higher courts' decisions but also by their mode of analysis." *Id.* At 1326 (citing Antonin Scalia, *The Rule of Law as the Law of Rules*, 56 U. CHI. L. REV. 1175, 1177 (1989)) (cleaned up).

### 3. *Rosen* and *Durling* Impose Rigid Limitations that are Irreconcilable with *KSR* and, Thus, Should be Deemed Abrogated by *KSR*.

*KSR* prescribed a clear approach to obviousness: eschew rigid rules, evaluate the *Graham* factors—the scope and content of the prior art, the differences between the claimed invention and the prior art, the level of ordinary skill in the art, and secondary indicia of nonobviousness—and flexibly inquire into those considerations that bear upon the determination of whether a person having ordinary skill in the art would have found the claimed invention obvious. *KSR*, 550 U.S. at 415-16. The *Rosen-Durling* test is the antithesis of *KSR*'s mandated flexible and expansive inquiry and is even more rigid than the TSM rule rejected by *KSR*. Both *Rosen* and *Durling* impose rigid prerequisites and limitations on how obviousness may be analyzed. Thus, both are irreconcilable with *KSR*.

As Judge Stark observed, "if a design patent challenger fails to identify a *Rosen* reference, the obviousness analysis stops." J. Stark Concurrence, Dkt. 48, ECF 30. The *Rosen* reference requirement thus denies courts "the opportunity to consider other factors that often drive the analysis in utility patent obviousness cases" and "appears to prevent consideration of the ordinary designer's creativity, at least in cases like the one before us now." *Id.* It is difficult to imagine a more rigid rule than "if you don't have the *Rosen* reference, we don't look at the prior art." Dkt. 42, Hearing Recording at 15:40-15:50 (Judge Clevenger, describing the *Rosen* rule).

Finally, *Durling*'s limitation of secondary references to those "so related" in visual appearance to the primary reference imposes an additional, rigid limitation. And that limitation is even narrower than the TSM test that *KSR* overruled. *Rosen* and *Durling* epitomize the rigidly restrictive and limiting approach to obviousness that *KSR* later rejected. *Rosen* and *Durling* are thus irreconcilable with *KSR* and its prescribed flexible and expansive mode of analyzing obviousness and should be deemed abrogated. Again, it makes no sense to interpret the same prohibitions as permitting rigid rules limiting application of those prohibitions in one context, but forbidding rigid rules limiting application of those prohibitions in the other when there is no constitutional or statutory basis for doing so.

## B. THIS COURT SHOULD ELIMINATE THE *ROSEN-DURLING* TEST.

*KSR* reflects the Supreme Court's unbroken emphasis on a flexible inquiry and contextual consideration of the knowledge and skills of a person with ordinary skill in the relevant art when determining what would have been obvious. The Constitution, Supreme Court precedents, and the Patent Act demand that same approach in the context of design patents. The *Rosen-Durling* test epitomizes the opposite: an inflexible framework that, at each step, is even more rigid than TSM. The *Rosen-Durling* test improperly extends the patent monopoly to subject matter that would have been obvious to an ordinary designer. Thus, even if not legally abrogated by *KSR*, the *Rosen-Durling* test should be eliminated as contrary to the constitutional mandate, the Patent Act, and the fundamental principles set forth in *Graham* and *KSR*.

### 1. Each Step of the *Rosen-Durling* Test is Rigidly Limiting and Inflexible, and Should Not Survive *KSR*.

The *Rosen-Durling* test imposes rigid limitations on the obviousness inquiry. Specifically, the *Rosen-Durling* test (1) precludes any consideration of the knowledge and skills of the ordinary designer or the teachings of any secondary reference unless a near-identical primary reference exists; and (2) prohibits modification of that near-identical primary reference unless the modification appeared in a secondary reference that would have suggested that modification to

the ordinary designer. Each of these steps, even taken alone, is more restrictive than the TSM test that *KSR* rejected and should be eliminated for the same reasons.[2]

#### ***a.*** **Rosen*'s Primary Reference Requirement is Rigidly Limiting and Inflexible.***

*Rosen*'s rule that obviousness cannot even be analyzed without first identifying a primary reference that is "basically the same" as the claimed design is the antithesis of the "expansive and flexible" inquiry called for by *KSR* and *Graham*. This Court should eliminate that rule because, as shown below, it represents an even more rigid limitation than the TSM test rejected in *KSR*.

##### ***i. The* Rosen *Reference Requirement Precludes Analysis of the* Graham *Factors and* KSR *Considerations Unless a Near-Identical Prior Art Reference Exists.***

Under *Rosen*, the court must first analyze and compare a single prior art reference to the claimed design and make its own "instinctive" determination as to

---

[2] The *Rosen-Durling* test also arguably requires another rigid rule: that the challenger correctly describe the features of the claimed design in words (even though that has no bearing on whether the claimed design was obvious to an ordinary designer). Indeed, the PTAB panel majority treated a failure to present a satisfactory verbal claim construction as a reason to immediately terminate the obviousness inquiry. *See* Appx0050-0051, Final Written Decision at 50-51. "If that is a correct understanding of our caselaw, … it would certainly be an additional rigidity reserved only for design patents. No one would argue, I think, that *KSR* or our obviousness standards for utility patents hold that an obviousness challenge fails at the point at which the challenger proposes an incorrect claim construction." J. Stark Concurrence, Dkt. 48, ECF 31, n. 5. As the Court did not inquire as to whether this aspect of *Rosen-Durling* should be eliminated, LKQ does not discuss it in this section.

whether that single prior art reference is "basically the same" as the claimed design. *Durling*, 101 F.3d at 103 ("In comparing the patented design to a prior art reference, the trial court judge may determine ***almost instinctively*** whether the two designs create basically the same visual impression") (emphasis added). And, until it finds a *Rosen* reference, the court cannot even consider the level of skill in the art, the teachings of other prior art references, or objective indicia of obviousness or nonobviousness, much less the considerations articulated by *KSR* that the Court stated were properly considered when analyzing the broader question of whether the claimed design would have been obvious to an ordinary designer.

The *Rosen* rule has no basis in law, flouts the constitutional and statutory prohibition on patents covering obvious subject matter, and conflicts with the Supreme Court's command that obviousness be determined through an evidence-based analysis of what an ordinary designer would have found obvious. *See KSR*, 550 U.S. at 417-18 (explaining the principles underlying prior Supreme Court obviousness decisions and linking all of them to what would have been within the knowledge, skill, or creativity of a person having ordinary skill in the art). *See also* J. Stark Concurrence, Dkt. 48, ECF 30 (That rule denies courts "the opportunity to consider other factors that often drive the analysis in utility patent obviousness cases" and "appears to prevent consideration of the ordinary designer's creativity, at least in cases like the one before us now."). *Id.*

#### *ii. The* **Rosen** *Reference Requirement is More Rigid than the TSM Test Overruled by* **KSR.**

Like this Court's now-abrogated TSM rule, the *Rosen* reference requirement was intended to prevent hindsight bias. *Rosen*, 673 F.2d at 391 (emphasizing the need to consider whether the availability of all of the elements of a design in the prior art would have made their combination obvious to a designer, and requiring comparison with "something in existence—not with something that might be brought into existence by selecting individual features from prior art and combining them, particularly where combining them would require modification of every individual feature …") (quoting *In re Jennings*, 182 F.2d 207, 208 (C.C.P.A. 1950)). However, even if *Rosen* captured a helpful insight, that cannot justify the rigid rule it created. The Supreme Court in *KSR* held that when a court transforms that insight "into a rigid rule that limits the obviousness inquiry, … it errs." *KSR*, 550 U.S. at 419. As with TSM cases, this Court, in applying *Rosen*, "drew the wrong conclusion from the risk of courts and patent examiners falling prey to hindsight bias. … Rigid preventative rules that deny factfinders recourse to common sense … are neither necessary under our case law nor consistent with it." *KSR*, 550 U.S. at 421.

Indeed, *Rosen*'s requirement of a single reference is far more rigid than the requirement the Court rejected in *KSR*. The TSM test applied to cases where two (or more) references had to be combined, and it demanded "'some motivation or suggestion to combine the prior art teachings' [] be found in the prior art, the nature

of the problem, or the knowledge of a person having ordinary skill in the art." *Id.* at 407. The Supreme Court nevertheless believed that test was too rigid because it did not permit a thorough analysis of what a person of ordinary skill in the art would have found obvious. *Rosen* goes even further. It prohibits even looking to secondary references (or even the ordinary designer's own skill or common sense) for such a teaching, suggestion, or motivation to modify the primary reference unless the primary reference is basically the same as the patented design.

#### *b.* **Durling*'s Requirement That the Primary Reference May Only be Modified by Secondary References that are "So Related" is Rigidly Limiting and Inflexible.***

This Court should also eliminate *Durling*'s requirement that even if there is a primary reference that is "basically the same" as the invention, the primary reference may only be modified based on the teachings of prior art that is "so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Durling*, 101 F.3d at 103. The "so related" requirement is a more rigid application of the teaching-suggestion-motivation test applied to design patents and accordingly conflicts directly with *KSR*. *See, e.g.*, Dkt. 48 at ECF 30 (Stark, J.) ("Additional rigidity that might not be appropriate in a post-*KSR* world arguably exists at step two of the *Durling* test").

The "so related" requirement limits potential secondary references to only those bearing similar visual appearances to the primary reference. However,

obvious design changes are not limited to those that appear in "so related" prior art references. *See* Mark Bartholomew, *Nonobvious Design*, 108 IOWA L. REV. 601, 645-46 (2023) (noting several references a designer may have taken into account when designing a new beverage pouch). In this case, the undisputed evidence showed that automobile designers do not just look to visually similar designs when doing routine design modifications; they draw from a wide variety of sources that may, especially to a lay person, look different or seem unrelated in appearance. *See, e.g.*, Appx0372-0373 (automobile design expert Mr. Jason C. Hill explaining that designers "can and do look to many sources for inspiration for design," and that it is "common during the design process to keep images, both of automotive origin and other items, at the ready for a reminder of what the style of the final product could be."). Indeed, ordinary designers do not even need to rely upon specific sources to do routine design modifications. *See* Appx1302, Appx1332-1336 (Reply Declaration of Jason C. Hill). But in the absence of a specific "so related" reference, *Durling* Step Two would have prevented consideration of evidence explaining why the use of a commonly employed rounded wheel arch was obvious, and that terminating the fender above the rocker panel was a matter of routine design choice. *Durling* Step Two thus further divorces the obviousness analysis from what an ordinary designer would, in fact, have found obvious in a manner directly rejected by *KSR* and should be eliminated.

### 2. *The* **Rosen-Durling** *Test Extends the Patent Monopoly to Designs that Would Have Been Obvious to an Ordinary Designer in Contravention of the Principles Espoused by* **KSR.**

#### *a. The* **Rosen-Durling** *Test Reduces the Ordinary Designer to an Automaton.*

The *Rosen-Durling* test, and in particular the *Rosen* reference requirement and the restriction on combining prior art references, improperly limits courts from evaluating the ordinary designer's ability to exercise her knowledge and creativity, or even perform the basic duties of a designer. As a result, the *Rosen-Durling* test permits design patents that claim subject matter that would have been obvious to an unshackled designer of ordinary skill in the art.

In fact, the *Rosen-Durling* test reduces the ordinary designer to a mere automaton in direct contravention of *KSR*. *See KSR*, 550 U.S. at 421 ("A person of ordinary skill is also a person of ordinary creativity, not an automaton."). As noted, under *Rosen* the obviousness inquiry cannot even begin without first identifying a prior art reference that is "basically the same" as the claimed design. *Rosen*, 673 F.3d at 391. Only references that differ in minimal ways from the claimed design are considered appropriate *Rosen* references. *See* Sarah Burstein, *Moving Beyond the Standard Criticisms of Design Patents*, 17 STAN. L. TECH. REV. 305, 325 (2013) (noting that this Court in *Apple v. Samsung* rejected the primary reference, even though it was extremely similar to the claimed design and created "almost identical visual impressions" to one observer). Thus, *Rosen* prejudges the "ordinary designer"

to be so incapable that nothing beyond minimal changes to something that already exists could ever be obvious to them, reducing the ordinary designer to the very automaton prohibited by *KSR*.

*Durling* further restricts even the minimal modification that the *Rosen* reference requirement permits by prohibiting consideration of secondary references that modify the *Rosen* reference unless that modification appears in a secondary reference that is "so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Durling*, 101 F.3d at 103. As shown above, this limitation is an even more restrictive version of the rejected TSM test, and it suggests that the ordinary designer is capable of nothing more than replicating features from similar designs. Thus, *Durling*'s "so-relatedness" requirement further diminishes the ordinary designer's capabilities in further direct contravention of *KSR*'s directives and principles.

#### ***b. The* Rosen-Durling *Test is Inconsistent with the Supreme Court's Analysis in* Whitman Saddle.**

In addition to being incompatible with *KSR*, the *Rosen-Durling* test, and especially its *Rosen* reference requirement, conflicts with the Supreme Court's decision in *Whitman Saddle*. In that case, the Court concluded that the combination of halves of two different saddle designs would not be patentable, even though neither of those two saddles would have been similar enough to the claimed saddle to be considered 'basically the same.' *Whitman Saddle*, 148 U.S. at 680-81; *see also*

Sarah Burstein, *Visual Invention*, 16 LEWIS & CLARK L. REV. 169, 201 (2012) ("in *Whitman Saddle*, there was arguably no primary reference because neither reference had "basically the same" overall appearance as the claimed design."). Under the *Rosen-Durling* test, the Supreme Court in *Whitman Saddle* would not have even been able to commence an obviousness inquiry, much less use the threat of invalidity as a foil to focus the infringement analysis to a single design feature (as it did). *See Whitman Saddle*, 148 U.S. at 682. Thus, the *Rosen-Durling* test is inconsistent with the sole Supreme Court case analyzing design patent obviousness.

#### *c. The* **Rosen** *Reference Requirement Reduces Obviousness to an Anticipation Analysis.*

*Rosen*'s requirement of a single prior art reference that is "basically the same" as the invention collapses obviousness into anticipation. A design is anticipated if it is substantially the same as a single prior art design; under *Rosen-Durling*, only a single reference the design characteristics of which are "basically the same" as the claimed design initiates the obviousness inquiry. *See High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 636 (Fed. Cir. 2015). The substantive requirements for anticipation (substantially the same) and obviousness (basically the same) thus end up being essentially equivalent, except for the purportedly different perspective (the ordinary observer for anticipation, and the designer of ordinary skill

for obviousness).[3] Indeed, depending on the trial judge's instinct, "basically the same" may require closer similarity than "substantially the same." Thus, any reference sufficiently close to the patent to trigger an obviousness inquiry under *Rosen* should also anticipate it.

#### *d. The* **Rosen-Durling** *Test Hinders the Courts' and the USPTO's Ability to Enforce the Prohibition Against Design Patents on Obvious Subject Matter.*

The *Rosen-Durling* test interferes with the USPTO's and the courts' ability to reject and invalidate design patents on obvious subject matter, allowing obvious design patents to proliferate. This contravenes the Constitution, the statute, and *KSR*'s mandates. 35 U.S.C. § 103; *KSR*, 550 U.S. at 415-16.

The USPTO almost never rejects design patent applications on prior art grounds. Dennis Crouch, *A Trademark Justification for Design Patent Rights*, 24 HARV. J. L. TECH. at 19 (2010) (calculating that only 1.2% of design patent applications receive prior art-based rejections and observing that this "contrasts with the ordinary course for utility patent applications—the vast majority of which are initially rejected based on prior art grounds."); *see also* Dunstan H. Barnes, Design

[3] If that difference of perspective might otherwise put some daylight between the two standards, the current standard for evaluating a primary reference eliminates the perspective: trial court judges are invited to determine "almost instinctively" whether the claimed design is "basically the same" as the prior art design. That "instinctive" determination cannot realistically be said to embody the perspective of the designer of ordinary skill.

Patent Rejections—Update, BIGPATENTDATA (Apr. 14, 2019) (www.bigpatentdata.com/2019/04/design-patent-rejections-update) (recreating and updating Professor Dennis Crouch's 2010 study and finding that only 2.1% of design patent applications received rejections based on prior art). Indeed, Professor Crouch found that design patents were granted in over 90% of applications, a rate far higher than for utility patents. Crouch, at 18. It is highly unlikely that the difference in grant rates can be explained on the ground that the applied-for designs are so much more creative and innovative than the inventions for which applicants sought utility patents. The more likely explanation for this discrepancy is that the USPTO is issuing design patents for routine and ordinary designs because it is virtually impossible to sustain an obviousness rejection under current law. *See* Sarah Burstein, *Is Design Patent Obviousness Too Lax?*, 33 BERKELEY TECH. L. J. at 608-610 (2018) (questioning the nonobviousness of designs for a sheet of labels, an exhaust pipe, and a door hinge, depicted below):



The "USPTO's sub silento [sic] abdication of its gatekeeper function in the realm of design patents," Crouch at 19, is a reflection of the fact that the current law "makes it nearly impossible for the USPTO to reject most design patent claims—no matter how banal, trivial, or uncreative." Burstein, 33 BERK. TECH. L. J. at 624.

And, because of *Rosen-Durling*, design patent challengers have not fared well in challenging design patents. As scholars have noted, design patent challenges only rarely surmount the *Rosen* reference requirement to reach *Durling*'s "so related" requirement (*Durling* Step Two). When they do, the *Rosen* reference is often nearly identical to the claimed design. *See* Burstein, 33 BERK. TECH. L. J. at 616 ("In recent years, however, it has become rare for courts to even reach step two because the Federal Circuit has required such a high degree of similarity at step one."). *See also* Sarah Burstein, *Moving Beyond the Standard Criticisms of Design Patents*, 17 STAN. L. TECH. REV. 305 (2013):

> the identification of a proper "primary reference"[] is particularly important. If there is no primary reference, then the design patent cannot be invalidated as obvious. ***Recently, however, the Federal Circuit has been making it increasingly difficult for anything to qualify as a proper primary reference.*** For example, in the first *Apple v. Samsung* appeal, the Federal Circuit held that the reference shown below was not a proper primary reference … :




> ***Although these designs are not identical, they are extremely similar.*** But, according to the Federal Circuit, they are not similar enough.
>
> So, under the current law, the bar for invalidating a design patent under § 103 is quite high. If the Federal Circuit continues to require such a high degree of similarity … , § 103 will bar few—if any—designs from patentability.

*Id.* at 324-26 (emphases added) (citations omitted).

And, design patent challenges succeed at a far lower rate than utility patent challenges. In U.S. District Courts, between 2008 and 2020, design patents were invalidated only 11.6% of the time; at the International Trade Commission, between 2011-2020, design patents were invalidated only 5% of the time; and in the Patent Trial and Appeal Board, since 2013, design patents are invalidated only 21% of the time. Sarah Burstein & Saurabh Vishnubhakat, *The Truth About Design Patents*, 71 AM. U. L. REV. 1221, 1271-1276 (2022).

In contrast, from 2003 to 2013 utility patent obviousness determinations in United States District Courts increased from 27% to 46% and nonobviousness determinations decreased from 69% to 48%. Ryan T. Holte & Ted Sichelman, *Cycles of Obviousness*, 105 IOWA L. REV. 107, 141 (2019). Further, of the 17,440 claims on which the PTAB issued an institution decision in FY22, it instituted IPR or PGR as to 10,045 (58%), and of the 7,024 claims on which the PTAB issued a determination of patentability in AIA proceedings in FY22, it found 5,371 (76%) of those claims unpatentable.[4] *PTAB Trial Statistics, FY22 End of Year Outcome Roundup IPR, PGR*, at 14 (https://www.uspto.gov/sites/default/files/documents/ptab__aia_fy2022_roundup.pdf). Again, it is highly unlikely that the difference in patent challenge success rates can be explained on the ground that the challenged designs are so much more creative and innovative than the utility patents being challenged. The more likely explanation for this discrepancy is that the rigid strictures of *Rosen-Durling* is allowing patents on obvious designs to survive.

The *Rosen-Durling* test is contrary to the purpose and spirit of the constitutional mandate, Section 103, *Graham*, and *KSR*. It prohibits courts from even considering obviousness unless the demanding prerequisite of a single prior art reference that is "basically the same" as the claimed design is met, restricts prior art

[4] Numerous AIA challenges did not receive an institution decision, and numerous claims on which AIA challenges were instituted did not receive a determination of patentability due to settlements, requests for adverse judgment, etc.

combinations even more strictly than the rejected TSM test, and divorces the obviousness inquiry from the knowledge and skills of the designer of ordinary skill. And, it allows patents on obvious subject matter to be obtained and enforced. As such, it should be eliminated.

### C. THE TEST FOR EVALUATING DESIGN PATENT OBVIOUSNESS SHOULD BE BASED ON WHAT AN ORDINARY DESIGNER WOULD ACTUALLY HAVE FOUND OBVIOUS.

In the process of making new designs, designers sometimes exercise ordinary skill and creativity to create routine, obvious designs; sometimes they go beyond the routine and create designs that would not have been obvious to an ordinary designer. Accordingly, the same fundamental principles that must be employed to determine when that line has been crossed in the utility patent context should be used to determine when that line has been crossed in the design patent context. Indeed, factual considerations that may be probative in a utility patent obviousness inquiry will often also be probative in design patent obviousness inquiries.

To be clear, this does not mean that every consideration relevant to a utility patent obviousness analysis would apply to every design patent obviousness analysis. There are likely differences between every obviousness inquiry, whether utility or design, and the law of obviousness can and should take account of those differences. But, whether design or utility patent, the obviousness inquiry must be done within the framework of *KSR*. That means inquiring into what an ordinary

designer would actually have found obvious, not relying on rigid rules that undermine that inquiry, and certainly not relying on rules, like those in *Rosen* and *Durling*, that prevent even considering the question until exacting prerequisites are met.

### 1. The Framework Set Forth in *Graham* as Elaborated Upon in *KSR* Should be Employed to Evaluate Design Patent Obviousness.

The test for design patent obviousness should follow the "framework for applying the statutory language of § 103" set forth in *Graham* as elaborated upon in *KSR*:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*KSR*, 550 U.S. at 406 (quoting *Graham*, 383 U.S. at 17-18).

Evaluating design patent obviousness pursuant to *Graham* and *KSR* is appropriate because they set forth a Supreme Court-endorsed method of distinguishing between obvious and non-obvious subject matter. Applying *Graham* to design patents is not a new concept; this Court followed precisely that approach in *Nalbandian*. 661 F.2d at 1216-17. Further, prior to the creation of the Federal

Circuit, most other Circuit Courts of Appeal applied *Graham* as the standard for evaluating design patent obviousness. *See id.* at 1217 (citing cases).

*Nalbandian* made clear that the differences between design patents and utility patents did not render the *Graham* test unworkable. *Id.* at 1216-17:

> we do not believe the determination of the level of ordinary skill in the art, as required under [*Graham*], cannot be made with respect to designs. Thus, in view of the statutory requirement that patents for designs must be evaluated on the same basis as other patents, the test of *Graham* must be followed.

To the contrary, *Nalbandian* observed that "the 'ordinary designer' standard has been found helpful to courts in infringement litigation because of the objective evidence which can be brought to bear on the question of obviousness under the tests of *Graham*." *Id.* at 1217.

### 2. The *Graham* Factors are Relevant to Evaluating Design Patent Obviousness.

It makes sense to evaluate the *Graham* factors when considering obviousness of design patents because they are relevant. The scope and content of the prior art sets forth what would have been known and relevant at the critical date. And whether evaluating a design patent or utility patent, the differences between the prior art and alleged invention are critical for evaluating what new matter the named inventor contributed to the art, and whether that contribution made the invention novel and non-obvious at the time of its invention. The level of skill in the art is

also relevant to ascertaining the capability and creativity of an inventor, whether considering the obviousness of a design or utility patent. And objective indicia of obviousness or nonobviousness are, by definition, objective indications of whether a claimed design was obvious or not. *See Graham*, 383 U.S. at 17-18.

### 3. The *KSR* Considerations are Also Relevant to Evaluating Design Patent Obviousness.

It also makes sense to evaluate the *KSR* considerations when evaluating obviousness of designs because those considerations are also relevant to the inquiry. Designers, just like scientists and engineers, are influenced by and consider design incentives and market forces. Appx0372-0373. Designers also combine familiar elements in common ways or using known methods and are capable of substituting one known element for another. *See* Appx1301-1302; Appx0406 (Decl. J. Hill):

> [T]he use of a circular wheel arch is well within the knowledge and skill of a designer of ordinary skill, since it is the typical shape for forming a wheel arch. Thus, substituting a circular wheel arch in place of Lian's more squared wheel arch would have involved nothing more than a simple substitution of known elements.

*See also* Appx0416 (Decl. J. Hill):

> The wheel arch and terminus configuration of the claimed design was well-known and conventional in the art, rendering the modification trivial and requiring no more than the exercise of ordinary skill, particularly in view of the clear suggestions of the Hyundai Tucson.

Designers can make predictable variations on existing designs. *See MRC Innovations*, 747 F.3d at 1334 (modification was obvious even though no prior art reference disclosed it). Designers can also improve designs in similar ways to how other similar designs were improved. Designers also follow and iterate on design trends and fashions. *KSR*'s prescribed expansive and flexible approach, and most, if not all, of the considerations the Court identified for determining whether there is an apparent reason the skilled artisan would have found the claimed invention obvious are just as applicable to design patents as they are to utility patents. Courts and tribunals can tailor the evidence and criteria considered as appropriate from case to case.

*Graham* and *KSR* set out a standard that requires contextual inquiry, not a rule. That inquiry calls for case-by-case development and the collection of evidence about what an ordinary designer in a given case would have known, their capabilities, and what the relevant prior art would have disclosed to them or taught them. That it may not always be easy to conduct this case-specific analysis is not a basis to apply a different test. *See Graham*, 383 U.S. at 18:

> This is not to say, however, that there will not be difficulties in applying the nonobviousness test. What is obvious is not a question upon which there is likely to be uniformity of thought in every given factual context. The difficulties, however, are comparable to those encountered daily by the courts in such frames of reference as negligence and scienter, and should be amenable to a case-by-case development. We believe that strict observance

> of the requirements laid down here will result in that uniformity and definiteness which Congress called for in the 1952 Act.

Further, courts have access to a variety of sources of evidence to assist them. First, the Court can rely on expert testimony. In this case, the uncontradicted record evidence shows that automotive designers are highly trained professionals with a wealth of knowledge and creativity. Appx0372-0374 (Decl. J. Hill). They have knowledge of design trends and engineering constraints relevant to their products. SAppx075-077 (Dep. T. Peters at 105:12-107:11). They look to a wide range of sources and are aware of competitors' designs. SAppx072-074 (Dep. T. Peters at 59:21-61:23). And they are capable of envisioning and applying predictable variations on certain routinely modified aspects of an automobile's design, such as the application of a round wheel arch or a given fender terminus. Appx0406-0407 (Decl. J. Hill), Appx1335-1336 (Reply Decl. J. Hill), SAppx072-074 (Dep. T Peters at 59:21-61:23), Appx1451 (Dep. T. Peters at 103:2-103:18).

Second, just as they do with utility patents, courts can look to design demands and market pressures to identify an apparent reason why a designer may have found the claimed design obvious or obvious to try:

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common

> sense. In that instance the fact that a combination was obvious to try might show that it was obvious under § 103.

*KSR*, 550 U.S. at 421. *See also* Appx1311-1312 (Reply Declaration of Jason C. Hill, at ¶ 22):

> Further, there are only a finite number of ways to resolve the lower rear end of the fender (terminate at the rocker panel, as the claimed design does; proceed straight to the bottom of the vehicle; or hook back towards the rocker panel, as Lian does). As previously explained, a DOSA, and especially one looking to adapt Lian for the United States market, would have found it obvious to cause Lian's fender to terminate above the rocker panel to enable the use of a darker colored rocker, creating the illusion of greater height and ground clearance.

Third, published empirical evidence sheds light on how ordinary designers solve problems generally. *See* Mark P. McKenna & Jessica Silbey, *Investigating Design*, 84 U. PITT. L. REV. 127 (2022). That work reveals several themes. Designers work with their hands and their minds. They build prototypes and test models. Iteration, not discovery or revelation, is the primary method of problem-solving. Designers of ordinary skill in the art generally regard their work as building upon things that came before, and they tend to roam broadly. For many designers, hewing closely to precedent would be an incomplete process that is unlikely to produce good design. Designers describe a regular and expected practice of borrowing and taking inspiration from a wide range of fields and objects. *Id.*

Evidence of this sort can help courts understand what would have been obvious to an ordinary designer.

Fourth, when considering whether a design is obvious, courts should not confine themselves to the prior art references themselves, but may look to a variety of reasons designers might have found the design obvious. *See KSR*, 550 U.S. at 418:

> Often, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.

**4. The Arguments for Rigid Design Patent Obviousness Rules Are Unpersuasive.**

The arguments advanced in support of rigid rules for the design patent obviousness analysis misunderstand the nature of design, rely upon other incorrect premises, and, even if they were accurate, they do not justify applying rigid restrictions on the analysis. For example, the argument that designs are different than utility patents because "[o]rnament is in the eyes of the beholder [whereas] [f]unctional utility is objective," Dkt. 48, at ECF 18, mischaracterizes most design patent subject matter, which often has functional considerations. *See, e.g.*, Appx1319 (J. Hill Reply Decl. at ¶ 34) (explaining the functional considerations and

constraints on the design of door cut lines); Appx1335-1336 (J. Hill Reply Decl. ¶¶ 57-58 (explaining engineering and functional constraints affecting the shape of a fender's lower rear terminus, and explaining that cutting a fender terminus above a dark-colored rocker achieves an aesthetic function of creating the illusion of a vehicle that appears higher).[5] It also trivializes the design process, suggesting that there are no standards or principles designers use. As the record establishes, the ordinary automobile designer is a skilled and trained professional that analyzes designs in rigorous and coherent ways. Appx0372-0374; Appx1302. The record further demonstrates that design elements can have objective effects. For example, certain automotive features draw the eye in certain ways. Appx1334-1335.

This Court's predecessor and others have already rejected the view that design is nothing more than appearance and that no special skill is required to determine what things look like. *See Nalbandian*, 661 F.2d at 1216 (citing *In re Laverne*, 356 F.2d 1003, 1006 (C.C.P.A. 1966)) (citing cases); *see also Hadco Prods., Inc. v. Walter Kidde & Co.*, 462 F.2d 1265, 1271-74, (3d Cir. 1972) (vacating a district court decision whose "reasoning and conclusion on [obviousness] were actually based on subjective visual impressions," insisting that the analysis focus on common practices and design features in the field). Regardless, whether design is in the "eyes

[5] *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) (design not functional unless dictated by function).

of the beholder" and not "objective" is no basis for imposing rigid rules on the obviousness inquiry.

Similarly, the argument that the considerations discussed in *KSR* cannot apply to design patents because "designs cannot have unexpected properties," *see* Dkt. 48, at ECF 18 ("And what is an unexpected property in the context of design patents, for it must be related to ornament, as function is not to be considered in evaluating obviousness of a design?"), is factually incorrect and, even if true, would not justify imposing rigid rules on the obviousness inquiry. To say something has unexpected properties in the utility patent context is simply a way to suggest that a person of ordinary skill in the art would not have realized the properties of a combination before it was combined. The same can be true of many designs where their appeal would not have been recognized before it was created. *See, e.g.*, Sarah Burstein, *Costly Designs*, 77 OHIO ST. L. J. at 136-37 (2016) (describing the critical acclaim and unexpected innovation of the *Louis Ghost* chair, a chair reminiscent of an old design, the Louis XVI chair, "but stylized and rendered in clear plastic[.]"). And, again, even if designs did not have unexpected properties, that is not basis for imposing rigid rules on the obviousness inquiry.

Finally, arguments that unshackling the Section 103 inquiry from *Rosen*'s primary reference requirement would allow challengers to pick and choose visual elements from the prior art and combine them without regard for whether a designer

would have found that combination obvious are premised upon a fundamental misunderstanding of the *KSR* test, and are reminiscent of the arguments raised in the lead-up to *KSR* against eliminating the TSM test. Applying *KSR* would not result in design patents being invalidated based on haphazard combinations of prior art elements because *KSR* itself rejects such patchwork approaches to obviousness. *See KSR*, 550 U.S. at 418-19:

> As is clear from cases such as *Adams*, a patent composed of several elements is ***not*** proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art. Although common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, ***it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does.***

(emphases added) (referencing *United States v. Adams*, 383 U.S. 39 (1966)). *KSR* does not permit haphazard and unjustified grounds for obviousness in utility patent cases, and it would not permit such approaches in design patent cases. *See, e.g.*, *Apple Inc. v. MPH Techs. Oy*, 28 F.4th 254, 262 (Fed. Cir. 2022) (affirming the PTAB's finding of nonobviousness where expert testimony lacked a reasonable explanation to support a claim of obviousness); *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1353–54 (Fed. Cir. 2014) (reversing obviousness determination because no meaningful explanation for why a POSITA would have

made combination); *In re Vaidyanathan*, 381 F. App'x 985, 994–95 (Fed. Cir. 2010) (same).

There is no magic test that will automatically distinguish obvious designs from nonobvious designs, just as there is not for utility patents. And under *KSR* there should not be one. But that does not mean courts are entirely adrift at sea. Nor does it mean that every aspect of utility patent doctrine will translate to design patents. Rather, courts will do with design patents what they successfully do with utility patents: apply flexible principles to determine what the DOSA would have found obvious.

### D. No Precedent From This Court has Successfully Clarified the *Rosen-Durling* Test Nor has Any Precedent from This Court Resolved the Relevant Issues of This Case.

This Court has not regularly relied upon *Rosen-Durling* to sustain the validity of design patents. Accordingly, it is wrong to suggest that this Court has implicitly rejected LKQ's argument that *KSR* abrogated or overruled *Rosen-Durling*. And, in those few cases where the Federal Circuit did rely upon *Rosen-Durling* to sustain the validity of a design patent, the patent challenger did not challenge the *Rosen-Durling* test.

Except for the instant appeal and its companion case and not counting any summarily affirmed cases, this Court has issued opinions in design patent obviousness cases only fourteen times since the Supreme Court's *KSR* decision in

2007.[6] Only ten of those cases turned on application of the *Rosen-Durling* framework.[7] And in six of those cases obviousness was found even under the *Rosen-Durling* framework because they were the rare cases where the primary references only varied in trivial ways from the patented design.[8] In only three cases has the Court found nonobviousness based upon the requirements of *Rosen-Durling*. Each

[6] *Titan Tire*, 566 F.3d 1372 (Fed. Cir. 2009); *Int'l Seaway Trading Corp. v. Walgreens Corp*., 589 F.3d 1233, 1240 (Fed. Cir. 2009); *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1330 (Fed. Cir. 2012*); In re Owens*, 710 F.3d 1362, 1369 (Fed. Cir. 2013); *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1313 (Fed. Cir. 2013); *MRC Innovations*, 747 F.3d at 1331-38; *3form, Inc. v. Lumicor, Inc.*, 678 F. App'x 1002, 1010 (Fed. Cir. 2017); *Kolcraft Enterprises, Inc. v. Graco Children's Prod., Inc.*, 927 F.3d 1320, 1326 (Fed. Cir. 2019); *Campbell Soup Co. v. Gamon Plus, Inc.*, 939 F.3d 1335, 1339-42 (Fed. Cir. 2019) ("*Campbell Soup* I"); *Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020); *Sealy Tech., LLC v. SSB Mfg. Co.*, 825 F. App'x 795, 799-800 (Fed. Cir. 2020) ("*Sealy I*"); *Sealy Tech., LLC v. SSB Mfg. Co.* 825 F. App'x 801, 805-06 (Fed. Cir. 2020) ("*Sealy II*"); *Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1276 (Fed. Cir. 2021) ("*Campbell Soup* II"), *cert. denied*, 142 S. Ct. 1129 (2022); *Golden Eye Media USA, Inc. v. Evo Lifestyle Prod. Ltd.*, No. 2021-2096, 2022 WL 2232517, at *3 (Fed. Cir. June 22, 2022).

[7] In *Int'l Seaway*, the Court did not rule substantively on obviousness because the district court had not made its summary judgment decision based on obviousness. 589 F.3d at 1240. In *Owens*, the priority of the patent application was at issue; not the substance of the USPTO's obviousness rejection. 710 F.3d at 1369. In, *Kolcraft*, the conception date and priority of the design patents were at issue and the PTAB's substantive obviousness analysis was expressly not disputed. 927 F.3d at 1326. And *Campbell Soup II* concerned secondary indicia of nonobviousness; not the PTAB's application of the *Rosen-Durling* framework, which had already been addressed in *Campbell Soup I*. 10 F.4th at 1276.

[8] *MRC*, 747 F.3d at 1331-38 (nearly identical dog jerseys); *3form*, 678 F. App'x at 1010 (nearly identical reed patterns); *Campbell Soup I*, 939 F.3d at 1339-42 (nearly identical soup can display); *Sealy I*, 825 F. App'x at 799-800 (nearly identical mattresses); *Sealy II*, 825 F. App'x at 805-06 (same); *Golden Eye*, 2022 WL 2232517, at *3 (nearly identical grocery bags).

of those cases was a reversal of a district court decision that had found obviousness even under the *Rosen-Durling* test. *See*, *Apple*, 678 F.3d at 1322*; High Point*, 730 F.3d at 1304 (in which the lower court further confused the *Rosen-Durling* test based on reliance on *Int'l Seaway*); S*pigen*, 955 F.3d at 1382. The patent challengers in those cases understandably did not challenge the standard for design patent obviousness under which they had already prevailed. As a result, this Court was not faced with the question of whether the *Rosen-Durling* standard survived *KSR*.

Only once, in *Titan Tire*, has the Court considered whether *KSR* applied to design patents. Ultimately the Court held that it was unnecessary to resolve this issue because the patent-in-suit was obvious even under *Rosen-Durling*. *Titan Tire*, 566 F.3d at 1385. But the Court noted that *KSR* may apply to design patents. *Id.*[9]

As such, with the possible exception of *MRC Innovations*, no precedent from this Court has already taken steps to clarify the *Rosen-Durling* test. And *MRC Innovations*' clarification of the *Rosen-Durling* test is limited to the suggestion that the first step of *Rosen-Durling*—requiring determination of the "correct visual impression created by the design as a whole be determined"—only places a burden on a lower court or tribunal to explain its reasoning rather than placing a burden on the patent challenger to undertake a formal verbal claim construction. *MRC*

[9] The primary reference in *Titan Tire* was nearly identical to the claimed design.

*Innovations*, 747 F.3d at 1332. Neither *MRC Innovations* nor any other case has taken steps to clarify the *Rosen-Durling* test.

### E. Faithfully Applying Supreme Court Precedent Would Not Increase Uncertainty in an Otherwise Settled Area of Law.

Correcting the design patent obviousness test to align it with *KSR* would not increase uncertainty in an otherwise settled area of law. But even if it did, that would not be a proper basis to continue to adhere to a rule that does not achieve its constitutionally-prescribed objective.

#### 1. The *Rosen-Durling* Test is Rife with Uncertainty and Causes Confusion.

While the articulation of the *Rosen-Durling* test may be settled, how it has been applied, as shown below, is far from settled and whether it can be satisfied is far from certain. In sum, it arguably requires (and was required in this case) clairvoyance in how the court may discern the overall visual impression, something that litigants can rarely divine with certainty. It requires prediction of whether a court will "almost instinctively" find a prior art reference meets a vague basic similarity requirement, whether secondary references meet an undefined relatedness requirement, *Durling*, 101 F.3d at 103, and, in the event those hurdles can be cleared, whether and when remaining differences between the combination and the patented design prevent a finding of obviousness. Those rules cannot produce reasonable certainty for the parties or guidance for future litigants. On the other hand, using the

*KSR* approach will reduce uncertainty and increase accuracy by aligning the standard for design patents with that for utility patents and the knowledge and skills of ordinary designers.

#### *a.* **Durling*'s Claim Construction Requirement Causes Uncertainty.***

*Durling*'s apparent requirement that a patent challenger "discern the correct overall visual impression created by the patented design," *Durling*, 101 F.3d at 103, also known as "*Durling* Step One," causes uncertainty and demonstrates current law has not been settled.

*Durling* reversed a district court determination of obviousness for failure to "evoke a visual image consonant with the claimed design" and "focusing on the design concept" of the claimed design. 101 F.3d at 104. However, in *Egyptian Goddess*, this Court acknowledged the Supreme Court's recognition that "a design is better represented by an illustration than it could be by any description and a description would probably not be intelligible without the illustration." 543 F.3d 665, 679 (Fed. Cir. 2008) (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)) (cleaned up). Thus, this Court discouraged detailed verbal descriptions of claimed designs and cautioned against "the risks entailed in such a description, such as the risk of placing undue emphasis on particular features of the design." *Id.* at 679-680. Nevertheless, in *High Point*, decided two years after *Egyptian Goddess*, this Court continued to interpret *Durling* to demand a detailed claim construction, finding that

the district court erred by describing the claimed design at "too high a level of abstraction" and remanding with instructions to "add sufficient detail to its verbal description of the claimed design to evoke a visual image consonant with that design." 730 F.3d at 1314. Then, contributing to the confusion, this Court held in *MRC Innovations* that no detailed verbal description was needed, and it was enough for it to be "clear from the district court's opinion what it considered to be the relevant design characteristics" of the claimed design. *Id.* at 1332. Nevertheless, the Board in this case determined that a purported failure to correctly construe the claimed design warranted rejection of LKQ's petition. The ongoing uncertainty regarding whether a detailed verbal claim construction is required demonstrates that the current law is not settled.

#### b. *The* **Rosen** *Reference Requirement is Confusing and Incites Arbitrary and Inconsistent Decisions.*

The *Rosen* reference requirement also creates uncertainty. It has never been clear how similar a reference must be to be considered 'basically the same' as the claimed design—*i.e.*, how similar it must be to be deemed a proper primary reference. Sarah Burstein, *Is Design Patent Examination Too Lax?*, 33 Berkeley Tech L.J. 607, 617 n.44 (2018). In fact, as explained in §B.2.e, above, it is not even clear to what extent "basic similarity" for obviousness is different than "substantially similarity" for anticipation.

The below cases are illustrative of how, applying *Rosen-Durling*, this Court, its predecessors and the PTAB have found less similar prior art to be sufficient in some cases, while more similar prior art was rejected in others. Specifically, this Court's predecessor in *Carter* found the primary reference and claimed infant garment design "nearly identical" even though the primary reference had a differently shaped flap, a differently cinched waistband, and different end portions to the waistband. *In re Carter*, 673 F.2d 1378, 1380 (C.C.P.A. 1982). Yet in *Apple v. Samsung*, this Court held that the primary reference was not "basically the same" as the claimed design because the prior art had "noticeable differences" versus the claimed design, specifically perforations on the frame corner, wider bottom edges of the tablet, and contrasts between the frame surrounding the screen and the screen itself. 678 F.3d at 1331. It is unclear why the differences were found to be *de minimis* in one case yet material in another. And, as seen below, the same inconsistency can be seen in several court and PTAB decisions:

| **FINDING OBVIOUSNESS** | **FINDING NONOBVIOUSNESS** |
|---|---|
| *In re Carter*,<br>673 F.2d 1378 (C.C.P.A. 1982)<br><br>**CLAIMED DESIGN**<br><br>**ACCEPTED PRIMARY REFERENCE**<br>✓  | *Apple, Inc. v. Samsung Elecs. Co.*,<br>678 F.3d 1314 (Fed. Cir. 2012)<br><br>**CLAIMED DESIGN**<br><br>**REJECTED PRIMARY REFERENCE**<br> ✗ |
| *Petersen Mfg. Co., Inc. v. Cent. Purchasing, Inc.*,<br>740 F.2d 1541 (Fed. Cir. 1984)<br><br>**CLAIMED DESIGN**<br>FIG. 2<br><br>**ACCEPTED PRIMARY REFERENCE**<br>✓  | *Para Gear Equipment Co., Inc. v. Square One Parachutes, Inc.*,<br>No. 04 C 0601, 2005 WL 2266618<br>(N.D. Ill. Sept. 14, 2005)<br><br>**CLAIMED DESIGN**<br><br>**REJECTED PRIMARY REFERENCE**<br> ✗ |

<table>
<tr>
<td>Black & Decker, Inc. v. Pittway Corp.,<br>636 F. Supp. 1193 (N.D. Ill. 1986)<br><br>CLAIMED DESIGN<br><br>[Figure 1--'476 patent]<br><br>ACCEPTED PRIMARY REFERENCE<br>✓ <br>[Metz 107 device]</td>
<td>Vanguard Identification Sys. Inc. v. Patent of Bank of America,<br>Appeal No. 2009-002973, 2009 WL 2342053 (B.P.A.I. July 31, 2009)[10]<br><br>CLAIMED DESIGN<br><br><br>REJECTED PRIMARY REFERENCES<br>✗   ✗</td>
</tr>
<tr>
<td>LKQ Corp. et al. v. GM Global Tech. Operations LLC,<br>IPR2020-00064, April 21, 2020<br><br>CLAIMED DESIGN<br><br><br>ACCEPTED PRIMARY REFERENCE<br>✓ </td>
<td>LKQ Corp. & et al. v. GM Global Tech. Operations LLC,<br>PGR2020-00020, February 7, 2020<br><br>CLAIMED DESIGN<br>(Only the outer bezel was claimed)<br><br><br>REJECTED PRIMARY REFERENCE<br> ✗</td>
</tr>
</table>

[10] *Aff'd sub nom Vanguard Identification Sys., Inc. v. Kappos*, 407 F. App'x 479 (Fed. Cir. 2011)

The arbitrariness of the results under the *Rosen* rule are no surprise—the rule calls on courts to determine "almost instinctively" whether the designs are basically the same. As evidenced by the illustrations above, instinctive evaluations cannot produce certainty for the parties who are affected by the law. When a court decides something instinctively, it does so automatically or intuitively, not based on settled principles. And it cannot articulate the reasons for that decision in a way that provides guidance to future litigants.

#### *c.* **Durling***'s Restriction of Prior Art Combinations to "So Related" References Causes Further Uncertainty.*

It is also unclear what is required to satisfy the "so-related" test. In *Borden*, the court held that similarities in product type and configuration supported combining its primary and secondary prior art references and supplying the "two specific design elements that would convert the [primary] reference into [the] claimed design." 90 F.3d at 1575-76. However, in *MRC Innovations*, this Court suggested that it was "mere similarity in appearance that itself provides the suggestion that one should apply certain features to another design." 747 F.3d at 1334. Few decisions have meaningfully addressed the question because, as previously noted, design patent validity challenges rarely survive the *Rosen* reference requirement, and when they do, the primary reference is already so near-identical to the claimed design that they need little from secondary references. *See* n. 8, *supra*; *see also* Sarah Burstein, *Is Design Patent Examination Too Lax?*, at 616.

Thus, interpretation of *Durling* Step Two is not settled, causing further uncertainty. *See, e.g.*, Dkt. 48 at ECF 30 ("Additional rigidity that might not be appropriate in a post-*KSR* world ***arguably exists*** at step two of the *Durling* test) (emphasis added).

#### *d. The Ultimate Determination of Obviousness under the* **Rosen-Durling** *Test Causes Further Uncertainty.*

In addition to confusion surrounding the *Rosen-Durling* test's constituent steps, further confusion is evident even within this Court regarding how to finally evaluate obviousness under the test. In *Durling*, the court stated that after a primary reference is found, "other references may be used to modify it ***to create a design that has the same overall visual appearance as the claimed design.***" 101 F.3d at 103 (emphasis added). *Durling* arguably suggested that, to establish obviousness, the challenger must modify the primary reference until the resulting design has the same overall visual appearance as the claimed design. However, this Court's subsequent precedents are contradictory.

In *International Seaway*, this Court rejected the argument that "the test for invalidity due to obviousness is whether a designer of ordinary skill in the art would have found the patented design, as a whole, obvious in light of the prior art," and instead stated:

> For design patents, the role of one skilled in the art in the obviousness context lies only in determining whether to combine earlier references to arrive at a single piece of art for comparison with the potential design or to modify a single prior art reference. Once that piece of prior art has

> been constructed, obviousness, like anticipation, requires application of the ordinary observer test, not the view of one skilled in the art.

589 F.3d at 1240. The *International Seaway* court thus unambiguously stated that the final determination of obviousness required comparison of the modified prior art reference with the claimed design via the ordinary observer test. Then, four years later, in *High Point*, when the district court appended the ordinary observer test in the manner *International Seaway* instructed, this Court reversed for failing to apply the correct standard. 730 F.3d at 1313.

*MRC Innovations* then held that a claimed design was obvious even though a feature was not disclosed by any prior art reference. 747 F.3d at 1335. This Court suggested that holding was supported by precedent including *Nalbandian*, 661 F.2d at 1217, a pre-*Rosen* case decided entirely under *Graham*, and *In re Cooper*, 480 F.2d 900, 901-02 (C.C.P.A. 1973), a pre-*Nalbandian* case decided under the C.C.P.A.'s prior "ordinary intelligent man" test. The *MRC Innovations* court found that, "adding ornamental surge stitching on top of a preexisting seam was an insubstantial change that would have been obvious to a skilled designer." *Id.* However, *MRC* never specified whether it was the fact that the change was insubstantial or that the change was obvious to a skilled designer that made the claimed design obvious despite the lack of that feature in the prior art references.

Thus, even the final test to be applied under the *Rosen-Durling* test has not been settled, is uncertain and the subject of confusion.

### 2. Settled Expectations Do Not Justify Ignoring the Supreme Court's Mandate.

Even if applying *KSR* to design patents upsets some settled expectations, that is not a reason not to follow Supreme Court precedent. Legal doctrine regularly changes as appellate courts correct errors from a prior era—particularly those involving rigid tests. The Supreme Court has continuously implemented major changes in patent law, overturning prior tests as needed. For example, *KSR* overturned the rigid application of the TSM test even though it had been used for over 50 years.[11] *See also, e.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006) (rejecting an at least 24-year-old presumption in favor of a permanent injunction in favor of a flexible application of the traditional four-factor equitable principle analysis); *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) (abrogating the 13-year-old Federal Circuit tests for patent indefiniteness in favor of a flexible "reasonable certainty" test); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553-55 (2014) (abrogating the nine-year-old rigid Federal Circuit test for "exceptional" cases for the purposes of awarding attorneys' fees); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 109 (2016) (abrogating the

[11] *See* note 1, infra.

nine-year-old, two-part Federal Circuit test for assessing treble damages because it was too rigid and inconsistent with Section 284 of the Patent Act). And, the last time this Court decided a design patent case en banc, it overturned long-standing precedent. *Egyptian Goddess*, 543 F.3d at 671 (abrogating the formal point of novelty test for design patent infringement that had stood for over 40 years)

Indeed, when this Court has focused on settled law as a reason to uphold a previous decision at odds with Supreme Court precedent or the language of the statute, it has been overturned by the Supreme Court. *See, e.g., Octane Fitness, LLC*, 572 U.S. at 553-55. When this Court has instead favored Supreme Court precedent over its own longstanding precedent, as in *Egyptian Goddess*, it has avoided reversal, 543 F.3d at 671, *cert. denied Egyptian Goddess, Inc. v. Swisa, Inc.*, 556 U.S. 1167 (2009).

The Supreme Court's decision in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.* admonished courts to be "cautious before adopting changes that disrupt the settled expectations of the inventing community." 535 U.S. 722, 739 (2002) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 28 (1997)). But *Festo* itself changed the law established by the Supreme Court in *Warner-Jenkins* creating a presumption in favor of prosecution history estoppel. *Rosen* and *Durling* are not Supreme Court decisions. And *KSR* made no mention of

overturning decades of Federal Circuit precedent on which patentees had certainly relied.

As shown above, when courts have strong reasons to change the law, they do so regardless of whether some temporary uncertainty might result. Strong reasons exist here to eliminate the *Rosen-Durling* test. The constitutional and statutory limitation, and the opinion of the Supreme Court, are clear – patents on non-innovative, obvious subject matter must not be allowed, an expansive and flexible approach to the obviousness inquiry must be used, and rigid rules cannot be used to undermine that inquiry. The writing has been on the wall for the *Rosen-Durling* test since 2007, and certainly since this Court noted in *Titan Tire* that *KSR* may apply to design patents. *Titan Tire Corp.*, 566 F.3d at 1384-85. The fact that numerous cases might be differently decided if the Court applies the law of obviousness correctly is no reason not to do it.

### F. THE DIFFERENCES BETWEEN DESIGN PATENTS AND UTILITY PATENTS DO NOT WARRANT ANY DIFFERENCE IN THE FUNDAMENTAL PRINCIPLES APPLIED TO DETERMINE IF A CLAIMED DESIGN WAS OBVIOUS.

The differences between design patents and utility patents do not necessitate or warrant applying a change in the fundamental principles that anchor the obviousness analysis, and certainly not in a manner that leads to a lower patent validity bar.

Two apparent differences between design and utility patents are (1) design patents cover ornamental designs rather than useful inventions, and (2) design patents are claimed via images rather than words. However, neither of these distinctions necessitate or suggest that the fundamental principles governing the obviousness analysis should differ.

First, as to the argument that different fundamental obviousness principles should apply to design patents because they "cover different things," that argument sets forth a distinction without a difference. Design patents are still subject to the constitutional and statutory prohibitions on obtaining patents on obvious subject matter, the fundamental principle that rigid rules cannot be used to undermine those prohibitions still applies, and nearly every Circuit has rejected the notion that the approach set forth in *Graham* cannot apply to design patents. *See, e.g.*, *G.B. Lewis Co. v. Gould Prods., Inc.*, 436 F.2d 1176, 1178-79 (2d Cir. 1971) (applying the *Graham* factors to analyze design patent obviousness); *Hadco Prods.*, 462 F.2d at 1269 (same); *Fields v. Schuyler*, 472 F.2d 1304, 1305-06 (D.C. Cir. 1972) (same); *Schnadig Corp. v. Gaines Mfg. Co., Inc.*, 494 F.2d 383, 389-90 (6th Cir. 1974) (same); *Sidewinder Marine, Inc. v. Starbuck Kustom Boats & Prods., Inc.*, 597 F.2d 201, 209-11 (10th Cir. 1979) (same). Even the C.C.P.A., just a year before developing its *Rosen* requirement, aligned itself with the majority of Circuits by

discontinuing reliance on its prior ordinary intelligent man test for nonobviousness and applying *Graham*. *Nalbandian*, 661 F.2d at 1216-18.

Further, *Nalbandian* made clear that the differences between design patents and utility patents did not render the *Graham* test unworkable. *Id.* at 1216-17:

> In any event, we do not believe the determination of the level of ordinary skill in the art, as required under [*Graham*], cannot be made with respect to designs. Thus, in view of the statutory requirement that patents for designs must be evaluated on the same basis as other patents, the test of Graham must be followed.

To the contrary, *Nalbandian* observed that "the 'ordinary designer' standard has been found helpful to courts in infringement litigation because of the objective evidence which can be brought to bear on the question of obviousness under the tests of *Graham*." *Id.* at 1217. Thus, arguments that the subject matter of design patents is so "fundamentally different" than that of utility patents that the same fundamental principles and approach demanded by the Supreme Court cannot be applied to both relies upon *ipse dixit*.

Second, the suggestion that design patents should be analyzed for obviousness differently because they are claimed differently does not withstand scrutiny. This consideration does not prevent applying the approach set forth in *Graham* and the fundamental principles prescribed in *KSR* and only underscores the importance of avoiding rigid rules that frustrate the obviousness inquiry. With the assistance of design experts, courts and litigants would have no peculiar difficulty in comparing

image-based design patent claims with prior art designs in the manner required by *Graham* and *KSR* just as they had been doing under *Graham* before the *Rosen-Durling* test.

And the importance of applying a flexible approach to ensure obvious design patents are not obtained and enforced is reinforced by another difference between design and utility patents: available remedies. Unlike utility patents, a finding of design patent infringement, without any enhancement, awards the patent owner the infringer's total profits. 35 U.S.C. § 289. In the wake of the astonishing damages award in *Apple v. Samsung*, the combination of low procurement costs, virtually nonexistent examination by the USPTO, and massive potential rewards, the results have been predictable: an exponential increase in the number of design patents being obtained in certain industries as demonstrated by the below illustration of the number of design patents obtained by GM over the last century:




*See, e.g.*, Amended Complaint for Declaratory Judgment of Patent Non-Infringement and Invalidity, *LKQ Corp. et al. v. General Motors Co., et al.*, 1:20-cv-02753, Dkt. 34, at 6 (Aug. 28, 2020). They have used these patents not to promote the constitutional purpose of encouraging invention, but to monopolize the secondary market for repair parts, thus extracting further profits from their customers when they need to repair their cars, as well as from society at large when the higher cost of repairs causes vehicles to be totaled more frequently, raising insurance premiums across the board.[12] And, this practice is inconsistent with consumers'

[12] *See* Sarah Burstein, *Costly Designs*, 77 OHIO ST. L. J. at 117-124, 128-29, 137-141 (arguing that while design patents on replacement parts such as vehicle fenders are allowed because of prevailing validity laws and desirable because of low cost and

expectations that they will be able to repair their major purchases without having to exclusively go to the original manufacturer to obtain repair parts. Thus, it is critical that patents on obvious designs not be allowed.

Not every fender, hood, bumper, or trim piece that enters production at a GM factory has a design that is so innovative as to merit a patent monopoly. *See KSR*, 550 U.S. at 427 ("the results of ordinary innovation are not the subject of exclusive rights under the patent laws. Were it otherwise patents might stifle, rather than promote, the progress of useful arts.") (citing U.S. Const. art. I, § 8, cl. 8). However, hamstrung by the restrictive *Rosen-Durling* test, neither the USPTO, nor the PTAB, nor the courts, can fully enforce Section 103's prohibition. *KSR* cautioned that "[a]pplication of the bar [on patents claiming obvious subject matter] must not be confined within a test or formulation too constrained to serve its purpose." *Id.* The *Rosen-Durling* test, however, is even more restrictively confining than the TSM test that the Supreme Court struck and, thus, must be eliminated.

---

total profit damage potential, they have "low or negative social value" because they involve "little or no visual invention" and that they "merely provide[] a windfall to the car's manufacturer"); Christopher Buccafusco, Mark A. Lemley, & Jonathan S. Masur, *Intelligent Design*, 68 DUKE LAW JOURNAL 75, 114-18 (2018) (noting that the design patent validity and the USPTO's practice thereof does not create a "costly screen" for design patents and instead makes them a lucrative form of property in exchange for little social value); Crouch at 12, 18-23 (finding that design patents have an unusually high allowance rate and unusually short pendency in prosecution as the result of a "*sub silento* [sic] abdication of [the USPTO's] gatekeeper function").

## CONCLUSION

This Court should overrule *Rosen* and *Durling*, vacate the decision of the PTAB, and remand with instructions to apply a flexible test based on *KSR* and evidence of how the designer of ordinary skill in the art would actually approach an invention.

Dated: December 08, 2023

Respectfully submitted,

By: /s/ *Barry F. Irwin*

Barry F. Irwin
Iftekhar A. Zaim
Andrew C. Himebaugh
Ariel H. Katz
**IRWIN IP LLP**
150 N Wacker Dr., Suite 700
Chicago, IL 60606
(312) 667-6080
birwin@irwinip.com
izaim@irwinip.com
ahimebaugh@irwinip.com
akatz@irwinip.com

Mark A. Lemley
Mark P. McKenna
**LEX LUMINA, PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
(646) 898-2055
mlemley@lex-lumina.com
mark@lex-lumina.com

*Counsel for Appellants*
*LKQ Corporation and*
*Keystone Automotive Industries, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2021-2348

**Short Case Caption:** LKQ Corporation, et al. v. GM Global Technology Operations LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 14,000 words.
- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 12/08/2023

Signature: /s/ Barry F. Irwin

Name: Barry F. Irwin