# United States Court of Appeals for the Federal Circuit

---

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**
*Appellants*

**v.**

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**
*Appellee*

---

2021-2348

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-00534.

---

Decided: May 21, 2024

---

MARK A. LEMLEY, Lex Lumina PLLC, New York, NY, argued for appellants. Also represented by MARK P. MCKENNA; ANDREW HIMEBAUGH, BARRY IRWIN, ARIEL H. KATZ, IFTEKHAR ZAIM, Irwin IP LLP, Chicago, IL.

JOSEPH HERRIGES, JR., Fish & Richardson P.C., Minneapolis, MN, argued for appellee. Also represented by JOHN A. DRAGSETH, SARAH JACK; NITIKA GUPTA FIORELLA, Wilmington, DE.

FARHEENA YASMEEN RASHEED, Office of the Solicitor,

United States Patent and Trademark Office, Alexandria, VA, argued for amicus curiae United States. Also represented by THOMAS W. KRAUSE, WILLIAM LAMARCA, BRIAN RACILLA; BRIAN JAMES SPRINGER, Civil Division, United States Department of Justice, Washington, DC.

JAMES RICHARD FERGUSON, Mayer Brown, LLP, Chicago, IL, for amici curiae Alliance for Automotive Innovation, Rivian Automotive Inc. Also represented by RYAN T. BABCOCK, BRIAN W. NOLAN, New York, NY.

CHRISTOPHER V. CARANI, McAndrews, Held & Malloy, Ltd., Chicago, IL, for amicus curiae American Intellectual Property Law Association. Also represented by DUNSTAN BARNES; SALVATORE ANASTASI, Barley Snyder LLC, Malvern, PA.

JOHN LOUIS CORDANI, Robinson & Cole LLP, Hartford, CT, for amici curiae American Property Casualty Insurance Association, Certified Automotive Parts Association, National Association of Mutual Insurance Companies. Also represented by BENJAMIN M. DANIELS; KYLE GLENDON HEPNER, Washington, DC.

MATTHEW JAMES DOWD, Dowd Scheffel PLLC, Washington, DC, for amici curiae Anthony Andre, Roger Belveal, Peter Bressler, Gordon Bruce, Pieter den Heten, Michael Derocher, Sridhar Dhulipala, Edward Dorsa, Valerie Fenster, Timothy Fletcher, Esteban Fridman, Michael Garten, Deborah George, Joellyn Gray, Jon Christopher Hacker, David Hodge, Institute for Design Science and Public Policy, James Kaufman, Haig Khachatoorian, Carlton Lay, Gustavo Lopes Jota, Theo Mandel, Charles Lee Mauro, George McCain, Christopher Daniel Morley, Adrian O'Heney, Nancy Perkins, Scott Peterson, Lloyd Philpott, Jennifer Pierce, RitaSue Siegel, John Stram, Joyce Thomas, Steven Visser, Angela Yeh, Sal Ziauddin. Also represented by ROBERT JAMES SCHEFFEL; PERRY SAIDMAN,

Perry Saidman, LLC, Miami Beach, FL.

MARK D. SELWYN, Wilmer Cutler Pickering Hale and Dorr LLP, Palo Alto, CA, for amicus curiae Apple Inc. Also represented by SHARCHUN DENNIS WANG; BENJAMIN S. FERNANDEZ, Denver, CO; MARK CHRISTOPHER FLEMING, Boston, MA; LAURA E. POWELL, Washington, DC; TRACY-GENE GRAVELINE DURKIN, Sterne Kessler Goldstein & Fox PLLC, Washington, DC.

SETH DAVID GREENSTEIN, Constantine Cannon LLP, Washington, DC, for amicus curiae Auto Care Association.

ROBERT GLENN OAKE, JR., Oake Law Office, Allen, TX, for amicus curiae Automotive Body Parts Association.

PHILLIP R. MALONE, Juelsgaard Intellectual Property and Innovation Clinic, Mills Legal Clinic, Stanford Law School, Stanford, CA, for amici curiae Mark Bartholomew, Digital Right to Repair Coalition, Shubha Ghosh, iFixit, Aaron Perzanowski, Ana Santos Rutschman, Joshua D. Sarnoff, Securepairs, Katherine J. Strandburg, United States Public Interest Research Group, Inc.

ALEXANDER CHEN, InHouse Co Law Firm, Irvine, CA, for amicus curiae Eagle Eyes Traffic Industrial Co., Ltd.

FRANK A. ANGILERI, Brooks Kushman PC, Royal Oak, MI, for amicus curiae Ford Motor Company. Also represented by MARC LORELLI.

WILLIAM ADAMS, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, for amici curiae Hyundai Motor Company, Kia Corp. Also represented by DONGKWAN JAMES PAK, Los Angeles, CA.

ROBERT S. KATZ, Banner & Witcoff, Ltd., for amicus curiae Industrial Designers Society of America, Inc. Also

represented by SONIA MARY OKOLIE; ERIK S. MAURER, Chicago, IL.

PAUL BERGHOFF, McDonnell Boehnen Hulbert & Berghoff LLP, Chicago, IL, for amicus curiae Intellectual Property Owners Association.

BRUCE EWING, Dorsey & Whitney LLP, New York, NY, for amicus curiae International Trademark Association. Also represented by MARTIN SCHWIMMER, Leason Ellis, LLP, White Plains, NY.

CHARLES R. MACEDO, Amster Rothstein & Ebenstein LLP, New York, NY, for amicus curiae New York Intellectual Property Law Association. Also represented by DAVID GOLDBERG; PAUL A. COLETTI, Johnson & Johnson, New Brunswick, NJ; ROBERT J. RANDO, Greenspoon Marder LLP, New York, NY; KSENIA TAKHISTOVA, E. Brunswick, NJ.

ROBERT J. FIGA, Dean & Fulkerson, PC, Troy, MI, for amicus curiae Taiwan Auto Body Parts Assoc.

---

Before MOORE, *Chief Judge*, LOURIE, DYK, PROST, REYNA, TARANTO, CHEN, HUGHES, STOLL, and STARK, *Circuit Judges*.[1]

Opinion for the court filed by *Circuit Judge* STOLL, in which *Chief Judge* MOORE and *Circuit Judges* DYK, PROST, REYNA, TARANTO, CHEN, HUGHES, and STARK join.

---

[1] Circuit Judge Newman and Circuit Judge Cunningham did not participate. Circuit Judge Clevenger, who was a member of the original panel, also did not participate.

Opinion concurring in the judgment filed by
*Circuit Judge* LOURIE.

STOLL, *Circuit Judge*.

This case involves the standards for assessing nonobviousness of design patents under 35 U.S.C. § 103.

The principal question that this case presents is whether Supreme Court precedent, including *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), should cause us to rethink the long-standing *Rosen-Durling* test used to assess nonobviousness of design patents. We answer in the affirmative and overrule the *Rosen-Durling* test requirements that the primary reference must be "basically the same" as the challenged design claim and that any secondary references must be "so related" to the primary reference that features in one would suggest application of those features to the other. We adopt an approach consistent with Congress's statutory scheme for design patents, which provides that the same conditions for patentability that apply to utility patents apply to design patents, as well as Supreme Court precedent which suggests a more flexible approach than the *Rosen-Durling* test for determining nonobviousness.

## BACKGROUND

GM Global Technology LLC ("GM") owns U.S. Design Patent No. D797,625, which claims a design for a vehicle's front fender. This design is used in GM's 2018–2020 Chevrolet Equinox.

Appellants LKQ Corporation and Keystone Automotive Industries, Inc. (collectively "LKQ") filed a petition to institute an inter partes review of GM's D'625 patent, asserting that the challenged claim is unpatentable under 35 U.S.C. § 102 based on U.S. Design Patent No. D773,340 ("Lian") or under 35 U.S.C. § 103 based on Lian alone or Lian as modified by a promotional brochure depicting the design of the front fender on the 2010 Hyundai Tucson

("Tucson"). LKQ presented the following comparisons between the D'625 patent, Lian, and Tucson:

| *'625 PATENT* *CLAIMED DESIGN* | *LIAN* *PRIMARY REFERENCE* | *TUCSON* *SECONDARY REFERENCE* |
|---|---|---|
| <br>Appx0063, FIG. 2 | <br>Appx0450, FIG. 4<br>(cropped, annotated) | <br>Appx0464<br>(cropped, rotated) |
| <br>Appx0064, FIG. 3 | <br>Appx0449, FIG. 1<br>(cropped, annotated) | <br>Appx0462<br>(cropped, flipped) |
| <br>Appx0064, FIG. 4 | <br>Appx0451, FIG. 5<br>(cropped, annotated) | <br>Appx0462<br>(cropped, flipped) |
| <br>Appx0063, FIG. 1 | <br>Appx0452, FIG. 6<br>(cropped, annotated) | <br>Appx0453<br>(cropped, flipped) |

Appellants' Br. at 5–6. Figures 1–4 of the D'625 patent illustrate the claimed front fender from a perspective view, a side view, a front view, and a top view, respectively.

The Board held that LKQ had not established by a preponderance of evidence that Lian anticipates the claim of the D'625 patent. *LKQ Corp. v. GM Glob. Tech. Operations*

*LLC*, IPR2020-00534, 2021 WL 3411458, at *16 (P.T.A.B. Aug. 4, 2021) ("*Board Decision*"). Specifically, the Board applied the ordinary observer test for anticipation of a design patent set forth in *Gorham Manufacturing Co. v. White*, 81 U.S. 511 (1871), which provides that "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Board Decision*, 2021 WL 3411458, at *7 (quoting *Gorham*, 81 U.S. at 528) (alteration omitted). The Board found that while "there are certain articulable and visible similarities in the overall appearance of the claimed design and Lian that would be apparent to an ordinary observer," differences between the designs, including (1) the wheel arch shape and the terminus; (2) door cut line; (3) protrusion; (4) sculpting; (5) inflection line; (6) the first and second creases; and (7) the concavity line, affect the overall visual impression of each design such that they are not substantially the same. *Id.* at *11–16.

The Board then applied the long-standing *Rosen-Durling* test to assess the nonobviousness of the claimed design. Under this two-part test, first, *In re Rosen* requires that "[b]efore one can begin to combine prior art designs . . . one must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'" *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (quoting *In re Rosen*, 673 F.2d 388, 391 (CCPA 1982)). This primary reference is commonly referred to as the *Rosen* reference. As the Board explained, *Rosen*'s "basically the same" test requires consideration of the visual impression created by the patented design as a whole. *Rosen*, 673 F.2d at 391. If no *Rosen* reference is found, the obviousness inquiry ends without consideration of step two. *Durling*, 101 F.3d

at 105 ("Without such a primary reference, it is improper to invalidate a design patent on grounds of obviousness.").

At step two, *Durling* requires that "[o]nce this primary reference is found, other references may be used to modify it to create a design that has the same overall visual appearance as the claimed design." *Id.* at 103. But another threshold must be met. Specifically, any secondary references must be "so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Id.* (alteration in original) (quoting *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996)).

In this case, the Board determined that LKQ failed to establish that the challenged claim would have been obvious because LKQ failed to identify a *Rosen* reference. LKQ had proffered Lian as its *Rosen* reference. Identifying the same differences it emphasized with regard to anticipation, the Board found that Lian differs from the claimed design in "the upper protrusion, the u-shaped notch, the door cut line, a circular wheel arch, the lower rear terminus, . . . first and second creases along with the concavity line, and the inflection line." *Board Decision*, 2021 WL 3411458, at *20. Considering these differences together, the Board found that Lian does not "create[] 'basically the same' visual impression" as the patented design. *Id.* (quoting *Durling*, 101 F.3d at 103). Accordingly, the Board ended its obviousness analysis without further consideration.

LKQ appealed, and a panel of this court affirmed the Board decision. *LKQ Corp. v. GM Global Tech. Operations LLC*, No. 2023-2348, 2023 WL 328228 (Fed. Cir. Jan. 20, 2023) ("*Panel Decision*"). The panel concluded that substantial evidence supports the Board's finding that Lian and the claimed design "created different overall impressions" and, thus, Lian did not anticipate the D'625 patent. *Id.* at *4. The panel then addressed LKQ's argument that the Supreme Court's decision in *KSR*, implicitly overruled

the *Rosen* and *Durling* tests. The panel rejected GM's assertion that LKQ forfeited this argument by not raising it before the Board, determining that LKQ's petition to the Board was "sufficient to preserve the argument" and that "this challenge to *Rosen* and *Durling* is a pure question of law that undoubtedly presents a significant question of general impact, favoring the exercise of our discretion to hear and decide this issue." *Id.* at *4–6. On the merits, the panel explained that it could not "overrule *Rosen* or *Durling* without a clear directive from the Supreme Court" and "it is not clear" that the Supreme Court had done so. *Id.* at *6. In applying *Rosen* and *Durling*, the majority affirmed the Board's nonobviousness determination, concluding that substantial evidence supports the Board's findings that "LKQ failed to identify 'the correct visual impression created by the patented design as a whole,'" and that "LKQ failed to show that Lian creates 'basically the same' visual impression as the claimed design." *Id.* at *6–7 (first quoting *Durling*, 101 F.3d at 103; and then quoting *Rosen*, 673 F.2d at 390–91).

Judge Stark wrote a concurrence-in-part, disagreeing with the majority on the issue of forfeiture. He agreed, however, that it is not clear whether *KSR* overruled *Rosen* or *Durling*, but noted that there exists "at minimum, substantial tension between the Supreme Court's holding in *KSR* and our . . . test." *Id.* at *13 (Stark, J., concurring-in-part). The concurrence-in-part elaborated that the *Rosen* reference requirement may be "precisely the type of limiting, rigid rule *KSR* faulted," as the obviousness analysis stops without a *Rosen* reference, and, similarly, the "so related" requirement of *Durling* presents "[a]dditional rigidity that might not be appropriate in a post-*KSR* world." *Id.*

Judge Lourie presented additional views, disagreeing with LKQ's argument that *KSR* overruled *Rosen* because "*KSR* did not involve design patents," which are distinct from utility patents. *Id.* at *8 (Lourie, J., additional views). Judge Lourie further noted that "[w]hile 35 U.S.C.

§ 103 . . . does not differentiate . . . [and] applies to all types of patents, the considerations involved in determining obviousness are different" for utility patents versus design patents. *Id.* Specifically, for design patents, the considerations include "the overall appearance, visual impressions, artistry, and style of ornamental subject matter" while for utility patents, we consider "unexpected properties, utility, and function." *Id.*

This court granted rehearing en banc and vacated the panel opinion. *See LKQ Corp. v. GM Glob. Tech. Operations LLC*, 71 F.4th 1383, 1384 (Fed. Cir. 2023). Among other questions, our order requested briefing on: (1) whether *KSR* overrules or abrogates the *Rosen-Durling* test; (2) if not, whether the court should nonetheless eliminate or modify the *Rosen-Durling* test; and (3) if we answer either of these two questions affirmatively, what test should apply for evaluating design patent obviousness challenges. *Id.* at 1384–85. We reinstate the portion of the panel opinion holding that substantial evidence supports the Board's finding of no anticipation. The panel decision remains vacated in all other respects. We vacate the final written decision of the Board as to the nonobviousness determination and remand for further proceedings consistent with this opinion.

## DISCUSSION

### I

A design patent protects a "new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171(a). Under the Patent Act, the statutory provisions "relating to patents for inventions," or utility patents, "shall apply to patents for designs, except as otherwise provided." *Id.* § 171(b). Our discussion of nonobviousness of a design or utility patent claim should start with the statutory language of § 103, which states in pertinent part:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.

*Id.* § 103. The Supreme Court addressed the meaning of the statute in *Graham v. John Deere Co. of Kansas City*, which involved utility patents. 383 U.S. 1 (1966). The Court in *Graham* explained that the ultimate question of obviousness is one of law based on "several basic factual inquiries." *Id.* at 17. The Court elaborated that under § 103, these factual inquiries include "the scope and content of the prior art"; "differences between the prior art and the claims at issue"; and "the level of ordinary skill in the pertinent art." *Id.* In addition to these factors, "[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented" and may be relevant as "indicia of obviousness or nonobviousness." *Id.* at 17–18. The ultimate question is whether differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious to a person of ordinary skill in the pertinent art at the time of the invention.

More recently, the Supreme Court again addressed the standards for assessing nonobviousness in *KSR*. 550 U.S. 398. There, the district court had held Teleflex's utility patent claim obvious based on its findings that (1) a first prior art reference taught every limitation of the claim except one; (2) this missing aspect was taught in two other prior art references; and (3) a person of ordinary skill in the art would have been motivated to modify the first prior art

reference to include the missing aspect taught by the secondary prior art references. *Id.* at 413. The Supreme Court in *KSR* specifically addressed the "teaching, suggestion, or motivation" or "TSM" test recited in our precedent, under which a patent claim was only proved obvious if "some motivation or suggestion to combine the prior art teachings" existed in "the prior art, the nature of the problem, or the knowledge of a person having ordinary skill in the art." *Id.* at 407. We had previously applied the TSM test to prevent factfinders from falling victim to hindsight bias in determining whether there was a reason to combine prior art references to arrive at the claimed invention. *Id.* at 421.

The Supreme Court rejected our rigid application of the TSM test in the case before it. The Court explained that *Graham* "set forth an expansive and flexible approach inconsistent with the way the Court of Appeals applied its TSM test here." *Id.* at 415. The Court reasoned that while factfinders should guard against hindsight, "[r]igid preventative rules that deny factfinders recourse to common sense" are improper under § 103. *Id.* at 421. The Court further explained that a person of ordinary skill in the art could find a motivation to combine prior art references in ways other than meeting the TSM test as rigidly applied. The Court noted, for example, that design incentives and market forces could be a reason to apply an invention from one field into another, and that a patent claim might be proved obvious with a showing that it would have been "obvious to try" a "finite number of identified, predictable solutions" to a problem where there is "a design need or market pressure to solve." *Id.* at 417, 421. The Court explained that while the TSM test might provide helpful insight on the obviousness of an invention, such insights "need not become rigid and mandatory formulas" as the "obviousness analysis cannot be confined by a formalistic conception." *Id.* at 419.

II

The Supreme Court has also addressed the validity of design patent claims in view of combined prior art designs. Most notably, in *Smith v. Whitman Saddle Co.*, the Supreme Court considered whether a design patent claim directed to an ornamental design for a saddle was patentable in view of the combination of two prior art saddles, known as the Granger tree and the Jenifer or Jenifer-McClellan tree. 148 U.S. 674, 680 (1893).[2] Comparing the claimed saddle design to the prior art, the Court explained that:

> The saddle design described in the [patent] specification differs from the Granger saddle in the substitution of the Jenifer cantle [raised rear part] for the low, broad cantle of the Granger tree. In other words, the front half of the Granger and the rear half of the Jenifer, or Jenifer-McClellan, make up the saddle in question, though it differs also from the Granger saddle in that it has a nearly perpendicular drop of some inches at the rear of the pommel [upper front part], that is, distinctly more of a drop than the Granger saddle had.

*Id.* In this way, the Supreme Court explained that the claimed design was made up of the front half of one known saddle and the back half (or cantle) of another, with a further modification to one half. The Supreme Court explained that the record evidence showed that there were several hundred types of saddles, "and that it was customary for saddlers to vary the shape and appearance of saddletrees [saddle frames] in numerous ways, according to

---

[2] At the time, patent law did not speak of obviousness. The *Whitman Saddle* Court addressed the matter by reference to "the inventive faculty." 148 U.S. at 679. The reasoning of *Whitman Saddle* carries over to the modern § 103 standard of obviousness.

the taste and fancy of the purchaser." *Id.* at 681. Addressing the combination of the Granger and Jenifer saddles, the Court determined that "[n]othing more was done in this instance (except as hereafter noted) than to put the two halves of these saddles together in the exercise of the ordinary skill of workmen of the trade, and in the way and manner ordinarily done," and that "the addition of a known cantle to a known saddle, in view of the fact that such use of the cantle was common," did not make the claimed saddle design inventive. *Id.*

The Court then turned to the primary "difference between the pommel of [the claimed] saddle [design] and the pommel of the Granger saddle, namely, the drop at the rear of the pommel." *Id.* The Court withheld judgment on the validity of the overall design given this secondary difference in design. Rather, the Court held that if this secondary difference was "what was new and to be material," it was not present in the potentially infringing saddle, and as such, no infringement could occur. *Id.* at 682.

In short, the Court considered the prior art in the field of the article of manufacture, the knowledge of an ordinary saddler, and the differences between the prior art and the claimed design, and concluded that combining the two known saddle designs was nothing more than an "exercise of the ordinary skill of workmen of the [saddle] trade." *Id.* at 681. The Court refrained from drawing the same conclusion for a secondary modification without evidence that it was known in the prior art or similar to the existing prior art references.

## III

Our test for design patent obviousness, in its present form, does not adequately align with *KSR*, *Whitman Saddle*, and other precedent, both in terms of its framework and threshold rigidity. *Rosen-Durling* is out of keeping with the Supreme Court's general articulation of the

principles underlying obviousness, as well as its specific treatment of validity of design patents.

LKQ urges us to conclude that *KSR* overruled or abrogated *Rosen* and *Durling*. LKQ made the same argument to the panel, which rejected the argument. *See Panel Decision*, 2023 WL 328228, at *6 ("[I]t is not clear the Supreme Court has overruled *Rosen* or *Durling*."). While a panel has the ability only in certain narrow circumstances to conclude that this court's own precedent "has been implicitly overruled as inconsistent with intervening Supreme Court authority," *Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014), that demanding standard does not bind this court sitting en banc. *See South Corp. v. United States*, 690 F.2d 1368, 1370 n.2 (Fed. Cir. 1982); *Deckers Corp. v. United States*, 752 F.3d 949, 959 (Fed. Cir. 2014). We therefore have no need to decide whether that standard is met here.

The en banc court has never considered the merits of the *Rosen-Durling* test, and we now take this opportunity, sitting en banc, to do so in light of § 103, Supreme Court precedent, and our own precedent guiding the nonobviousness inquiry for utility patents. We do so bearing in mind the respect due to long-standing panel precedents even when the en banc court is newly considering an issue. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1316–17 (Fed. Cir. 2013) (en banc).

We conclude that the *Rosen-Durling* test requirements—that (1) the primary reference be "basically the same" as the challenged design claim; and (2) any secondary references be "so related" to the primary reference that features in one would suggest application of those features to the other—are improperly rigid. The statutory rubric along with Supreme Court precedent including *Whitman Saddle*, *Graham*, and *KSR*, all suggest a more flexible approach than the *Rosen-Durling* test when determining obviousness.

1

Design patents and utility patents are, of course, different. Nevertheless, "[d]esign patents, like utility patents, must meet the nonobviousness requirement of 35 U.S.C. § 103." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1380, 1384–85 (Fed. Cir. 2009); *see also* 35 U.S.C. § 171(b) ("The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.").

The § 103 obviousness language sets forth an expansive and flexible approach for assessing obviousness, involving assessment of the "differences between the claimed invention and the prior art" and whether those differences are such that the invention as a whole would have been obvious to a person of ordinary skill in the field to which the claimed design pertains. *Rosen*'s rigid requirement limiting a primary reference to designs that are "basically the same" as the claimed design—and abruptly ending the analysis in the absence of such a reference—imposes limitations absent from § 103's broad and flexible standard.

The *Rosen* "basically the same" requirement is also inconsistent with the Supreme Court's analysis in *Whitman Saddle*. There, the Court did not ask whether the design of the prior art Granger saddle was "basically the same" as the claimed saddle design. Instead, the Supreme Court acknowledged that the claimed design combined the front half of Granger with the rear half of Jenifer, 148 U.S. at 680, suggesting that neither Granger nor Jenifer would qualify as a *Rosen* reference. Moreover, even though neither prior art saddle design was "basically the same" as the claimed design, the Supreme Court continued its analysis and held that combining the front half of the Granger saddle with the back half of the Jenifer saddle was not inventive because it was "customary for saddlers" to make such combinations. *Id.* at 681. This analysis reflects the reality that the one-size-fits all approach of *Rosen*—in

which a single primary reference discloses nearly every aspect of the claimed design—does not fit all obviousness scenarios for designs and cannot be reconciled with Supreme Court precedent.

Indeed, as the Supreme Court explained in *KSR*, "when a court transforms [a] general principle into a rigid rule that limits the obviousness inquiry, . . . it errs." *KSR*, 550 U.S. at 419. The Court in *KSR* emphasized that both § 103 and *Graham* "set forth an expansive and flexible approach" to obviousness and reiterated "the need for caution in granting a patent based on the combination of elements found in the prior art." *Id.* at 415. Continuing, the Court explained, "[r]igid, preventative rules that deny factfinders recourse to common sense, . . . are neither necessary under our case law nor consistent with it." *Id.* at 421. Because the strict *Rosen* reference requirement—in which an obviousness analysis fails absent a prior art design that is "basically the same" as the claimed design—is such a rigid rule, we conclude that it is inconsistent with the Supreme Court's general guidance in *KSR*.

2

We reach the same conclusion for step two of the *Rosen-Durling* test. Under step two, a fact finder may consider ornamental features missing in a primary reference but shown in secondary reference(s) only when the secondary reference(s) are "so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Durling*, 101 F.3d at 103 (alterations omitted) (quoting *Borden*, 90 F.3d at 1575). Like the *Rosen* reference requirement, this "so related" requirement is at odds with the broad standard for obviousness set forth in § 103 and Supreme Court precedent.

First, § 103 requires consideration of the differences between the claimed design and prior art designs and an inquiry into whether those differences would have been

obvious to a person of ordinary skill in the relevant field. When the answer to this question is affirmative, the statute provides that a patent may not be obtained. The statute gives no indication that a secondary prior art reference need be "so related" to the primary that—as the *Durling* test is too readily understood to demand—it creates its own motivation to combine the two prior art references.

We agree with LKQ that *Durling*'s inflexible "so related" requirement is analogous to the rigid application of the teaching-suggestion-motivation test rejected by the Supreme Court in *KSR*. Just as the Supreme Court in *KSR* explained that the TSM test had sometimes been applied as if it had evolved from a useful insight to a rigid rule, the *Durling* "so related" requirement has evolved into a rigid rule that limits the broad standard set forth in § 103 and "den[ies] factfinders recourse to common sense" when assessing a motivation to combine prior art references. *KSR*, 550 U.S. at 421.

The *Durling* so-related test is also inconsistent with the Supreme Court's decision in *Whitman Saddle*. There, in considering a claimed design that essentially combined the front half of the Granger saddle with the rear half (specifically, the cantle) of the Jenifer saddle, the Supreme Court did not ask whether the Granger and Jenifer references were "so related" that the use of certain ornamental features in one would suggest the application of those features to the other. *Whitman Saddle*, 148 U.S. at 680–81. Rather, in a manner consistent with the *Graham* framework for assessing obviousness of utility patents, the Supreme Court explained that it was not inventive for a saddler to combine the front half of Granger with the cantle of Jenifer because record evidence established that "it was customary for saddlers to vary the shape and appearance of saddletrees in numerous ways, according to the taste and fancy of the purchaser" and "the Jenifer cantle was used upon a variety of saddles." *Id.* at 681. The Court reasoned that, based on this evidence, "[n]othing more was

done in this instance (except as hereafter noted) than to put the two halves of these saddles together in the exercise of the ordinary skill of workmen of the trade, and in the way and manner ordinarily done." *Id.* Continuing, the Court explained the "addition of a known cantle to a known saddle," was not inventive "in view of the fact that such use of the cantle was common." *Id.* The Court thus relied on the knowledge and practice of a saddler or ordinary workman of the trade instead of a "so related" requirement to combine prior art references. *Id.*

## IV

Having overruled *Rosen* and *Durling*, we consider what the framework for evaluating obviousness of design patent claims should be. We are guided by the language of § 103, as well as the Supreme Court's and our court's precedent on obviousness in both the design and utility patent contexts. We are also mindful of the differences between design and utility patents, as well as the policy concerns emphasized by the parties and amici. Ultimately, we agree with our precedent holding that "[i]nvalidity based on obviousness of a patented design is determined [based] on factual criteria similar to those that have been developed as analytical tools for reviewing the validity of a utility patent under § 103, that is, on application of the *Graham* factors." *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1462 (Fed. Cir. 1997).

### 1

Applying *Graham* factor one, the fact finder should consider the "scope and content of the prior art" within the knowledge of an ordinary designer in the field of the design. *See Graham*, 383 U.S. at 17. In determining the scope of the prior art, there is no threshold similarity or "basically the same" requirement to qualify as prior art. Rather, an analogous art requirement applies to each reference. The analogous art requirement reins in the scope of prior art and serves to guard against hindsight. We reaffirm that

an analogous art requirement applies for obviousness of design patents.[3]

We have stated that a "reference qualifies as prior art for an obviousness determination only when it is analogous to the claimed invention." *Airbus S.A.S. v. Firepass Corp.*, 941 F.3d 1374, 1379 (Fed. Cir. 2019) (citing *In re Klein*, 647 F.3d 1343, 1348 (Fed. Cir. 2011)). The analogous art requirement is tied to the statutory language of § 103 in that it provides the perspective of the person of ordinary skill in the art by defining that person's scope of knowledge. The rationale is that a person of ordinary skill "could not possibly be aware of every teaching in every art" and thus we limit the scope of the prior art to analogous arts. *See Airbus*, 941 F.3d at 1381–82 (quoting *In re Wood*, 599 F.2d 1032, 1036 (CCPA 1979)). The analogous art requirement is also "meant to defend against hindsight." *See Netflix, Inc. v. DivX, LLC*, 80 F.4th 1352, 1358 (Fed. Cir. 2023) (quoting *Kahn*, 441 F.3d at 987); *see also In re Oetiker*, 977 F.2d 1443, 1447 (Fed. Cir. 1992) ("The combination of elements from non-analogous sources, in a manner that reconstructs the applicant's invention only with the benefit

---

[3] Neither party has argued at any stage of this appeal that an analogous art requirement should not apply when determining obviousness of design patent claims. *See* Oral Arg. at 0:30–0:57 (LKQ agreed that a design patent analogous arts test should exist); *id.* at 31:42–31:47 (United States agreed with the same); and *id.* at 1:09:56–1:10:11 (GM agreed regarding the potential scope of analogous art), https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-2348_02052024.mp3. It is also well established that the analogous art requirement is part of the *Graham* analysis. *See In re Kahn*, 441 F.3d 977, 986 (Fed. Cir. 2006) ("[T]he 'analogous art' test . . . has long been part of the primary *Graham* analysis articulated by the Supreme Court.").

of hindsight, is insufficient to present a *prima facie* case of obviousness.").

An important precedent that preceded adoption of the *Rosen-Durling* test, and introduced the "so related" phrase, supports application of an analogous art requirement to design patents. In *In re Glavas*, 230 F.2d 447 (CCPA 1956), the patent at issue related to the ornamental design for a float (e.g., a life preserver) and the Board affirmed a final rejection of the patent based on a patent relating to a float in view of patents relating to a cushion and a pillow. The Board added an additional ground for rejection based on other secondary references—patents relating to bottles, a razor blade sharpener, and a bar of soap. On appeal, the court grappled with whether the analogous art requirement for utility patents applies to obviousness of design patents. Ultimately, the court concluded that "[t]he principle of nonanalogous arts . . . cannot be applied to design cases in exactly the same manner as to mechanical cases," because design patent combinations rely on appearance rather than use. *Glavas*, 230 F.2d at 450. In the very next sentence, the *Glavas* court then created the "so-related" requirement for design cases: "The question in design cases is not whether the references sought to be combined are in analogous arts in the mechanical sense, but whether they are so related that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Id.* In applying the "so related" test, the court addressed the analogous art issue by noting that while pillows may plausibly be related art to a float, a designer of a float would not likely turn to bottles, soap, or razor blade sharpeners for design inspiration. *Id.* at 450–51.

*Glavas* thus created the "so related" test as a design-context proxy or replacement for the analogous art requirement of utility cases. Unfortunately, application of the *Rosen-Durling* test over time has become rigid to the point where we abandon it today. But there is no basis for

abandoning the underlying analogous art requirement for assessing nonobviousness of design patents and we return to a more flexible fact-based analysis of whether the references are analogous art in a manner similar to utility patents. This approach casts aside a threshold "so-related" requirement but maintains the threshold analogous art requirement.

For utility patents, we use a two-part test to determine the scope of analogous art: (1) whether the art is from the same field of endeavor as the claimed invention; and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved. *See Airbus S.A.S*, 941 F.3d at 1379. This is a fact-dependent inquiry that requires a case-by-case determination. *See id.* ("Whether a reference qualifies as analogous prior art is a question of fact . . . .").

We conclude that the first part of this two-part test applies to design patents in a straightforward manner. In other words, analogous art for a design patent includes art from the same field of endeavor as the article of manufacture of the claimed design. *See* 35 U.S.C. § 171(a) ("Whoever invents any new, original and ornamental design *for an article of manufacture* may obtain a patent therefor . . . ." (emphasis added)). As we have previously held, "[t]he scope of the prior art is not the universe of abstract design and artistic creativity, but designs of the same article of manufacture or of articles sufficiently similar that a person of ordinary skill would look to such articles for their designs." *Hupp*, 122 F.3d at 1462.

On the other hand, the second part of the two-part analogous art test for utility patents would not seem to apply to design patents in the same way, and how to translate this part of the test into the design context is less apparent. Unlike a utility patent, a design patent itself does not clearly or reliably indicate "the particular problem with

which *the inventor* is involved." *See Airbus S.A.S*, 941 F.3d at 1379 (emphasis added). Indeed, design patents have no written description or written claims to define their scope; the invention is defined by the overall visual impression that the drawings convey. *See Egyptian Goddess, Inc. v. Swisa Inc.*, 543 F.3d 665, 679–80 (Fed. Cir. 2008) (en banc) (a design claim is better represented by an illustration). Moreover, at oral argument, the parties disputed whether an ornamental design for an article of manufacture could be viewed as solving a problem. *See* Oral Arg. at 2:08–3:11, 1:09:12–1:10:29, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-2348_02052024.mp3.

In this opinion, we do not delineate the full and precise contours of the analogous art test for design patents. Prior art designs for the same field of endeavor as the article of manufacture will be analogous, and we do not foreclose that other art could also be analogous. Whether a prior art design is analogous to the claimed design for an article of manufacture is a fact question to be addressed on a case-by-case basis and we "leave it to future cases to further develop the application of this standard." *Cf. Egyptian Goddess*, 543 F.3d at 679 (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc)).

In applying *Graham* factor one, the scope and content of the prior art, a primary reference must be identified. Identifying a primary reference protects against hindsight because "almost every new design is made up of elements which, individually, are old somewhere in the prior art." *Glavas*, 230 F.2d at 450. As noted above, this primary reference need not be "basically the same" as the claimed design. Rather, the primary reference need only be "something in existence—not . . . something that might be brought into existence by selecting individual features from prior art and combining them, particularly where combining them would require modification of every individual feature." *In re Jennings*, 182 F.2d 207, 208 (CCPA 1950). The primary reference will likely be the closest prior

art, i.e., the prior art design that is most visually similar to the claimed design. The more visually similar the primary reference design is to the claimed design, the better positioned the patent challenger will be to prove its § 103 case. The primary reference will typically be in the same field of endeavor as the claimed ornamental design's article of manufacture, but it need not be, so long as it is analogous art. It is often the case that the primary reference alone does not render the claimed design obvious, and design elements from secondary prior art references may be considered as discussed below.

2

After considering the scope and content of the prior art, we turn to *Graham* factor two: determining the differences between the prior art designs and the design claim at issue. *Graham*, 383 U.S. at 17. This approach casts aside a threshold "similarity" requirement.

The Supreme Court has explained that design patents protect the appearance of the design on an article of manufacture, and thus, in the context of design patent infringement, we compare the visual appearance of the claimed design with that of allegedly infringing design. *See Gorham*, 81 U.S. at 526–27 ("[T]he true test of identity of design . . . must be sameness of appearance"); *see also Egyptian Goddess*, 543 F.3d at 676 (focusing on the "overall appearance of the design" when assessing infringement). Likewise, in addressing the differences between the claimed design and prior art designs for validity purposes, we compare the visual appearance of the claimed design with prior art designs, albeit from the perspective of an ordinary designer in the field of the article of manufacture. *See Apple, Inc. v. Samsung Elects., Co.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012) (characterizing obviousness as whether "one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design") (quoting *Titan Tire*,

566 F.3d at 1381); *Borden*, 90 F.3d at 1574, 1576 (affirming the Board's affirmance of an obviousness rejection where the examiner found "differences between the [prior art] and appellant's design had little or no effect on the overall appearance of the design"); *Dobson v. Dornan*, 118 U.S. 10, 15 (1886) ("Undoubtedly, the claim in this case covers the design as a whole, and not any part of it as a part, and it is to be tested as a whole as to novelty and infringement.").

3

Under *Graham* factor three, "the level of ordinary skill in the pertinent art [must be] resolved." *Graham*, 383 U.S. at 17. This requirement comes directly from § 103, which provides that a claimed invention is unpatentable if it "would have been obvious before the effective filing date of the claimed invention to a person of ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103.

In the design patent context, we have interpreted "a person of ordinary skill in the art to which the invention pertains" in § 103 as meaning that obviousness of a design patent claim is assessed from the viewpoint of an ordinary designer in the field to which the claimed design pertains. In *In re Nalbandian*, our predecessor court explained that, consistent with *Graham*, "[i]n design cases we will consider the fictitious person identified in § 103 as 'one of ordinary skill in the art' to be the designer of ordinary capability who designs articles of the type presented in the application." 661 F.2d 1214, 1216 (CCPA 1981). In other words, for *Graham* factor three, we consider the knowledge of "a designer of ordinary skill who designs articles of the type involved." *Borden*, 90 F.3d at 1574 (citation omitted); *Hupp*, 122 F.3d at 1462 ("The determination of the ultimate question of obviousness is made from the viewpoint of a person of ordinary skill in the field of the patented design."); *Whitman Saddle*, 148 U.S. at 681 (determining patentability from

the perspective of "the ordinary skill of workmen of the trade" and an ordinary "saddler").

4

After ascertaining the knowledge of an ordinary designer in the relevant field, the scope and content of the prior art, and the differences between the prior art and the claimed design, the obviousness or nonobviousness of the claimed design is evaluated. We have previously described this inquiry as whether an ordinary designer in the field to which the claimed design pertains would have been motivated to modify the prior art design "to create the same overall visual appearance as the claimed design." *Campbell Soup, Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1275 (Fed. Cir. 2021) (citation and quotation marks omitted); *see also Borden*, 90 F.3d at 1574. We reaffirm that the "inquiry focuses on the visual impression of the claimed design as a whole and not on selected individual features." *Borden*, 90 F.3d at 1574.

Where a primary reference alone does not render the claimed design obvious, secondary references may be considered. The primary and secondary references need not be "so related" such that features in one would suggest application of those features in the other but they must both be analogous art to the patented design. Consistent with *KSR*, the motivation to combine these references need not come from the references themselves. *KSR*, 550 U.S. at 418–19 (rejecting a rigidly applied TSM test). But there must be some record-supported reason (without hindsight) that an ordinary designer in the field of the article of manufacture would have modified the primary reference with the feature(s) from the secondary reference(s) to create the same overall appearance as the claimed design. *See Campbell Soup*, 10 F.4th at 1275 (discussing the question of whether "an ordinary designer would have modified the primary reference to create a design that has the same overall visual appearance as the claimed design"); *see also*

Amicus United States Br. at 12–13 (describing factors to consider including "ordinarily skilled designer's experience, creativity," as well as "what market demands and industry customs exist" in the relevant field and, "which ornamental features are commonplace in the relevant field"). Just as with the analogous art inquiry, in the area of motivation to combine, the problem to be solved may have less relevance in the design patent context than in the utility patent context. Of course, it follows that the more different the overall appearances of the primary reference versus the secondary reference(s), the more work a patent challenger will likely need to do to establish a motivation to alter the primary prior art design in light of the secondary one and demonstrate obviousness without the aid of hindsight.

5

Consistent with *Graham*, the obviousness inquiry for design patents still requires assessment of secondary considerations as indicia of obviousness or nonobviousness, when evidence of such considerations is presented. *Graham*, 383 U.S. at 17–18 ("Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented."). In prior cases involving design patents, we have confirmed that commercial success, industry praise, and copying may demonstrate nonobviousness of design patents. *Campbell Soup,* 10 F.4th at 1276–79 (considering evidence of commercial success, industry praise, and copying); *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1335–36 (Fed. Cir. 2014) (same). We do not disturb our existing precedent regarding the application of secondary considerations such as commercial success, industry praise, and copying to the obviousness analysis in design patents. It is unclear whether certain other factors such as long felt but unsolved needs and failure of others apply in the design patent context. We leave to future

cases the determination of whether considerations such as long felt but unsolved need and failure of others will have significance to the obviousness inquiry in the design patent context.[4]

6

We recognize that GM and several amici have raised concerns as to the uncertainty that may result from overruling the *Rosen-Durling* test and applying a new test. GM argues that eliminating the test will "revert to a rudderless free-for-all [and] will increase confusion, disrupt settled expectations, and leave lower courts and factfinders without the necessary guidelines to properly conduct the obviousness analysis." Appellee's Br. at 13. Along the same lines, amici argue that "[e]liminating this framework now carries great risk, including exposing up to 400,000 U.S[.] design patents to substantial uncertainty [and] upsetting settled expectations for applicants before the USPTO and the public at large." Amicus Am. Intell. Prop. L. Ass'n Br. at 26; *see also* Amicus Intell. Prop. Owners Ass'n Br. at 15 ("Elimination would leave USPTO examiners and design patent owners without any analytical framework for evaluating obviousness tailored to design patents.").

We do not agree. The *Graham* four-part obviousness test for utility patents has existed for a very long time and there is considerable precedent from which the PTO and the courts can draw when assessing obviousness in the design patent context. As the Supreme Court acknowledged in *Graham*, there may well be some difficulties with this

---

[4] It is possible that the rigid requirements of *Rosen-Durling* have, to date, prevented the development of a substantial body of caselaw considering the application of secondary considerations to obviousness analyses of design patents.

fact-based non-rigid test, but these difficulties are not unusual:

> This is not to say, however, that there will not be difficulties in applying the nonobviousness test. What is obvious is not a question upon which there is likely to be uniformity of thought in every given factual context. The difficulties, however, are comparable to those encountered daily by the courts in such frames of reference as negligence and scienter, and should be amendable to a case-by-case development.

*Graham*, 383 U.S. at 18. This test has proven workable for utility patents and we see no reason why it would not be similarly workable for design patents. As with any change, there may be some degree of uncertainty for at least a brief period, but our elimination of the rigid *Rosen-Durling* test is compelled by both the statute and Supreme Court precedent.

## V

Turning to the merits of the specific case before us, we vacate the Board's determination of nonobviousness of the D'625 patent. We remand for the Board to address in the first instance whether the D'625 patent would have been nonobvious under 35 U.S.C. § 103 based on Lian alone or Lian as modified by Tucson, applying the framework for evaluating obviousness of design patent claims set forth in this opinion.

As an alternative ground for holding the D'625 patent nonobvious, the Board held that LKQ's failure to identify "the correct visual impression created by the patented design as a whole" in its claim construction, "standing alone, justifies [the Board's] conclusion that LKQ fails also to prove by a preponderance of the evidence that the challenged claim of the '625 patent is unpatentable." *Board Decision*, 2021 WL 3411458, at *17 (quoting *Durling*,

101 F.3d at 103). We have repeatedly held that tribunals "should not treat the process of claim construction [in design patent cases] as requiring a detailed verbal description of the claimed design, as would typically be true in the case of utility patents." *Egyptian Goddess,* 543 F.3d at 680; *see also Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302–03 (Fed. Cir. 2010) (stating that for design patents, "claim construction must be adapted to a pictorial setting" and warning of "the dangers of reliance on a detailed verbal claim construction"). Rather, the tribunal is not "obligated to issue a detailed verbal description of the design" as "a design is better represented by an illustration." *Egyptian Goddess*, 543 F.3d at 679. We reaffirm this principle and hold that the Board erred in rejecting LKQ's asserted obviousness grounds on this basis.

## CONCLUSION

As explained above, we reinstate the portion of the panel opinion affirming the Board's finding of no anticipation. We also vacate the Board's nonobviousness determination and remand for further proceedings consistent with this opinion.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

## COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

---

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**
*Appellants*

**v.**

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**
*Appellee*

---

2021-2348

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-00534.

---

LOURIE, *Circuit Judge*, concurring in judgment.

I concur in the court's decision to vacate and remand the Board's decision for it to reevaluate the validity of the claimed design in light of the majority opinion.

I write separately because I do not agree that we need to "overrule" *In re Rosen*, 673 F.2d 388 (CCPA 1982) and *Durling v. Spectrum Furniture Co.*, 101 F.3d 100 (Fed. Cir. 1996). To the extent that *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) abjured what it called rigid tests for evaluating patent issues, all we needed to do in this case was to make the *Rosen* and *Durling* precedents less rigid. Their use of "must" and "only" in their analyses are the only signs of rigidity in those opinions. Replacing them with

words such as "generally," "usually," or "typically" would have sufficed. Otherwise, they were basically correct on the law.

*Rosen* was decided by a Court of Customs and Patent Appeals ("CCPA") panel that consisted in part of Judges Markey, Rich, and Nies, a group that one might say knew a bit about patent law, including the analysis of obviousness. And *Durling*, decided by an equally knowledgeable panel of this court, merely cemented an already long-standing principle likewise established by the CCPA in *In re Glavas*, 230 F.2d 447, 450 (CCPA 1956). The basics of the *Rosen-Durling* framework have therefore existed, and been consistently applied to design patent validity, for decades and long after *Smith v. Whitman Saddle Co.*, 148 U.S. 674 (1893).

Perhaps, in the fullness of time and in light of *KSR*, it can be seen that *Rosen* and *Durling* may have used overly strong language. But, "overruled"? It only needed to be modified. Overruling is destabilizing. Courts should, if possible, rule in modest steps, not abrupt acts of overruling. Even post-*KSR*, we did not wholly abandon the requirement that there be a motivation to combine simply because the Supreme Court criticized one instance of its application. And since *KSR*, we have continued to apply tests and frameworks for validity. *See, e.g.*, *Graham v. John Deere Co.*, 383 U.S. 1 (1965).

The majority walks away from *Rosen* and *Durling* as if they violated basic tenets of patent law. In reality, all they needed was a bit of tinkering. It is important to note that the U.S. Patent and Trademark Office, which also knows a good deal about evaluating design patents, basically endorsed *Rosen* and *Durling*, but found their application needed a little more flexibility. Oral Arg. at 32:25–48 ("We're saying that the existing test is fine . . . . The *Rosen-Durling* test is fine, but we do recommend some changes to it.").

The substantial briefing by amici in this en banc appeal was primarily dominated by entities with economic interest in the outcome of the case—supporters of automotive manufacturers, automotive part replacement companies, and insurance companies, each advocating for results and legal concepts supporting their economic interests. That is fine, but we most benefit from entities without an economic bias.

Broad-based organizations with a primary interest in the stability and clarity of the law have told us that the *Rosen-Durling* test is basically correct. They include the American Intellectual Property Law Association, the Institute for Design Science and Public Policy, the International Trademark Association, the Industrial Designers Society of America, and others, all of whom supported this precedent, which the court now "overrules." Am. Intellectual Prop. Ass'n Amicus Br., ECF 136 at 31 ("[T]he *Rosen-Durling* framework . . . allows for an expansive and flexible approach consistent with the principles of *KSR*" and "eliminating [it] would cause unnecessary uncertainty in an area of design patent law that has worked reasonably well for over 40 years."); Inst. for Design Sci. and Pub. Policy et al. Amicus Br., ECF 144 at 37 ("Eliminating the *Rosen-Durling* test will unnecessarily harm design innovation."); Indus. Designers Soc'y of Am. Amicus Br., ECF 193 at 5 ("[I]t is evident that this Court should uphold the existing *Rosen-Durling* framework."); Int'l Trademark Ass'n Amicus Br., ECF 201 at 12 ("The *Rosen-Durling* test sets the appropriate balance for determining the obviousness of a design, and the Court should not abandon it.").

The essence of *Rosen* and *Durling* is that for obviousness, which generally assumes that one reference does not anticipate the claimed design, one ought to have a basic starting reference with "basically the same" "design characteristics" as the challenged design and a second one that is "so related" as to result in a conclusion of obviousness. *Rosen*, 673 F.2d at 391; *Durling*, 101 F.3d at 103 (citation

omitted). What the majority is doing here is confirming these concepts while overruling their cases of origin, just to make minor modifications in their language.

Presumably, such a basic starting reference, just as with utility patents, should be the closest prior art. The majority uses that phrase only once, Maj. Op. at 23–24, but it ought to be central, as it is with utility patents. It does state that "a primary reference must be identified" and it "will likely be . . . the prior art design that is most visually similar to the claimed design." *Id.* But we did not need to "overrule" a case with language that a reference's "design characteristics" must be "basically the same" to substitute "most visually similar." Those two phrases themselves are basically the same or similar.[1] Maybe the word "must" used in *Rosen* was excessive, but the thought expressed was sound.

As the majority acknowledges, the primary reference must fall within the range of what may be called analogous art. Maj. Op. at 24 ("The primary reference will typically be in the same field of endeavor as the claimed ornamental design's article of manufacture, but it need not be, so long

[1] "Basically the same" did not mean that a reference and the challenged design must be near-identical or even substantially the same. Indeed, such an interpretation would conflate anticipation and obviousness. *See Gorham Co. v. White*, 81 U.S. 511, 528 (1871) (explaining that infringement, which has the same test as anticipation, *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009), considers whether or not the "two designs are substantially the same"). Rather, "basically" meant "generally" or "roughly." Moreover, *Rosen* did not require that the primary reference be "basically the same" as the claimed design, but only that the primary reference have "*design characteristics* of which are basically the same as the claimed design." 673 F.2d at 391 (emphasis added).

as it is analogous art."). But the majority sets forth the test for analogous art as part of the obviousness inquiry. *See* Maj. Op. Sec. IV.1 (considering whether or not a reference is analogous art as part of its *Graham* factor one analysis). Properly understood, the analogous art test is not a test for obviousness. It is a gateway. Determining whether art is analogous is determining what may properly be considered in an obviousness inquiry, not part of the test for what would have been considered obvious. It is a threshold for qualifying art, not an indicator of obviousness. *E.g.*, *In re Klein*, 647 F.3d 1343, 1348 (Fed. Cir. 2011) ("A reference qualifies as prior art for an obviousness determination under § 103 only when it is analogous to the claimed invention."). In my view, it should not be defined as a test for considering obviousness. That misconstrues its role in the analysis.

Moving to the second step of the *Rosen-Durling* test, an examiner or challenger might find another reference that, combined with the basic reference, might lead a skilled designer to what is claimed. That is where the "so-related" language in *Durling* comes in. The additional reference, or references, in order to lead to obviousness, must be "so related" to the primary reference that "the appearance of certain ornamental features in one would suggest the application of those features to the other." *Durling*, 101 F.3d at 103 (quoting *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996) (quoting *Glavas*, 230 F.2d at 450)). Such a reference or references would also be within the scope of analogous art in order to be combinable with the basic reference. Again, perhaps the word "only" in *Durling* is excessive. But it just needed to be fine-tuned, not "overruled." And that is essentially what the majority did, merely swapping the "so related" language of *Durling* for "some record-supported reason . . . that an ordinary designer . . . would have modified the primary reference . . . ." Maj. Op. at 26.

*Rosen* and *Durling* therefore expressed the same concepts now adopted by the majority, albeit with a couple of

unnecessarily strong words. Such a basic analysis was simply the way obviousness is examined and should be considered with design as well as with utility patents. Indeed, the *Rosen-Durling* framework has already been long-regarded as the application of the relevant *Graham* factors to design patents. *See, e.g.*, *Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1275 (Fed. Cir. 2021); *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1462 (Fed. Cir. 1997).

With those thoughts, *Rosen* and *Durling* should have been allowed to stand, as modified, rather than been decisively overruled.

With that being said, I agree that the Board's decision should be vacated and remanded.